UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
YATRAM INDERGIT, on behalf of himself
and all others similarly situated,

                          Plaintiff,                  08 CV 9361 (PGG)

   v.

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and FRANCIS
OFFOR as Aider & Abettor,
                          Defendants.
----------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

 

Robert J. Valli
Valli Kane & Vagnini, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180

## **Table of Contents**

Table of Contents ...................................................................................................................... i

Table of Authorities .................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT ............................................................................................................................. 4

    I. The Legal Standard ........................................................................................................... 5

        a. The Collective Action Process .................................................................................... 5

        b. The Standard for Certifying a Collective Action ........................................................ 6

    II. The FLSA's Overtime Requirements .............................................................................. 7

    III. Plaintiffs Have Met and Exceeded the Requirement for Preliminary Certification ....... 9

    IV. Plaintiff's Notice is Fair and Proper ............................................................................. 12

    V. Discovery of Contact Information for Potential Plaintiffs is Necessary and Proper ..... 12

    VI. Defendants Should be Required to Post a Notice ......................................................... 13

CONCLUSION ........................................................................................................................ 13

## Table of Authorities

**Cases**

*Anglada v. Linen's 'N Things,* 2007 U.S. Dist. LEXIS 39105, *22 (S.D.N.Y. 2007) .................. 12

*Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2nd Cir. 1978) ..................... 6

*Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) . 8

*Cuzco v. Orion Builders, Inc.* 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007) ............................... 5, 6

*Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007) ............................................ 9

*Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 5, 2006). 10

*Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881, *10 (S.D.N.Y. 2008) .............. 11

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp.2d 317, 322 (S.D.N.Y. 2007) ................... 7, 12

*Francis v. A&E Stores, Inc.*, 2008 U.S. Dist. LEXIS 83369, *8 (S.D.N.Y. October 15, 2008) ... 10

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 106 (S.D.N.Y. 2003) .............. 6

*Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997) ........................................... 6, 9

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989)
 ................................................................................................................................................ 6, 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ......................... 6

*Krueger v. N.Y. Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, *3 (S.D.N.Y. 1993) .............................. 11

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202 (S.D.N.Y. 2006) ......................................... 12

*Legrand v. Educ. Mgmt. Corp.,* 2004 WL 1962076, at *2 (S.D.N.Y. 2004) ............................... 10

*Lewis v. National Financial Sys., Inc.*, 2007 WL 2455130, *3 (E.D.N.Y. 2007) .......................... 6

*Mascol v. E & L Transp., Inc.*, 387 F.Supp.2d 87, 96 (E.D.N.Y. 2005) ....................................... 7

*Masson v. Ecolab, Inc.*, 2005 WL 2000133 at *13 (S.D.N.Y. 2005) ................................. 5, 6, 10

*Mazur v. Olek Leibzon & Co.*, 2005 WL 3240472, *4 (S.D.N.Y. Nov. 30, *2005*) ...................... 7

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) ....................................... 13

*Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 305 (S.D.N.Y. 1998) ................................. 9

*Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) .................. 10

*Rubery v. Buth-Na-Bodhaige, Inc.*, 2008 U.S. Dist. LEXIS 61887, *12 (W.D.N.Y. Aug. 8, 2008) ............................................................................................................................................. 13

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)................................................. 5

*Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007)...................... 13

*Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at *2 (S.D.N.Y. 2006) ............................... 10

*Sophia Francis v. A&E Stores, Inc.* ............................................................................................... 9

*White v. MPW Indus. Servs.*, Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006)................................ 10

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ......................................... 7

*Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, *12 (S.D.N.Y. 2001) ........................ 7, 10

**Statutes**

29 C.F.R. § 541.100 (2006) ............................................................................................................ 8

29 U.S.C. § 213(a)(1)...................................................................................................................... 8

29 U.S.C. § 216(b) ............................................................................................................... 1, 5, 7, 9

29 U.S.C. §§ 255, 256(b) ................................................................................................................ 5

