**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>        Defendants. | **08 Civ. 9361 (PGG)**<br>**ECF Case** |

_____

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**
_____

**EPSTEIN BECKER & GREEN P.C.**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 642-1900

**ASHE, RAFUSE & HILL LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000

Attorneys for Defendants Rite Aid Corporation
and Rite Aid of New York, Inc.

Patrick G. Brady
 Of Counsel and On the Brief

Daniel E. Turner
 *Pro Hac Vice* Counsel and On the Brief

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    STATEMENT OF RELEVANT FACTS ...................................................... 3

    A.    Rite Aid Affiliated Brand's Retail Operations ...................................... 4

    B.    Rite Aid Store Managers And Assistant Store Managers Are In Charge Of Multi-Million-Dollar Enterprises .................................................... 6

        1.    Store Managers Are In Charge Of The Operations Of Their Stores .......... 6

        2.    Assistant Store Managers Are Intended To Be In Charge When Store Managers Are Not Present ...................................................... 7

    C.    The Actual Job Duties Store Managers And Assistant Store Managers Perform In Any Particular Store Differ ................................................ 7

III.    ARGUMENT AND CITATION TO AUTHORITY ...................................... 11

    A.    Conditional Certification Of A Nationwide Collective Action Requires More Than Mere "Assumptions" By Plaintiff .................................................. 11

        1.    Plaintiff Fails To Make Any Factual Showing Of A Uniform "Unlawful" Policy Or That He And The Members Of The Putative Collective Action Are Similarly Situated ................................................. 12

        2.    Plaintiff Also Cannot Satisfy The "Similarly Situated" Standard Because He Admits He Has No Knowledge Regarding The Job Duties Performed By Store Managers And Assistant Store Managers At Other Stores ...................................................................... 16

        3.    Application Of The Executive Exemption Establishes There Is No "Unlawful" Policy .................................................................. 18

    B.    Collective Adjudication Of The Applicable Exemptions To Store Managers And Assistant Store Managers Necessarily Involves Individualized Inquiries Making Collective Treatment Unmanageable And Inefficient ............................ 21

    C.    Plaintiff's Evidence Does Not Support Notice In Bronx, New York, Much Less Nationwide ............................................................................ 24

IV.    CONCLUSION .......................................................................................... 25

i

## TABLE OF AUTHORITIES

*Aguirre v. SBC Communications, Inc.*
  2006 WL 964554 (S.D. Tex. Apr. 11, 2006) ................................................... 24

*Ale v. Tennessee Valley Authority*
  269 F.3d 680 (6th Cir. 2001) ........................................................................ 22

*Amendola v. Bristol-Myers Squibb Co.*
  558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................. 12, 18, 19

*Anderson v. Cagle's, Inc.*
  488 F.3d 945 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008) .............................. 16

*Anglada v. Linens 'N Things, Inc.*
  2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) .............................................. 25

*Barfield v. New York City Health & Hospitals Corp.*
  2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) .............................................. 13

*Basco v. Wal-Mart Stores*
  2004 WL 1497709 (E.D. La. July 2, 2004) ................................................... 15

*Bernard v. Household International, Inc.*
  231 F. Supp. 2d 433 (E.D. Va. 2002) .................................................... 15, 24

*Camper v. Home Quality Management, Inc.*
  200 F.R.D. 516 (D. Md. 2000) ........................................................... 11, 24

*Clausman v. Nortel Networks, Inc.*
  2003 WL 21314065 (S.D. Ind. May 1, 2003) ............................................... 24

*Comer v. Wal-Mart Stores, Inc.*
  453 F.3d 544 (W.D. Mich. 2006) ......................................................... 24

*D'Anna v. M/A-COM, Inc.*
  903 F. Supp. 889 (D. Md. 1995) ....................................................... 12, 21

*Dean v. Priceline.com, Inc.*
  2001 WL 35961086 (D. Conn. June 6, 2001) ........................................... 15, 23

*Diaz v. Electronics Boutique of America, Inc.*
  2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ............................................... 17

*Donovan v. Burger King Corp.*
  672 F.2d 221 (1st Cir. 1982) ............................................................. 19

*Donovan v. Burger King Corp.*
675 F.2d 516 (2d Cir. 1982) ......................................................................... 19

*Ellerd v. County of Los Angeles*
2009 WL 982077 (C.D. Cal. Apr. 9, 2009) ..................................................... 18

*Equal Employment Opportunity Commission v. MCI International, Inc.*
829 F. Supp. 1438 (D.N.J. 1993) .................................................................... 21

*Evancho v. Sanofi-Aventis U.S. Inc.*
2007 WL 4546100 (D.N.J. Dec. 19, 2007) ..................................................... 24

*Harper v. Lovett's Buffett, Inc.*
185 F.R.D. 358 (M.D. Ala. 1999) ................................................................... 24

*Harris v. Healthcare Services Group, Inc.*
2007 WL 2221411 (E.D. Pa. July 31, 2007) .................................................. 24

*Haynes v. Singer Co.*
696 F.2d 884 (11th Cir. 1983) ........................................................................ 11

*Hoffmann v. Sbarro, Inc.*
982 F. Supp. 249 (S.D.N.Y. 1997) ........................................................... 11, 12

*Hoffmann-LaRoche, Inc. v. Sperling*
493 U.S. 165 (1989) ................................................................................. 12, 21

*Holt v. Rite Aid Corp.*
333 F. Supp. 2d 1265 (M.D. Ala. 2004) .............................. 3, 11, 12, 14, 21, 24

*Horne v. United Services Automobile Association*
279 F. Supp. 2d 1231 (M.D. Ala. 2003) ......................................................... 24

*In re Food Lion, Inc.*
1998 WL 322682 (4th Cir. June 4, 1998) (per curiam) ................................... 19

*Johnson v. Big Lots Stores, Inc.*
561 F. Supp. 2d 567 (E.D. La. 2008) ............................................................. 17

*Levinson v. Primedia, Inc.*
2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ........................................... 15, 17

*Masilionis v. Falley's Inc.*
904 F. Supp. 1224 (D. Kan. 1995) ................................................................. 19

*McQuay v. AIG, Inc.*
2002 WL 31475212 (E.D. Ark. Oct. 25, 2002) ............................................... 24

*Mendoza v. Case de Cambio Delgado, Inc.*
   2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ....................................................... 11

*Mentor v. Imperial Parking Systems, Inc.*
   246 F.R.D. 178 (S.D.N.Y. 2007) .................................................................... 17

*Mike v. Safeco Insurance Co. of America*
   274 F. Supp. 2d 216 (D. Conn. 2003) ....................................................... 17, 24

*Mitchell v. Abercrombie & Fitch Co.*
   428 F. Supp. 2d 725 (S.D. Ohio 2006) ............................................................ 1

*Morales v. Plantworks, Inc.*
   2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ............................................... 11, 12

*Morisky v. Public Service Electric & Gas Co.*
   111 F. Supp. 2d 493 (D.N.J. 2000) .......................................... 12, 15, 21, 22

*Mullins v. City of New York*
   523 F. Supp. 2d 339 (S.D.N.Y. 2007) ........................................................... 17

*Myers v. Hertz Corp.*
   2007 WL 2126264 (E.D.N.Y. July 24, 2007) ............................................ 15, 23

*Palazzolo-Robinson v. Sharis Management Corp.*
   68 F. Supp. 2d 1186 (W.D. Wash. 1999) ...................................................... 19

*Perry v. U.S. Bank*
   2001 WL 34920473 (N.D. Cal. Oct. 16, 2001) .............................................. 24

*Pfohl v. Farmers Insurance Group*
   2004 WL 554834 (C.D. Cal. March 1, 2004) ................................................ 24

*Prizmic v. Armour, Inc.*
   2006 WL 1662614 (E.D.N.Y. June 12, 2006)................................................. 17

*Ray v. Motel 6 Operating LP*
   1996 WL 938231 (D. Minn. March 18, 2006) ............................................... 21

*Realite v. Ark Restaurants Corp.*
   7 F. Supp. 2d 303 (S.D.N.Y. 1998) ............................................................... 11

*Scholtisek v. Eldre Corp.*
   229 F.R.D. 381 (W.D.N.Y. 2005) ................................................................. 12

