UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

YATRAM INDERGIT, on behalf of himself
and all others similarly situated,

                       Plaintiff,                  08 CV 9361 (PGG)

    v.

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and FRANCIS
OFFOR as Aider & Abettor,
                       Defendants.
-----------------------------------------------------------------


### MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION


Robert J. Valli
Valli Kane & Vagnini, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180

# Table of Contents

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

**I. PRELIMINARY STATEMENT** ............................................................................. 1

**II. FACTS** ...................................................................................................................... 2

   *A. Rite Aid requires that every SM, CM and AM perform tasks in a similar manner.* ........... 2

   *B. Every Rite Aid Manager performs similar tasks* ................................................................ 3

   *C. Managing this class action and determining damages of each similarly situated Rite Aid employee is a simple process* ...................................................................................................... 4

**III. ARGUMENT** ......................................................................................................... 5

   *A. Rite Aid Managers are similarly situated to one another as they are required to perform the same duties, as evidenced by Rite Aid's own corporate memos and the testimony of Rite Aid employees.* ................................................................................................................................. 6

   *B. A National policy exists which requires exempt Rite Aid Store management to perform non-managerial tasks as a majority of their duties.* .................................................................. 10

   *C. A National class of Rite Aid managerial employees would be manageable utilizing the processes available to the Court and litigants.* ....................................................................... 12

   *D. Plaintiff's claims are likely to succeed at trial* .................................................................. 13

   *E. Defendants' arguments are more suited for a decertification motion.* ............................. 15

**IV. CONCLUSION** .................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Amendola v. Bristol-Myers Squibb Co.,
 558 F. Supp. 2d 459 (SDNY 2008) .................................................................................... 14

Chowdhury v. Duane Reade, Inc.,
 2007 U.S. Dist. LEXIS 73853 (SDNY 2007) ............................................................... 11, 14

Cuzco v. Orion Builders, Inc.
 477 F.Supp.2d 628 (S.D.N.Y. 2007). ..................................................................................... 5

Damassia v. Duane Reade, Inc.,
 2006 U.S. Dist. LEXIS 73090 (SDNY 2006) ................................................... 8, 11, 14, 15

Evans v. Lowe's Home Ctrs., Inc.,
 No. 03 Civ. 438, 2006 U.S. Dist. LEXIS 32104 (M.D. Pa. May 18, 2006) .............................. 12

Francis v. A&E Stores, Inc.,
 2008 U.S. Dist. LEXIS 83369 (SDNY 2008) ................................................................ 7, 14

Frederick v. Dreiser Loop Supermarket Corp.,
 2008 U.S. Dist. LEXIS 86138 (SDNY 2008) ....................................................................... 7

Hallissey v. Am. Online, Inc.,
 No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387 (SDNY 2008) ......................... 7, 14

Hoffmann-La Roche v. Sperling,
 493 U.S. 165 (1989) (citing Fed. Rule Civ. Proc. 83.) ........................................................... 5

Holt v. Rite Aid,
 CV-03-A-748-N, Comp. (MDAL 2004) (Attached to Vagnini Aff. as Exhibit L) ..................... 9

Jackson v. New York Telephone Co.,
 163 F.R.D. 429 (S.D.N.Y. 1995) .......................................................................................... 11

Morden v. T-Mobile United States, Inc.,
 2006 U.S. Dist. LEXIS 68696, 05 Civ. 2112 (RSM), (W.D. Wash. Sept. 12, 2006) ............... 15

Moss v. Crawford & Co.,
 201 F.R.D. 398 (W.D. Pa. 2000) .......................................................................................... 12

Prizmic v. Armour, Inc.,
 2006 U.S. Dist. LEXIS 42627, 05 Civ. 2503 (DLI) (MDG), (E.D.N.Y. June 12, 2006) .......... 15

Sexton v. Franklin First Fin., Ltd.,
   2009 U.S. Dist. LEXIS 50526 (EDNY Jun 16, 2009) .............................................................. 12

