UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>Defendants. | 08 Civ. 9361 (PGG)<br>ECF Case |

**DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

        **EPSTEIN BECKER & GREEN P.C.**
        Two Gateway Center, 12th Floor
        Newark, New Jersey 07102
        Telephone: (973) 639-8261

        **ASHE, RAFUSE & HILL LLP**
        1355 Peachtree Street, N.E., Suite 500
        Atlanta, Georgia 30309-3232
        Telephone: (404) 253-6000

        Attorneys for Defendants Rite Aid Corporation
        and Rite Aid of New York, Inc.

Patrick G. Brady
 Of Counsel and On the Brief

Daniel E. Turner
 *Pro Hac Vice* Counsel and On the Brief

Plaintiff correctly states that his "actual burden" and the correct inquiry at this stage is "whether he is similarly situated to other managers and whether *all* of these managers were improperly classified as exempt." (Plaintiff's Reply Brief in Further Support of his Motion for Conditional Certification ("Reply"), Dkt. No. 61 at 2 (emphasis supplied).)  In a misguided effort to create the appearance of similarity in the actual job duties performed by Store Managers ("SMs"), Co-Managers ("CMs")[1] and Assistant Store Managers ("ASMs"), Plaintiff relies on the Affirmation of James Vagnini in Reply ("Vagnini Aff.") and deposition citations therein (most of which do not support the proposition for which they are cited and/or are taken out of context) and now broadly proclaims all of the deponents testified they performed the "same" actual job duties.  The record demonstrates otherwise.  Moreover, Plaintiff's newly asserted theories of an alleged common policy or plan fail in all respects.

1. **The Record Evidence Establishes Tremendous Differences In Job Duties Performed By SMs and ASMs Which Preclude A "Similarly Situated" Finding.**

Plaintiff does not deny that the Court must consider the actual job duties performed by each SM and ASM in the similarly situated analysis.  While no retailer could deny that certain core duties must be performed in stores, the record evidence demonstrates Rite Aid SMs and ASMs decide who performs those duties, how often, and for how long and that different stores have different duties because of unique circumstances.

Plaintiff's highly misleading assertion that "each SM, CM and AM that [sic] was deposed stated or affirmed that they perform the same type of job duties" is unsupported by any citation to the record evidence.  (*See* Reply at 3.)  Plaintiff then provides a short list of some of the duties to be performed in the store, claiming they "consume a majority of these 'managers' time":

---

[1] Plaintiff's Complaint does not allege a claim on behalf of CMs.  Accordingly, CMs will not be further addressed herein.

implementing plan-o-grams, stocking shelves, working in the photo lab, operating cash registers, assisting customers, and filling out daily tour sheets.² (Reply at 3-4; *see also* Vagnini Aff. at ¶ 15.) Setting aside the many other duties that some SMs and ASMs perform, the record evidence demonstrates that whether an individual performs the tasks identified by Plaintiff varies person-by-person and store-by-store, even within the very same district in which Plaintiff worked. Indeed, numerous SMs and ASMs testified that they, unlike Plaintiff, do <u>not</u> perform many of these purportedly "non-exempt" tasks, or, if they do, they do not "consume the majority of [their] time" (*See* Reply at 3.):³

| Examples of Differences in Testimony About Plan-O-Grams⁴ | | |
|---|---|---|
| Q.  Would you set that up yourself?<br>A.  **No, you assign to an employee**.<br>(Khan dep. at 45-47.) | Q. What about the plan-o-grams, who would generally do those?<br>A.  **We have a cashier or the store clerks.**<br>(Outaney dep. at 26.) | A:  I've done it in other stores, but **not in this particular store**.<br>(Coleman dep. at 85-87.) |

| Examples of Differences in Testimony About Working in Photo Lab | | |
|---|---|---|
| Q.  You had a photo specialist, okay. So would you ever work in that area?<br>MS. LIGHT:  Objection. | Q. Do you ever work in the photo lab?<br>A.  **No.**<br>Q.  Do you have a photo lab? | Q.  Is there a particular person who runs the photo lab?<br>A.  They have a cashier over there by the name Lizette, she |

---

² Defendants dispute that the listed duties are "non-exempt" as argued by Plaintiff.  As but one of many examples, it is undisputed that some SMs and ASMs complete the daily store tour sheets to determine and assign the work to be performed.  (Coleman dep. at 51; Johnson dep. at 31; Hazara dep. at 69; Pena dep. at 19-20; Vasquez dep. at 26.)  Such is the very essence of "management." The Department of Labor's (the "DOL") regulations define management duties to include, "directing the work of employees," "planning the work; determining the techniques to be used; [and] apportioning the work among the employees."  *See* 29 C.F.R. § 541.102.

