**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YATRAM INDERGIT, on behalf of himself
and others similarly situated,

        Plaintiff,

          vs.

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and FRANK
OFFOR as Aider & Abettor,

        Defendants.

**08 Civ. 9361 (PGG)**
**ECF Case**

**MEMORANDUM OF LAW IN**
**SUPPORT OF DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY**
**JUDGMENT ON PLAINTIFF'S FLSA,**
**NYLL AND INJUNCTIVE RELIEF**
**CLAIMS**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FLSA, NYLL AND**
**INJUNCTIVE RELIEF CLAIMS**

---

**EPSTEIN BECKER & GREEN, P.C.**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 642-1900

**ASHE, RAFUSE & HILL LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309
Telephone: (404) 253-6000

Attorneys for Defendants Rite Aid Corporation
and Rite Aid of New York, Inc.

Patrick G. Brady
 Of Counsel and On the Brief

Daniel E. Turner
 *Pro Hac Vice* Counsel and On the Brief

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.  STATEMENT OF FACTS .................................................................................................2

    A.  Plaintiff Was A Rite Aid Store Manager For Over Twenty Years .........................3

    B.  Plaintiff Earned At Least $61,000 On An Annual Basis During The Relevant
        Time Period ...............................................................................................................3

    C.  As The Highest Ranked Employee In His Store, Plaintiff Was In Charge
        And Performed Multiple Managerial Job Duties Critical To The Successful
        Operation Of His Store ............................................................................................3

        1.  Plaintiff supervised all store employees ....................................................3

        2.  Plaintiff managed all store operations ........................................................4

    D.  Plaintiff's Employment Was Terminated Following An Investigation Into
        Alleged Payroll Fraud ..............................................................................................5

III.  ARGUMENT ....................................................................................................................6

    A.  Defendants Are Entitled To Summary Judgment Because There Is No Genuine
        Issue As To Any Material Fact .................................................................................6

    B.  Rite Aid Properly Classified Plaintiff As An Exempt Executive Employee ...........6

        1.  Plaintiff's compensation satisfied the salary basis requirement for the
            executive exemption ...................................................................................7

        2.  Plaintiff's primary job duty was the management of a $3 million
            enterprise ....................................................................................................7

            a.  Plaintiff performed functions that could make all the difference
                between the commercial success and failure of his Rite Aid
                store ................................................................................................8

            b.  Even if Plaintiff spent time performing "non-managerial" job
                duties, he was still properly classified as exempt as a matter
                of law .............................................................................................11

            c.  Plaintiff was "in charge" and the highest-ranked employee in
                his store .........................................................................................15

i

          d.     Plaintiff's compensation was significantly greater than that of the hourly employees in his store....................................................15

     3.     Plaintiff customarily and regularly supervised two or more employees....16

     4.     Plaintiff had the authority to hire or fire other employees or his recommendations were given particular weight ........................................16

   C.    Plaintiff's Retaliation Claims Under The FLSA And NYLL Fail As A Matter Of Law ................................................................................................................17

     1.     Plaintiff's claim for retaliation under the FLSA fails because Plaintiff did not file a formal complaint prior to the alleged retaliation .................17

     2.     Plaintiff's claim for retaliation under the NYLL fails because he did not inform his supervisor of his belief that Rite Aid was violating specific provisions of the NYLL.................................................................18

   D.    Plaintiff Cannot Present Evidence In Support Of His Claim For Injunctive Relief..........................................................................................19

IV.    CONCLUSION.......................................................................................................20

## TABLE OF AUTHORITIES

*Aneja v. Triborough Bridge & Tunnel Authority*
     35 F. App'x 19 (2d Cir. 2002) ...........................................................................17

*Baldwin v. Trailer Inns, Inc.*
     266 F.3d 1104 (9th Cir. 2001) ...........................................................................13

*Bowe v. Judson C. Burns, Inc.*
     137 F.2d 37 (3d Cir. 1943)................................................................................19

*Celotex Corp. v. Catrett*
     477 U.S. 317 (1986)............................................................................................6

*City of Los Angeles v. Lyons*
     461 U.S. 95 (1983) .............................................................................................19

*Davis v. Marsh*
     876 F.2d 1446 (9th Cir. 1989) ...........................................................................19

*Donovan v. Burger King Corp.*
     672 F.2d 221 (1st Cir. 1982)..........................................................................9, 11

*Donovan v. Burger King Corp.*
     675 F.2d 516 (2d Cir. 1982)...............................................................10, 11, 15

*Goff v. Bayada Nurses, Inc.*
     424 F. Supp. 2d 816 (E.D. Pa. 2006) .................................................................10

*Golden v. Merrill Lynch & Co.*
     2007 WL 4299443 (S.D.N.Y. Dec. 6, 2007) ...............................................10, 15

*Hawkins v. Groot Industries, Inc.*
     2003 WL 22057238 (N.D. Ill. Sept. 2, 2003) ...................................................19

*Horne v. Crown Central Petroleum, Inc.*
     775 F. Supp. 189 (D.S.C. 1991).........................................................................11

*Jackson v. Advance Auto Parts, Inc.*
     362 F. Supp. 2d 1323 (N.D. Ga. 2005) ..............................................................10

*Jones v. Virginia Oil Co.*
     69 F. App'x 633 (4th Cir. 2003) (per curiam) ......................................10, 13, 14

*Kastor v. Sam's Wholesale Club*
     131 F. Supp. 2d 862 (N.D. Tex. 2001) ...............................................................13

*Lambert v. Genesee Hospital*
  10 F.3d 46 (2d Cir. 1993) ................................................................17

*Lovelady v. Allsup's Convenience Stores, Inc.*
  304 F. App'x 301 (5th Cir. 2008) (per curiam) ................................12

