# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

YATRAM INDERGIT on behalf               :
of himself and all others
similarly situated,                     :

                  Plaintiffs,           :    08 Civ. 9361 (PGG)(HBP)

     -against-                          :

RITE AID CORPORATION, et al.,           :

                  Defendant.            :

----------------------------------X

ANGEL NAULA and JOSE FERMIN, on         :
behalf of themselves and all
others similarly situated,              :

                  Plaintiffs,           :    08 Civ. 11364 (PGG)(HBP)

     -against-                          :    CORRECTED
                                             ORDER[1]
RITE AID OF NEW YORK INC.,              :
doing business as
Rite Aid, Rite Aid Corporation,         :
et al.,
                                        :
                  Defendants.
                                        :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          I write to resolve the parties' dispute concerning the

scope of discovery to be conducted in Docket No. 08 Civ. 9361

_____

     [1]This Order makes non-substantive corrections to the Order
entered in this matter dated March 22, 2011.

with respect to plaintiff's collective claim.  The issue was
discussed at a conference in this matter on September 22, 2010
and was briefed by counsel in a series of letters I received in
October, November and December 2010.

Among other things, the Amended Complaint in this
action alleges a collective action pursuant to Section 16(b) of
the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  The
collective action alleges that defendants have violated the FLSA
by failing to pay overtime wages to managers of defendants'
stores.  Defendants claim, among other things, that the managers
of their stores are exempt executive employees within the meaning
of Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1), and,
therefore, are not entitled to receive overtime wages.

The action has been conditionally certified as a
collective action, and approximately 1540 managers have opted in.
The remaining hurdle which must be cleared before plaintiffs can
proceed with the action as a collective action is defendants'
contemplated motion for decertification.  Although FLSA plain-
tiffs need only make a "modest factual showing" to obtain condi-
tional certification of their claim as a collective claim,
Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y.
1998) (Sotomayor, D.J.) (collecting cases); Hoffman v. Sbarro,
Inc,. 982 F. Supp. 2d 249, 261 (S.D.N.Y. 1997), they must shoul-

der a heavier burden at the decertification stage. At the decertification stage, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010), citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001). To survive a motion for decertification, "[p]laintiffs need not meet, however, the more 'stringent' requirements that apply to the joinder and severance of claims. . . . All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." Pefanis v. Westway Diner, Inc., 08 Civ. 2 (DLC), 2010 WL 3564426 at *4 (S.D.N.Y. Sept. 7, 2010). Although plaintiffs' burden is heavier at this second stage, in order to survive a decertification motion, "plaintiffs need only show that their positions were similar, not identical." Shabazz v. Morgan Funding Corp., 269

3

F.R.D. 245, 251 (S.D.N.Y. 2010) (Marrero, D.J.), citing

Dumitrescu v. Mr. Chow Enterprises, Ltd., 07 Civ. 3601 (PKL),

2008 WL 2600667 at *5 (S.D.N.Y. June 30, 2008) (Leisure, D.J.).

Although the applicability of the exemption for executive employ-

ees requires examination of the "dut[ies] that the employee"

actually "performs," 29 C.F.R. § 541.700(a), there does not

appear to be anything about the inherent nature of the exemption

for executive employees that precludes a collective action or

representative proof.   Myers v. Hertz Corp., supra, 624 F.3d at

549; Indergit v. Rite Aid Corp., 08 Civ. 9361 (PGG), 08 Civ.

11364 (PGG), 2010 WL 2465488 at *9 (S.D.N.Y. July 16, 2010)

(Gardephe, D.J.).

          The parties' submissions suggest that there may have

been be some confusion over the issue I wanted them to address.

At the September 22 conference, I understood the parties to

disagree on the scope of discovery that would be permitted if the

action survived a motion for decertification.   It was for that

reason that I stayed discovery on the merits of the collective

claim but permitted discovery concerning the viability of the

FLSA claim as a collective action to proceed.   Although it is not

clear, it appears from the parties' submissions that they do not

even agree on the scope of discovery that should be taken con-

cerning the motion for decertification.

