UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
YATRAM INDERGIT, on behalf of himself
and all others similarly situated,

                      **Plaintiff,**

         v.                                 08 CV 9361 (JPO) (PGG)

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and  FRANCIS
OFFOR as Aider & Abettor,

                      **Defendants.**
-------------------------------------------------------------


# MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION


                               Robert J. Valli, Jr. (RV-9995)
                               James Vagnini (JV-2163)
                               Aneeba Rehman (AR-6404)
                               **Valli Kane & Vagnini LLP**
                               600 Old Country Road, Suite 519
                               Garden City, NY 11530
                               *Attorneys for Plaintiffs*

                               Jay D. Ellwanger
                               Adam G. Price
                               John D. Saba
                               **DiNovo Price Ellwanger & Hardy LLP**
                               7000 North MoPac Expressway
                               Suite 350
                               Austin, Texas 78731
                               *Attorneys for Plaintiff*

## Table of Contents

Table of Contents ................................................................................*i*

Table of Authorities ..........................................................................*ii*

ARGUMENT ....................................................................................2

   I.      Plaintiffs Establish Rule 23 Requirements For Certification ........................2

       A.     Plaintiffs Establish Commonality.................................................3

       B.     Plaintiffs Establish Typicality ....................................................4

       C.     Plaintiffs Establish Predominance ...............................................8

   II.     The Court's Prior Summary Judgment Decision ......................................10

   III.    Defendants' Legal Arguments and Support are Flawed ..............................11

       A.     *Tierno:* Defendants Misstate the Law of the Ninth Circuit .....................11

       B.     *Hertz* Does Not Support Rite Aid's Arguments ..................................13

       C.     *Gardner* Does Not Support Rite Aid's Arguments ...............................14

       D.     *Damassia* Is Controlling Law ....................................................15

## Table of Authorities

**Cases**

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y.2010). ............................ 5, 7, 10

*Clark v. Ecolab, Inc.*, 2009 WL 6615729 (S.D.N.Y Nov. 27, 2009).................................................. 5

*Cuevas v. Citizens Financial Group, Inc., No.* 10-CV-5582, 2012 WL 1865564 (E.D.N.Y. May
    22, 2012)............................................................................................................................ 15

*Damassia v. Duane Reade, Inc.* 250 F.R.D. 152 (S.D.N.Y 2008).................................. 2, 5, 12, 15

*Deane v. Fastenal,* Case No. 11-CV-0042 (N.D. Cal) ................................................................ 12

*Dorn v. Eddington Sec., Inc.*, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ................................ 3, 5

*Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 124 (S.D.N.Y.2011) ............................... 1, 2, 3

*Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y.2012) ...................................................... 11

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y .2005) ........................................ 5

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. CV 09–486(ETB), 281 F.R.D. 100
    (E.D.N.Y. Dec. 15, 2011)...................................................................................................4

*Gardner v. Western Beef Properties*, No. 07-CV-2345, 2011 WL 6140518 (E.D.N.Y. Sept. 26,
    2011)................................................................................................................................. 14

*Han v. Sterling Nat. Mortg. Co., Inc.*, 2011 WL 4344235 (E.D.N.Y.2011).................................. 3

*In re NTL Sec. Litig.*, 2006 WL 330113 (S.D.N.Y. Feb.14, 2006)................................................ 4

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2nd Cir. 2008).................................... 2

*Jean-Baptiste v. U.S.*, 2012 WL 3137458 (E.D.N.Y. Aug. 1, 2012). ............................................ 6

*Kowalski v. YellowPages.com, LLC,* No. 10 CIV. 7318 PGG, 2012 WL 1097350 (S.D.N.Y. Mar.
    31, 2012)........................................................................................................................... 10

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y.2006) ...................................................... 4

*Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228 (S.D.N.Y.2002) ............................ 10, 12

*Morgan v. Family Dollar Stores Inc.*, 551 F.3d at 1263................................................... 9, 13

*Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 615–16 (S.D.N.Y.2012) ...................... 5

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).......................................... 9, 10, 12, 13, 15

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y.2012)............. 3

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y.2010) .......................................................... 4

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2nd Cir. N.Y. 2011) ............4

*Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056 (N.D.Cal. Aug.31, 2006) . 11, 12

*Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ............4

*Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 95-46 (9th Cir. 2009)..................... 11, 12

*Wal-Mart, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ......................................................... 2

*Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 4597555 (S.D.N.Y. Oct. 11, 2011)... ..2,3, 8, 15

**Statutes**

FED. R. CIV. P. 23(a) ................................................................................. 1, 2, 3, 5

FED. R. CIV. P. 23(b). ..................................................................................... 2

FED. R. CIV. P. 32(a)(1)(A) ............................................................................. 6

Rite Aid wants to have it both ways. After Rite Aid classified all store managers ("SMs") as exempt based on uniform corporate policies delineating the SMs' standardized job responsibilities, Rite Aid now claims that the Court must ignore those same corporate policies and conduct an individualized inquiry to determine whether the SMs were properly classified. Rite Aid's legal about-face must not be tolerated. The record supports class certification.

To be clear, it is Rite Aid's *policy* of classifying SMs as exempt from overtime wages that is at issue here. Prior to this litigation, Rite Aid never considered it necessary to examine individual issues to determine SMs' exemption status. Instead, it uniformly classified SMs as a group with no regard to the variables they now claim to be essential in the exemption analysis. Rite Aid cannot now be heard to argue that SMs were properly exempt from overtime wages while also arguing that the Court must inquire into the job duties of each SM in order to determine whether that individual is exempt.

To the extent that Rite Aid identifies individualized variations in some SMs' tasks, those are immaterial to a determination on the merits and have no impact on class certification.[1] Contrary to Rite Aid's suggestion, Federal Rule of Civil Procedure 23 ("Rule 23") does not require SM tasks to be identical. "Rule 23(a)(2) requires a showing that 'there are questions of law or fact common to the class.' . . . Commonality may be met even though class members' individual circumstances differ, so long as their '*injuries derive from a unitary course of conduct.*'" *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 124 (S.D.N.Y.2011) (emphasis added) (citations omitted). The facts do not support Rite Aid's arguments, and based upon this standard, Rule 23 certification is proper. As Rite Aid's own witnesses and documents confirm, all SMs function within a standardized, uniform framework, carefully orchestrated by Rite Aid

---

[1] Plaintiff incorporates by reference Plaintiff's arguments set forth in Plaintiff's Opposition to Defendants' Motion to Decertify. Although not limited to New York SMs, the arguments made in Plaintiff's Opposition support the Court granting Plaintiff's Rule 23 Motion here.

management.   Therefore, due to the evidence of uniformity among SMs and Rite Aid's own blanket treatment of SMs as exempt, class certification is appropriate.

## ARGUMENT

With no credible Rule 23 defense, Rite Aid repeatedly cites *Wal-Mart, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). *Wal-Mart* is inapposite to the instant case because, as this Court recognized in another New York retail manager misclassification case, "[u]nlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims 'do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.'" *Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 11, 2011) (citations omitted).

## I.   Plaintiff Establishes Rule 23 Requirements For Certification

To certify the class, Plaintiff must demonstrate that the class and its representatives meet all of the requirements of FED. R. CIV. P. 23(a) and 23(b).  "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza*, 280 F.R.D. at 124.  The Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy.   *Damassia v. Duane Reade, Inc.* 250 F.R.D. 152 (S.D.N.Y 2008).   The Rule 23(b) requirements are predominance and superiority.   *Id.*   The disputed Rule 23 requirements—commonality, typicality and predominance—are met.

Moreover, the standard of review that will be applied to this motion favors certification. When reviewing this Court's decision regarding class certification, the Second Circuit affords "the district court noticeably more deference than when [it] review[s] a denial of class certification."   *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2nd Cir. 2008).

### A.   Plaintiff Establishes Commonality

2

In challenging commonality, Rite Aid ignores the many misclassification cases finding commonality. Moreover, Rite Aid *itself* essentially made a class-wide exemption for SMs. Rite Aid used a single job description for exempt SMs, as well as policies and procedures that both standardize SMs' job duties and uniformly constrain their exercise of independent judgment, and using a single job description for exempt SMs. *See* Pls' Br. at 15 (discussing that even after the 2009 change and creation of two separate job descriptions—one for hourly SMs and one for salaried SMs—the job descriptions are nearly identical); *see also* Valli Dec. in Supp., Exhs. 20-21. Rite Aid's policies and procedures are "unquestionably probative of . . . actual duties," and "create common questions as to whether [plaintiffs] are properly classified as . . . exempt." *Youngblood*, 2011 WL 4597555, at *4 (citations omitted). New York District Courts have recently held that class certification is appropriate where "the crux of [the] case is whether . . . company-wide policies, as implemented, violated Plaintiffs' statutory rights," regardless of some variation among the daily duties of class members. *Id.*; *see also Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 615–16 (S.D.N.Y. 2012); *Espinoza*, 280 F.R.D. at 130; *Han v. Sterling Nat. Mortg. Co., Inc.*, 2011 WL 4344235, at *4 (E.D.N.Y. 2011).