## PRELIMINARY STATEMENT

Plaintiff, Yatram Indergit, by and through his attorneys, submits this Memorandum of Law in support of Plaintiff's motion for certification and notice to putative collective action members pursuant to 29 U.S.C. § 216(b). Plaintiff brings this action on behalf of all Store Managers and Assistant Managers (hereinafter "Covered Management" or "Collective Plaintiffs") who have been misclassified as "exempt" for the purposes of overtime, yet are required to work excessive hours performing non-exempt duties and are not compensated accordingly. Plaintiff alleges that *all* of the Collective Plaintiffs suffered from Defendants' illegal practice of failing to pay overtime. The Collective Plaintiffs, irrespective of their job titles, were all victims of Defendants' policy which sought to raise profits by decreasing the hours worked by hourly employees and transferring their job duties to Management. This policy required Management to work in excess of eighty hours a week in order to perform these extra duties which are not exempt from overtime laws. Plaintiff seeks an order from the Court:

(1) Conditionally certifying this suit as a collective action;

(2) Authorizing Plaintiffs to send a Notice of this action along with a Consent Form (opt-in form) to all Covered Management currently and/or formerly employed by Defendants within the last three years;

(3) Ordering Defendants to produce, in a computer readable manner, the names, last known mailing addresses, alternate addresses, all telephone numbers, last known email addresses, social security numbers, and dates of employment of all Covered Management; and

(4) Ordering Defendants to post the Notice and/or deliver a memo, along with the Consent forms, in a place where Management are likely to view it in all stores owned and/or operated by Defendants.

## STATEMENT OF FACTS

Plaintiff was employed by Defendants from 1979 until November 30, 2007. Amended Complaint ("A.C."), ¶¶ 45, 55. During this time the number of overtime hours which Plaintiff

was allowed to schedule hourly employees to work was consistently decreased in order to reduce costs resulting in higher bonuses for upper management. A.C., ¶ 36; Affidavit of Yatram Indergit ("Indergit Aff."), ¶¶ 1, 3; Affidavit of Neil Rand ("Rand Aff."), ¶ 4; Affidavit of William Johnson ("Johnson Aff."), ¶ 4. As he decreased the hours worked by non-exempt employees, in accordance with this national policy, Plaintiff, along with his assistant managers, had no choice but to perform those tasks formerly being performed by those non-exempt employees. A.C., ¶¶ 37-38; Indergit Aff., ¶¶ 4, 5. While the number of hours available to be assigned to hourly staff decreased, Plaintiff's store's business did not, leaving him no option but to work up to eighty hours a week and six or seven days a week. A.C., ¶¶ 38; Indergit Aff., ¶ 4; Exhibit C (Schedules provided by Defendants). All of the time, in excess of forty hours per week, that Plaintiff and his assistant managers were required to work, was spent not on managerial work, but was almost completely made up of menial tasks that are not exempt from overtime laws. A.C., ¶¶ 38-42; Indergit Aff., ¶ 6.

Similar to Plaintiff's story, William Johnson worked for Rite Aid as an Assistant Manager from April, 2002 until June, 2008. Johnson Aff., ¶ 1. He worked at three different Rite Aid locations. At each store he found the policies relating to store hours permitted, Management hours worked and overtime were nearly identical. *Id.* at ¶ 2. On average, he worked more than seventy hours a week and spent the majority of this his time performing menial jobs such as cleaning, stocking, operating the cash-register and carrying in shipments. *Id.* at ¶ 3. At each store, he experienced and observed Rite Aid's policy of cutting and/or eliminating staff hours actually necessary to operate the store, leaving management to cover those jobs while they were not getting paid any overtime, regardless of how many hours he put in. *Id.* at ¶¶ 4-5. Mr. Johnson saw that Store Managers as well as Assistant Managers had almost nothing to do with

managing the store, as this was done by the District Managers. *Id.* at ¶ 8. He was told that he had to work until the jobs were finished, all while having more tasks assigned to him as hours were further reduced. *Id.* at ¶ 5. Because of these policies Mr. Johnson was fired and blamed for not having performed the non-exempt job of re-pricing items on the floor. *Id.* at ¶¶ 9-10.