*Smith v. Sovereign Bancorp, Inc.*
   2003 WL 22701017 (E.D. Pa. Nov. 13, 2003)........................................... 11, 13

*Trinh v. JP Morgan Chase & Co.*
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .................................................... 15, 24

*Vengurlekar v. Silverline Technologies, Inc.*
    220 F.R.D. 222 (S.D.N.Y. 2003)......................................................................... 19

*White v. Osmose, Inc.*
    204 F. Supp. 2d 1309 (M.D. Ala. 2002).............................................................. 18

*Young v. Cooper Cameron Corp.*
    229 F.R.D. 50 (S.D.N.Y. 2005) ........................................................................... 11

29 C.F.R. § 541.2 ........................................................................................................ 2, 17

29 C.F.R. § 541.105 ......................................................................................................... 22

29 C.F.R. § 541.106(a) ............................................................................................... 20, 22

29 C.F.R. § 541.106(b) ............................................................................................... 20, 22

29 C.F.R. § 541.201 ......................................................................................................... 22

29 C.F.R. § 541.202(a) ..................................................................................................... 22

29 C.F.R. § 541.700(a) ..................................................................................................... 22

29 C.F.R. § 541.700(b) ..................................................................................................... 22

29 C.F.R. § 541.700(c) ..................................................................................................... 20

29 C.F.R. § 541.708 ......................................................................................................... 22

29 U.S.C. § 255(a) .............................................................................................................. 3

## I.   INTRODUCTION

Plaintiff Yatram Indergit ("Plaintiff" or "Indergit"), a former Store Manager employed by Rite Aid of New York, Inc.,[1] incorrectly asserts that he was misclassified as exempt from overtime provisions of the Fair Labor Standards Act ("FLSA") and moves this Court to conditionally certify his claims for nationwide collective treatment.[2]  However, Plaintiff fails to establish a necessary prerequisite for conditional certification – that he, as a Store Manager ("SM"), is similarly situated to the approximately 8,400 current and former SMs and 8,500 current and former salaried Assistant Store Managers ("ASMs") employed by subsidiaries of Rite Aid.  For this and for several other independent reasons, Plaintiff's motion should be denied.

First, Plaintiff has not met his burden of demonstrating that he is similarly situated to thousands of former and current SMs, as well as to ASMs (a position he never held) with respect to a uniform *unlawful* policy or practice.  Plaintiff's misclassification theory rests on the false and unsupported assumption that because of an alleged (non-existent) prohibition on overtime, SMs and ASMs were forced to perform actual duties in such a manner that they are not properly classified as exempt.  An employer's policy limiting, or even preventing, overtime is not unlawful.  More importantly, Plaintiff and both opt-ins William Johnson ("Johnson") and Neil Rand ("Rand") admit that they regularly paid hourly employees overtime and that each SM had discretion to determine how to implement their stores' labor budget as s/he saw fit.  As such, Plaintiff's theory is nothing

---

[1] Rite Aid Corporation was not, and never has been Plaintiff's employer, nor the employer of any opt-in, and is not a proper defendant in this matter.  Plaintiff's and both opt-ins' employer at all relevant times was Rite Aid of New York, Inc., a subsidiary of Rite Aid Corporation.  Rite Aid Corporation appears specially and without waiver of any jurisdictional defenses.

[2] Defendants filed contemporaneously with this Response a Motion for Partial Summary Judgment on Plaintiff's individual FLSA claims.  If granted, Plaintiff's collective action claims would be moot.  *See Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725, 744 (S.D. Ohio 2006) (granting summary judgment prior to conditional certification).

more than a smoke screen intended to hide the required highly individualized analysis of the actual job duties performed by each and every SM and ASM.

Second, the applicable regulations and caselaw confirm that potential collective action members asserting misclassification claims are not similarly situated where their job duties and responsibilities differ.  The testimony of Plaintiff, Johnson and Rand (unlike their earlier conclusory declarations) demonstrates that there are no typical Rite Aid stores or typical duties of SMs or ASMs.  (*See, e.g.*, excerpts of Deposition of William Johnson ("Johnson dep."), attached as Ex. A, 204 ("The only thing that's typical in a Rite Aid store is opening the door.  After that, anything can happen.").)[3]  Plaintiff would have this Court believe for purposes of this motion that SMs and ASMs are fungible, when, in fact, they are different.  Each SM and ASM has incredibly diverse job duties, responsibilities, and work hours which vary day-to-day and hour-by-hour based upon the location, size and unique characteristics of each store in which they work; the District Managers who supervise SMs; the SMs who supervise ASMs; the level of experience of each SM and ASM; each SM's and ASM's individual personalities and traits; and the experience, individual personalities and traits of each hourly associate they supervise.  As opt-ins Johnson and Rand admit, the only way to know the actual job duties each SM and ASM performed on a weekly or daily basis is to ask each one.  (Johnson dep. 123-25; excerpts of Deposition of Neil Rand ("Rand dep."), attached as Ex. B, 51, 75-76.)

Third, Plaintiff's proposed collective action would be entirely unmanageable.  Courts and the U.S. Department of Labor recognize that the required individualized assessment of each employee's actual duties to determine the applicability of the executive and/or administrative exemptions makes conditional certification inappropriate in misclassification cases.  *See* 29 C.F.R.

---

[3] All deposition transcript citations, affidavits and other documentary references are attached to the Declaration of Daniel E. Turner, Esq., filed concurrently.

§ 541.2 and cases cited in Section III.B., *infra*.  Indeed, conditional certification was denied in a

virtually identical case against Rite Aid involving misclassification claims by SMs and ASMs.  In

*Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004), the court concluded:

> [i]f the case were conditionally certified as a collective action at this stage,
> the court would have to inquire at a second stage as to the daily tasks of each
> putative class action member to determine whether they are similarly situated
> to the person identified by the Plaintiffs, and then, on the merits, whether
> they had suffered an FLSA violation because they were not eligible for
> overtime compensation.  Only once those determinations had been made
> could any collective proof as to the number of overtime hours be relevant.
> The evidence presented to the court, therefore, reveals that all of the Plaintiffs
> employed as Store Managers or Assistant Managers by Rite Aid, even within
> the region which includes Alabama, are not similarly situated.

The record here requires the same result.

## II.   STATEMENT OF RELEVANT FACTS

Indergit worked as an SM at a single Rite Aid of New York, Inc. store location in Bronx,

New York from 1979 until his termination in November 2007.  (*See* excerpts of Deposition of

Yatram Indergit ("Indergit dep."), attached as Ex. C, 25-26; Declaration of Kristin Crandall

("Crandall Decl."), Ex. D, ¶ 19.)  Opt-in William Johnson worked as an ASM in three stores in

Bronx, New York from April 2002 until his termination in June 2008, including working as an

ASM under Indergit's supervision.  (Johnson dep. 18-19, 23, 123, 130-31; Crandall Decl. ¶ 22.)

Opt-in Neil Rand worked as an SM at two stores in Bronx, New York from 2001 until his

termination in February 2006.[4]  (Rand dep. 59.)  During the relevant period, they collectively

---

[4] Mr. Rand's claims under the FLSA are time-barred.  The statute of limitations for FLSA actions is
two years; however, a cause of action arising out a willful violation may be brought within three
years. 29 U.S.C. § 255(a).  In his May 11, 2009 Consent to Join form, he lists his last date of
employment with Rite Aid as February 2006, which is consistent with Rite Aid's personnel records.
Mr. Rand was not employed by either Defendant at any time in the three years prior to filing his
May 11, 2009 Consent to Join Collective Action.  (*See* Dkt. No. 38.)

worked in 0.1% of the total Rite Aid affiliated stores to which they seek to send nationwide notice and only 0.6% of the stores owned and operated by Rite Aid of New York, Inc.[5]

> ### A.      Rite Aid Affiliated Brand's Retail Operations

Approximately 4,880 Rite Aid affiliated brand retail stores are located in 33 states and the District of Columbia and are owned and operated by subsidiaries of Rite Aid Corporation.[6] (Crandall Decl. ¶ 5.)  Within the state of New York alone, there are approximately 674 Rite Aid brand retail stores, owned and operated by five subsidiaries.  (*Id.*)

There are no "normal" Rite Aid brand stores, in large part, because the company grew by acquisition.[7]  (*Id.* ¶ 6.)  In the state of New York alone, Rite Aid brand stores range from 610 to over 46,000 square feet, have annual front-end sales volumes ranging from $4,600 to over $11,000,000, are staffed with as few as 5 employees and as many as 65 employees, and have widely varying business hours – from 49 to 168 hours per week.  (*Id.* ¶ 11.)