Sobczak v. AWL Indus.,
   540 F. Supp. 2d 354, 364 (EDNY 2007) ................................................................................ 12

Tierno v. Rite Aid,
   No. 05-CV-02520; Order Granting Motion for Class Certification (ND Ca. August 31, 2006)
   (Attached to Vagnini Aff. as Exhibit M) ................................................................................ 10

Torres v. Gristede's Operating Corp.,
   2006 U.S. Dist. LEXIS 74039; 14 Wage & Hour Cas. 2d (BNA) 278 (SDNY 2006) ....... 12, 14

Young v. Cooper Cameron Corp.,
   229 F.R.D. 50, 54 (SDNY 2005) .............................................................................................. 8

**Statutes**

29 U.S.C. § 216(b) ..................................................................................................................... 1, 5, 7

Rule 23 ............................................................................................................................................ 5, 7

## I. PRELIMINARY STATEMENT

Plaintiff, Yatram Indergit, ("Indergit" or "Plainitff") on behalf of himself and all others similarly situated,[1] pursuant to 29 U.S.C. § 216(b), submits this Reply Memorandum of Law in response to Defendants' Opposition to Indergit's motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b).

Defendants' argue that the motion for Certification should be denied for three reasons: (1) that Plaintiff is not similarly situated to the other mangers or there is no uniform "unlawful" policy; (2) that Plaintiff has no knowledge of the duties of other managers in other stores; and (3) proceeding as a Class is unmanageable due to the necessity of individualized inquires.

After reviewing the produced documents, the declarations of various Store Managers ("SM"), Co-Managers ("CM") and Assistant Managers ("AM") (collectively, "Managers") and the testimony from numerous depositions, the evidence supports that the claims that (1) Plaintiff is similarly situated to the other managers and there is a uniform policy labeling managers as exempt despite the hours and type of work they are actually doing, (2) Plaintiff has knowledge of other managers doing their jobs and is therefore knowledgeable as to the duties they perform and moreover he is aware that the duties set forth in the job description are provided to all managers and (3) that despite manageability not being a timely question at this stage of the proceeding, the case at bar is manageable and does not require individualized inquiries as Rite Aid's own systems allow for readily ascertainable calculations of hours worked.

---

[1] Defendants state in their Memorandum that Mr. Rand, an opt-in, does not have a claim under the FLSA. Whether this is true or not, something which is not properly determined during a certification motion, his testimony is certainly important for establishing that he experienced similar if not identical treatment while employed by Rite Aid in a "managerial" capacity.

1

Defendants three prongs are a smoke screen to distract this Court from the actual burden Plaintiff must meet, which is whether he is similarly situated to other managers and whether all of these managers were improperly classified as exempt from overtime. There is substantial evidence that the policies which force "Managers" to perform non-exempt duties for a majority of their time at work is a national policy, and not the individualized circumstance that Defendants would have the Court believe.[2] Defendants' efforts to defend against certification have established nothing more than minor variances in the time spent by these employees on various tasks. Accordingly, Defendants' arguments fail.

## II. FACTS

### A. Rite Aid requires that every SM, CM and AM perform tasks in a similar manner.

Rite Aid requires every SM, CM, and AM to perform specific tasks in certain ways as delineated by the Rite Aid Corporation. Virtually every aspect of a manager's employment is scripted by Rite Aid Corporate. For example, Rite Aid specifically tells every manager how to walk around the store every morning and what to check before opening.[3] Additionally, Rite Aid delineates how to clean the store. Thus, Rite Aid does not even permit managers the autonomy to determine how the store should be swept and mopped. This is but a small example of the control that Rite Aid yields over each store and its purported "management."

Similarly, each Rite Aid store receives deliveries of goods/products to the store. These products must be unloaded from trucks, separated into appropriate areas and placed onto shelves.

---

[2] In addition to the opt-ins previously filed with the Court, see Exhibit O, New Jersey Store Manager opt-ins. Plaintiff will seek leave of this Court to amend the Complaint to include New Jersey State Law allegations for these individuals.