³ Plaintiff wholly fails to address that the mere fact that a manager spends time performing non-managerial work is only the first in a series of questions regarding whether each individual manager is properly classified.  (*See* Defs. Resp. at section III.B. and cases cited therein)  Mr. Indergit conceded that he was always monitoring and supervising his employees, regardless of the tasks he was performing.  (Indergit dep. at 367-73, 403.)  Moreover, each declarant confirmed that they do the same and their deposition testimony does not refute this.  (*See* Pena Decl. at ¶¶ 6, 25; Khan Decl. at ¶ 26; Blake Decl. at ¶ 30; Vasquez Decl. at ¶¶ 7, 27; Coleman Decl. at ¶¶ 8, 31; Shahzaman Decl. at ¶¶ 7, 30; Otuaney Decl. at ¶¶ 7(b), 9, 30; Hazara Decl. at ¶¶ 9, 30, Dkt. No. 62, Exs. E-L.)

⁴ All deposition testimony cited herein is attached to the filed Declaration of Daniel E. Turner.

| | | |
|---|---|---|
| A. **No.** (Otuaney dep. at 27.) | A. Yes. (Blake dep. at 30.) | runs the photo lab. Q. When Lizette's not working, who runs the photo lab? A. Usually sometimes they take turns or Maggie runs it. Q. Do you ever run the photo lab? A. **Every now and then, but not much.** (Coleman dep. at 90.) |

| Examples of Differences in Testimony About Running Cash Register | | |
|---|---|---|
| Q. Okay. Would you ever be on the register yourself, as the manager of that store? A. **No.** (Otuaney at 38.) | Q. If they're fully staffed, would there ever be a time that you would get on the cash register? MS. LIGHT: Objection to form. A. **No.** (Khan dep. at 55.) | Q. And the one in photo, you call it that's the manager's register? A. That's manager's register. Q. Why is it manager's register? A. Because we do money order, Western Union and employee purchases that we prefer to do on management and one of the management is present to do that. (Hazara dep. at 85.) |

| Examples of Differences in Testimony About Stocking Shelves | | |
|---|---|---|
| Q. You don't take merchandise out of boxes and put it onto the shelf? A. **No.** (Blake dep. at 23.) | Q. So the stock clerks would stock the stockroom? A. Yeah. Q. Would you ever help them? MS. LIGHT: Objection. A. Help them cleaning? **Yeah, I'll go there and give ideas, supervise them to clean.** (Otuaney dep. at 28-29.) | Q. If you are fully staffed, would there ever be a time that you would be helping stock shelves? MS. LIGHT: Objection to form. A. **No.** (Khan dep. at 54-55.) |

| Examples of Differences in Testimony About Cleaning Store | | |
|---|---|---|
| Q. What about sweeping and cleaning, making sure that was done? A. The store clerks. Q. Who? A. The store guy, the store clerk. | Q. Do you ever sweep the store aisles? A. **No.** Q. Do you ever help clean them? A. **No**. Please stop asking me the same question differently. | Q. Do you ever clean the restrooms or restroom? A. **I have not done it in this store.** (Coleman dep. at 89.) |

3

| | | |
|---|---|---|
| Q. Would you ever do that?<br>A. **No.**<br>(Otuaney dep. at 26.) | (Blake dep. at 26.) | |

| Examples of Differences in Testimony About Truck Day | | |
|---|---|---|
| Q. Were you helping during this process to unpack and put things on the shelves also?<br>A. I assign it to employees.<br>Q. So what are you doing while the employees are doing that?<br>A. **I'm just supervise them, make sure everything goes in the right places.**<br>(Otuaney at 76.) | Q. What do you do when the truck is being unloaded, you personally?<br>A. Right now?<br>Q. Yes.<br>A. At this store?<br>Q. Yes.<br>A. My store is a high volume store, so **I'm not there for the truck.**<br>(Khan at 51.) | Q. And does Rocky [the SM] have an aisle, as well?<br>A. No.<br>Q. Does he deal with all the aisles, in terms of packing out then?<br>A. He hardly packs out. **He doesn't pack out.**<br>(Coleman dep. at 81.) |