*Meyer v. Worsley Companies, Inc.*
  881 F. Supp. 1014 (E.D.N.C. 1994)..................................................13

*Mims v. Starbucks Corp.*
  2007 WL 10369 (S.D. Tex. Jan. 2, 2007) .........................................12

*Mitchell v. Abercrombie & Fitch Co.*
  428 F. Supp. 2d 725 (S.D. Ohio 2006), *aff'd*, 225 F. App'x 362 (6th Cir. 2007) ............12

*Moore v. Tractor Supply Co.*
  352 F. Supp. 2d 1268 (S.D. Fla. 2004), *aff'd*, 140 F. App'x 168 (11th Cir. 2005) ...........13

*Murray v. Stuckey's, Inc.*
  939 F.2d 614 (8th Cir. 1991) ........................................................9, 13

*Posely v. Eckerd Corp.*
  433 F. Supp. 2d 1287 (S.D. Fla. 2006) .............................................12

*Powell v. State of Florida*
  132 F.3d 677 (11th Cir. 1998) (per curiam)......................................19

*Powell v. Washington Post Co.*
  267 F.2d 651 (D.C. Cir. 1959) (per curiam) .....................................19

*Rau v. Darling's Drug Store, Inc.*
  388 F. Supp. 877 (W.D. Pa. 1975).....................................................9

*Roberg v. Phipps Estate*
  156 F.2d 958 (2d Cir. 1946)...........................................................19

*Rodriguez v. City of New York*
  72 F.3d 1051 (2d Cir. 1995)..............................................................6

*Seever v. Carrolls Corp.*
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) .........................................17, 18

*Shah v. Wilco Systems, Inc.*
  126 F. Supp. 2d 641 (S.D.N.Y. 2000)..............................................17

*Sturm v. TOC Retail, Inc.*
    864 F. Supp. 1346 (M.D. Ga. 1994) ...................................................................9

*Thomas v. S.E.A.L. Security, Inc.*
    2007 WL 2446264 (S.D.N.Y. Aug. 30, 2007), *aff'd*, 301 F. App'x 32 (2d Cir. 2008) .....17

*Thomas v. Speedway SuperAmerica, LLC*
    506 F.3d 496 (6th Cir. 2007) .................................................................10, 13

*Wooden v. Board of Regents*
    247 F.3d 1262 (11th Cir. 2001) ..............................................................19

29 C.F.R. § 541.100 ...............................................................................7, 16

29 C.F.R. § 541.100(3) ...............................................................................16

29 C.F.R. § 541.100(4) ...............................................................................16

29 C.F.R. § 541.102 ...................................................................................8

29 C.F.R. § 541.106(a) ...........................................................................12, 14

29 C.F.R. § 541.106(b) ...........................................................................12, 14

29 C.F.R. § 541.602 ...................................................................................7

29 C.F.R. § 541.700(a) .................................................................................8

29 C.F.R. § 541.700(b) .................................................................................8

29 C.F.R. § 541.700(c) ................................................................................12

29 U.S.C. § 201, *et seq.* .............................................................................1

29 U.S.C. § 211(a) ...................................................................................19

29 U.S.C. § 213(a)(1) .............................................................................1, 6

29 U.S.C. § 216(b) ...................................................................................19

29 U.S.C. § 621, *et seq.* .............................................................................1

Fed. R. Civ. P. 56(c) .................................................................................6

Final Rule, 69 Fed. Reg. at 22122-01, 22136-37, 22185-87 (2004) ..............................13

New York City Administrative Code §§ 8-101 to -131................................................1

New York Labor Law § 605, *et seq*.........................................................................1

New York State Executive Law § 290, *et seq*. ......................................................1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Yatram Indergit ("Plaintiff" or "Indergit"), a former Store Manager of Defendant Rite Aid of New York, Inc.[1] ("Rite Aid"), alleges that he was misclassified as an exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  Accordingly, he asserts he is owed overtime pay.  Plaintiff also alleges that he was retaliated against in violation of the FLSA and New York Labor Law ("NYLL"), NYLL §§ 605 *et seq.*, for making internal complaints about labor hours and his own work hours.[2]

Plaintiff's FLSA overtime law claim fails as a matter of law because, as the Store Manager, he was at all relevant times the highest-ranking employee and in charge of the operations and employees of Store No. 549, a multi-million-dollar operation.  The FLSA expressly exempts from its coverage "executive, administrative and professional" employees.  29 U.S.C. § 213(a)(1).  Plaintiff's own testimony conclusively establishes that he falls squarely within the executive exemption.[3]  Plaintiff's testimony confirms that he was unquestionably in charge of the store, disciplined employees, interviewed employees, trained employees, scheduled employee hours, performed office work such as payroll and financial data, and managed the store's inventory.  *See* Defendant's Rule 56.1 Statement of Facts ("SOF"), filed herewith, at ¶¶

---

[1] Rite Aid Corporation was not, and never has been during the relevant time frame, Plaintiff's employer.  Plaintiff's employer at all relevant times was Rite Aid of New York, Inc.  Rite Aid Corporation appears specially and without waiver of any jurisdictional defenses.

[2] Plaintiff also asserts substantive claims under the NYLL §§ 605 *et seq.*, Age Discrimination in Employment Act 29 U.S.C. § 621, *et seq.* ("ADEA"), New York State Executive Law § 290, *et seq.* ("State Human Rights Law"); and the New York City Administrative Code § 8-101 to -131 *et seq.* ("City Human Rights Law").  Plaintiff also seeks certification of a putative nationwide collective action under Section 216(b) of the FLSA and a New York statewide class action under Rule 23 of the Federal Rules of Civil Procedure for purported violations of the FLSA and NYLL, respectively.  *See* Complaint (Dkt. Entry No. 1).  Defendants address only the merits of Plaintiff's individual FLSA overtime and retaliation claims, NYLL retaliation claim, and claims for injunctive relief in this Motion.