4

Assuming that the parties disagree on the scope of discovery that should be conducted with respect to the decertifi-cation motion, I conclude that it is not necessary to conduct discovery of each and every opt-in in order to determine whether the opt-ins are similarly situated.  As noted above, the issue at the decertification stage is whether the plaintiffs' actual duties are sufficiently similar such that is it is appropriate for the action to continue as a collective action.  Whether there is substantial homogeneity among the duties performed by store managers can be determined with substantially less than 1540 depositions.  I conclude that the question can be answered by depositions of fifty managers -- 25 of whom are to be selected by plaintiffs and 25 of whom are to be selected by defendants.

I have considered the possibility of conducting this discovery by way of a questionnaire and have concluded that depositions are the better alternative; I believe that the amount of time that it will take the parties to craft an acceptable questionnaire will, in all probability, approach the amount of time it would take to conduct fifty depositions.  I have also considered the burden of conducting fifty depositions, mindful of the fact that the burden will probably weigh more heavily on plaintiffs than on defendants.  Nevertheless, it is plaintiffs who chose to bring this action as a nation-wide collective

5

action. Having broadly defined the class in the collective

action, plaintiffs cannot be heard to complain when the resultant

discovery is similarly broad. Finally, I have also considered

defendants' contention that Judge Gardephe, in his March 31, 2010

decision, has already determined that the FLSA claims will

require factual determination unique to each member of the

collective class. See Indergit v. Rite Aid Corp., 08 Civ. 9361

(PGG), 08 Civ. 11364 (PGG), 2010 WL 1327242 at *5 (S.D.N.Y. Mar.

31, 2010). Defendants' argument in this regard misreads Judge

Gardephe's March 31 decision. Although Judge Gardephe clearly

found that the applicability of the exemption for executive

employees will require "a highly fact-intensive inquiry that is

to be made on a case-by-case basis in light of the totality of

the circumstances," 2010 WL 1327242 at *5, he did not hold that

the factual inquiry will necessarily be unique to each manager.

Moreover, in a subsequent decision, Judge Gardephe expressly

rejected the argument that a collective action does not lie

merely because defendant invokes the exemption for executive

employees. Indergit v. Rite Aid Corp., supra, 2010 WL 2465488 at

*9 ("Rite Aid argues that determining an employee's exempt status

under the executive exemption 'requires an analysis of each

individual's daily job duties,' and that because this is a

fact-intensive inquiry, this type of FLSA claim cannot be the

subject of an FLSA collective action. . . . This argument ignores
the purposes of the FLSA."). Finally, the Court of Appeals has
noted that actions involving similar claims and defenses have
been certified as collective actions and successfully resolved.
Myers v. Hertz Corp., supra, 624 F.3d at 549.

Accordingly, for all the foregoing reasons, discovery
with respect to the contemplated motion for decertification of
the collective claim shall be limited to the depositions of fifty
managers, 25 of whom shall be selected by plaintiffs and 25 of
whom shall be selected by defendants.

Dated:  New York, New York
        March 25, 2011

                            SO ORDERED

                            HENRY PITMAN
                            United States Magistrate Judge

Copies transmitted to:

Robert J. Valli, Jr, Esq.
Sara W. Kane, Esq.
Jesse C. Rose, Esq.
The Law Office of Steven A. Morelli
1461 Franklin Ave.
Garden City, New York  11530

Deven Hahn, Esq.
Dinovo Price Ellwanger LLP
P.O. Box 201690
Austin, Texas  78720

James Vagnini, Esq.
Jesse C. Rose, Esq.
Valli Kane & Vagnini LLP
600 Old Country Road
Garden City, New York   11530

Jay D. Ellwanger, Esq.
DiNovo Price Ellwanger and Hardy LLP
Suite 350
7000 N. MoPac Expressway
Austin, Texas   78731

Scott Lenhart, Esq.
Beth Moeller, Esq.
Kalin M. Light, Esq.
Kristy Offitt., Esq.
Tracey T. Barbaree, Esq.
Ashe, Rafuse & Hill, LLP
Suite 500
1355 Peachtree Street, N.E.
Atlanta, Georgia   30309

Justin M. Scott, Esq.
Daniel Turner, Esq.
Ogletree, Dearkins, Nash,
    Smoak & Stewart, P.C.
Suite 4800
191 Peachtree Street, N.E.
Atlanta, Georgia   30303