Wage and hour violations—involving common operative facts stemming from corporate policies that affected the class members—are sufficient to meet Rule 23(a)'s commonality factor. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 at * 3 (S.D.N.Y. 2012). Rule 23(a)(2) is satisfied where all plaintiffs have the "identical" claim that defendant failed to abide by state and federal labor laws. *Id.*; *see also Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 (S.D.N.Y. Jan. 21, 2011) (finding that Rule 23(a)(2) is satisfied where "common issues" included whether defendants violated wage and hour laws by both failing to pay overtime and spread-of-hours pay and failing to keep accurate records of time

3

worked).  Regardless of the SMs exemption status, the job duties for *all* SMs are the same, the job descriptions for *all* SMs are nearly identical, and the corporate policies/procedures are applicable regardless of classification.[2]  Therefore, there are common operative facts stemming from these corporate policies sufficient to satisfy the commonality requirement.

Plaintiff and Rite Aid may disagree on how to characterize SMs' job duties (exempt or nonexempt) and how to assess their relative importance (primary duties or not), but these are common questions proper for class treatment.  "The commonality requirement is satisfied if the class shares *even one* common question of law or fact, and factual differences in the claims of the class do not preclude a finding of commonality."  *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y.2006) and *In re NTL Sec. Litig.*, 2006 WL 330113, at *6 (S.D.N.Y. Feb.14, 2006)) (emphasis added).  Courts have certified classes of employees challenging their classification as exempt, despite arguments about "individualized" differences in job duties.[3]  "[C]ommonality is not defeated because some individualized proof may be necessary to assess whether defendants properly deemed the proposed class exempt."  *Han*, 2011 WL 4344235 at *4.

## B.    Plaintiff Establishes Typicality

Typicality is easily satisfied here because "all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory, namely, that Rite

---

[2] Rite Aid has but one job description for all exempt SMs, just as it has uniform corporate policies and procedures for all SMs and characterized all SMs as exempt in one fell swoop based on store revenue. *See* Valli Dec. in Supp., Exh.s 1, 17-21; Valli Dec. in Reply, Exh. 43 (Supporting Chart).
[3] *See, e.g., Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 at 244 (2nd Cir. 2011) (granting motion for class certification of the proposed class of employees alleging that employer required employees to share tips with tip-inelligible coworkers and failing to pay them for an extra hour's work when their workdays lasted more than 10 hours); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. CV 09–486(ETB), 281 F.R.D. 100 (E.D.N.Y. Dec. 15, 2011) (granting motion for class certification of the proposed class of assistant managers of stores in drug store chain alleging that chain failed to pay them overtime as required under the FLSA and New York Labor Law); *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *2 (S.D.N.Y. Sept. 29, 2006) (improper classification of store co-managers and department managers at supermarket chain).

Aid's decision to classify its SMs as 'exempt' is inconsistent with the requirements of the NYLL." *Damassia*, 250 F.R.D. at 158. *See also Dorn v. Eddington Security, Inc.*, 2011 WL 382200, at *2 (S.D.N.Y. Jan. 21, 2011) (holding that "Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay . . . arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *4 (S.D.N.Y Nov. 27, 2009); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y .2005) (finding that class members satisfied the typicality requirement where "all class members . . . allege that [defendant] failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"). "[D]ifferences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y. 2010).