Neil Rand worked as an Assistant Manager from October, 1995 until June 1996 and then was promoted to Store Manager. He continued in that position until February, 2006. Rand Aff., ¶ 1. Of the fifty five to sixty hours he was scheduled a week, Mr. Rand performed about one hour a day of managerial work while the rest of the time he spent performing menial jobs around the store that should have been completed by hourly employees, not Management. *Id.* at ¶ 3. It was Rite Aid's policy to give stores fewer hours than necessary to properly staff the store and then expecting the Management at that store to complete those tasks that were left unperformed. *Id.* at ¶ 4. He was told that if he had to he should live in the store to finish all of these menial jobs. *Id.* at ¶ 5. Because of the Rite Aid policies Mr. Rand planned his day around having to compensate for the lacking hours by performing jobs that an exempt employee would not have to perform. *Id.* at ¶ 7.

While Plaintiff worked at a single store, he was included on numerous conference calls and other communications sent district wide, regionally and nationally. Indergit Aff., ¶ 10; Exhibit E (National Job Description for Store Managers); Exhibit G (National Manager's Guide); Exhibit K (National Store Management Guide); Exhibit L (Memo Disseminating National Store Management Guide). Thus it was clearly indicated to Plaintiff that these policies, which were instituted on a national level, required all Rite Aid Stores to operate by giving less hours and no overtime hours to the staff. The result being that Management was expected to work many hours in excess of forty per week to operate the stores. Management was explicitly instructed to

3

adhere to this policy and further instructed that all work needed to get done, regardless of whether it was exempt or non-exempt. Indergit Aff., ¶ 4; Rand Aff., ¶¶ 4, 6, 7; Johnson Aff., ¶¶ 6, 8; Exhibit H (Declarations of Angel Naula and Jose Fermin). This is evidenced not only by Plaintiff's experience and personal knowledge, but the personal knowledge of those individuals who have come forward in support of this action, the evidence produced by Defendants, but also by the other class and collective actions brought against Rite Aid for similar violations. Indergit Aff., ¶ 6; Rand Aff., ¶ 3; Johnson Aff., ¶ 8; Exhibit H (Declarations of Angel Naula and Jose Fermin); Exhibit F (Class Complaints alleging similar or identical facts). Other Rite Aid Management groups have alleged similar if not identical situations throughout the country. Exhibit F.

Additionally, while Defendants have alleged that Plaintiff is an employee of a regional corporation rather than the national organization, they have failed to produce a single document to evidence this claim. Affirmation of James Vagnini (Vagnini Aff.), ¶ 10. Rather, all policies which relate to the individual stores and management are produced on a national level with oversight from District and Regional management. (*See* Exhibits E, G, K and L.) When Plaintiff brought this issue to light during a conference call which included Covered Management and District and Regional managers, others voiced the same opinion that Management was being exempted improperly. Indergit Aff., ¶ 10. The fact that there are similar claims which have been brought by Management in other areas of the United States, as well as evidence confirming the centralized control of Management's hours and a centralized store policy, indicates that there are others similarly situated throughout the Country whom Defendants have and continue to improperly classify as exempt. (*See* Exhibits E, G, K and L.)

## **ARGUMENT**

## I. **The Legal Standard**

The standard for certifying a collective action is quite lenient. The showing a plaintiff must make at the initial stage is deliberately set low in order to protect class members' rights and ensure judicial efficiency.

### a. The Collective Action Process

The FLSA process gives Plaintiffs the right to bring the action not only to recover their own damages, but also to allow other employees who have been subjected to the same illegal policies to opt into the action. 29 U.S.C. § 216(b). Unlike a class action, in a collective action participation is optional for effected individuals who can join by signing and mailing a form showing their desire to participate. *See, e.g., Masson v. Ecolab, Inc.*, 2005 WL 2000133 at *13 (S.D.N.Y. 2005). The stringent requirements of a Rule 23 action do not apply to collective actions. *Id.* Instead, the plaintiff must simply show that the class which they seek to certify is "similarly situated" to the individual bringing the representative claim. *Id.* Prior to discovery, the "Court first determines whether class members are similarly situated based on pleadings and affidavits." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *Cuzco v. Orion Builders, Inc.* 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007). If the case is initially certified as a collective action then the opt-in forms are disseminated and class members are given the opportunity to join the action. *Scholtisek*, 229 F.R.D. at 387.