Moreover, contrary to Plaintiff's assertion, and unlike many retail operations, Rite Aid's subsidiaries do not classify all ASMs as exempt.  Whether an ASM is classified as exempt or non-exempt is based on each store's volume and the number of people the ASM supervises, the hours the store is open, and other unique store circumstances.  (Crandall Decl. ¶ 14.)  Approximately 36% of Rite Aid's subsidiaries' ASMs are classified as non-exempt.

---

[5] Rite Aid of New York, Inc. owns and operates only 341 of the 674 stores in the state of New York.  (Crandall Decl. ¶ 7.)

[6] The Rite Aid brand retail stores are divided into three Divisions lead by a Division Senior Vice President.  (*Id.* ¶ 8.)  Each Division is divided into 23 Regions/Groups.  (*Id.*)  Each Region/Group has its own management team (including a Regional Vice President or Senior Group Director and a Senior Human Resources Manager), with operational discretion over the Region or Group.  (*Id.*)  Each Region contains between 50 and 500 stores and each Region is divided into approximately 213 Districts.  Each District contains approximately 12-30 stores and is managed by a District Manager.  (*Id.*)  The four stores in which Plaintiff and the two opt-ins worked during the limitations period are all currently located in Division 2, Region 20056, District 25602.  (*Id.* ¶ 19.)

[7] Unlike many nationwide drug store chains, Rite Aid grew by a series of acquisitions, incorporating the employees and policies of the acquired companies.  (Crandall Decl. ¶ 6.)

The staffing of each Rite Aid brand store as it relates to store management and other positions also varies.  (Crandall Decl. ¶ 12.)  All Rite Aid brand stores employ an SM, but some have no ASM, some have one or more *non-exempt* ASMs, some have one or more exempt ASMs, and some have both exempt and non-exempt ASMs.  (*Id*.)  Additionally, some Rite Aid brand stores in New York and New Jersey employ exempt Co-Managers.[8]  (*Id*.)  Additionally, some, but not all, Rite Aid brand stores employ Shift Supervisor(s), dedicated cashiers and/or stockers.  (*Id*.)  As the management structure and types of hourly employees change, the daily job duties of management inevitably vary.  (*Id*.)

Like other retailers, Rite Aid brand stores have annual budgets and track performance against budget.  (Crandall Decl. ¶ 15.)  Individual store-level labor budgets are stated in dollar amounts and are established as a percentage of each store's expected merchandise sales volume each week based on the store's performance in the prior year.  (*Id*.)  As a store's sales volume increases, the labor budget also increases.[9]  (*Id.*)  Store labor budgets vary widely, ranging from approximately $1,200 to $22,000 per week.  (*Id*. ¶ 16.)  Each SM has discretion to use his/her weekly labor budget as s/he deems necessary to adequately staff the store.  (*Id*.)  Many factors affect a store's actual weekly labor costs, including, but not limited to, the wage rate for each hourly employee, the total number of employees, SM and ASM salaries, tardiness/absences, turnover, and hours of operation.  (*Id*. ¶ 17.)  Although the use of overtime logically creates more labor cost and is discouraged, there is no corporate prohibition on the use of overtime.  (*Id*.)  Indeed, Plaintiff admits that he regularly paid overtime to hourly employees.  (Indergit dep. 151, 188.)  Opt-in Johnson also admits that in his three stores, some hourly employees worked overtime.  (Johnson dep. 154-55.)

---

[8] Although similar to the ASM position, the Co-Manager position was developed as a result of collective bargaining agreements reached with certain stores in New York and New Jersey.
[9] Field-level management has discretion to make adjustments to each store's labor budgets.  Some make significant changes, while others do not.  (*Id*. ¶ 16.)

He also concedes that he believes he worked more hours as an ASM not because of labor budgets or restrictions on overtime, but because of unique issues in stores and poor management decisions by his SMs, including Plaintiff.  (*Id*. 107-10, 212-16.)

**B.    Rite Aid Store Managers And Assistant Store Managers Are In Charge Of Multi-Million-Dollar Enterprises.**

**1.    Store Managers Are In Charge Of The Operations Of Their Stores**

Although Plaintiff does not know how other SMs ran their stores, he readily admits that he was in charge of his store at all times.[10]  (Indergit dep. 58-59, 111-12, 369.)  Plaintiff admits that the SM position is intended, in association with ASM(s), to assume plenary responsibility for the management of a particular store, including its overall profitability.  (*Id*. 59-60, 63-64, 92.)  Plaintiff further admits that Rite Aid's Store Manager Job Description *accurately* and *completely* states the job duties he performed and his responsibilities.  (*Id*. 147, Ex. 6.)  In contrast, opt-in Rand testified that, although he was in charge of his store, the Store Manager Job Description does not accurately describe his position as an SM.  (Rand dep. 73-76.)  Rather, he believes the job duties and responsibilities of each SM vary so much that one would have to ask each SM what duties s/he performs and how s/he ran the store.  (*Id*. 75-76, 102 ("There are so many factors that go into the daily, day-to-day operation of a store.").)

---

[10] Plaintiff also admits that his job duties and responsibilities as a Store Manager included maintaining and operating the store, supervising employees, hiring, training and disciplining employees, ensuring that employees follow and obey all Rite Aid rules and policies, and managing the operations of the store.  (Indergit dep. 59-60, 80-81, 92, 102, 112, 126-27, 134-38, 182, 200, 254-57, 367-73, 403.)  Plaintiff further admits that irrespective of the task he was performing, as the SM, he was at all times in charge of the store and monitored and supervised associates.  (*Id*. 111-12.)  In contrast, Rand testified that when he was not physically in his store, he did not feel responsible for what was happening in the store.  (*See* Rand dep. 203-04.)

### 2.    Assistant Store Managers Are Intended To Be In Charge When Store Managers Are Not Present

Although the ASM position is designed to compliment the SM position and to perform many of the same managerial job duties and responsibilities as SMs, the duties and responsibilities of each ASM vary store-by-store depending on the authority and responsibilities given to each ASM by his/her SM.[11]  (Indergit dep. 184-85, 203; Johnson dep. 41, 101-03, 109-10, 121-23.)  In the absence of the SM, ASMs should assume the responsibilities of the SM and are in charge of the store.  (Indergit dep. 63-64; Johnson dep. 56; Pena Decl. ¶¶ 3, 29, Ex. E; Khan Decl. ¶ 6, Ex. F; Blake Decl. ¶¶ 5, 12, Ex. G; Vasquez Decl. ¶¶ 4, 31, Ex. H; Coleman Decl. ¶¶ 5, 8, 36, Ex. I; Shahzaham Decl. ¶¶ 4, 9, 35, Ex. J; *see also* Assistant Manager Job Description, Johnson dep., Ex. 6, Ex. A.)  However, the level of supervision and authority given to each ASM varies store-by-store and SM-by-SM.  Opt-in Johnson described wide variations in managerial duties he performed under each of the three SMs who supervised him.  (Johnson dep. 68-69, 103, 113, 121-25.)  Both Plaintiff and opt-in Johnson admit that ASMs, in the stores they managed, supervised and directed the work of store employees and were responsible for supervising and monitoring subordinate employees regardless of the actual job duties they performed.  (Indergit dep. 59-61, 74, 111-12; Johnson dep. 205-10.)