[3] See Certification Motion, Exhibits J & K.

2

Items must be counted, priced, and expiration dates must be checked. Each store has cash registers which must be operated, customers who need to be assisted, photo labs that need to be attended to and money orders that have to be issued. It is true that these tasks may be performed more at one store than another, but it is clear that each of these tasks take place at virtually every store in every location throughout the nation and that nearly all of a manager's time and energy is used to perform such tasks. There are handbooks, memos, and SYSM messages sent to management delineating how Rite Aid Corporate wants the stores run.

### *B. Every Rite Aid Manager performs similar tasks*

Rite Aid argues that every manager is different and that each individual can handle the problems that arise in a different way. This is true. It is not true, however, that simply because one manager chooses to handle the problems they encounter in a different fashion than another that they are automatically considered dissimilar.

Further, each SM, CM and AM that was deposed stated or affirmed that they perform the same type of duties. The following are non-exempt duties which consumed a majority of these "managers'" time:

    A. "Plan-O-Grams" are provided by Rite Aid and dictate exactly how the store is to be organized. Through "Plan-O-Grams" Managers are instructed as what goods are to be displayed and how and where those goods are to be displayed;

    B. Managers "pack out" by taking recently delivered merchandise from boxes and placing the items on shelves throughout the store;

    C. Each store has a photo-lab which regularly requires managerial support for customers, whether this involves a one-hour lab or a digital printer;

    D. Managers operate cash-registers throughout the day;

    E. Managers count the items in the store using a scanner;

3

    F.  Managers help customers with questions throughout the store;

    G.  Managers fill out daily tour sheets which require the manager to fill out a "checklist" that is created and disseminated by Rite Aid to all Rite Aid brand stores;

    H.  Managers attend conference calls held by their District Managers in which District Managers provide the direction for each store thereby removing all discretion and independent judgment from the store level management; and,

    I.  Each manager is instructed on a daily basis via email by the District Manager as to how the store should operate.

Vagnini Aff., ¶ 5.

There is no discrepancy as to whether they were required to do these jobs, but only whether it might be different for one manager stocking shelves than another because one may specifically assign him/herself an aisle while another might switch which aisle he works on any given day. Nevertheless, they are still stocking shelves, filling out checklists, operating cash registers and putting together Plan-O-Grams provided by the real management: Rite Aid Corporate.

### C. Managing this class action and determining damages of each similarly situated Rite Aid employee is a simple process

Defendants' claim that determining which exempt Managers were required to work in excess of forty hours a week would be impossible. This argument fails based upon the mere fact that FLSA class actions do exist and damages are calculated. Factually, Defendants provide one method of making this determination in their opposition. "Individual store-level labor budgets are stated in dollar amounts and are established as a percentage of each store's expected merchandise sales volume each week based on the store's performance in the prior year." Def. Memo, p. 5. Thus, it would be somewhat simple to determine, based on the number of hours

4

required to properly run the store as well as the dollar amount actually allotted and/or the hours used with that dollar amount, how many hours a manager would have had to exert in excess of his managerial duties in order to ensure the store's proper operation. Moreover, Defendants uniformly require every SM, CM and AM to work a minimum of fifty (50) hours per week.

### III. ARGUMENT

It is important to remember in analyzing the claims before the Court that the standard Plaintiff's must meet for conditional certification is deliberately set significantly low at this stage of the proceeding. Plaintiffs need only show that there is a class of similarly situated people with management titles who worked more than 40 hours a week and spent a substantial portion of those hours handling non-managerial job responsibilities. Cuzco v. Orion Builders, Inc. 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007).

It is imperative to point out that the Collective Action was not created in the same fashion as a Rule 23 Class Action. Rather, and in contradiction to the process delineated by Defendants, "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170 (1989) (citing Fed. Rule Civ. Proc. 83.) Thus, upon conditional certification, notice would go out to all of those similarly situated in order to keep all of the potential cases organized under one roof.