Plaintiff also attempts to contort the record testimony and diminish the managerial nature of the tasks performed claiming that "managerial" duties such as scheduling, reviewing financial reports, hiring, training and ordering are so regulated by the company as to allow no room for managerial discretion.[5] (*See* Vagnini Aff. at ¶ 16.) The record establishes that SMs and ASMs exercise discretion and determine which managerial duties to perform and how to perform them to ensure the commercial success of their individual stores. For example, SMs and ASMs, including Plaintiff, testified that although a corporate program assists with creating a schedule, they are responsible for crafting a schedule that works depending on the needs of each store's employees.[6] *See* Hazara dep. at 35-36 ("It depends on my team, my team member, how their hours are."); Blake dep. at 38 ("I edit, create it and post [the schedule]"); Khan dep. at 37-38

---

[5] These are exactly the types of job duties the Second Circuit has previously held to be important managerial job functions. *See Donovan v. Burger King*, 675 F.2d 516, 521-22 (2d Cir. 1982) ("*Burger King II*"). As the *Burger King II* court recognized, "the wrong number of employees, too much or too few supplies on hand, delays in service ... or an undirected or under supervised work force all can make the difference between commercial success and failure." *Id.*

[6] Contrary to Plaintiff's claim in his Reply that scheduling "requires no input" from managers, Plaintiff Indergit testified that he utilized a great deal of managerial discretion in creating the weekly schedules for his store. Indergit testified that he would first look at the labor budget and calculate the total number of hours he had available. (Indergit dep. at 200-201.) Indergit also had to make many adjustments to the schedule throughout the week. (*Id.* at 185-86.)

4

("we are given hours and then dollar amount and we put it into that software and it creates a schedule for the store and we edit it to fit the needs of the store and then we post it."). Similarly, although payroll is approved by the manager on the computer, managerial discretion must be used. *See* Khan dep. at 47-48 ("Well, I'm the store manager. If there's issue with payroll I have to correct it."); Otuaney dep. at 36-37 ("Q. So you check it against the hours and make sure that the system looks like everyone's hours are in there correctly? A. Correct. Correct."). Payroll is not "accomplished with a single click of the mouse," despite Plaintiff's false claim without citation. (Reply at 9.)

Additionally, the record evidence, including Plaintiff's testimony, establishes that financial reports are used by SMs and ASMs to determine whether changes need to be made within their respective stores. *See* Indergit dep. at 120 (upon receiving financial reports, "we sit down and talk what the performance of every day is and why the store is minus and why it's plus, we do that….And we go about and take and do the right response to it to make it better."); Khan dep. at 56 ("it's a management tool where it tells you how you're trending; if you're making the sales or if you are -- you know, you're lacking in customer service. You need to respond to the workflow."); Blake dep. at 58 (reviews financial reports "to compare each week and see where I am falling or where I can build more sales."). Additionally, ordering requires managerial discretion. *See* Khan dep. at 84-85 ("Q. Would you decide what items would go on sale for a particular time period? A. No, actually we would look at a flier, an ad to see what's coming up on sale and how much we need and then we could adjust the quantity.").

The record evidence also demonstrates that hiring and training of new associates requires managerial authority, and contrary to Plaintiff's unsupported claim, is not solely computer-based. *See* Khan dep. at 38-39 ("Well, in my store, okay, when they go through all that process then I'm the one that calls them in and, you know, process them. Q. What do you mean by "process

5

them"?  A. Hire them."); Indergit dep. at 404 ("Q. Training your employees, correct?  A. Yes.  Q. All of that was ongoing, the training was ongoing and constant, correct? A. Yes."); Otuaney dep. at 65-66 ("Q.  What if someone's not doing such a great job, what do you do?  A. Don't doing great job?  Q.  Yes.  A. Talk to the person.  See how you can improve.  I re-coach and retrain the person.").  Declarants likewise stated that training is constant and ongoing in their stores.[7]