[3] Although Defendant will not presently address the applicability of the administrative exemption to Plaintiff, Defendant does not waive such argument.

4-5, 12, 16-21, 23, 26, 28-33.  Plaintiff admits that during the relevant time period, he was at all times responsible for the day-to-day supervision, development and evaluation of at least eight to sixteen employees within his Store.  *Id*. at ¶¶ 8-10, 22, 24-25, 27.  Plaintiff further admits that, at a minimum, his recommendations regarding hiring, firing and changes in employment status of his subordinate employees were followed.  *Id.* at ¶¶ 13-15.  He also admits he was paid a salary in excess of that required to qualify for the FLSA's executive exemption.  *Id*. at ¶ 56.  For all of these reasons, Rite Aid properly classified Plaintiff as an exempt executive, and he has no FLSA claim for overtime pay.

Plaintiff's FLSA retaliation claim likewise fails because he admits that he never made a formal complaint under the FLSA prior to his termination.  Similarly, Plaintiff admits that he never complained about any perceived violations of the NYLL before he filed the instant action. Thus, Plaintiff's retaliation claims fail as a matter of law.

Finally, only the United States Department of Labor ("DOL") may bring a claim for injunctive relief and, in any event, Plaintiff is a former employee, thus lacks standing to seek an injunction.  For both of these reasons, Plaintiff can make no claim for injunctive relief under the FLSA or the NYLL.  Accordingly, Defendants respectfully request that summary judgment be granted on all of Plaintiff's individual FLSA claims and his NYLL injunctive relief and retaliation claims.

## II.   STATEMENT OF FACTS

Defendant Rite Aid refers the Court to its Local Civil Rule 56.1 Statement in Support of Their Motion for Summary judgment filed herewith.

### A.   Plaintiff Was A Rite Aid Store Manager For Over Twenty Years

Plaintiff began working for Rite Aid in 1979.  Plaintiff dep. 25-26.[4]  Plaintiff's

employment was terminated on or about November 20, 2007.  *See* Complaint ¶ 20.  At all times

relevant to this action, Plaintiff worked as a Store Manager for Rite Aid's Store No. 549 located

in Bronx, New York.  Plaintiff dep. 25-27.[5]  During his tenure as a Store Manager, Plaintiff

"built" store 549 and developed a "strong customer base."  *Id*. 34.  As the Store Manager,

Plaintiff was in charge of the store and responsible for total store profitability.  *Id*. 59, 64.

### B.   Plaintiff Earned At Least $61,000 On An Annual Basis During The Relevant Time Period

At all times relevant to this action, Plaintiff earned at least $455 per week.  Plaintiff dep.

173.  In fact, Plaintiff earned in excess of $61,000 annually during the relevant time period.  *See*

Declaration of Kristin Crandall ("Crandall Decl.") ¶ 20, Tab F.

### C.   As The Highest Ranked Employee In His Store, Plaintiff Was In Charge And Performed Multiple Managerial Job Duties Critical To The Successful Operation Of His Store

#### 1.   Plaintiff supervised all store employees

Plaintiff was the highest-ranked employee in his store.  Plaintiff dep. 58-59.  As the Store

Manager, Plaintiff supervised all of the front end hourly employees in the store, which included

from eight to sixteen hourly employees in shift supervisor, cashier and stock clerk positions.  *Id*.

72, 216, 198-99, Ex. 7.  Plaintiff was also in charge of his Assistant Manager.  *Id*. 73.  Plaintiff

also supervised the store's security guard.  *Id*. 50, 98.  Plaintiff likewise had supervisory

authority, including scheduling and discipline, over additional personnel who worked in the

---

[4] All evidence referenced herein is attached to the Declaration of Daniel E. Turner, Esq. filed in support of Defendants' Partial Motion for Summary Judgment, which is filed herewith.
[5] Assuming Plaintiff could prove the three-year limitations period under the FLSA for summary judgment purposes, the relevant time period for Plaintiff's FLSA claim is October 30, 2005 through his termination on November 20, 2007.

pharmacy.  *Id.* 74-76, 189-90, Ex. 8.

Plaintiff admits he was responsible for hiring and firing employees or, at minimum, made recommendations about hiring and firing that were given particular weight.  For example, using his own discretion, Plaintiff identified open positions within his store and selected candidates to interview.  Plaintiff dep. 342-45.  Plaintiff had and exercised the authority to hire employees himself or with minimal approval from his District Manager.  *Id.* 94-95, 317-18, 342-46. Plaintiff likewise had and exercised the authority to fire employees with minimal approval from his District Manager.  *Id.* 130, 132-33, 137-38.  Moreover, Plaintiff's recommendations regarding promotions and transfers were followed.  *Id.* 80-81, 106-07, 114-15, 323-24.