Patrick G. Brady, Esq.
Suzanne K. Brown, Esq.
Epstein Becker & Green, P.C.
12th Floor
Two Gateway Center
Newark, New Jersey   07102

Keith A. Raven Esq.
Raven & Kolbe, LLP
Suite 202
126 East 56th Street
New York, New York   10022

# Exhibit D



**Rite Aid Corporation**
Human Resources Dept.
PO Box 3165
Harrisburg, PA 17105
hone 717.761.2633 ext. 4505
Fax 717.731.3860

# Job Description Approval Memo

**TO:** Sam Bailey, Vice President, Compensation

**THROUGH:** Denise Weiler, Director, Store Services
Mark Panzer, Senior Executive Vice President, Store Operations

**FROM:** Maria Martino, User Information Analyst

**SUBJECT:** Job Description #40, Store Manager

**DATE:** 10/3/2005

---

**PURPOSE**     The job description referenced above is attached for approval and
legal review.

---

**ACTION**     Review the attached job description and indicate any changes that
need to be made:

- If there are changes, send the job description and memo directly
  to Maria Martino, for revisions. Changes may be written directly
  on the job description or another sheet of paper.
- If no changes are required, sign this memo where indicated in the
  Certification section and forward for legal review.

---

**RESPOND BY**     10/17/2005

---

**CERTIFICATION**     I read the above referenced job description and acknowledge that all
information is true and correct.

Denise Weiler     Date 10/5/05
Director, Store Services

Mark Panzer     Date 10/5/05
Senior Executive Vice President, Store Operations

Approved:

Sam Bailey     Date 10-06-05
Vice President, Compensation

Grade: RAR

INDERGIT-RA 1895
CONFIDENTIAL

## Rite Aid Job Description

All rights reserved. For internal use only No part of this document may be reproduced or distributed to anyone outside Rite Aid Corporation without prior written consent.

# Store Manager

| | |
|---|---|
| Reports To: | District Manager |
| Group: | NA |
| Division: | East, Central, and West |
| Region: | Various |
| Section/Cost Center: | Various |
| Location: | Retail stores |
| Job Number: | 40 |
| Job Type: | Salary |
| Work Status: | Full time |
| FLSA Status: | Exempt |
| Level of Supervision Received: | Moderate |
| Work Pace: | Self-paced |
| Internal Customer Contact: | Regularly |
| External Customer Contact: | Regularly |
| Creation/Revision Date: | June 2005 |

### SUMMARY

The primary purpose of this position is to manage the operation of an individual store in an efficient manner while maximizing sales, margin and profitability. Enforce company policies and procedures while ensuring directives and all daily activities deliver against the expected operating standards, merchandising programming and budgeted financial targets. Promotes and drives customer service. Frequent independent judgments are essential. The incumbent is also required to perform all tasks in a safe manner consistent with corporate policies and state and federal laws.

### ESSENTIAL DUTIES AND RESPONSIBILITIES

The associate is responsible for the functions below, in addition to other duties as assigned:

1. Responsible for opening and closing the store and maintaining proper accountability for cash handling and company banking.
2. Responsible for meeting store retail budgeted sales, margin, labor, expenses and overall P&L monthly results to ensure operating EBITDA and income are achieved.
3. Utilize and follow Staffworks to ensure that labor is scheduled to meet customer service needs and completing operating activities and ensure the same standards of operation are enforced in the pharmacy department.
4. Provide leadership and development for associates by communicating career opportunities, providing regular performance feedback, and demonstrating SMILE and RAPTAR behaviors to both external and internal customers and associates.
5. Adhere to all regulatory and compliance legislation and policies.
6. Provide a clean, safe, and pleasing environment to customers and associates by following company standards for safety regulations and overall store appearance both inside and outside of the store; maintain and follow rules in Clutter Free.
7. Maintain merchandise standards according to the POMP manual, profit planner, corporate plan-o-grams and on-going merchandise information.
8. Responsible for the preparation and accountability of retail store physical inventory and for developing action plans to achieve expected results.
9. Responsible for hiring and training.

### SUPERVISORY RESPONSIBILITIES

This position directly supervises store associates and carries out supervisory responsibilities in accordance with Rite Aid policies and applicable laws. Responsibilities include interviewing, hiring, training, directing, rewarding, and disciplining associates; appraising associate performance; and resolving complaints.