Rite Aid incorrectly contends that "Plaintiff claims – without support – that SMs spend the majority of their days engaging in non-managerial tasks and 'have no input, let alone power to make independent decisions, for many 'managerial' duties.'" *See* Defs' Br. at 16. But Plaintiff's Brief is replete with evidentiary support for this contention. *See* Pls' Br. at 6-9, 19-22. Rite Aid's argument assumes away these commonalities and attempts to play upon the irrelevant differences. Facing Plaintiff's strong showing of commonality, Rite Aid instead selects snippets of Plaintiff's testimony—often taken out of context, distorted, and relying heavily on unsupported attorney argument. This tactic backfires. The record shows that Rite Aid uniformly and systemically constrained the SMs' ability to exercise discretion and

independent judgment. *See* Pls' Br. at 6-12; *see also* Exh. 43 (Supporting Chart).[4]

Moreover, in a desperate attempt to manufacture evidence, Rite Aid attempts to improperly include deposition testimony of Assistant Store Managers ("ASMs") from depositions taken in another case. *See* Exhs. 29-35 and 38-39 to the Declaration of Daniel Turner. Plaintiff objects to Rite Aid's improper use of this testimony. Rite Aid should not be permitted to use the biased testimony of ASMs who were deposed for their own overtime claims in a separate action, outside Plaintiff's counsel's presence. Plaintiff was not given notice of the depositions or afforded the right to attend the depositions, and Plaintiff was deprived of his right to question and cross examine the ASMs. *See* Valli Dec. in Reply. Thus, the ASM testimony— specifically Exhs. 29-35 and 38-39—submitted by Rite Aid from another case is improper and should be excluded from the record. *See* FED. R. CIV. P. 32(a)(1)(A) ("At a hearing or trial, all or part of a deposition may be used against a party on these conditions: the party was present or represented at the taking of the deposition or had reasonable notice of it."); *see also Jean-Baptiste v. U.S.*, 2012 WL 3137458, at *2 (E.D.N.Y. Aug. 1, 2012). Furthermore, Rite Aid's use of this evidence fails to demonstrate that the certification is not appropriate or that the common issues of law and fact cannot be addressed collectively.

*Performing Vast Amounts of Non-Managerial Work.* SMs spend the majority of their time engaging in non-managerial work. Providing carefully selected examples of purported variations in job duties, Rite Aid ignores evidence from the record which demonstrates that SMs were forced to perform hourly, non-managerial tasks on a daily basis and that Rite Aid district

---

[4] Relevant deposition excerpts are attached as exhibits to the Declaration of Robert J. Valli Jr. in Reply ("Valli Dec. in Reply"). The Reply exhibits include exhibits 43-60 and are numbered in continuing order from the Valli Declaration in Support of Certification Motion ("Valli Dec. in Supp."). Where relevant evidence here was already cited to in Plaintiff's Brief in Support, Plaintiff cites to Plaintiff's Brief ("Pls' Br").

managers ("DMs")—deposed by Plaintiff—testified to this fact.[5]   Contrary to Rite Aid's
assertions, these tasks were dictated by Rite Aid; there were strict guidelines on how these non-managerial duties were to be performed.  *See* Exh. 43 (Supporting Chart).

Rite Aid argues that Plaintiff's "damages are also highly individualized" and further
weigh against class certification.  Defs' Br. at p. 15 n.45.  But this notion is also misplaced as
"differences among class members as to the number of hours worked, the precise work they did
and the amount of pay they received concern the amount of damages to which any individual
class member might be entitled, not the amenability of their claims to Rule 23 certification."
*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y. 2010).

*Budgeting/Overtime*.  SMs played no role in deciding the labor budget of each store.
Both SMs and DMs testified that SMs did not decide the store's labor budget and were
disciplined for going over the budget.[6]   SMs often requested additional payroll but were not
permitted to use overtime hours.[7]   Consequently, because SMs lacked the hourly employees
necessary to perform non-managerial tasks, they were forced to perform these tasks.

*Hiring and Firing*.  Similarly, SMs played an insignificant role in making personnel
decisions on their own.  Even "recommendations" to hire entailed merely referring applicants to
the district manager or corporate headquarters.  Even if SMs "recommended" people for hiring,
this was not a primary duty.  Indeed, SMs testified that because of the limited labor budgets, any
opportunity to hire hourly employees was significantly limited.   Finally, SMs had no
independent authority to terminate employees, as evidenced by Rite Aid's own corporate