The process moves swiftly in order to protect these individuals as they are only protected if they file this form, dissimilarly from the Rule 23 class action process. 29 U.S.C.A. § 216(b). Expedition is necessary as the statute of limitations continues to run prior to their filing an opt-in form, thus the potential for the defendants to escape liability by delay of process rather than proof of innocence becomes a real and imminent possibility. 29 U.S.C. §§ 255, 256(b). This is

5

why the standard by which the initial certification is approved by the Court has been set very low, in order to protect the rights of potential opt-in plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989).

Once initially certified, the collective action proceeds through the discovery process and is reevaluated to "determine whether the claimants are indeed similarly situated." *Masson*, 2005 WL 2000133 at *13 (citation omitted). If the Court later determines that this initial certification was unwarranted then the collective action can be "decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice." *Id.*

b. The Standard for Certifying a Collective Action

"Similarly situated" is not defined within the FLSA or by other regulations. *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997). When determining whether potential opt-in plaintiffs are "similarly situated" employees, the Court should be aware of "the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2nd Cir. 1978). The burden for this initial certification has thus been construed and applied as "minimal." *Cuzco*, 477 F.Supp.2d at 632-33; *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 101, 106 (S.D.N.Y. 2003); *see also, Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007). The Second Circuit defines the standard as requiring "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Lewis v. National Financial Sys., Inc.*, 2007 WL 2455130, *3 (E.D.N.Y. 2007) (citations omitted).

6

In making the initial certification decision, the underlying claims are not considered and "[a] Plaintiff need not show an actual violation of the law." *See, e.g., Mazur*, 2005 WL 3240472 at *4. Rather, the focus of the certification motion is squarely focused on determining "whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Thus, the evidence produced at this stage can be "scant" and a Court may still certify the case as a collective action. *Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, *12 (S.D.N.Y. 2001). Thus, this "initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp.2d 317, 322 (S.D.N.Y. 2007).

## II.     The FLSA's Overtime Requirements

The FLSA requires that employees are compensated an additional half of the hourly rate for all hours worked over forty in a work week. 29 U.S.C. § 207(a)(1). If employees who are subject to this law are paid anything less than one and a half times their hourly rate of pay then it is a violation of the FLSA. *Mascol v. E & L Transp., Inc.*, 387 F.Supp.2d 87, 96 (E.D.N.Y. 2005). A violation of this law leads to an employer's liability "to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

There are numerous exemptions from this requirement. The relevant section is as follows:

> [A]ny employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act *except than [that] an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities*). 29 U.S.C. § 213(a)(1) (italics added) (internal citations omitted).

This has been regulated to mean that the employer must show that the employee was (1) salaried at no less than $455 a week, (2) that the primary duties consisted of "management of the enterprise... or of a ... subdivision thereof," (3) that the work included "customary and regular direction of the work of two or more other employees," and (4) "that the employee have some influence over the hiring and firing of employees." 29 C.F.R. § 541.100 (2006). It is the employer's burden to show that this exemption applies. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974). Plaintiff does not challenge the first requirement, but does challenge the second, third and fourth. At this stage, however, Plaintiff need only allege, not prove such violations, which he has done throughout the Amended Complaint. The Amended Complaint, along with the affidavits and supporting documentation annexed hereto, support the Plaintiff's contention that Defendants have violated the second through fourth prongs of the test set forth above. The policy which all such Covered Management were subjected to was universally applied in Rite Aid stores and thus all such managers and assistant managers are members of the collective action and should be notified of

8

this action and given the option of joining the litigation. *See* Exhibits E, G, K & L (All documents showing that policies relating to management and hours are handed down from the national corporate headquarters and not implemented on an individual store basis).

### III. Plaintiffs Have Met and Exceeded the Requirement for Preliminary Certification

Far in excess of the minimal requirements for a Collective Action, Plaintiff has alleged numerous facts and produced evidence substantiating the claim that this policy was enacted nationwide and affected all Covered Management within the Rite Aid Corporation. All such management was labeled "exempt" despite their actual duties which required them to perform menial tasks for a majority of the time they were employed by Defendants. Exhibit M (Defendants' Response to Plaintiff's Requests for Admission wherein Defendant Rite Aid of New York admits that all Store Managers are labeled exempt.[1]) Together, Covered Management "were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007) (citing *Hoffman*, 982 F. Supp. at 261).