### C.    The Actual Job Duties Store Managers And Assistant Store Managers <u>Perform In Any Particular Store Differ.</u>

Plaintiff's and opt-in Rand's testimony confirms that the day-to-day experience of and job duties performed by SMs vary depending on a number of different factors.  (Indergit dep. 27-28, 37, 46-48, 77, 248, 298-99, 334-35; Rand dep. 51, 92, 97, 102, 111, 156).  The declarations submitted

---

[11] The Assistant Store Manager Job Description states, "[t]his position directly supervises store associates and carries out supervisory responsibilities in accordance with Rite Aid policies and applicable laws.  Responsibilities include interviewing, hiring, training, directing, rewarding, and disciplining associates; appraising associate performance; and resolving complaints."  (Johnson dep. 81-82, Ex. 6.)

by Defendants from both SMs and ASMs who work in the same district where Plaintiff was

employed establish wide variations in the job duties SMs performed.  Each SM's job duties and

responsibilities vary daily as a result of the unique characteristics of each store, including, but not

limited to, the following:

- store size and sales volume (Indergit dep. 37; Blake Decl. ¶ 6(a); Hazara Decl. ¶¶ 7(e), 28, Ex. K);
- total number of employees to be managed (Hazara Decl. ¶ 7(e));
- number of ASMs employed at the store (Indergit dep. 334-35);
- each store's hours of operation (*e.g.*, whether the store is a 24-hour location) (*id.* 46; Hazara Decl. ¶ 3(b));
- where a store is geographically located (different income levels and crime levels require different management techniques) (Otuaney Decl. ¶ 7(e), Ex. L);
- amount of customer traffic (Blake Decl. ¶ 30);
- services offered by each store (*e.g.*, One Hour Photo, "GNC" vitamin department, Western Union) (Indergit dep. 298-99; Hazara Decl. ¶ 4);
- whether the store is governed by a collective bargaining agreement (Khan Decl. ¶ 6(d); Otuaney Decl. ¶ 7(g); Hazara Decl. ¶ 7(h));
- whether the store's staff is experienced and made up of long-term employees (Indergit dep. 127-28; Hazara Decl. ¶ 7(f));
- staff turnover, which affects the amount and extent of hiring and training (Indergit dep. 356; Khan Decl. ¶¶ 12, 14; Blake Decl. ¶ 6(a); Hazara Decl. ¶¶ 14, 16);
- seasonal changes in the store (such as Christmas or inventory) (Hazara Decl. ¶ 7(e));
- nature of the store's clientele (Khan Decl. ¶ 6(c); Otuaney Decl. ¶ 7(e); Hazara Decl. ¶ 7(e));
- number of truck deliveries the store receives each week (Hazara Decl. ¶ 28);
- whether the store employs a cleaning crew (Indergit dep. 47-48; Hazara Decl. ¶ 30);
- whether there are unique ongoings in the store, such as visits from corporate officers (Johnson dep. 107-09; Khan Decl. ¶ 8);
- unique loss prevention issues (Rand dep. 149, 156);
- physical differences of stores, such as whether the store has a loading dock (Indergit dep. 248);
- whether the store is a training store location (*id.* 77); and
- Plaintiff further admits that a store's labor budget affects the daily job duties of store management (*id.* 335-36).

Each SM's job duties and responsibilities also vary daily as a result of the unique personal

characteristics and attributes of the SM, any ASM(s) and other employees in the store, including,

but not limited to the following:

- experience level of each ASM (Rand dep. 79, 176; Khan Decl. ¶¶ 11, 13; Blake Decl. ¶¶ 6(b), 6(d); Otuaney Decl. ¶¶ 7(c), 10, 15; Hazara Decl. ¶¶ 7(c), 10; Shahzaman Decl. ¶ 5(d));

- each ASM's managerial style, strengths and weaknesses, and initiative (Indergit dep. 141-42; Khan Decl. ¶ 24; Shahzaman Decl. ¶ 5(c));
- each SM's managerial style, strengths and weaknesses (Coleman Decl. ¶ 6(b); Shahzaman Decl. ¶ 5(b));
- ASM's preferences in duties/tasks (Vasquez Decl. ¶ 5(b); Shahzaman Decl. ¶¶ 5(e), 27);
- each SM's preferences in duties/tasks (Otuaney Decl. ¶ 7(b); Hazara Decl. ¶ 7(b); Pena Decl. ¶ 4; Vasquez Decl. ¶¶ 17, 24; Coleman Decl. ¶ 9);
- expectations of the District Manager (Indergit dep. 161, 169-70; Rand dep. 181; Otuaney Decl. ¶¶ 7(e), 7(f));
- respective abilities, management styles and experiences of the SM, ASM, if any, Shift Supervisors, if any, and other store employees (Rand dep. 111; Blake Decl. ¶ 8; Hazara Decl. ¶ 7(f); Pena Decl. ¶ 8);
- way in which a SM delegates work to employees and the work which he/she does himself or herself (Johnson dep. 68-69, 76-77, 101-03, 110-13, 121-25);
- shift(s) the SM or ASM works (opens the store, closes the store, or works as the overnight manager in 24-hour locations) (Hazara Decl. ¶ 7(e); Vasquez Decl. ¶¶ 5(a), 5(d));
- volume of employee issues (Hazara Decl. ¶ 20);
- expectations of the SMs for the ASMs (Indergit dep. 354);
- abilities of the Pharmacy Manager in the store (Rand dep. 99-100), and
- management style of the SM or ASM (Indergit dep. 140).

Similarly, the record evidence demonstrates that the day-to-day experience of and job duties performed by ASMs varies depending on a number of different and unique factors. According to Plaintiff, the opt-ins, and ASMs working in the same district, each salaried ASM's job duties and responsibilities also vary based on the following:

- whether the store employs a cleaning crew (Shahzaman Decl. ¶ 30);
- store's hours of operation (*e.g.*, whether the store is a 24-hour location) (Vasquez Decl. ¶ 5(a));
- where a store is geographically located (different income levels and crime levels require different management techniques) (Shahzaman Decl. ¶ 5(f));
- amount of customer traffic (*id.* ¶ 30);
- services offered by each store (*e.g.*, One Hour Photo, "GNC" vitamin department, Western Union) (Pena Decl. ¶ 5(b); Vasquez Decl. ¶ 14; Coleman Decl. ¶ 6(c));
- whether the store's staff is experienced and made up of long-term employees (Pena Decl. ¶ 8);
- store size and sales volume (Johnson dep. 33, 36; Vasquez Decl. ¶¶ 5(a), 6);
- total number of employees to be managed (Vasquez Decl. ¶ 5(a));
- staff turnover, which affects the amount and extent of hiring and training (Pena Decl. ¶ 12; Shahzaman Decl. ¶¶ 13, 15);
- nature of the store's clientele (Coleman Decl. ¶ 6(c));
- number of truck deliveries the store receives each week (Pena Decl. ¶ 23; Shahzaman Decl. ¶ 29);

9

- unique loss prevention issues (Coleman Decl. ¶¶ 6(c), 7(c)).

The job duties ASMs perform also vary store-by-store depending on the control and discretion the SM delegates to the ASM.  (Indergit dep. 139-40, 184-85.)  SMs can and do have different management styles.  (*Id*. 139-40; Johnson dep. 41-42, 102-03.)  For example, Johnson testified that "[Indergit] would train me to do things, but he wouldn't let me do them."  (Johnson dep. 103.)  However, SMs other than Plaintiff allowed Johnson to take on far more job duties and responsibilities, such as handling money deposits and more employee disciplinary issues.  (*Id*. 69-70, 76-77, 80-81, 103-04, 113, 121-25.)

The job duties and responsibilities of an ASM also depend upon the experience level of the ASM, as well as the SM.  (Indergit dep. 127-28, 203; Johnson dep. 103-04.)  As Johnson experienced, an SM may delegate certain job duties and responsibilities to a well-seasoned ASM (such as scheduling and hiring) that s/he would not delegate to a new ASM.  (Johnson dep. 101-03; Indergit dep. 127-28, 203.)  Similarly, as Johnson also experienced, a new SM may or may not delegate job duties to an ASM that a more seasoned SM would delegate.  (Johnson dep. 101-02.)  Moreover, Plaintiff testified that although ASMs had the authority to do certain tasks, there were numerous responsibilities that, as the SM, Plaintiff chose to do himself.  (Indergit dep. 127-29, 183-85, 341-44, 390-92.)  All of these factors, as well as many others, affect the number of hours SMs and ASMs work, as well as the types of job duties they perform on a daily basis.  Indeed, Plaintiff admits he has no knowledge regarding what tasks other SMs delegated to their ASMs and Johnson admits his level of authority as an ASM with respect to such matters as discipline and the time he spent in charge of his store varied in each store he worked.  (*Id*. 184-85; Johnson dep. 68-69, 76-77, 103, 109-10, 113-14, 121-25.)