The purpose of this notice, with its schedule for notification and reply by potential plaintiffs, is to avoid "a multiplicity of duplicative suits and setting cutoff dates to expedite

disposition of the action." Id. at 171. It is this purpose that is essential to the Court led process and which justifies the reduced standard for conditional certification.

When the facts and arguments are applied to the recognized legal standards of the Second Circuit, Conditional Certification is justified and required for a national class in the current case. The evidence submitted by the parties' points to a uniformity of duties across the country, and not just in Plaintiff's district or region.[4] Defendants' opposition improperly focused on the testimony of a few individuals, rather than on the policies that the corporation enacts and forces on its individual stores. Finally, a clear and cognizable means of organizing and analyzing each individual opt-in's claims is available and easily utilized in situations such as this.

### A. *Rite Aid Managers are similarly situated to one another as they are required to perform the same duties, as evidenced by Rite Aid's own corporate memos and the testimony of Rite Aid employees.*

Rite Aid Managers, regardless of location, perform the same or similar duties. Rite Aid corporate documents and the deposition testimony of various managers establish that all management personnel perform similar duties and are required to do so by Rite Aid. See Vagnini Aff., ¶¶ 15-17. Defendants' statements relating to whether there is a similarly situated class are based almost entirely on attorney created declarations and a few select quotes from the individuals deposed and not on the numerous corporate documents which they themselves supplied.[5] Notice is proper in a collective action when it is not or cannot be disputed by the defendant that a policy is applied on a national scale. Francis v. A&E Stores, Inc., 2008 U.S.

---

[4] See, e.g., Certification Motion, Exhibit L; Store Management Guide being disseminated to every store in the country.

[5] See, e.g., Defendant's Memo, pp. 6-7. Defendants cite to Plaintiff and Opt-ins' depositions for conclusions as to Rite Aid national policy rather than their own documents.

6

Dist. LEXIS 83369, *13 (SDNY 2008) (holding that national certification was justified because the plaintiff alleged a violation "and nothing in the testimony of the vice-president of store operations suggested that the practice was limited to certain stores or districts." Id.) Further, even where "the proposed recipients of notice differ in job responsibilities, hours worked, and other details of employment, these differences do not undermine Plaintiffs' showing that they share a common claim that Defendants violated the FLSA." Frederick v. Dreiser Loop Supermarket Corp., 2008 U.S. Dist. LEXIS 86138, *2 (SDNY 2008) (permitting notice to *all* non-managerial employees, despite differing job duties, titles and that they were employed by seven separate corporate entities owned and operated by the same corporation) (citing Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 U.S. Dist. LEXIS 18387, at *5 (SDNY 2008) (granting national certification for assistant directors who were classified as exempt from overtime violations, despite no personal knowledge of their duties aside from that provided by defendant's council))[6]. "[T]he 'similarly situated' requirement of Section 216(b) is considerably less stringent than the requirement of Rule 23" and does not require that certification be denied even if "employees worked a variety of different jobs in a number of different departments at different locations." Hallissey v. Am. Online, Inc., 2008 U.S. Dist. LEXIS 18387, *5-6 (SDNY 2008). If this Court were to adopt the "amount of time spent" argument proffered by defendants

---

[6] Similar to Hallissey in the instant case while Rite Aid attempts to shield itself behind a variety of corporate entities such as Rite Aid of NY, Rite Aid Drug Palace, Eckerd Corporation, Genovese Drugstores Inc. and Maxi Drug, Inc. (See Vagnini Aff., ¶ 28), they are in sum and substance owned and operated by the same corporation, Rite Aid Corporation. Rite Aid Corporation is the only Corporation that actually disseminates policies and those are disseminated nationally to all of the stores, regardless of which company they utilize to run their payroll through.

as evidence that the Managers were not similarly situated, then no wage and hour action could ever be certified.