Incredibly, Plaintiff also claims that "it is clear from the deposition testimony that the [SM and ASM positions] are similar in almost every way aside from the title."  (*See* Vagnini Aff. ¶ 21.)  This claim not only contradicts Plaintiff's own testimony, but it is simply not supported by the record evidence.  (*See* Indergit dep. 127-29, 183-85, 341-44, 390-92; Otuaney dep. at 91-93 ("Q. Were there any differences in the duties that you had as a co-manager and a manager? A. Yeah, there's a lot of differences…. Q. Store managers create the schedule, store managers get emails from district managers.  What else? A. They approve the payroll, finalize transfers, hiring.  Q. Anything else you could think of? A. Make sure the policies… [p]olicy is implemented.  They implement the Rite Aid policies to follow. You're the boss in the store.").[8]

Thus, the testimony of other SMs and ASMs deposed by Plaintiff, particularly when contrasted with Plaintiff's, not only demonstrates night and day differences in the actual duties

---

[7] *See* Pena Decl. at ¶ 12; Khan Decl. at ¶14; Blake Decl. at ¶17; Vasquez Decl. at ¶15; Coleman Decl. at ¶16; Shahzaman Decl. at ¶15; Otuaney Decl. at ¶16; Hazara Decl. at ¶16, Dkt. No. 62, Exs. E-L.

[8] Similarly, Plaintiff's assertion that District Managers tell SMs and ASMs what to do via email and conference calls is not even remotely supported by the cited deposition testimony.  (*See* Vagnini Aff. ¶ 16, Reply at 8; *see* Blake dep. at 46 (Q. Do SYSMs tell you what needs to be done in your store?  A.  No.); Pena dep. at 22 (Q. About how often do you get an e-mail from your district manager? A.  We get e-mails daily… Q.  And what do they relate to? A.  Stuff that needs to be done in the stores, if there's an emergency, like a product that needs to be taken out of the shelf.  Stuff like that.).

6

performed, but confirms the highly-individualized factual and legal inquiries the Court would be required to make as to whether each exempt individual is properly classified under the FLSA.[9]

### 2. Plaintiff Offers No Evidence That Rite Aid Has A Policy, Plan Or Scheme That Violates The FLSA.

Although he concedes he carries the burden to do so, Plaintiff fails to even make a "modest factual showing sufficient to demonstrate that [he and putative members of the collective action] together were victims of a common policy or plan that violated the law." (*See* Memorandum in Support of Plaintiff's Motion for Conditional Certification, Dkt. No. 58 at 6, citing *Lewis v. National Financial Sys., Inc.*, 2007 WL 2455130, *3 (E.D.N.Y. 2007); *see also Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). For the first time in this litigation, Plaintiff asserts in his Reply that the alleged "policies" identified by Plaintiff purportedly rendering all SMs and ASMs similarly situated are (1) the alleged uniform classification of all SMs and ASMs as exempt, and (2) Rite Aid allegedly providing fewer budgeted labor hours than necessary to run the store, which requires management to perform non-managerial tasks.[10] (*See* Reply at 11-12.) Both of these assertions are directly contradicted

---

[9] In arguing that a nationwide class would be manageable, Plaintiff ignores the highly individualized inquiries preceding a determination of the number of hours someone worked recognized in *Holt v. Rite Aid*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004). Moreover, Plaintiff's claim – without citation to the record – that Defendants' "systems" "make it quite simple for each store and potential plaintiff to determine how many hours it would be necessary for management to be performing non-managerial duties" is not accurate or supported by anything in the record. Instead, in light of the differences identified by Plaintiff, opt-in Johnson and the declarants deposed (as well as the applicable regulations), it is clear the duties performed is an individualized inquiry that makes collective treatment unmanageable. Plaintiff also fails to explain how one could determine the amount of time actually worked by each and every opt-in without asking each one.

[10] Plaintiff initially claimed that the "common policy" was an alleged prohibition on overtime nationwide. (*See* Amended Complaint, Dkt. No. 17 at ¶¶ 36-39; Memorandum in Support of Motion for Conditional Certification, Dkt. No. 58 at 3-4). However, Plaintiff abandoned this theory when the deposition testimony from witnesses other than Mr. Indergit unequivocally established there was no such uniform policy. *Compare* Indergit dep. at 159 ("Q. So it's not the amount of money that you had for labor decreased, it's just that you couldn't use overtime? A.