### 2.  Plaintiff managed all store operations

As the Store Manager, Plaintiff was in charge of Store No. 549 and ultimately responsible for his store's day-to-day management, profitability and operation.  Plaintiff dep. 58-59, 64, 92, 102, 142-43.  Plaintiff's store had a weekly delivered inventory of $90,000 and annual sales that exceeded $3 million.  *Id.* 48, 51-52, 252-54.  Plaintiff admits that his responsibilities and duties, in connection with the management of this multi-million-dollar operation, included the following:

- interviewing and selecting applicants to fill open positions (Plaintiff dep. 93-95, 317-18, 342-46);
- training, including monthly safety training, and developing employees (*id.* 35-36, 80-81, 106-09, 223-64, 327-28, 352-54, Ex. 2);
- creating work schedules, including approving requests for time off and vacations and adjusting the schedule due to unexpectedly absent employees (*id.* 183, 185-87, 340-41);
- ensuring the accuracy of payroll (*id.* 336);
- directing the work of employees (*id.* 37, 68-71, 73, 118, 255);
- maintaining and reviewing profit and loss, shrink and EBITDA reports for purposes of improving store performance and achieving operating goals (*id.* 59, 98-99, 104-05, 119-21, 403-04);
- evaluating employees' job performance for the purposes of recommending promotions (*id.* 80-81, 106-07, 321, 323-24);
- handling employee complaints and problems (*id.* 96-97, 262-63);

4

- disciplining employees verbally and in writing, for such issues as performance, attendance, theft, insubordination, and making threatening comments (*id*. 125-27, 134-38);
- planning and prioritizing the work to be performed in the store and assigning job tasks to the employees (*id*. 69-71, 73-74, 92, 123-25, 205, 220-21, 327-28);
- ordering and controlling his store's $90,000 in weekly inventory, interfacing with vendors and authorizing the return of store merchandise without a receipt (*id*. 68, 99, 242-45, 253-57, 357);
- ensuring the safety and security of the employees and the customers, including performing daily safety walks (*id*. 102-04, 219-20, 237-38, 296);
- ensuring the security of the store's assets, including ensuring appropriate cash handling procedures, preventing theft and controlling shrink, and making bank deposits (*id*. 50, 52-57, 237, 239-40);
- responsibility for the store's budget performance and profit and loss (*id*. 59, 92, 98-99, 155-57);
- monitoring and implementing legal compliance measures (*id*. 347-48, 357-58); and
- performing and reviewing daily paperwork, such as balancing and evaluating register reports and investigating discrepancies and reviewing profit and loss statements (*id*. 119-20, 222, 239-41).

### D. Plaintiff's Employment Was Terminated Following An Investigation Into Alleged Payroll Fraud

Rite Aid terminated Plaintiff's employment following an investigation into alleged payroll fraud. Plaintiff dep. 164-67. Specifically, Plaintiff admitted that he, on at least one occasion, paid an employee less than the overtime rate mandated by the FLSA and NYLL. *Id*. 167. Rite Aid terminated him for this violation of Company policy. *Id*. 164. Plaintiff claims that, prior to his termination, he complained to his supervisors Mr. Frank Offor and Mr. Paul, as well as his co-workers, that his store needed more overtime and labor hours and that Plaintiff was "working lots of time." *Id*. 277-83. Plaintiff admits, however, that he did not file any formal FLSA complaint prior to his termination. *Id*. 382-83. Nor did Plaintiff make any specific complaints to his supervisors regarding violations of the NYLL. *Id*. Almost one year after his employment was terminated; Plaintiff filed the Complaint upon which this lawsuit is based. *See* Dkt. No. 1.

## III.   ARGUMENT

### A.   Defendants Are Entitled To Summary Judgment Because There Is No Genuine Issue As To Any Material Fact

Federal Rule of Civil Procedure 56(c) requires that courts grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). Rite Aid's motion is based entirely on Plaintiff's own testimony and, as such, there is no genuine issue of material fact. The Court need only rely upon Plaintiff's own words to conclude that he was properly classified as exempt and cannot prove a retaliation claim as a matter of law.

### B.   Rite Aid Properly Classified Plaintiff As An Exempt Executive Employee

The FLSA provides an exemption from its overtime requirements for persons employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). As Plaintiff's own deposition testimony establishes, he was properly classified as an exempt executive employee. As such, Plaintiff's FLSA overtime claim fails as a matter of law.

Under the federal regulations applicable to Plaintiff's employment during the relevant time period, the term "employee employed in a bona fide executive capacity" means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more employees; and;

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*See* 29 C.F.R. § 541.100.

According to Plaintiff's own testimony, each of the four requirements was satisfied.

### 1.   Plaintiff's compensation satisfied the salary basis requirement for the executive exemption

"An employee will be considered to be paid on a "salary basis ... if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of the variations in the quality or quantity of the work performed....." *See* 29 C.F.R. § 541.602. Plaintiff admits that he earned a salary in excess of $455 per week while employed by Rite Aid as a Store Manager. Plaintiff dep. 173. Rite Aid's payroll records confirm that his salary far exceeded $455 per week at all relevant times. Crandall Decl. ¶ 20. Moreover, Plaintiff's salary was not subject to disciplinary deductions or any other deductions based on the quality or quantity of work performed. Plaintiff dep. 176. Accordingly, Plaintiff's compensation satisfied the salary basis requirement for the executive exemption.

### 2.   Plaintiff's primary job duty was the management of a $3 million enterprise

The DOL's regulation defining management duties is a description of the very duties Plaintiff admits that he regularly performed as a Rite Aid Store Manager:

[I]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or

7

merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*See* 29 C.F.R. § 541.102.

Plaintiff readily admits that he performed each of the management duties set forth in the regulations. *See* Section II.C.2., *supra*. Whether such management duties comprised Plaintiff's "primary duty" *i.e.*, the "principal, main, major or most important duty that the employee performs," is a determination based on an examination of the totality of the circumstances in a particular case. 29 C.F.R. § 541.700(a).

Plaintiff attempts to argue that these management duties were not his primary job duty and, in support, relies solely on his allegation that he did not spend more than 50% of his time performing the management duties. *See* Complaint ¶ 39. The DOL, however, rejected this argument in the 2004 regulations: "[N]othing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." *See* 29 C.F.R. § 541.700(b). In rejecting a formulistic time standard, the DOL's regulations direct the Court to consider four factors: (1) the "relative importance" of the employee's exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision, and (4) the relationship of the employee's salary to the wages paid to non-exempt employees. 29 C.F.R. § 541.700(a). As discussed below, each of the four factors here supports only one conclusion: Plaintiff's primary duty was management.