INDERGIT-RA 1896
CONFIDENTIAL

### QUALIFICATION REQUIREMENTS

To perform this job successfully, the associate must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skills, and/or abilities required:

#### Education and/or Experience
Bachelor's degree (BA/BS) in Business, or a minimum of four (4) years experience in retail, or one (1) year experience as an assistant manager; or equivalent combination of education and experience

#### Language Skills
Ability to read and comprehend simple instructions, short correspondence, and memos. Ability to write simple correspondence. Ability to effectively present information in one-on-one and small-group situations to customers, clients, and other associates. Ability to read, write, and speak English fluently.

#### Mathematical Skills
Ability to add, subtract, multiply, and divide in all units of measure, using whole numbers, common fractions, and decimals. Ability to compute rate, ratio, and percent and to draw and interpret bar graphs.

#### Reasoning Ability
Ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Ability to interpret a variety of instructions furnished in written, oral, diagram, or schedule form.

#### Other Skills, Abilities, and/or Training
The following qualities are required:

* Minimum age of 21 years old to sell alcohol and tobacco.
* Ability to pass drug test.
* Committed to providing customer service that makes both internal and external customers feel welcome, important, and appreciated.
* Ability to preserve confidentiality of information.
* Ability and willingness to move with purpose and a strong sense of urgency.
* Ability to work weekends and extended days on a frequent basis.
* Ability to work day or evening hours.
* Accuracy and attention to detail.
* Ability to organize and prioritize a variety of tasks/projects.
* Familiarity with industry/technical terms and processes.
* Ability to work within strict time frames and resolute deadlines.
* Completion of Store Management training programs.
* Completion of required HIPAA training and all other required regulatory compliance training.

The following qualities are helpful:

* Ten-key punch speed of four thousand (4,000) SPH.
* Typing speed of forty (40) WPM.
* Proficiency with the Microsoft® Office Suite (Word, Excel, PowerPoint, and Access).
* Ability to speak a second language in certain areas of the country.

### CERTIFICATES, LICENSES, AND/OR REGISTRATIONS

This position requires RAD Pharmacy Technician certification.

### PHYSICAL DEMANDS

The physical demands described below are representative of those that must be met to successfully perform the essential functions of this job. The associate is:

INDERGIT-RA 1897
CONFIDENTIAL

STORE MANAGER, JOB # 40                                                                    RITE AID JOB DESCRIPTION

- Regularly required to do the following activities:
  - Stand dynamically for long periods without a break.
  - Talk and hear; verbally express ideas and impart information or instructions.
  - Use hands to finger, handle, and/or feel; the ability to type, pick, pinch with fingers, seize, hold, grasp or turn with hands, and perceive attributes of objects and materials, such as size, shape, temperature, or texture, by touching with fingertips.
  - Maintain balance while walking, standing, crouching, or running.

- Frequently required to do the following activities:
  - Twist upper torso.
  - Stoop, kneel, crouch, and/or crawl.
  - Reach up and out with hands and arms.
  - Lift up to ten (10) pounds and carry a distance of two hundred (200) feet.
  - Push and/or pull up to fifty (50) pounds a distance of one hundred (100) feet.

- Occasionally required to do the following activities:
  - Stand statically for long periods without a break.
  - Climb stairs and/or ladders.
  - Lift up to twenty-five (25) pounds and carry a distance of one hundred (100) feet.
  - Push and/or pull up to ten (10) pounds a distance of two hundred (200) feet.

- Rarely required to do the following activities:
  - Remain seated in a normal position for long periods.
  - Lift and push/pull up to one hundred (100) pounds a distance of ten (10) feet.

- Specific vision abilities required for this job include:
  - Close vision (clear vision at 20 inches or less).
  - Distance vision (clear vision at 20 feet or more).

### WORK ENVIRONMENT

The work environment characteristics described here are representative of those encountered while performing the essential functions of this job. The associate is:

- Regularly exposed to indoor conditions with a moderate noise level.

- Occasionally exposed to fumes or airborne particles.

- Rarely exposed to:
  - Work near moving mechanical parts.
  - Work in high, precarious places.
  - Toxic or caustic chemicals.

INDERGIT-RA 1898
CONFIDENTIAL

3