---

[5] Pls' Br. at 19; *see also* SM deposition testimony: Exh. 52, Saab, 308:2-9; Exh. 54, Simons, 95:16-19, 210:15-24;
Exh. 45, Hazara, 78:7-10, 82:22-24, 83:20-24, 84:3-9, 86:8-21; Exh. 46, Blake, 55:7-14; Exh. 47, Otuaney, 73:5-10;
Exh. 48, Khan, 53:20-23, 54:7-9, 54:14-16; Exh. 49, Rand, 204:3-11. Indeed, even DMs recognize non-managerial
work as SM daily tasks. Exh. 60, DM Virga, 173:9-15; Exh. 56, DM Carpenter, 149:5-18.
[6] Pls' Br. at 22; *see also* Exh. 54, Simons, 198:13-16; Exh. 47, Otuaney, 54:15-22; Exh. 49, Rand, 120:21-25; Exh.
56, DM Carpenter, 118:2-13.
[7] Pls' Br. at 22-23; *see also* Exh. 50, Indergit, 149:3-23; Exh. 45, Hazara, p. 43:18-2; Exh. 48, Khan, 60:23-61:5;
Exh. 49, Rand, 195:15-22, 201:16-19.

7

policies.[8]

   *Preparing Work Schedules*.   SMs involvement in "preparing" a work schedule entails

printing out a computer generated schedule from StaffWorks (now Workforce Management

System). SMs play no actual role in the creation of the schedule aside from inputting basic

information so that a computer could automatically generate the schedule.[9]

   *Training*.   Rite Aid trains its SMs using uniform training materials.  In its Opposition,

Rite Aid omits the fact that Rite Aid requires standardized training, that SMs were routinely sent

to cover shifts in different stores, and that if an SM moved to a different geographic location,

they were not re-trained.  The evidence shows that Rite Aid did not specifically tailor training to

an individualized store, store location, or store volume.[10]

   *Store Display Planning*.   SMs played no role in planning how individual stores should

look.  Instead, SMs are required to follow strict blueprints on corporate structured layouts.[11]

Rite Aid cannot refute the fact that their own policies are proof of this strict control.

### C.   Plaintiff Establishes Predominance

   In attempting to show that individual issues will predominate, Rite Aid identifies

distinctions without legal significance.  There is simply no evidence that these distinctions "are

of such a magnitude as to cause individual issues to predominate."  *Youngblood*, 2011 WL

4597555 at *5 (quotation omitted).   Instead, Rite Aid confuses the notion of "responsibility"

with "actual duties."  For example, Rite Aid asserts that "SMs are responsible for the overall

operations of their stores."  Defs' Br. at 2.  But that notion, even if true, does not mean that the

---

[8] Valli Dec. in Supp., Ex. 14; Pls' Br. at 9-11; *see also* Valli Dec. in Reply: Exh. 47, Otuaney, 90:22-91:11; Exh. 48, Khan, 71:13-20; Exh. 49, Rand, 62:2-13.
[9] Pls' Br. at 12; *see* Exh. 45, Hazara, 43:18-21; Exh. 48, Khan, 60:23-61:5; Exh. 49, Rand, 195:15-22, 201:16-19
[10] Pls' Br. at 18; *see also* Exh. 55, Spencer, 71:9-20; Exh. 56, DM Carpenter, 110:3-7.
[11] Pls' Br. at 7; *see also* Exh. 56, DM Carpenter, 77:6-14, 167:18-23; Exh. 57, DM Dilallo, 159:13-18; Exh. 58, DM Smykla: 210:5-11; Exh. 59, DM Spink, 169:25, 170:1-6, 176:20-25, 177:1-6; Exh. 50, Indergit, 390:24-25; Exh. 51, Gerber, 302:8-11, 312:18-19, 314:20-21; Exh. 52, Saab, 44:7-16; Exh. 53, Santos, 181:7-25, 213:6-8; Exh. 54, Simons, 155:17-21; Exh. 55, Spencer, 75:22-24, 77:17-20, 76:16-22; Exh. 46, Blake, 38:5-9.

*majority* of time spent by the SMs was on non-managerial duties.  Further, even if the SMs were ultimately responsible for their stores, this fact has no bearing on class certification or the ultimate merits of the case.  The relevant inquiry before this Court concerns "evidence tending to show that the plaintiffs' jobs were similar in ways *material to the establishment of the [legally relevant] criteria*." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2nd Cir. 2010) (emphasis added).  Because the SMs primary duties are "largely similar, the predominance inquiry is satisfied in favor of class certification." *See Han*, 2011 WL 4344235, at *9.