Here, Plaintiff must show that the class is "similarly situated" to himself and was subjected to the same policy to improperly classify such employees as exempt. *See* 29 U.S.C. § 216(b); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 305 (S.D.N.Y. 1998). Further, Plaintiffs in *Sophia Francis v. A&E Stores, Inc.*, were "Assistant Managers who were salaried and did not receive overtime compensation," accordingly, they constituted a collective class as they held "similar position[s], had the same or similar duties, and all were designated as exempt from overtime provisions of the FLSA." 2008 U.S. Dist. LEXIS 49971 (S.D.N.Y. June 26,

---

[1] It should be noted that Defendant objected to responding to any discovery requests as they pertained to Assistant Managers.

9

2008). The Southern District Court ruled that "it is prudent to certify a broader class of plaintiffs" where there is a "willful violation of the FLSA." *Id.* In affirming the recommendation of the Magistrate Judge, the Southern District found that the "[p]laintiff needs to show only that her position is 'similar, not identical, to the positions held by the putative class members.'" *Francis v. A&E Stores, Inc.*, 2008 U.S. Dist. LEXIS 83369, *8 (S.D.N.Y. October 15, 2008) (quoting *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 5, 2006)) (internal citation omitted). The Court further held, in response to arguments by the defendant that managerial eligibility should be considered on a case by case basis as they believed it to be "unique" from store to store, that "[d]isparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis." *Id.* at *11 (quoting *White v. MPW Indus. Servs.*, Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) ("Defendant cannot overcome Plaintiff's showing by arguing that individual issues may dominate; rather, if after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the Defendant may move the Court to decertify the class." *Id.* at *11-12). Thus, the class was certified, despite evidence having been produced by the defendant tending to show a unique setting for each manager which varied from store to store.

The Southern District of New York has maintained a relatively low standard which comports with Congress's intent to protect employees rather than establishing stringent litmus tests which deter claims and ultimately protect employers rather than employees. *See, e.g., Masson*, 2005 WL 2000133 at *14 (three opt-ins); *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556, at *2 (S.D.N.Y. 2006) (three affidavits); *Legrand v. Educ. Mgmt. Corp.*, 2004 WL 1962076, at *2 (S.D.N.Y. 2004) (three named plaintiffs); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Zhao*, 2001 WL 845000, **2-3

(one affidavit based on Plaintiff's "best knowledge" was enough to grant certification). "Even if all the plaintiffs 'turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [the] case.'" *Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881, *10 (S.D.N.Y. 2008) (quoting *Krueger v. N.Y. Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, *3 (S.D.N.Y. 1993)).

Here, Plaintiff has clearly established that he is similarly situated to a nationwide class of Rite Aid Management who have been subjected to horrendous working conditions and required to work as much as eighty hours in a work-week to make up for reduced hours for staff employees. Indergit Aff., ¶ 5; Rand Aff., ¶ 3; Johnson Aff., ¶ 3; Exhibit F; Exhibit H. Indeed, while Plaintiff and his assistant manager were subjected to work many hours in excess of what they were scheduled, the schedules themselves show that they were required to work in excess of fifty and sixty hours a week. Exhibit C. While Defendants refuse to deny or admit that Rite Aid classifies all Management as exempt, they have admitted that Store Managers for Rite Aid of New York are all considered exempt. Exhibit M. Since Defendants have supplied no documents which were issued by Rite Aid of New York, it is logical to assume that this policy is nationwide. *See* Exhibits G, K, L, and F (class complaints alleging identical situations from around the country). Thus, the only issue left to consider is whether Plaintiff has preliminarily established that he, and other similarly situated employees, performed similar non-exempt job duties during the relevant time period. Plaintiff has shown that the policies relating to management's hours are handed down nationally, not differentiating between regions, districts or stores. *See* Exhibits G, K, and L. Further, numerous statewide actions have been brought with nearly identical factual allegations to Plaintiff's. *See* Exhibit F. Thus, the violations which

11

Plaintiff seeks to address are not merely applicable to his own experience, but it has been established that this is a policy which uniformly affects all Management.