## III.  **ARGUMENT AND CITATION TO AUTHORITY**

### A.  **Conditional Certification Of A Nationwide Collective Action Requires More Than Mere "Assumptions" By Plaintiff.**

Despite Plaintiff's assertion that at the conditional certification stage his burden is "minimal," it is well established that it is Plaintiff's burden to make a "***factual showing***" that he and potential plaintiffs together were "victims of a common policy or plan that violated the law."[12]  *See Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (while a plaintiff's initial burden is lenient, conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action) (citation omitted); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) (same); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (collecting cases); *see also Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008).  Plaintiff must make this factual showing because "automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the [§ 216] action at the outset.'"  *See Smith v. Sovereign Bancorp, Inc.*, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003) (citation omitted).

The issuance of notice must "be exercised with discretion and only in appropriate cases." *Rite Aid*, 333 F. Supp. 2d at 1268 (citing *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983)); *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (the relevant inquiry "is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in

---

[12] As Plaintiff's counsel stated in *Alonson v. Uncle Jack's Steakhouse*, Case No. 08-7813 (DAB) (S.D.N.Y), in opposing conditional certification, "[t]his lenient standard does not excuse minimal factual showings, conclusory allegations or a failure to show a nexus between the Plaintiff[] already involved in the litigation and those [he] seeks to join or solicit through the collective process."  (*See* Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b), Dkt. No. 16, at 2, attached as Ex. M.)  Moreover, where, as here, the parties have engaged in discovery such as here, a more heightened standard should be applied. *See Rite Aid*, 333 F. Supp. 2d at 1274.

which to exercise that discretion").  A collective action should be permitted to proceed *only* where the plaintiff demonstrates that he is similarly situated to the putative class members *and* it facilitates a court's ability to resolve efficiently multiple claims in one proceeding.  *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (denying certification where litigating as a collective action "would be anything but efficient").[13]

Where a plaintiff fails to carry this burden, or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff, or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice.  *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008).  These preliminary inquiries are necessary because "courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation."  *Rite Aid*, 333 F. Supp. 2d at 1275 (citations omitted).  Plaintiff's request for nationwide notice of the litigation to a class of thousands of current and former SMs and ASMs is the very type of fishing expedition courts have warned against and refused to permit.  *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995).

### 1.   Plaintiff Fails To Make Any Factual Showing Of A Uniform "Unlawful" Policy Or That He And The Members Of The Putative Collective Action Are Similarly Situated

Plaintiff fails to make a "factual showing sufficient to demonstrate that [he and putative members of the collective action] together were victims of a common policy or plan that violated the law."  *Hoffmann*, 982 F. Supp. at 261; *Morales*, 2006 WL 278154 at *2 (same); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  The common "policy" alleged by Plaintiff is

---

[13] Courts must balance the issuance of premature notice to putative collective action members against the potential abuse inherent in conditionally certifying a collective action.  *See Sperling*, 493 U.S. at 171 ("class actions serve important goals but also present opportunities for abuse").

"Defendants' policy which sought to raise profits by decreasing the hours worked by hourly employees and transferring their job duties to management." (Plf.'s Br. 1.) Despite the sweeping assertions made in Plaintiff's motion regarding alleged "nationwide" practices, Plaintiff presents no evidence "confirming the centralized control of management's hours and a centralized store policy." (*Id.* 4.) Rather, Plaintiff broadly opines – without any support – that "it is logical to assume that this [alleged overtime] policy is nationwide." (*Id.* 11.) Such is insufficient to permit conditional certification. *Barfield v. New York City Health & Hosps. Corp.*, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying certification where plaintiff provided "nothing but limited anecdotal hearsay to suggest that there is a widespread practice"); *Smith*, 2003 WL 22701017 at *3 (requiring "some 'modest' evidence, beyond pure speculation, that [the employer's] alleged policy affected other employees").

 Plaintiff attempts to bolster this unsupported and feeble assertion by relying on a uniform job description and salary guide to argue that all practices, including those related to a store's available labor budget, are implemented nationwide. However, Plaintiff's own testimony establishes that: (1) each store's labor budget is different and based upon the sales volume of each individual store; (2) it is within the discretion of each individual SM at each Rite Aid store to implement and utilize the available labor budget in the manner s/he determines;[14] (3) a store's labor budget dramatically changes the job duties performed by store management; and (4) Plaintiff's store's labor budget, in fact, provided for overtime hours that Plaintiff chose in his discretion to assign to a Shift Supervisor[15] (Indergit dep. 155-56, 159, 167, 335-36, 400-01.) There is no record

---

[14] Indeed, opt-in Johnson complains that he was required to work many hours as Plaintiff's ASM because Plaintiff failed to properly use the labor budget provided to the store. (Johnson dep. 159-61, 198-99, 211-13.)

[15] Plaintiff regularly assigned overtime to his long-time Shift Supervisor. (Indergit dep. at 151, 188, 200.) By allocating overtime to a Shift Supervisor, Plaintiff admits he utilized a greater portion of

evidence that the *alleged* prohibition on overtime in Plaintiff's store, purportedly requiring him to perform non-managerial tasks, is a "nationwide policy," much less that it is a uniform policy in violation of the FLSA.  In fact, the only record evidence is that there is no prohibition on the use of overtime, Plaintiff used overtime in his store, and that it was Plaintiff's poor use of his labor budget that created extra work for the store's management team.  (*Id*. 151, 155; Johnson dep. 154-55; Crandall Decl. ¶ 17.)

Moreover, though the premise that Rite Aid – like all retailers – attempts to control payroll costs and the use of overtime is accurate, the inferences Plaintiff seeks to draw are not.  The record evidence belies Plaintiff's inference that all stores are understaffed.  Rather, the record reflects that at other stores, even within Plaintiff's district, SMs and ASMs did not experience Plaintiff's alleged issues regarding more needed labor hours, or restrictions on overtime such that management must perform non-exempt tasks.  (*See* Johnson dep. 159-62, 198-99; Khan Decl. ¶¶ 26, 28; Blake Decl. ¶ 30; Shahzaman Decl. ¶¶ 30-31.)  Although Plaintiff complains his District Manager treated him differently with respect to overtime, he admits that prior to Mr. Offor becoming his District Manager, he had never been restricted in his use of overtime.[16]  (Indergit dep. 167-71.)  This testimony alone demonstrates that any purported directive regarding the use of overtime is not a uniform company policy, but rather the request of an individual District Manager.  *See Rite Aid*, 333 F. Supp. 2d at 1272 ("[P]laintiffs are not similarly situated if the action relates to circumstances personal to the plaintiff rather than a generally applicable policy.").

Even if Defendants did have a nationwide policy or practice of "decreasing the hours worked by hourly employees and transferring their job duties to management" – which they do not

---

the weekly allocated labor budget than he would have had he assigned work to or allocated overtime to an employee with a lower hourly rate.  (*Id*. 157.)

[16] Plaintiff admits that the duties of SMs may be different depending on the management of the store, including the district manager.  (Indergit dep. 170-71.)  Plaintiff further admits that he has no idea what Mr. Offor said to other SMs regarding the use of overtime.  (*Id*. 152.)

– encouraging compliance with a labor budget is not a policy that violates the FLSA.  As the court

in *Basco v. Wal-Mart Stores*, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004), recognized:

> [p]laintiffs seek to make a corporate policy to keep employee wage costs low
> sufficient proof to justify the creation of a class of all Wal-Mart employees
> that have not been properly paid overtime in the last three years.  It is obvious
> from the discovery presented that this "policy" and its effects are neither
> homogeneous nor lend themselves to collective inquiry.  The effects of the
> policy as alleged are anecdotal, that is to say particularized.  Plaintiffs' own
> witnesses demonstrate that the "policy" was not even uniformly or
> systematically implemented at any given store.

*See also Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (management

incentive plan rewarding managers for minimizing overtime hours and increasing unit productivity

does not on its face encourage FLSA violations and therefore could not be a policy upon which

conditional certification was based).