In a case similar to the one at bar, night assistant managers for Duane Reade brought a claim for overtime pay after they had been uniformly designated as exempt. Damassia v. Duane Reade, Inc., 2006 U.S. Dist. LEXIS 73090 (SDNY 2006). In determining that notice should be issued company wide, the Court pointed to the contradictions in the defendant's company wide policies and their claim that they engage in different duties as being counter-intuitive. Id. at *18. Duane Reade argued that because "plaintiffs' deposition testimony prove[d] wide variance in plaintiffs' abilities and competence" there was not a similarly situated class. Id. at *20. The Court stated in response that these "alleged differences among plaintiffs and among Duane Reade stores ... have little if anything to do with whether plaintiffs are similarly situated *'with respect to their allegations that the law has been violated.'*" Id. at *19 (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (SDNY 2005)). Further, the Court stated that these allegations "do not undermine plaintiffs' claim that they are similarly situated with respect to their allegation that defendant's company-wide compensation policies violate FLSA's overtime requirements." Id. at *20.

Similarly, Defendants' managers regularly performed the same non-managerial duties, albeit in varying amounts. Those duties which may be submitted as managerial, such as scheduling and "financial reports," are not even performed by SM's, CM's or AM's, but rather these schedules and reports are provided through various programs and the Rite Aid intranet that produces the documents for "review" which in essence requires no input or reaction aside from that delineated by a District Manager. Vagnini Aff., ¶ 16. Rite Aid has in fact created a science of babysitting management by utilizing District Managers, SYSMs and their intranet. The in

8

store merchandise displays are predetermined and product ordering is automated through the stores computer. Id. Occasionally, associates and/or managers scan the items manually to determine product loss, other than through sales. Id. at ¶ 15. Similarly, payroll is accomplished with a simple click of the mouse. Other than these duties, which many witnesses state are completed within minutes of a day, managers are required to stock shelves, operate cash registers, answer customer questions, unload trucks, and perform other non-exempt tasks. Id. These tasks are identical and certainly similar throughout all Rite Aid's stores.

This commonality of the manager position is evidenced by the national managerial handbook created by Rite Aid's corporate office and distributed to every employee. Another sign of the managers being similarly situated are the other class actions brought in other parts of the United States, whether successful or not, they certainly show that others are similarly situated to Plaintiffs.

In Alabama, Sandra Holt brought a claim against Rite Aid as a store manager, alleging that she and the other named plaintiffs performed about five to ten hours a week of managerial duties and worked twenty to fifty additional hours each week, performing such duties as "running the registers, stocking merchandise, unloading trucks, sales associate, and janitorial duties." Holt v. Rite Aid, CV-03-A-748-N, Comp. ¶ 18 (MDAL 2004) (Attached to Vagnini Aff. as Exhibit L).

In Tierno v. Rite Aid, a case brought in California by Prag Tierno, that Court found that Mr. Tierno had presented evidence sufficient to show that "Rite Aid exercises a great deal of centralized control over its stores ... with respect to just about every aspect of store operations; ... this culture of centralized control and standardization of stores extends to the position of Store Manager; ... Store Managers perform essentially the same tasks at each store; ... Rite Aid fosters

9

homogeneity in the Store Manager's job duties, and the manner in which they are performed, by utilizing a system of close supervision by District Managers; ... [and] that the Store Manager job does not vary significantly from store to store." Tierno v. Rite Aid, No. 05-CV-02520; Order Granting Motion for Class Certification, pp. 8-10 (ND Ca. August 31, 2006) (Attached to Vagnini Aff. as Exhibit M).

Although, these two cases are no longer being pursued, the factual allegations are certainly relevant. The other case which pleads nearly identical facts was brought by Angel Naula and Jose Fermin which is currently pending in this Court before Judge Kotle. (Attached to Vagnini Aff. as Exhibit N).

Each case alleges similar if not identical facts and, aside from the few corporate documents that Rite Aid was willing to produce during the initial stage of discovery, provide additional support to Plaintiff's allegations relating to national uniformity of duties for Rite Aid management.