7

by the record evidence, and even if true, neither establishes common job duties or a common policy in violation of the law.

Plaintiff's "automatic categorization of SM's [sic], CM's [sic], ASM's [sic], . . as exempt from overtime laws" theory is directly contradicted by both the record evidence and Plaintiff's own arguments. (Reply at 11.) The record is clear that Rite Aid does not automatically classify all SMs and ASMs as exempt.[11] It is undisputed that throughout the relevant period, not all ASMs were or are classified as exempt and whether an SM or ASM is classified as exempt depends upon factors such as the store's front end sales volume. (*See* Crandall dep. at 74-75; Crandall Decl. at ¶ 14, Dkt. No. 62 at Ex. D.) Moreover, Plaintiff's categorization theory is directly at odds with his argument in his Response in Opposition to Defendants' Motion for Partial Summary Judgment that in deciding whether an employee is properly classified as exempt, "the Court must look beyond labels and descriptions and also *inquire into the particular facts* of the actual work performed." (Plf.'s Resp. at 20, citing *McCluskey v. J.P. McHale Pest Mgmt., Inc.*, 147 Fed. Appx. 203, 206 (2d Cir. 2005). Even if Plaintiff's assertion that Rite Aid has a "uniform" policy of classifying all SMs and ASMs as exempt were true, which it does not, such is not sufficient to establish they are similarly situated.[12] (*See* Defs. Resp., Dkt. No. 59 at

---

Yes. Q. That's your allegation? A. Yes."); *with* Hazara dep. at 47 ("Q. Do employees in your store 4790 receive overtime? A. Sometimes, yes**.**"); Otuaney dep. at 45 ("Q. When you were the store manager of 4790, were you permitted to give overtime to hourly employees, if necessary? A. Yeah."); Shahzaman dep. at 48 ("Q. You said the associates in your store do work overtime? A. Sometimes**.**"); Vasquez dep. at 52 ("Q. Does your store use overtime? A. Yes**.**"). As the evidence did not support that any such policy exists, Plaintiff has changed his focus to labor budgets.

[11] Mr. Vagnini's Affirmation concedes that Rite Aid does not classify all SMs and ASMs as exempt. (Vagnini Aff. at ¶ 22.)

[12] Plaintiff's assertion that, because Rite Aid utilizes "national policies," all SMs and ASMs are similarly situated, is equally without merit. First, it directly contradicts Plaintiff's own earlier recognition that it is the actual job duties performed by class members that render them similarly situated, not job titles or policies. (*See* Plf.'s Br., Dkt. No. 58 at 11.) Second, concluding that company-wide policies render all employees similarly creates a slippery-slope leading to

8

section III.A.1.)

Plaintiff's alternative new "labor budget" theory is equally unavailing. (Reply at 11-12.) The only purported record citation for Plaintiff's assertions concerning insufficient labor budgets is to paragraph 24 of Mr. Vagnini's Affirmation (which cites to Ms. Crandall's deposition in a footnote). (*See* Vagnini Aff., Dkt. No. 60 at ¶ 24.) Ms. Crandall's deposition testimony directly contradicts the proposition for which it is cited. Not only did Ms. Crandall testify that Store Managers are in charge of their stores and their labor budgets, but she testified that the labor budgets can be altered by store management. (Crandall dep. at 136-38; s*ee also* Hazara dep. at 42 (Store Manager Hazara testified that her store's labor requirements "sometimes" goes over the projected labor budget and, when they do, she speaks with her district manager about it and she schedules more hours)). Ms. Crandall further testified that Rite Aid store budgets are created for each individual store to expressly provide the store with adequate labor to allow for hourly employees to perform all necessary non-managerial tasks.[13] (Crandall dep. at 151-53). Mr. Vagnini's Affirmation also ignores the testimony of his client, Opt-in Johnson, that Johnson believes Mr. Indergit failed to properly use the budget given to him, necessitating additional work by managers. (Johnson dep. 159-61, 198-99, 211-13.) It further ignores additional deposition testimony (known to Mr. Vagnini). (Reply at 12.) *See* Blake dep. at 43 ("Q. Are

---

automatic certification of any alleged collective action. Third, the record evidence plainly establishes that, notwithstanding alleged nationwide company guidelines and policies, SMs and ASMs perform different tasks in the different ways. (*See supra*; Defs. Resp., Dkt. No. 59 at section II.C.)