> **a.   Plaintiff performed functions that could make all the difference between the commercial success and failure of his Rite Aid Store**

Plaintiff admitted that he was "in charge" of and the "highest-ranked" employee of a multi-million-dollar operation. Plaintiff dep. 58-59, 64, 92, 102, 142-43. This admission alone

is sufficient for the Court to find that management was Plaintiff's primary duty.  *See Donovan v. Burger King Corp.*, 672 F.2d 221, 226-27 (1st Cir. 1982) ("*Burger King I*") (finding under FLSA regulation's former "short test," which required a finding of whether management was primary duty, " the person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work") (quoting *Rau v. Darling's Drug Store, Inc.*, 388 F. Supp. 877, 879 (W.D. Pa. 1975)); *Sturm v. TOC Retail Inc.*, 864 F. Supp. 1346, 1352-53 (M.D. Ga. 1994) (noting that "in most cases" the primary duty inquiry can be resolved "by simply deciding if the employee was "in charge"); *Murray v. Stuckey's Inc.*, 939 F.2d 614, 620 (8th Cir. 1991) (finding store managers were exempt executives where "plaintiff store managers were the on-site employees ultimately responsible for the stores' operations").

In addition, Plaintiff further admits that he scheduled employees (Plaintiff dep. 183, 185-87, 340-41); reviewed and approved employees' time punches and ensured the accuracy of payroll (*id.* 191-93, 336, Ex.8); developed and trained employees and assisted them with any questions they had (*id.* 35-36, 80-81, 96-97, 106-09, 223-64, 327-28, 352-54, Ex. 2); evaluated employees (*id.* 80-81, 106-07, 321, 323-24); motivated employees (*id.* 119-21); disciplined and addressed performance issues with employees (*id.* 125-27, 134-38); assigned employees to particular jobs (*id.* 69-71, 73-74, 92, 123-25, 205, 220-21, 327-28); and ran store meetings (*id.* 220, 296-97).  Plaintiff also admits that he determined the amount of stock to be purchased, kept track of inventory and checked in vendors.  *Id.* 68, 99, 242-45, 253-57, 357.  Plaintiff furthermore conducted audits of cashiers' drawers and otherwise ensured the appropriate handling and deposit of the store's monetary funds and assets.  *Id.* 50, 52-57, 237, 239-40.[6]

---

[6] Plaintiff further admitted that his job performance was evaluated based upon the performance of his managerial duties and his supervisory skills, such as developing employees, controlling employee turnover, minimizing shrink and theft, and creativity and imagination.  Plaintiff dep.

These are exactly the type of job duties the Second Circuit has previously held to be important managerial job functions.  *See Donovan v. Burger King*, 675 F.2d 516, 521-22 (2d Cir. 1982) ("*Burger King II*").  As the *Burger King II* court recognized, "the wrong number of employees, too much or too few supplies on hand, delays in service ... or an undirected or under supervised work force all can make the difference between commercial success and failure."  *Id.* Plaintiff admits that he ran the operations of his store; the store did not run itself.  Plaintiff dep. 143, 145.  In other words, Plaintiff was the captain of the ship and exercised his discretion to adapt the store's operations depending on each particular day in order to meet business and operational needs.  *Id*. 145-46, 220.

The job duties admittedly performed by Plaintiff ensured the commercial success of his Rite Aid store.  *See Burger King II*, 675 F.2d at 521-22; *see also Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007) (weighing importance of store manager's managerial duties (hiring, training and assigning work schedule) against non-managerial duties (stocking and cleaning), concluding store would not function "at all" if store manager did not perform the "essential" managerial duties); *Jones v. Va. Oil Co*., 69 F. App'x 633, 638 (4th Cir. 2003) (per curiam) (finding management was primary duty of Dairy Queen and convenience store manager where "the Dairy Queen could not have operated successfully unless Jones

---

52-53, 87, 93-94, 96-97, 143-45; Exs. 2, 4.  The fact that employees are evaluated based on management skills strongly suggests that their primary duty is managerial in nature.  *See, e.g.*, *Golden v. Merrill Lynch & Co.*, 2007 WL 4299443, at *13 (S.D.N.Y. Dec. 6, 2007) (granting summary judgment in favor of employer where, *inter alia*, plaintiff admitted in her deposition that she was evaluated on the bases of "supervisory skills," "identifying ways to improve business" and "ensuring her staff met [certain] goals"); *Jackson v. Advance Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1331 (N.D. Ga. 2005) (granting summary judgment to employer where plaintiff's acknowledged they were evaluated on criteria including "planning skills," "leadership skills" and "training/development"); *Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816, 821-22 (E.D. Pa. 2006) (entering summary judgment against a plaintiff who "confirmed in her deposition the accuracy of her statements on her self-evaluation form that her specific responsibilities included scheduling, ... supervising, [and] evaluating field staff performance").

performed her managerial functions, such as ordering inventory, hiring, training, and scheduling employees, and completing the daily paper-work").  Accordingly, the relative importance of Plaintiff's managerial duties clearly exceeded that of any other duties he performed, supporting the conclusion that his primary duty as a Store Manager was the management of his Rite Aid store.  *See, e.g.*, *Horne v. Crown Cent. Petrol., Inc.*, 775 F. Supp. 189, 191 (D.S.C. 1991) (finding convenience store manager exempt where "tasks regularly performed by store clerks were not nearly as crucial to the store's success as were the management functions.  The clerks merely rowed the boat; [the plaintiff] charted and steered its course.").