   With respect to the questions that are actually relevant to the SMs' claims, the testimony is almost uniformly consistent across the class—SMs were required to work overtime without compensation.[12]  Virtually every aspect of a store's daily function is controlled by Rite Aid's uniform, nationwide corporate policies which are regularly provided to SMs.[13] The Motion details a multitude of examples of these uniform corporate policies, which Rite Aid cannot refute, including: store lay outs, job descriptions, management hierarchy/structure, recruiting, hiring and firing processes, operations manuals, same precuts and services, same intra-net, policies and procedures manuals, exact same computer applications including scheduling programs, uniform training materials/programs, same orientation programs, same progressive discipline policy, planograms and pricing of merchandise.  Pls' Br. at 3-12.

   Rite Aid ignores these common facts, and instead argues that differences in geographic locations, square footage, sales revenues, and the individual store manager's style create

---

[12] Exh. 51, SM Gerber, 236:8-10, 275:8-10; Exh. 53, SM Santos, 156:5-7; Exh. 54, SM Simons, 75:11-13; Exh. 55, SM Spencer, 8:22-25; Exh. 47, SM Otuaney, 44:18-20, 55:22-25; Exh. 48, SM Khan, 31:6-7, 65:6-16; Exh. 45, SM Hazara, p. 15:10-17; Exh. 46, SM Blake, 15:7-12,19:21-25.

[13] SMs are required to perform uniform tasks, mandated by a "one-size-fits-all corporate manual." *See Morgan*, 551 F.3d at 1264.  Granting conditional certification in the instant case, Judge Gardephe pointed to Defendants internal documents which provide extensive details on how daily tasks should be completed.  Pls' Br. at 6.  Attached as Exhibit 43 to Valli Dec. in Reply, is a Supporting Chart outlining support through corporate documents, corporate witnesses, district manager and store manager testimony proving that RA expects and trains its SMs to perform the same tasks, in the same fashion ("Supporting Chart").

variations that they claim cannot be resolved collectively. But Rite Aid fails to demonstrate a nexus between these variations with the actual job duties associated with the SM position. Indeed, Plaintiff does not argue that any two SMs are absolutely identical and hardly expect this Court to ignore individual (albeit insignificant) variations, but rather to examine them within a single proceeding so as to take full advantage of the class device.[14]

Moreover, this Court is empowered to re-examine the propriety of certification at any time if it appears that individual issues will predominate at trial. Absent a grant of certification, however, it is nearly assured that the multiplicity of trials will result in enormous expense, which is neither efficient nor fair. The advantages of class treatment are unquestionable and as such, class certification should be granted.

## II.    The Court's Prior Summary Judgment Decision

Rite Aid also argues that the Court's previous Summary Judgment Order, issued on March 31, 2010, 08 Civ. 9361 (PGG) (Doc. No 92) somehow "confirms that class treatment [here] is not possible." Defs' Br. at 11. This assertion is disingenuous, addressing the merits of the case rather than class certification:

> 'A motion for class certification should not . . . become a mini-trial on the merits.' *Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y.2002). 'The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Kowalski v. YellowPages.com, LLC*, No. 10 CIV. 7318 PGG, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012) (quoting *Lucent Techs.*, 211 F.R.D. at 231). In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.' Myers*, 624 F.3d at 549 (emphasis added).

---

[14] Rite Aid argues that Plaintiff's "damages are also highly individualized" and further weigh against class certification. Defs' Br. at p. 15 n.45. But this notion is also misplaced as "differences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y.2010).

*Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y.2012).

Rite Aid makes a circular argument, claiming that there can now be no class certification because the Court previously found there was a factual dispute over whether Indergit's "'primary duty' was 'management of the enterprise.'" Defs' Br. at. 11. The Court's reasoning was based on "the incomplete nature of the record," as the representative proof depositions had yet to be taken. *See* SJ Order (Doc. No. 92) at 14. However, the Court's stance on whether this early ruling negatively impacted the Court's ability to certify the class is better evidenced by the Court's conditional certification of the class three months later. *See* Gardephe Cert. Order, Jun. 16, 2010 (Doc. No. 67).   "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan,* 551 F.3d at 1263.