### IV.     Plaintiff's Notice is Fair and Proper

Attached as Exhibit O to the Affirmation of James Vagnini is Plaintiff's proposed notice to the collective class. The proposed notice provides clear instructions on how to opt-in, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. As required, it is "timely, accurate, and informative." *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 172, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989). The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

### V.     Discovery of Contact Information for Potential Plaintiffs is Necessary and Proper

It is appropriate for courts in collective actions to order the discovery of names and addresses of potential collective members. *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffman-La Roche,* 493 U.S. at 171). *See Fasanelli,* 516 F. Supp. 2d at 323-4 (ordering discovery of names and addresses of potential opt-ins); *Anglada v. Linen's 'N Things,* 2007 U.S. Dist. LEXIS 39105, *22 (S.D.N.Y. 2007) (same), *adopted without opinion,* 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. 2007); *Cuzco,* 477 F. Supp. 2d at 637 (same). Thus, Plaintiff requests that the Court order Defendants to supply a computer readable file with the following information for all potential opt-in plaintiffs: names, last known mailing addresses, alternate addresses, all telephone numbers, last known email addresses, social security numbers, and dates of employment. Plaintiffs require the social security of covered employees so that Plaintiffs' counsel can perform a skip trace for all notices that are returned as undeliverable

because of a change of address. Plaintiff has already executed a confidentiality agreement and would suggest its implementation in order to receive potential opt-in plaintiffs' social security numbers. *See Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (allowing dissemination of social security numbers with a confidentiality agreement).

## VI.   Defendants Should be Required to Post a Notice

Posting a notice of the claim is proper in instances such as this where potential opt-in plaintiffs are numerous and likely will be able to find this information in an open and easy to find space within the store. *See Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) ("Sutherland is hereby required to post continuous notice of this action and opt-in forms in a conspicuous location in each of its call centers during the ninety-day opt-in period referenced below.") *Rubery v. Buth-Na-Bodhaige, Inc.*, 2008 U.S. Dist. LEXIS 61887, *12 (W.D.N.Y. Aug. 8, 2008) ("Concerning the forms of notice to be given, I agree with plaintiff that it will not be overly burdensome to require defendant to post a hard copy of the class notice on each of its employee common area bulletin boards." *Id.* at *12). Because of the nature of this suit and the involvement of management, Plaintiff understands that it may be preferable to send a memo to each manager and assistant manager.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant this motion by ordering the following, along with whatever other measures this Court deems just and proper:

(1) Conditionally certifying this suit as a collective action;

(2) Authorizing Plaintiffs to send a Notice of this action along with a Consent Form (opt-in form) to all managers and assistant managers currently and/or formerly employed by Defendants within the last three years ("Covered Management");

13

(3) Ordering Defendants to produce, in a computer readable manner, the names, last known mailing addresses, alternate addresses, all telephone numbers, last known email addresses, social security numbers, and dates of employment of all Covered Management; and

(4) Ordering Defendant to post the Notice and/or deliver a memo, along with the Consent forms, in a place where Management are likely to view it in all stores owned and/or operated by Defendants.

Dated: April 13, 2009
Garden City, New York

Respectfully submitted,

Robert J. Valli, Jr. (RV 9995)
Valli Kane & Vagnini
600 Old Country Road
Suite 519
Garden City, NY 11530

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I have this day served a copy of the within and foregoing, NOTICE OF MOTION FOR CONDITIONAL CERTIFICATION, AFFIRMATION OF JAMES VAGNINI, AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, upon all parties to this matter by electronic and U.S. mail addressed to counsel of record as follows:

Daniel Turner
Ashe, Rafuse & Hill LLP
*Counsel for Defendant Rite Aid*
1355 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309-3232
danturner@asherafuse.com

Keith A. Raven, Esq.
Raven & Kolbe, LLP
*Counsel for Frank Offer*
126 East 56th Street
Suite 202
New York, New York 10022
kraven@ravenkolbe.com

Dated: Garden City, New York
       April 13, 2009

_____
James A. Vagnini, Esq.
Valli Kane & Vagnini LLP