    Finally, absent proof of an unlawful policy, Plaintiff's alternate claim that Rite Aid has a

"uniform" policy of classifying all SMs and ASMs as exempt – which it does not – so as to render

them all "similarly situated," has been soundly rejected by courts nationwide.  *See Myers v. Hertz

Corp.*, 2007 WL 2126264, at *5 (E.D.N.Y. July 24, 2007) (rejecting "superficial" argument that the

categorization of all managers as exempt renders all class members similarly situated because proof

of liability "will not turn on what Hertz did or did not do vis-à-vis the entire class, but rather what

each member of the class does on a daily basis"); *see also Levinson v. Primedia, Inc.*, 2003 WL

22533428, at *5 (S.D.N.Y. Nov. 6, 2003) (plaintiffs' allegations that guides were misclassified

company-wide was not sufficient to warrant notice); *Dean v. Priceline.com, Inc.*, 2001 WL

35961086, at *2 (D. Conn. June 6, 2001) (same); *Morisky*, 111 F. Supp. 2d at 498 (same); *Trinh v.

JP Morgan Chase & Co.*, 2008 WL 1860161, at *4 n.2 (S.D. Cal. Apr. 22, 2008) (same).  Indeed,

Plaintiff himself recognizes that it is the job duties performed by class members that render them

similarly situated, not job title or classification.  (*See* Plf.'s Br. 11.)

2.      **Plaintiff Also Cannot Satisfy The "Similarly Situated" Standard Because
He Admits He Has No Knowledge Regarding The Job Duties Performed
By Store Managers And Assistant Store Managers At Other Stores**

Despite acknowledging his burden to demonstrate he and other SMs and ASMs "performed

similar non-exempt job duties during the relevant time period," Plaintiff fails to do so.  (*See* Plf.'s

Br. 11.)  Plaintiff and the opt-ins unequivocally testified that they have no knowledge of the job

duties performed by SMs or ASMs in stores in which they did not work and that numerous factors

affect the actual job duties performed by management from store-to-store.  (Indergit dep. 117-18,

139-40, 184-85, 201, 232-33, 246, 385-86; Johnson dep. 125, 144, 193.)  Plaintiff also repeatedly

affirmed that different SMs and ASMs perform tasks in different ways:

> Q:      (By Mr. Turner)  You don't know what job duties [other Store Managers in
> Plaintiff's own district] performed on a daily basis, correct?
> A:      (By Mr. Indergit)  Well, all stores have the same duty.  It just depends how
> they do it.  I don't know.
> Q:      All stores have the same thing that have to be accomplished?
> A:      Accomplished, yes.
> Q:      But each manager has the discretion to determine how they should be
> accomplished within their store, correct?
> A:      Yes.
> Q:      And that's true for store managers and assistant managers, correct?
> A:      Yes.
> Q:      So each store manager and assistant store manager may run a store in a
> completely different way, correct?
> A:      Yes.

(*Id*. 65-66; *see also id*. 117-18, 185, 354; Rand dep. 102 ("There are so many factors to go into the

daily, day-to-day operation of a store."); Johnson dep. 205 ("No day is the same."); *id*. 204 ("The

only thing that's typical in a Rite Aid store is opening the door.  After that, anything can

happen.").)[17]  Accordingly, Plaintiff cannot show he is similarly situated to all current and former

---

[17] Although not explicitly stated, Plaintiff seems to imply that a standard job description
demonstrates all employees currently holding the positions are similarly situated, regardless of
disparate factual settings.  Such a conclusion is a slippery slope that "would undoubtedly present a
ready opportunity for abuse."  *Anderson v. Cagle's, Inc*., 488 F.3d 945, 953 (11th Cir. 2007)
(citation omitted), *cert. denied*, 128 S. Ct. 2902 (2008).  The U.S. Department of Labor recognizes

Rite Aid SMs and ASMs.  *See Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181

(S.D.N.Y. 2007); *Levinson*, 2003 WL 22533428 at *1-2 (employees claiming misclassification

failed to demonstrate that putative plaintiffs at other sites were "similarly situated" because "they

fail[ed] to support [their] legal conclusion with a factual showing that extends beyond their own

circumstances"); *Prizmic v. Armour, Inc*., 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("A

plaintiff must provide actual evidence of a factual nexus between his situation and those that he

claims are similarly situated rather than mere conclusory allegations.  Absent such a showing, an

employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the

employer's expense.'") (citation omitted).  Indeed, the only record evidence of the actual job duties

performed by SMs and ASMs establishes both that they vary widely by store and that they are

managerial in nature.  (*See generally* Pena Decl., Khan Decl., Blake Decl., Vasquez Decl., Coleman

Decl., Shahzaman Decl., Otuaney Decl., Hazara Decl., Exs. E through L.)

    The record evidence similarly demonstrates that SMs and ASMs do not perform the same

job duties.  Opt-in Johnson testified that when Plaintiff was his SM, he and Plaintiff did not perform

the same job duties and had somewhat different responsibilities and duties.  (*See* Johnson dep. 72-

73, 76-77, 80-81, 117.)  Similarly, Plaintiff's testimony establishes differences in the job duties he

---

that "[t]he exempt or nonexempt status of any particular employee must be determined on the basis
of whether the employee's salary and duties meet the requirements of the regulations."  29 C.F.R. §
541.2.  Indeed, Plaintiff recognizes in his brief that the relevant inquiry is not a uniform job
description, but whether Plaintiff and the proposed collective action members "performed similar
non-exempt job duties during the relevant time period."  (Plf.'s Br. 11.)  *See also Diaz v. Elecs.
Boutique of Am., Inc.*, 2005 WL 2654720, at *2 (W.D.N.Y. Oct. 17, 2005) ("Determining whether
an employee is exempt is extremely individual and fact-intensive, requiring a 'detailed factual
analysis of the time spent performing administrative duties' and 'a careful factual analysis of the
full range of the employee's job duties and responsibilities.'") (quoting *Mike v. Safeco Ins. Co. of
Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (citation omitted)); *Mullins v. City of New York*, 523
F. Supp. 2d 339, 351 (S.D.N.Y. 2007); *Johnson v. Big Lots Stores, Inc*., 561 F. Supp. 2d 567, 579
(E.D. La. 2008) (finding plaintiffs could not rely upon the job description of assistant managers in
claiming they are all similarly situated because it was plaintiffs' contention that it was "their day-to-
day responsibilities, not their job descriptions, that render them misclassified").

performed in contrast to the duties he delegated to his ASMs, which varied according to, among

other factors, the ASM's skill and experience level.  (*See generally* Indergit dep. 127-29, 183-85,

341-44, 390-92.)  It is simply not plausible to conclude that SMs, who bear primary responsibility

for all store operations, and ASMs, who bear primary responsibility in the SM's absence as limited

by the discretion afforded by particular SMs, have the same job duties.[18]  (*See id*. 60; Johnson dep.

68-69, 76-77, 80-81, 101-03, 109-10, 113, 121-25; Pena Decl. ¶¶ 4, 6, 29; Khan Decl. ¶¶ 6, 7(c), 11,

13, 28; Blake Decl. ¶¶ 5, 6(c); Vasquez Decl. ¶¶ 4, 31; Coleman Decl. ¶¶ 5, 8, 36; Shahzaman Decl.

¶¶ 4, 7, 35; Otuaney Decl. ¶¶ 6, 10; Hazara Decl. ¶¶ 6, 10, 15.)

> ### 3.  Application Of The Executive Exemption Establishes There Is No "Unlawful" Policy[19]

This Court recognizes that conditional certification is not proper where a defendant

demonstrates "it will likely succeed at trial in proving that the employees are not entitled under the

FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the

issue pending further discovery and motion practice."[20]  *Amendola*, 558 F. Supp. 2d at 467.