### B. *A National policy exists which requires exempt Rite Aid Store management to perform non-managerial tasks as a majority of their duties.*

Rite Aid's national policies are delineated in the corporate documents which were sent to the stores on a daily, weekly, monthly and yearly basis. These documents include the labor policies which were determined by Rite Aid and forced on the individual stores including policies that required management to work in excess of forty hours a week performing almost entirely menial and non-exempt duties. Vagnini Aff., ¶ 24.

At this stage in the certification process "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.

10

1995). This, however, does not require that plaintiffs "definitively prove that they were victims of a common illegal policy. At most, they need only make a modest factual showing in support of their allegation that they were victims of such a policy." Duane Reade, Inc., 2006 U.S. Dist. LEXIS 73090, *15 n. 9.

In the year following initial certification in the Duane Reade, Inc. case, additional groups of managers joined the action. These new plaintiffs moved for certification of a much larger class consisting of daytime, evening and nighttime managers. Chowdhury v. Duane Reade, Inc., 2007 U.S. Dist. LEXIS 73853, *2-3 (SDNY 2007). Duane Reade opposed nationwide authorization of this larger class and again the Court certified the class. Id. at *14-15. Despite the various titles, the Court recognized the common policy of "defendants, relying without basis on FLSA's "bona fide executive" exemption ... subjected [assistant nighttime managers] and other assistant daytime and evening managers to a company-wide policy depriving them of overtime compensation in violation of 29 U.S.C. § 207. Id. at *12. In certifying the class the Court pointed to the futility of defendant's argument, finding that "Defendants cannot defeat a §216(b) motion simply by pointing out all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead, defendants must show that plaintiffs are not similarly situated *in ways relevant* to their entitlement to overtime compensation under FLSA, which defendants have not done." Id. at *15-16.

The common policy at issue here was the automatic categorization of SM's, CM's, AM's and similarly titled individuals as exempt from overtime laws. It is true that union members were subject to a different set of rules, but those managerial employees who were lucky enough to be compensated for overtime would not be class members as they were not subjected to the common policy of which Plaintiff complained. The other common policy at issue is the Rite Aid

11

policy which regulates store labor budgets and which provided management with fewer hours than necessary to operate their stores, necessitating additional input from management which required them to perform almost entirely those duties which should have been given to hourly and/or non-exempt employees. Vagnini Aff., ¶ 24. These common policies, and not the prohibition of overtime to non-exempt employees, are what Plaintiff complains of and are the basis for the class which this motion seeks to conditionally certify.

### C. *A National class of Rite Aid managerial employees would be manageable utilizing the processes available to the Court and litigants.*

Where a class is to be certified and a defendant argues that individual allegations may predominate, "the Court may nonetheless continue with the collective action if manageable, or decertify the class at a later stage, or bifurcate the trial, as necessary." Sexton v. Franklin First Fin., Ltd., 2009 U.S. Dist. LEXIS 50526, *31 (EDNY Jun 16, 2009); see also Sobczak v. AWL Indus., 540 F. Supp. 2d 354, 364 (EDNY 2007). At this stage, Defendants argue that it would be unmanageable to maintain a class as large and complicated as the one proposed by Plaintiff. They do so without citing to Second Circuit precedent and in complete disregard for the facts of this case which make the argument baseless. At present "[M]aintainability is not an issue at this stage. The threshold is low and plaintiffs have met it. If the case becomes unmanageable, the Court has the option of decertifying the class at a later date." Id. Any defenses, such as executive exemption, do "not implicate individual plaintiffs because, here, 'the standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct.'" Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039; 14 Wage & Hour Cas. 2d (BNA) 278, *35 (SDNY 2006) (quoting Evans v. Lowe's Home Ctrs., Inc., No. 03 Civ. 438, 2006 U.S. Dist. LEXIS 32104, at *14 (M.D. Pa. May 18, 2006)) (citing Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000) (finding that individualized

defenses do not predetermine whether a conditional certification should be issued or whether the class can be maintained)). In the instant case, the Torres standard has been met. Rite Aid's policy was to classify SM's, CM's and AM's as exempt, their practice was to force them to work overtime performing non-managerial duties and their conduct was to apply this uniformly to all similarly titled managers throughout each and every one of their stores. Vagnini Aff., ¶¶ 15-24.