[13] Plaintiff similarly provides no record citation for the predicate assumption of his theory that "[a]s additional managers are hired into a store, the store's labor budget providing hours for non-exempt employees is significantly decreased." (Vagnini Aff. at ¶ 24.) Indeed, the record evidence directly contradicts this claim. Ms. Crandall testified that Rite Aid store budgets are created for each individual store to expressly provide the store with adequate labor to allow for hourly employees to perform all necessary non-managerial tasks. *See* Crandall dep. at 152. The record is undisputed that the salaries of SMs and ASMs (in stores that have them) are then added on top of that labor budget. *Id.* at 151-52.

9

there times when things in the store need to get done and you don't have an associate to do it? A. No**."**); Coleman dep. at 106 ("Q. Are there any times on either Saturday night or Wednesday night when the employees have to leave because their shift is up and you have to remain in the store to finish the packout? A. No.").

Plaintiff's ever-shifting theory of an alleged common unlawful policy is not supported by the record evidence.[14]  Rather, the record reflects that at other stores, even within Plaintiff's district, SMs and ASMs do not experience Plaintiff's issues regarding the alleged need for more labor hours, or any alleged restrictions on overtime such that management must perform non-exempt tasks.  Moreover, Plaintiff's "labor budget" theory been soundly rejected by courts.  (*See* Defs. Resp., Dkt. No. 59 at section III.A.1 and cases cited therein).

## CONCLUSION

For the foregoing reasons, and for those set forth fully in Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification, Defendants respectfully request that the Court deny Plaintiff's Motion for Conditional Certification.

Respectfully submitted, this the 14th day of August, 2009.

| | |
|---|---|
| s/ Daniel E. Turner | Patrick G. Brady, Esq. |
| Daniel E. Turner | Bar No. PB1114 |
| (Admitted *Pro Hac Vice*) | pbrady@ebglaw.com |
| danturner@asherafuse.com | **EPSTEIN, BECKER & GREEN P.C.** |
| **ASHE, RAFUSE & HILL LLP** | Two Gateway Center, 12th Floor |
| 1355 Peachtree Street, N.E., Suite 500 | Newark, New Jersey 07102 |
| Atlanta, Georgia 30309-3232 | Telephone: (973) 639-8261 |
| Telephone: (404) 253-6000 | Facsimile: (973) 639-8556 |
| Facsimile: (404) 253-6060 | *Attorneys for Defendants Rite Aid Corporation and Rite Aid of New York, Inc.* |

---

[14] Moreover, Plaintiff's new theory suggests that Rite Aid paid management employees a salary to require them to work more than forty hours without receiving overtime.  Using Mr. Indergit as an example, his salary of $71,000 would have easily permitted Rite Aid to hire four employees at or near minimum wage for a total of 188 hours.  (*See* Crandall Decl. at ¶ 20, Dkt. No. 62 at Ex. D.)  It is nonsensical that Rite Aid would forego having four full-time employees working in exchange for paying Mr. Indergit to go it alone.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>Defendants. | 08 Civ. 9361 (PGG)<br>ECF Case<br><br>AFFIRMATION OF SERVICE |

    I, Daniel E. Turner, Esq., declare under penalty of perjury that I have served a copy of the attached **DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION** upon counsel whose addresses are:

| | |
|---|---|
| Robert J. Valli, Jr., Esq.<br>VALLI, KANE & VAGNINI, LLP<br>600 Old Country Road, Suite 519<br>Garden City, New York 11530 | Keith A. Raven, Esq.<br>RAVEN & KOLBE, LLP<br>126 East 56th Street, Suite 202<br>New York, New York 10022 |

by electronic and first-class U.S. mail.

Dated: Atlanta, Georgia
       August 14, 2009

                                  s/ Daniel E. Turner
                                  Daniel E. Turner
                                  danturner@asherafuse.com
                                  **ASHE, RAFUSE & HILL LLP**
                                  1355 Peachtree Street, N.E., Suite 500
                                  Atlanta, Georgia 30309-3232
                                  Telephone: (404) 253-6000
                                  Facsimile: (404) 253-6060
                                  *Attorney for Defendants Rite Aid*
                                  *Corporation and Rite Aid of New York, Inc.*

1005-0039.689