> **b.    Even if Plaintiff spent time performing "non-managerial" job duties, he was still properly classified as exempt as a matter of law**

The Second Circuit recognizes that even supervisors who must lend an "extra hand" "have, as their 'primary duty,' managerial responsibilities."  *Burger King II*, 675 F.2d at 520.  In *Burger King II*, the Second Circuit found that the primary duty of assistant restaurant managers was, "in fact, managerial," even though company policy "required [them] to serve as an 'extra hand' during high volume meal periods."  *Id.* at 518.  The appellate court found it "clear that the restaurants could not operate successfully unless the managerial functions ... were performed," and that "much of the oversight of the operation c[ould] be carried out simultaneously with the performance of non-exempt work."  *Id.* at 521.  The First Circuit reached the same result in an earlier action, observing that the regulations "make[] it quite clear that an employee can manage while performing other work, and that this other work does not negate the conclusion that his primary duty is management."  *Burger King I*, 672 F.2d at 226.

Verifying the validity of the reasoning set forth in the *Burger King I* and *II* decisions, the 2004 DOL regulations, issued subsequent to those decisions, specifically explain that in a retail

11

establishment a manager who spends "more than 50 percent of the time performing nonexempt work such as running the cash register" is still exempt where he also performs exempt executive job duties. 29 C.F.R. § 541.700(c). The regulations go on to explain that a manager of a retail establishment can perform work such as "serving customers ..., stocking shelves and cleaning the establishment," can "supervise employees and serve customers at the same time," and can "simultaneously direct the work of other employees and stock shelves" while being properly paid as an exempt executive. 29 C.F.R. § 541.106(b). Moreover, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a).

Thus, particularly with managers of retail establishments – who often perform managerial and non-managerial tasks concurrently and perform non-exempt tasks to "lead by example" – the case law is "'replete with decisions holding [them] to be exempt, notwithstanding the fact that they spent the majority of their time performing non-exempt tasks.'" *Mims v. Starbucks Corp.*, 2007 WL 10369, at *3 (S.D. Tex. Jan. 2, 2007) (quoting *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1300 (S.D. Fla. 2006) (finding that store managers who spent 80% of their time performing non-exempt tasks were exempt; collecting and citing cases in support)); *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 F. App'x 301, 303-04 (5th Cir. 2008) (per curiam) (finding two store managers properly classified as exempt where managers testified that they performed some of the same job duties as non-exempt store clerks and also performed many managerial job duties principal to "the day-to-day operations of their respective stores"); *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725, 743 (S.D. Ohio 2006) (finding store manager exempt, "[t]he fact that Oros spent much of his time performing general, manual tasks does not necessarily negate a finding that he qualifies for executive exemption. The Court is

required to, and has in this instance, considered all of the circumstances surrounding [plaintiff's] job functions."), *aff'd*, 225 F. App'x 362 (6th Cir. 2007); *Thomas*, 506 F.3d at 504 (finding store manager of convenience store who spent 60% of her time performing non-exempt duties was properly classified as exempt); *Jones*, 69 F. App'x at 635 (store manager found exempt even though she testified that she spent approximately "75-80 percent" of her time carrying out "basic line-worker tasks"); *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268 (S.D. Fla. 2004) (manager of retail establishment who spent 95% of his time performing non-managerial tasks found to be exempt), *aff'd*, 140 F. App'x 168 (11th Cir. 2005); *Murray*, 939 F.2d at 617-20 (reversing (after bench trial) district court's finding that store managers' primary duty was managerial despite district court's finding that managers spent "60 to 90 percent of their time performing non-managerial duties"); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2001) (holding managers at recreational vehicle park who spent 90% of time performing non-exempt work were exempt); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001) (noting "[t]he court is unpersuaded by [the plaintiff's] attempt to minimize his responsibilities by arguing that he spent 10 percent of his time performing managerial tasks"); *Meyer v. Worsley Cos., Inc.*, 881 F. Supp. 1014, 1020 (E.D.N.C. 1994) (retail store manager exempt, notwithstanding need to perform all activities of non-exempt employees).[7]

Under this established precedent, Plaintiff's testimony that he sometimes performed the same duties as the hourly employees in the store is insufficient to create a genuine issue of material fact. Plaintiff himself testified that he spent much more time performing exempt duties

---

[7] The DOL specifically endorsed this body of case law in issuing the revised regulations. *See* Final Rule, 69 Fed. Reg. at 22122-01, 22136-37, 22185-87 (2004) (noting that "[f]ederal courts have found many employees exempt who spent less than 50 percent of their time performing exempt work," particularly in restaurant and retail settings, where "an employee can have a primary duty of management while concurrently performing nonexempt duties").

than the percentages of time rejected by courts in the case law cited above.  *See* Defendants'

Rule 56.1 Statement of Facts ¶¶ 38-55 (taking facts in the light most favorable to Plaintiff

(including his low-end estimates only), Plaintiff spent at least thirty-six (36) of the seventy (70)

to (80) eighty hours he claims to have worked each week performing managerial job duties, *i.e.*,

at least 40% of his time).  Moreover, as the uncontroverted record evidence establishes, even

while performing "non-exempt" tasks, Plaintiff simultaneously performed his important

managerial duties, such as supervising employees and ensuring the safety of the employees and

customers.  Plaintiff dep. 257-58, 367-73, 403.  Furthermore, Plaintiff used his managerial

discretion and chose when to help hourly employees, for example, while they unloaded the

delivery truck, otherwise, according to Plaintiff, "they'll take all day."  *Id.* 253-55; *see also id*.

363-65 (made decisions regarding who would perform what tasks based on best interest of store).

*Cf.* 29 C.F.R. § 541.106(a) ("Generally exempt executives make the decision regarding when to

perform nonexempt duties and remain responsible for the success or failure of business

operations under their management while performing the nonexempt work.").