### III.   Defendants' Legal Arguments and Case Law Analysis are Flawed

#### A.   *Tierno:* Defendants Misstate the Law of the Ninth Circuit

Rite Aid argues that *Tierno* is "dated caselaw that has since been rejected." Defs' Br. at 8 (citing *Tierno v. Rite Aid Corp.,* C 05-02520 TEH, 2006 WL 2535056, at *10 (N.D. Cal. Aug. 31, 2006)).  To support this assertion, Ride Aid cites *Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 95-46 (9th Cir. 2009) for the proposition that "a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Id.*  However, this is a misstatement of the law and *not* what *Vinole* holds.  Specifically, in *Vinole,* the Ninth Circuit did <u>not</u> overrule *Tierno:*

> Our approach is consistent with that taken by several district courts with respect to evaluating class certification in the wage exemption context. **These courts acknowledged the employer's uniform application of an exemption to employees, but focused on whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof.** *See, e.g., Sepulveda,* 237 F.R.D. at 247-49 (denying class certification), aff'd in relevant part, 275 Fed.Appx. at 672; *Alba v. Papa John's USA,* Inc., No. CV 05-7487

GAF, 2007 WL 953849, *10-13 (certifying sub-classes); ***Tierno v. Rite Aid Corp.***, No. C 05-02520 TEH, 2006 WL 2535056, *5-10 (N.D.Cal. Aug.31, 2006) (certifying class); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y.2008) ("**Where ... there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.**")

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (emphasis added).

Thus, contrary to Rite Aid's legal contentions, a defendant's uniform classification, in addition to centralized and standardized policies (such as was the case in *Tierno*, as well as in this matter) warrants class certification.

Similarly, Rite Aid boldly states that in *Deane v. Fastenal*, a September 2012 Northern District of California opinion, the court "chastised plaintiffs' counsel for relying on the *Tierno* decision." Defs' Bf. at n.25. Defendants misstate the law. In fact, the court in *Dean v. Fastenal* made no reference or mention of *Tierno*. Rite Aid's gross misstatement of the law can only be seen as an effort to distance itself from *Tierno* which warrants class certification.

*Tierno* remains not only good law, but also directly on point to the facts of this case. Rite Aid made the same arguments in *Tierno* as it does in this matter. The *Tierno* court held that it was "satisfied that Plaintiff has met his burden of demonstrating that common issues [] predominate over individual issues in this case" and that "[t]he evidence indicates that Rite Aid treats its Store Managers as one homogenous group and that while some variations may exist, the Store Manager position at Rite Aid is, in fact, sufficiently similar from store to store in all important respects such that class treatment is appropriate in this case." *Tierno*, 2006 WL 2535056, at *10. This Court grant should certification for the same reasons.

**B.   *Hertz* Does Not Support Rite Aid's Arguments**

Defendants rely heavily on *Hertz* to support their argument that an individualized

analysis of the actual duties of each SM is necessary, but *Hertz* is not applicable to the certification facts before this Court.  In *Hertz*, plaintiffs filed a motion for class certification, asking the district court to certify a class of New York station managers.  *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010).  In support of their request, plaintiffs offered two types of evidence: (1) evidence that Hertz had categorized all station managers as exempt; and (2) the testimony of one operations manager who had worked at various Hertz locations.  *Id.* at 549.  As to the first category of evidence, the court held that while the company's exemption policy was some evidence of commonality, it was—itself—insufficient to establish that common issues would predominate.  *Id.* at 549.  As to the second category of evidence, the testimony of a single Hertz representative—which provided only "mixed support" for plaintiffs' position—was also insufficient to establish the predominance requirement.  *Id.* at 550.  And, because the plaintiffs failed to produce any additional evidence, the district court denied plaintiffs' motion for certification.  *Id.*  On review, the Second Circuit held that the district court had not abused his discretion in reaching that conclusion.  *Id.* at 551.  Thus, *Hertz* stands for nothing more than the proposition that a district court may deny certification when the plaintiffs have only produced evidence of (1) a common exemption policy, and (2) equivocal testimony of one individual.

Consequently, unlike *Hertz,* evidence in the present case that the SMs' have similar job duties is legion.  This evidence includes (1) comprehensive and uniform written corporate policies delineating the SMs' job duties;[15] (2) a common blanket exemption policy for all SMs;[16] (3) a single, uniform job description for all SMs (which was in place until this litigation was filed);[17] and (4) testimony from an array of SMs that they have similar job duties regardless of

---

[15] Valli Dec. in Supp., Exhs. 3, 4, 5, 6, 7, 8, 9, 10, 11.
[16] Valli Dec. in Supp., Exh. 17.
[17] Valli Dec. in Supp., Exh. 19; *see also* Valli Dec. in Supp., Exhs. 20, 21.

the size of the store or geographic location.[18]   Taken together, this evidence is more than

sufficient to establish that the SMs' job duties are similar and, thus, that common questions as to

Defendants' liability will predominate. *Hertz*, 624 F.3d at 549 ("[I]f the plaintiffs can show that

'some' of the above questions can be answered with respect to the members of the class as a

whole 'through generalized proof' and that those common issues are 'more substantial' than

individual ones.").