---

[18] Moreover, there is an inherent conflict between SMs and ASMs being in the same class.  In fact, Plaintiff supervised opt-in Johnson.  (Indergit dep. 62-63, 326-27; Johnson dep. 23.)  Thus, to the extent Plaintiff assigned Johnson to perform menial tasks, it was at the direction of Plaintiff and a corresponding inherent conflict of interest exists between the two groups that prevents conditional certification.  *See generally White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) (crewmen could not be part of conditional class in collective action under the FLSA initiated by foreman, as crewmen were not "similarly situated" to foremen with respect to their job duties, and there was inherent conflict between their job duties; foremen directly supervised crewmen, foremen had number of administrative duties associated with planning and execution of field work, and foremen were responsible for maintaining proper number of crew members, and often assumed personal responsibility for crewman's attendance); *Ellerd v. County of Los Angeles*, 2009 WL 982077, at *5 (C.D. Cal. Apr. 9, 2009) (denying conditional certification of a collective action due to the inherent conflict between the plaintiffs and their supervisors, as plaintiffs would have to show that their supervisors violated federal law and defendant's official policies).
[19] That the executive exemption bars Plaintiff Indergit's individual claims based solely upon his own admissions is addressed fully in Defendants' Motion for Partial Summary Judgment, filed concurrently.
[20] In *Amendola*, the court noted that "[a]lthough district courts have held that the merits of a plaintiff's FLSA claim should not be evaluated in determining whether to authorize notice, these

As previously addressed, the decision to classify SMs and some ASMs as exempt does not violate the FLSA.[21]  Numerous courts have held that store managers and assistant managers in retail settings are exempt under the executive exemption (even if they also perform non-managerial work).  *See In re Food Lion, Inc.*, 1998 WL 322682 (4th Cir. Jun. 4, 1998) (per curiam) (holding assistant manager who was in sole charge of store for about one-half of his working hours was exempt even though assistant manager spent some time performing non-exempt duties such as stocking shelves and unloading grocery trucks); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) (non-exempt tasks such as cooking and serving permit and are not inconsistent with simultaneous supervision); *Donovan v. Burger King Corp.*, 672 F.2d 221, 227-28 (1st Cir. 1982); *Masilionis v. Falley's, Inc.*, 904 F. Supp. 1224, 1229-30 (D. Kan. 1995); *Palazzolo-Robinson v. Sharis Mgmt. Corp.*, 68 F. Supp. 2d 1186, 1190 (W.D. Wash. 1999).

Plaintiff admits he was in charge of his store, that his primary duty was management, and that he had authority to hire, fire, promote and discipline employees.  (Indergit dep. 58-59, 73-74, 80-81, 102, 111-12, 126-27, 134-38, 317-18, 323-26, 342-46.)  Opt-in Johnson admits that as an ASM, he was the highest ranking person in the store in the absence of the SM, and the second highest ranking person otherwise.  (Johnson dep. 55-57, 71-72.)  Moreover, Defendants have presented declarations from numerous SMs and ASMs, all of whom work in the same district as Plaintiff.  All admit they are in charge of their stores, spend substantial time performing differing

---

holdings may have derived from jurisprudence discouraging engagement with the merits that was developed in the context of Rule 23 class action certification."  *Id*. at 467 n.9 (internal citations omitted).  The *Amendola* court "scrutinize[d] the merits based on the record developed to date by the parties and to the extent necessary to address this motion for authorization of notice."  *Id*.; *see also Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 230 (S.D.N.Y. 2003) (after finding that the plaintiffs were exempt from the relevant FLSA requirements, the court found that "[h]aving no FLSA claims of their own, plaintiffs are not similarly situated to those non-exempt employees, if any, who potentially have such claims").

[21] The executive exemption and case law interpreting 29 C.F.R. § 541.100 is set forth in detail in the Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment, filed concurrently.

managerial job duties, and perform varied job duties for varied lengths of time. (*See generally* Pena Decl., Khan Decl., Blake Decl., Vasquez Decl., Coleman Decl., Shahzaman Decl., Otuaney Decl., Hazara Decl.) Further, Plaintiff admits that the primary job duty of SMs and ASMs is to oversee the total operations of the store.[22] (*See* Indergit dep. 59, 102, 143, 315; Johnson dep. 76-77, 91-92.)

Moreover, even if the Court were to conclude that Plaintiff spent more of his day performing non-managerial tasks, his admission that he and his salaried ASMs were at all times concurrently supervising employees, and were at all times in charge of the store's overall operations is fatal to his claims. (Indergit dep. 367-72, 403.) The performance of non-managerial/exempt duties concurrently with the performance of managerial/exempt duties will not defeat the exemption if the other requirements of 29 C.F.R. § 541.100 are met. This is determined on a case-by-case basis.[23] 29 C.F.R. § 541.106(a). 29 C.F.R. § 541.106(b) provides examples of the performance of the concurrent performance of non-exempt and exempt duties including that "[a]n assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves." As set forth in more detail in Defendants' Motion for Partial Summary Judgment, to the extent Plaintiff is similarly situated to putative collective action members (which Defendants dispute), they are similarly situated as exempt employees.

---

[22] Plaintiff's reliance on the declarations of Angel Naula and Jose Fermin for the proposition that they performed non-exempt duties is wholly misplaced. Neither declaration alleges such.
[23] Although Plaintiff implies in his brief that the FLSA applies a strict percentage of time spent performing managerial duties to apply the executive exemption, such is not the case. (Plf.'s Br. 8.) The applicable regulations and caselaw interpreting 29 U.S.C. § 213(a) make clear time is one factor to consider, but it is not dispositive. 29 C.F.R. §§ 541.700(c), 541.106(a)-(b). *See also* Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment at 12-14.

**B.**    **Collective Adjudication Of The Applicable Exemptions To Store Managers And Assistant Store Managers Necessarily Involves Individualized Inquiries Making Collective Treatment Unmanageable And Inefficient.**

Even if the Court finds that Plaintiff's assumptions and leaps of logic establish a violation of the FLSA with respect to him (which they do not) and that he and the 17,000 putative collective action members are similarly situated (which they are not), collective adjudication should be denied as both unmanageable and inefficient.  "As a matter of sound case management, a court should, before offering to assist plaintiff in locating additional plaintiffs, make a preliminary inquiry as to whether a manageable class exists."  *D'Anna*, 903 F. Supp. at 894 (citation omitted).  *See also Morisky*, 111 F. Supp. 2d at 499 (denying certification where litigating as a collective action "would be anything but efficient").  Although the collective action is designed in part to lower individual costs by pooling resources, the Supreme Court has held that an equally important goal is the benefit to the judicial system from the "efficient resolution in one proceeding of common issues of law and fact."  *Sperling*, 493 U.S. at 170.  This purpose of achieving efficiency in the judicial system is not served by grouping "a lot of individual people with specific grievances" together, as it quickly becomes "a monster that no one can deal with."[24]  *EEOC v. MCI Int'l, Inc.*, 829 F. Supp. 1438, 1445-46 (D.N.J. 1993) (denying collective action status) (citation omitted); *see also Rite Aid*, 333 F. Supp. 2d at 1275 ("the court is not satisfied that conditionally certifying a nationwide collective action, or even a regional collective action, will partake of the economy of scale envisioned by the FLSA collective action procedure").

---

[24] In *Ray v. Motel 6 Operating LP*, the court rejected as manageable a request for notice under Section 216(b) to 1,000-1,500 present and former assistant motel managers (approximately 8% of the number of employees Plaintiff seeks to include in his proposed class in this case).  *See* 1996 WL 938231, at *2, 5 (D. Minn. Mar. 18, 1996) (significant manageability problems inherent in a trial of 1000 plus individuals demonstrate that it is inappropriate to pursue this case as a class action [under Section 216(b)]").

Both Courts and the DOL recognize that determining exempt status under the executive exemption requires an analysis of *each* individual's daily job duties, the time spent performing those duties, and whether the job duties were performed under the administrative, executive and/or combination exemption tests of the FLSA. *See* 29 C.F.R. § 541.700(a). "[T]he determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions."[25] *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 689 (6th Cir. 2001); *see also Morisky*, 111 F. Supp. 2d at 498.

The Court will be required to make the following determinations with respect to *each and every* SM and ASM who opts in:

- the time spent, reason for, and importance of performing each job duty actually performed by each person on a daily basis in each store s/he worked (29 C.F.R. § 541.700(a)-(b));
- whether each SM and ASM was concurrently performing managerial duties while performing non-managerial duties (29 C.F.R. § 541.106 (a)-(b));
- whether the job duties involved the performance of work directly related to the management or general business operations of Rite Aid or Rite Aid's customers (29 C.F.R. § 541.201);
- each SM's and ASM's authority to hire or fire, or whose suggestions as to hiring, firing, advancement, promotion or any other change of status recommendations are given particular weight (29 C.F.R. § 541.105);
- whether and to what extent each SM or ASM exercised discretion and independent judgment with respect to "matters of significance" (29 C.F.R. § 541.202(a));
- to what extent each SM or ASM performed a combination of different types of exempt duties to qualify for the combination exemption (29 C.F.R. § 541.708); and
- the total number of overtime hours worked by each SM and ASM during the relevant period.