Here, despite Defendants' assertions that any class would be entirely unmanageable due to the "individual nature" of the claims, they have ignored their own systems of finding information about all of their stores. Each store is given a labor budget that delineates exactly how much assistance management will have in performing their duties. These numbers are assigned by corporate and are a percentage of the stores' sales. Further, hours are assigned by a computer system that requires very little additional input from management, making it quite simple for each store and potential plaintiff to determine how many hours it would be necessary for management to be performing non-managerial duties. Rather than basing their argument on facts or a reasonable assertion as to the Court's and counsel's ability to handle a large class, they use scare tactics, pointing to the large number of potential class members who would have the opportunity to join the suit. Realistically, the fear they attempt to elicit as to the "unmanageability" of such an action stems directly from their client as they now face the possibility that each and every manager who was affected by their common policy may have the opportunity to pursue those claims without the restrictions associated with bringing an individual action or the retaliation associated with individual claims.

### D. *Plaintiff's claims are likely to succeed at trial*

Defendants argue that this case should not be certified under their assumption that it is unlikely to succeed at trial. The basis for this argument is a case which is entirely dissimilar

13

from both the majority of caselaw in the Second Circuit and the case at bar. Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (SDNY 2008) stands for the proposition that where a claim is brought under § 216(b) if it can be established that there is absolutely no claim for the proposed class at this stage then certification is not warranted. In that holding the Court found that *all* such employees which the suit sought to certify as a class were subject to the administrative exemption as they were not involved in production or retail sales and maintained discretion in how they performed their jobs, as established by the record. Id. at 476-77. From a thorough reading of the relevant caselaw, cases similar to the one at bar are not decided on mere assertions of entitlement, but proceed through certification and towards trial. Here, the application of this standard does not warrant certification being denied at all. *See e.g.*, Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039; 14 Wage & Hour Cas. 2d (BNA) 278, *35 (SDNY 2006); Chowdhury v. Duane Reade, Inc., 2007 U.S. Dist. LEXIS 73853, *2-3 (SDNY 2007); Damassia v. Duane Reade, Inc., 2006 U.S. Dist. LEXIS 73090 (SDNY 2006); Hallissey v. Am. Online, Inc., 2008 U.S. Dist. LEXIS 18387, at *5 (SDNY 2008); Francis v. A&E Stores, Inc., 2008 U.S. Dist. LEXIS 83369, *13 (SDNY 2008).

Contrary to the snippets of testimony which Defendants cite to, Mr. Indergit establishes in his affidavit and throughout his testimony that he has almost no managerial duties. This is evident throughout the Complaint, his deposition and Affidavit, yet Defendants believe that the singular quotes should establish their likelihood of success on the merits. While this argument can in different circumstances be convincing, here it is nothing more than a premature request for a decision on the merits and should be disregarded.

### *E. Defendants' arguments are more suited for a decertification motion.*

Defendants arguments, do not merit a rejection of Plaintiff's motion for conditional certification as Plaintiff has clearly met the minimal showing required. Defendants' arguments are more aptly and appropriately the subject of a decertification motion. "After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record -- and under a more stringent standard -- whether the additional plaintiffs are in fact similarly situated." Damassia, 2006 U.S. Dist. LEXIS 73090, *11 (citing (Morden v. T-Mobile United States, Inc., 2006 U.S. Dist. LEXIS 68696, 05 Civ. 2112 (RSM), 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006)). "Only *after discovery has been completed* should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action." Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627, 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (emphasis added).

### Conclusion

Based on the information contained herein, the accompanying documents, the original certification motion and Defendants' submissions, it is clear that conditional certification should be issued on a national scale providing all Rite Aid Store Managers, Assistant Managers and Co-Managers with notice of this suit and providing them with the option of joining the litigation.

Respectfully Submitted,

_____
Robert J. Vagnini, Jr. (RV 9995)
Valli Kane & Vagnini, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180

15