 Plaintiff also testified that he "led by example," which he believed made him a good

leader.  *See* Plaintiff dep. 117, 139.  Plaintiff admits that while working alongside them, he

observed employees and would give them "feedback" on their job performance as a way to

"motivate" the employees.  *Id.* 322-23.  *See also Jones*, 69 F. App'x at 637 (manager who spent

75-80 percent of time on basic line-worker tasks because store was "often short-staffed" held

exempt because she "could simultaneously perform many of her management tasks," such as

supervising employees, handling customer complaints, dealing with vendors, and completing

daily paperwork); 29 C.F.R. § 541.106(a) ("concurrent performance of exempt and nonexempt

work does not disqualify an employee from the executive exemption if the requirements of

§541.100 are otherwise met").  For all of these reasons, Plaintiff's performance of non-managerial duties is not sufficient, as a matter of law, to defeat his exempt status.

> **c.      Plaintiff was "in charge" and the highest-ranked employee in his store**

Plaintiff admits that he was "in charge" of and the "highest-ranked" employee of a multi-million-dollar operation.  *See* Section II.C.1., *supra*.  This admission alone satisfies the DOL's third primary duty factor.  *See Burger King II*, 675 F.2d at 522.  Furthermore, Plaintiff worked subject to minimal supervision and admitted that he, and not his District Manager, ran his store.  Plaintiff dep. 315.  Plaintiff's supervisor worked in a different location.  *Id*. 313-15.  They met in person only two to three times each month and typically communicated every few days by telephone and once per day by email.  *Id*.  This is exactly the type of "general" supervision that supports finding of exempt status.  *See Golden*, 2007 WL 4299443 at *13 (finding plaintiff worked "subject only to general supervision" where plaintiff's supervisor worked in a separate building and met with her once every other week or so).

> **d.      Plaintiff's compensation was significantly greater than that of the hourly employees in his store**

The fourth factor for determining whether management is Plaintiff's primary duty also supports a finding of exempt status.  Plaintiff earned at least $61,000 annually during the relevant time period, significantly more than those who reported to him.  *See* Section II.B., *supra*.  In contrast, the hourly rate for those he supervised was minimum wage or slightly higher.  *See* Crandall Decl. ¶ 20.

For the foregoing reasons, an evaluation of the DOL's primary duty test factors points to only one conclusion: Plaintiff's primary duty was the management of the enterprise in which he was employed, his Rite Aid store.

### 3. Plaintiff customarily and regularly supervised two or more employees

The DOL regulations' third requirement for the executive exemption requires that the employee must customarily and regularly direct the work of two or more other employees. 29 C.F.R. § 541.100(3). Here, Plaintiff admits that he <u>always</u> supervised at least two subordinate employees. Indeed, Plaintiff testified that he was the highest-ranking employee in the store, supervising a minimum of between eight to sixteen employees. *See* Section II.C.1, *supra*. The third requirement is satisfied as a matter of law.

### 4. Plaintiff had the authority to hire or fire other employees or his recommendations were given particular weight

There is also no question of fact regarding the DOL regulations' fourth requirement for the executive exemption. Plaintiff admits he was responsible for hiring and firing employees or, at the very least, made recommendations that were given particular weight. For example, using his own discretion, Plaintiff identified open positions within the store and selected candidates to interview. Plaintiff dep. 342-45. Plaintiff also had the authority to hire employees himself or with minimal approval from his District Manager. *Id*. 94-95, 317-18, 342-46. Plaintiff likewise had the authority to fire employees with minimal approval from his district manager. *Id*. 130-33, 137-38. Moreover, Plaintiff's recommendations regarding promotions and transfers were followed. *Id*. 80-81, 106-07, 114-15, 323-24. As such, Defendants have satisfied their burden of proof with respect to this final requirement of the Executive Exemption test. *See* 29 C.F.R. § 541.100(4).

In short, Plaintiff's own testimony, as discussed above, conclusively establishes that each of the four requirements for the executive exemption is satisfied, and he was properly classified as an exempt executive as a matter of law. Plaintiff accordingly has no claim to overtime pay under the FLSA. *See* 29 C.F.R. § 541.100.

C. **Plaintiff's Retaliation Claims Under The FLSA And NYLL Fail As A Matter Of Law**

Plaintiff asserts two claims for retaliation in his Complaint.  *See* Complaint at Claim VI and VII.  Each claim fails as a matter of law.

1. **Plaintiff's claim for retaliation under the FLSA fails because Plaintiff did not file a formal complaint prior to the alleged retaliation**

It is well-settled in the Second Circuit "that the FLSA 'limits the [retaliation] cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor.'"  *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 166 (W.D.N.Y. 2007) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993)).  The *Seever* court dismissed the plaintiffs' retaliation claim under the FLSA because there was no evidence that the plaintiffs "ever filed a formal complaint for violations of the FLSA."  528 F. Supp. 2d at 166.  *See further Aneja v. Triborough Bridge & Tunnel Auth.*, 35 F. App'x 19, 22 (2d Cir. 2002) (holding that the plaintiff's FLSA retaliation claim failed as matter of law because the plaintiff "never filed a formal complaint for violations of the FLSA before his termination"); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 651 (S.D.N.Y. 2000) ("Under the law of this Circuit, employment decisions taken in response to complaints to a supervisor, or discussions with co-workers are not actionable under the FLSA."); *Thomas v. S.E.A.L. Sec., Inc.*, 2007 WL 2446264, at *15 (S.D.N.Y. Aug. 30, 2007) ("Because there is no evidence that [plaintiff] filed a formal complaint for violations of the FLSA before his termination, this claim must fail as a matter of law."), *aff'd*, 301 F. App'x 32 (2d Cir. 2008).