### C.   *Gardner* Does Not Support Rite Aid's Arguments

In *Gardner*, the plaintiffs were employed as Managers or Assistant Managers across nine

different departments.   *Gardner v. Western Beef Properties*, No. 07-CV-2345, 2011 WL

6140518, at *1 (E.D.N.Y. Sept. 26, 2011).  In support of their motion for class certification, the

plaintiffs offered two types of evidence: (1) evidence that defendants categorized all Managers

and Assistant Managers as exempt, and (2) deposition testimony of some plaintiffs stating that

their duties were non-managerial.  *Id.* at *5.

As to the first category of evidence, the *Gardner* court followed *Hertz* and held that a

company's blanket exemption policy is—itself—insufficient to establish that common issues

would predominate.  *Id.* at *5.  As to the second category of evidence, the court found that the

testimony was insufficient to justify class treatment because there was no evidence that the

testimony could be imputed to other putative class members.  *Id.*  However, the court went on to

suggest that class certification would have been proper if plaintiffs had produced some additional

evidence—such as a uniform job description that applied to all plaintiffs—to demonstrate that

the putative class members' job duties were similar.  *Id.* at *6 n.8.

Here, Plaintiff has produced substantial evidence to establish that, according to

Defendants' own written policies, all of the SMs' job duties were similarly non-managerial.  As

---

[18] Valli Dec. in Reply., *See* Exh. 43 (Supporting Chart).

noted above, this evidence includes (1) comprehensive and uniform written corporate policies delineating job duties; (2) a common blanket exemption policy for all store managers; (3) a single, uniform job description for all store managers (in place until this litigation was filed); and (4) testimony from an array of putative class members showing similar job duties regardless of the size of the store or geographic location. Taken together, this evidence is more than sufficient to establish that the putative class members' job duties are similar such that common questions as to Defendants' liability will predominate.

### D.    *Damassia* Is Controlling Law

Rite Aid attempts to distinguish *Damassia v. Duane Reade, Inc.* 250 F.R.D. 152 (S.D.N.Y 2008) in which this Court granted certification of NYLL claims. Def. Br., p. 10. The gravamen of Rite Aid's argument is that Rite Aid—unlike Duane Reade in *Damassia*—does not concede the obvious fact that there is a common issue of law: whether class members were exempt from the NYLL. But Rite Aid's attempt to distinguish *Damassia* on this ground fails because the basis of this lawsuit is whether store managers were properly classified as exempt from the overtime laws. This issue permeates the entire case, has been the focus of discovery and the briefing before this Court. After spending large swaths of its Opposition Brief and Motion to Decertify on the issue of whether the SMs were improperly classified as exempt, Rite Aid cannot now be heard to deny that this case involves a common issue of law—that SMs were improperly classified as exempt. Simply because Rite Aid has refused to make an obvious concession does not mean that a case that has been repeatedly relied on by this District cannot now be ignored. *See Youngblood*, 2011 WL 4597555; *Cuevas v. Citizens Financial Group, Inc., No.* 10-CV-5582, 2012 WL 1865564, at *1-3 (E.D.N.Y. May 22, 2012); *Meyers v. Hertz Corp.*, 624 F.3d at 549 (while denying certification, the Court endorsed the *Damassia* holding that the "plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria.").

15

Dated:      Garden City, New York
            January 22, 2013

                                        Respectfully submitted,

                                        Robert J. Valli, Jr. (RV-9995)
                                        James Vagnini (JV-2163)
                                        Aneeba Rehman (AR-6404)
                                        **Valli Kane & Vagnini LLP**
                                        600 Old Country Road, Suite 519
                                        Garden City, NY 11530
                                        *Attorneys for Plaintiffs*

                                        Jay D. Ellwanger
                                        Adam G. Price
                                        John D. Saba
                                        **DiNovo Price Ellwanger & Hardy LLP**
                                        7000 North MoPac Expressway
                                        Suite 350
                                        Austin, Texas 78731
                                        *Attorneys for Plaintiff*

16