Even if these inquiries could be made on a collective basis, which they cannot, due process requires that Defendants be entitled to assert individual factual and legal defenses for each SM's or ASM's claim, requiring protracted mini-trials over an extended period of time.[26] Similarly, with

---

[25] The detailed analysis of Plaintiff's individual exemption set forth in Defendants' concurrently-filed Motion for Partial Summary Judgment is indicative of the numerous inquires that would have to be made by the fact-finder potentially thousands of times, if this case were to proceed collectively.

[26] A review of only a few individual defenses to Plaintiff's claims alone (setting aside those of the current opt-ins and potentially thousands of other opt-ins) demonstrates the unmanageability of proceeding as a collective action. For example, Defendants have presented a declaration from a

respect to the job duties Plaintiff actually performed, Defendants must be permitted to present evidence that the task performed was related to a managerial function and/or was performed concurrently with a managerial function.[27]  The lack of common proof inevitably means that collective action members' claims would be won or lost based on the individualized and anecdotal recollections of individual employees.  Courts have refused to certify misclassification cases based on job duties actually performed because they require highly individualized analyses that are neither efficient nor manageable.  *See Myers*, 2007 WL 2126264 at *1 (finding plaintiff's motion for conditional certification suffered from a "fatal flaw that further discovery cannot cure: because liability as to each putative plaintiff depends upon whether that plaintiff was correctly classified as exempt pursuant to [a corporate policy], any collective action would require the Court to make fact-intensive inquiry into each potential plaintiff's employment status"); *Dean*, 2001 WL 35961086 at *2 (denying conditional certification because to do so "would be extremely difficult, at best…. Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'") (internal citations omitted); *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100, at *3-4 (D.N.J. Dec. 19, 2007) (same); *see*

---

wholly disinterested hourly employee that, contrary to Plaintiff's assertion that he spent 90% of his time doing menial labor on the store floor, he actually spent 50% of his working hours in his office. (*See* Declaration of Silvia Fuentes, attached as Ex. N, ¶ 8.)  Moreover, although Plaintiff testified that he worked from before his store opened at 8:00 a.m. until it closed at 9:00 p.m. seven days a week, opt-in Johnson testified that, while he was Plaintiff's ASM, he opened the store most days and Plaintiff arrived at 10:00 a.m. "like clockwork."  (Johnson dep. 46, 62-63; Indergit dep. 235.)

[27] For example, Indergit alleges that he would spend time running the cash register.  (Indergit dep. 370.)  Even if true, the many questions that follow include whether he did so for a managerial purpose, such as training an employee, filling in for an unexpectedly absent employee, or placing himself in a position to observe an employee or a suspected shoplifter, and whether he concurrently supervised and monitored employees while doing so.

*also Trinh*, 2008 WL 1860161 at *5 (the denial of conditional certification due to the absence of common evidence is not "a determination on the merits").[28]

### C. Plaintiff's Evidence Does Not Support Notice In Bronx, New York, Much Less Nationwide.

Even if the Court concluded that notice should be issued, the breadth and scope of the notice Plaintiff proposes is not supported by the record. It is Plaintiff's burden to produce admissible evidence to support the geographic scope of the proposed notice. *See Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003). Plaintiff admits that he has no knowledge regarding the tasks performed by SMs and ASMs at other stores. (*See* Indergit dep. 117-18, 139-40, 184-85, 201, 232-33, 246, 385-86.) Courts routinely limit the geographic scope of a plaintiff's request for notice where the plaintiff fails to show that employees in other geographic locations are similarly situated to the plaintiff. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (W.D. Mich. 2006) (limiting notice to region in which most plaintiffs worked based upon concerns that the plaintiffs would be unable to adequately represent the interests of putative class members if notice were granted on a national level).[29]

---

[28] *See also Aguirre v. SBC Commc'ns, Inc.*, 2006 WL 964554, at *7 (S.D. Tex. Apr. 11, 2006); *Rite Aid*, 333 F. Supp. 2d at 1272; *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, at *10 (C.D. Cal. March 1, 2004); *Mike*, 274 F. Supp. 2d at 220; *Clausman v. Nortel Networks, Inc.*, 2003 WL 21314065, at *10 (S.D. Ind. May 1, 2003); *Perry v. U.S. Bank*, 2001 WL 34920473, at *7 (N.D. Cal. Oct. 17, 2001).

[29] *See also Camper*, 200 F.R.D. at 520-21 (notice limited to one facility from which evidence of alleged violations was submitted); *Harris v. Healthcare Servs. Group. Inc.*, 2007 WL 222141, at *5 (E.D. Pa. July 31, 2007) (notice limited to the employees working at defendant's facility where plaintiff worked); *Bernard*, 231 F. Supp. 2d at 436-37 (finding nationwide notice inappropriate and limiting notice to defendant's two locations in Virginia, which were identified in the declarations provided by plaintiffs); *McQuay v. AIG, Inc.*, 2002 WL 31475212, at *3 (E.D. Ark. Oct. 25, 2002) (finding proposed geographic size of 29 states in 54 separate locations unreasonable and significantly limiting scope of notice); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (denying certification for employees in restaurants in six different states because the employees were subject to different working conditions).

In *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *5 (S.D.N.Y. Apr. 26, 2007), this Court found that there existed a "total dearth of factual support" warranting nationwide notice of the collective action. In support of the motion, plaintiff submitted his declaration, as well as job descriptions and postings from defendant's website. *Id.* Given the plaintiff's failure to present evidence of similarly situated employees, the Court limited the geographic scope of the notice to employees in the store in which the plaintiff worked. *Id.* at *8-9.

Here, Plaintiff worked at only one store in the Bronx during his employment with Rite Aid. Plaintiff admits he has no knowledge as to the job duties of SMs and ASMs at other stores. (*See* Indergit dep. 117-18, 139-40, 184-85, 201, 232-33, 246, 385-86.) Additionally, the two opt-ins worked only at urban stores in the Bronx and in the same district in which Plaintiff worked. To the extent the Court conditionally certifies any collective action, it should be limited to the stores where Plaintiff worked, or, at most, stores in the District where Plaintiff and the opt-ins worked.[30]

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Conditional Certification. Alternatively, if the Court is inclined to grant conditional certification and grant notice, Defendants request that the notice be appropriately limited to Store Managers in the store in which Plaintiff worked or, alternatively, to Store Managers employed only at stores in the district in which Plaintiff worked in Bronx, New York.

Respectfully submitted, this the 8th day of June, 2009.

s/ Daniel E. Turner
Daniel E. Turner                              Patrick G. Brady, Esq.
(Admitted *Pro Hac Vice*)                     Bar No. PB1114
danturner@asherafuse.com                      pbrady@gibbonslaw.com
**ASHE, RAFUSE & HILL LLP**                   **EPSTEIN, BECKER & GREEN P.C.**
1355 Peachtree Street, N.E., Suite 500        Two Gateway Center, 12th Floor

---

[30] In its May 14, 2009 Order, the Court permitted the parties to separately address the contents of and issues relating to the notice only if this matter is conditionally certified.

Atlanta, Georgia 30309-3232          Newark, New Jersey 07102
Telephone: (404) 253-6000            Telephone: (973) 642-1900
Facsimile: (404) 253-6060            Facsimile: (973) 639-8556

*Attorneys for Defendants Rite Aid Corporation
and Rite Aid of New York, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YATRAM INDERGIT, on behalf of himself
and others similarly situated,

              Plaintiff,

              vs.

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and FRANK
OFFOR as Aider & Abettor,

              Defendants.

**08 Civ. 9361 (PGG)**
**ECF Case**

**AFFIRMATION OF SERVICE**

      I, Daniel E. Turner, Esq., declare under penalty of perjury that I have served a copy of the attached **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION** upon counsel for Plaintiff whose addresses are:

Robert J. Valli, Jr., Esq.
VALLI, KANE & VAGNINI, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530

Keith A. Raven, Esq.
RAVEN & KOLBE, LLP
126 East 56th Street, Suite 202
New York, New York 10022

by electronic and first-class U.S. mail.

Dated: Atlanta, Georgia
       June 8, 2009

s/ Daniel E. Turner
Daniel E. Turner
danturner@asherafuse.com
**ASHE, RAFUSE & HILL LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060
*Attorney for Defendants Rite Aid Corporation*
*and Rite Aid of New York, Inc.*

1005-0039.497