As in *Seever*, *Aneja* and *Thomas*, Plaintiff admits that he never filed a formal complaint prior to his termination.  Plaintiff dep. 382.  At most, and taking the facts in the light most favorable to Plaintiff, Plaintiff complained to his supervisors, Frank Offor and Mr. Paul, as well

as other store managers, regarding Plaintiff's perception that he needed more overtime and labor hours for his store.  *Id.* 277-83.  As the Court in *Shah* explained, however, employment decisions taken in response to complaints to a supervisor or discussions with co-workers are not actionable under the FLSA.  Thus, even if Rite Aid did take adverse action against Plaintiff in response to his "complaints" to supervisors and co-workers, and those "complaints" were regarding FLSA violations, which Defendants deny, Plaintiff has no cause of action for retaliation under the FLSA.

> **2.     Plaintiff's claim for retaliation under the NYLL fails because he did not inform his supervisor of his belief that Rite Aid was violating specific provisions of the NYLL**

Claims for retaliation under the NYLL "require that the employee specifically inform [his] supervisor that the employer's pay practices violate particular provisions of the New York Labor Law."  *Seever*, 528 F. Supp. 2d at 166.  The *Seever* court dismissed the plaintiffs' claims for retaliation under the NYLL on the grounds that there was no evidence that plaintiffs complained that their employer "was violating specific provisions of the New York Labor Law."  *Id.*

Plaintiff likewise admits that he never complained to his supervisors that Rite Aid's pay practices violated the NYLL.  Plaintiff dep. 382-83.  Plaintiff failed to satisfy the condition precedent necessary to state a claim for retaliation under the NYLL.  Thus, that claim should be dismissed.  *See Seever*, 528 F. Supp. 2d at 166.

### D.     Plaintiff Cannot Present Evidence In Support Of His Claim For Injunctive Relief

To seek injunctive relief, a plaintiff must show "[a] real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted); *see also Wooden v. Bd. of Regents*, 247 F.3d 1262, 1283-84 (11th Cir. 2001).  A former employee, unlike a current employee, has "virtually no chance of suffering future" alleged wrongdoing, and therefore lacks standing to seek a prospective injunction.  *Davis v. Marsh*, 876 F.2d 1446, 1450-51 (9th Cir. 1989) (plaintiff discharged from army lacks standing to seek injunctive relief); *see Hawkins v. Groot Indus., Inc.*, 2003 WL 22057238, at *2 (N.D. Ill. Sep. 2, 2003).

Because Plaintiff is a former employee, he cannot seek injunctive relief as a matter of law.  Moreover, an action for injunctive relief under the FLSA rests exclusively with the United States Secretary of Labor.  *See* 29 U.S.C. §§ 211(a), 216(b); *Roberg v. Phipps Estate*, 156 F.2d 958, 963 (2d Cir. 1946) ("[T]he Administrator has exclusive authority to bring such an [injunction] action."); *Powell v. Washington Post Co.*, 267 F.2d 651, 652 (D.C. Cir. 1959) (per curiam) ("In so far as plaintiff's prayer relates to action by the Secretary to restrain violations, the answer is that the appeal is to his discretion."); *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37, 39 (3d Cir. 1943) ("We think it is plain from this language that the right of the administrator to bring an action for injunctive relief is an exclusive right."); *Powell v. State of Fla.*, 132 F.3d 677, 678-79 (11th Cir. 1998) (per curiam).  Plaintiff's claim for injunctive relief must also be denied as a matter of law.

IV.   <u>**CONCLUSION**</u>

Plaintiff's testimony establishes that Rite Aid properly classified Plaintiff as an exempt managerial employee.  Thus, Plaintiff has no claim under the FLSA for overtime pay.  Plaintiff's claims for retaliation under the FLSA and NYLL likewise fail because, as Plaintiff admits, he failed to satisfy the condition precedent necessary for such claims.  Plaintiff cannot seek injunctive relief as a matter of law.  For all of these reasons, Defendants respectfully request that their Motion be granted.

Respectfully submitted, this the 8th day of June, 2009.

s/ Daniel E. Turner
Daniel E. Turner
(Admitted *Pro Hac Vice*)
danturner@asherafuse.com
**ASHE, RAFUSE & HILL LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060

Patrick G. Brady, Esq.
Bar No. PB1114
pbrady@gibbonslaw.com
**EPSTEIN, BECKER & GREEN P.C.**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 642-1900
Facsimile: (973) 639-8556

*Attorneys for Defendants Rite Aid Corporation
and Rite Aid of New York, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br><br>            vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>            Defendants. | **08 Civ. 9361 (PGG)**<br>**ECF Case**<br><br>    **AFFIRMATION OF SERVICE** |

     I, Daniel E. Turner, Esq., declare under penalty of perjury that I have served a copy of the attached **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FLSA, NYLL AND INJUNCTIVE RELIEF CLAIMS** upon counsel for Plaintiff whose addresses are:

<table>
<tr>
<td align="center">Robert J. Valli, Jr., Esq.<br>VALLI, KANE & VAGNINI, LLP<br>600 Old Country Road, Suite 519<br>Garden City, New York 11530</td>
<td align="center">Keith A. Raven, Esq.<br>RAVEN & KOLBE, LLP<br>126 East 56th Street, Suite 202<br>New York, New York 10022</td>
</tr>
</table>

by electronic and first-class U.S. mail.

Dated: Atlanta, Georgia
       June 8, 2009

                           s/ Daniel E. Turner
                           Daniel E. Turner
                           danturner@asherafuse.com
                           **ASHE, RAFUSE & HILL LLP**
                           1355 Peachtree Street, N.E., Suite 500
                           Atlanta, Georgia 30309-3232
                           Telephone: (404) 253-6000
                           Facsimile: (404) 253-6060
                           *Attorney for Defendants Rite Aid*
                           *Corporation and Rite Aid of New York, Inc.*