UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
YATRAM INDERGIT, on behalf of himself
and all others similarly situated,

                            Plaintiff,

        v.                                                          08 CV 9361 (JPO) (PGG)

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC. and  FRANCIS
OFFOR as Aider & Abettor,

                            Defendants.
-------------------------------------------------------------------

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR DECERTIFICATION

Robert J. Valli, Jr. (RV-9995)
James Vagnini (JV-2163)
Aneeba Rehman (AR-6404)
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, NY 11530
*Attorneys for Plaintiffs*

Jay D. Ellwanger
John Saba
**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
*Attorneys for Plaintiffs*

## Table of Contents

I. PRELIMINARY STATEMENT ........................................................................1

II. BACKGROUND .....................................................................................3

III. LEGAL STANDARD ..............................................................................6

IV. RELEVANT FACTS FROM RECORD ...........................................................8

    A.     Defendants' Corporate Policies Support Collective Treatment of SMs .............8

    B.     Plaintiffs' Testimony Supports Collective Treatment of SMs ......................10

V. LEGAL ARGUMENT ..............................................................................14

    A. The Court Should Deny Rite Aid's Motion for Decertification Because Plaintiffs Are

        Similarly Situated Under the FLSA....................................................14

    1. Plaintiffs Work in Similar Factual and Employment Settings.......................14

    2. The Potential for Individualized Defenses Does Not

        Prevent Collective Treatment............................................................18

        a. Defendants' Exemption Defenses Are Not Applicable ...........................20

        b. Defendants' Bankruptcy and Credibility Defenses Are Not Applicable ........21

        c. Defendants' Misapplication of the Court's Summary Judgment Order.........22

    3. Fairness and Procedural Considerations Favor Collective Treatment....................23

    B. Courts Have Certified State Law Misclassification Claims Under Stricter

        Rule 23 Standards ......................................................................25

C. Practical Ramifications of Decertification.......................................................29

CONCLUSION ........................................................................................30

## Table of Authorities

**Cases**

*Ayers v. SGS Control Serv., Inc.*, No. 03-cv-9078 (RMB), 2007 U.S. Dist. LEXIS 19634
(S.D.N.Y. Feb. 26, 2007) .................................................................................................... 16, 17

*Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir.1973) .................................. 28

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)............................................................................. 18

*Canales v. 115 Broadway Corp.*, No. 09-cv-4674 (RJS), 2009 U.S. Dist. LEXIS 86745
(S.D.N.Y. Sept. 22, 2009) ........................................................................................................ 7

*Craig v. Rite Aid Corp.*, No. 08-cv-2317, 2009 U.S. Dist. LEXIS114785 (M.D. Pa. Dec. 9, 2009)
............................................................................................................................................... 3

*Crawford v. Lexington-Fayette Urban Cnty. Gov't.*, No. 06-cv-299 2008 U.S. Dist. LEXIS
56089 (E.D. KY. July 22, 2008) ............................................................................................. 21

*Cuevas v. Citizens Fin. Grp.*, 283 F.R.D. 95 (E.D.N.Y. 2012) ........................................... 25, 26

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)........ 2, 9, 15, 18, 19, 20, 25, 26

*Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982) .................................................. 28

*Espinoza v. 953 Assoc LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011). ................................................. 7

*Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528 (S.D.Tex. 2008).................................. 22, 24, 28

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) .................................................. 22, 23

*Gayle v. Harry's Nurses Registry, Inc.,* No. 07-cv-4672, 2012 U.S. Dist. LEXIS 28157
(S.D.N.Y Mar. 1, 2012)…………………………………………………………………………..14

*Goldman v. RadioShack Corp.*, No. 03-0032, 2006 U.S. Dist. LEXIS 2433 (E.D. Pa. Jan 23,
2006) ..................................................................................................................................... 25

*Gortat v. Capala Bros. Inc.,* No. 07-cv-3629 (ILG), 2012 U.S. Dist. LEXIS 47066 (E.D.N.Y.
Apr. 3, 2012)……………………………………………………………………………………..24

*Grayson v. Kmart Corp.*, 79 F.3d 1096 (11th Cir. 1996)) ................................................ 7, 15, 19

*Gregory v. Home Depot U.S.A., Inc.*, No. 3:01-cv-00372 slip op. (AWT), 2001 U.S. Dist LEXIS
25922 (D. Conn. July 3, 2001)................................................................................................ 17

*Grochowski v. Phoenix Constr.*, 318 F.R.D. 80 (2d Cir. 2003) ....................................... 28

*Han v. Sterling Nat'l. Mortg. Grp.*, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. 2011)............ 1, 20

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1215. ....................................................... 19

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ................................................. 19

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)............................................................. 23

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y 2007) ................................ 26

*Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010)). ............... 26

*Kelly v. SBC, Inc.*, No. 97-cv-2729 (CW), 1998 U.S. Dist. LEXIS 18643 (N.D. Cal. Nov. 13

1998) ..................................................................................................................................... 17

*Khadera v. ABM Indus. Inc.*, No. 08-0417 (RSM), U.S. Dist. LEXIS 22327 (W.D. Wash. Feb.

21, 2012). ............................................................................................................................... 21

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) .................. 7, 14, 18, 23

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006). .................................................... 6

*Levy v. Verizon Info. Servs., Inc.*, 12 Wage & Hour Cas. 2d (BNA) 1373 (E.D.N.Y. June 11,

2007) ..................................................................................................................................... 16

*Lynch v. United Servs. Auto. Assoc.*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007); ......................... 4, 24

*Morgan v. Family Dollar*, 551 F.3d 1233 (11th Cir. Ala. 2008)...................................... 19, 23, 28

*Monroe v. FTS USA, LLC*, 763 F. Supp.2d 979 (W.D. Tenn. 2011)...................................... 18, 21

*Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000)......................................................... 17

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) *cert. denied*, 132 S. Ct. 368, 181 L. Ed. 2d

234 (U.S. 2011). .............................................................................................................. 7, 16, 20

*Nerland v. Caribou Coffee*, 564 F. Supp. 2d 1010 (D. Minn. 2007) ........................... 7, 15, 20, 24

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. Ohio, 2009)............................... 7, 18

*Pefanis v. Westway Diner, Inc.*, 2010 U.S. Dist. LEXIS 93180

(S.D.N.Y. Sept. 7, 2010)............................................................................................ 6, 16, 20, 26

*Phil. Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968) ............................... 24

*Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179 (S.D. Tex. Apr. 21,

2010). ................................................................................................................................ 15, 30

*Prickett v. DeKalb Cnty.*, 349 F.3d 1294 (11 Cir. 2003)............................................................. 23

*Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346 (E.D.N.Y. 2011)..................................... 2, 14

*Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294 (S.D.N.Y. 2011) ................................................. 19

*Ravenell v. Avis Budget Car Rental, LLC*, No. 08-cv-2113, 2010 U.S. Dist. LEXIS 72563

(E.D.N.Y. July 19, 2010) ................................................................................................... 15, 18

*Reich v. Gateway Press*, 13 F.3d 685 (3d Cir.1994) ................................................................... 28

*Rodolico v. Unisys Corp.*, 199 F.R.D. 468 (E.D.N.Y. 2001)................................................... 18, 25

*Ross v. RBS Citizens*, No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779
(N.D. Ill. Oct. 8, 2010)....................................................................................................................... 26

*Schultz v. Capital Int'l. Sec. Inc.*, 466 F.3d 298 (4th Cir. 2006) .................................................. 28

*Searson v. Concord Mortg. Corp.*, No. cv-07–3909, 2009 U.S. Dist. LEXIS 88926
(E.D.N.Y.2009) ............................................................................................................................... 19

*Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245 (S.D.N.Y June 9, 2010) .....................14

*Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189 (3d Cir. 2011). ........................................... 23

*Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006)) ....... 4, 26, 27

*Wilks v. Pep Boys*, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537
(M.D. Tenn. Sept. 26, 2006) ................................................................................................... 15, 23

*Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397 (S.D.N.Y. 2012) ......................................... 16, 22

*Woe by Woe  v. Cuomo*, 729 F.2d 96 (2nd Cir. 1984). .................................................................. 29

*Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4,
2011) .......................................................................................................................................... 25, 26

**Statutes**

FED. R. CIV. P. 23 ..................................................................................................................... 7, 25

**Other Authorities**

THE FAIR LABOR STANDARDS ACT 1333 (Ellen C. Kearns et al., eds.1999).................... 28

Plaintiff Yatram Indergit, on behalf of himself and his similarly situated current and former store managers ("SM"s or "Store Managers") (collectively "Plaintiffs"),[1] respectfully submits this Memorandum of Law in Opposition to Rite Aid of New York, Rite Aid Corporation and Frank Offor's (collectively "Rite Aid" or "Defendants") Motion for Decertification of the Fair Labor and Standards Act ("FLSA") Collective Action ("Motion" or "Defendants' Motion").

## I.
## PRELIMINARY STATEMENT

Rite Aid's Motion requires that this Court ignore precedent from within this Circuit and District, ignore Rite Aid's own uniformly-applied national corporate policies, and ignore the disorderly inefficiencies created by Rite Aid's demand that the 1,545 Plaintiffs who have opted-in to this collective action serially litigate the exact same claims covering the exact same issues in scores of federal courtrooms across the nation. In support of their Motion, Defendants argue that both exemption defenses and individual defenses preclude collective treatment, and that fairness, manageability and procedural considerations weigh in favor of decertification. Def. Mot., p. 2-4. Rite Aid's arguments lack merit.

Defendants essentially claim that because the 1,545 Plaintiffs are individuals, they can never be exactly the same. Such a position would essentially vitiate the ability of any collective action to ever proceed, and circumvents the very nature, policy and purpose of the FLSA's class action authority. As long as Plaintiffs show that their job duties were similar, the exemption defense does not preclude class certification. See, e.g., Han v. Sterling Nat'l. Mortg. Grp., No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453, at *28 (E.D.N.Y. 2011) (granting class certification). Similarly, the mere existence of individual defenses does not support a finding

---

[1] The collective class is defined as follows: All current and former store managers who have worked for Defendants as salaried Store Managers any time between October 31, 2002 to the final disposition of this case, and who have not been paid all wages owed to them, including overtime premiums, in violation of the Fair Labor and Standards Act (the "Class").

1

that individual issues predominate over common issues. *See, e.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008).   Through deposition testimony, Rite Aid's job descriptions, and a review of Defendants' corporate policies, Plaintiffs have shown similarity and thus the maintenance of this lawsuit as a collective action under FLSA, 29 U.S.C. §216(b) (hereinafter, "FLSA §216(b)") is not only proper, but is exactly the type of class action contemplated by the statute. *See Ramos v. Simplex Grinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) (holding that wage claims are "especially suited to class litigation—perhaps 'the most perfect questions for class treatment' – despite difference in hours worked, wages paid and wages due").

Defendants argue that it would be more "fair" to the Plaintiffs to require each of them to file their own separate federal court lawsuit. This argument ignores the vastly different resources available to a company like Rite Aid, as opposed to the resources available to each of their individual Store Managers.  Rite Aid further argues that it would be more "manageable" to burden the court system with 1,545 identical lawsuits, all of which would allege violations of the same statutes, rely upon the same corporate documents, and require the same damages analysis. Finally, Rite Aid argues that due process "procedural considerations" weigh in favor of decertification.  To the contrary, the strikingly similar testimony of the 50 representative Store Managers deposed in this matter evidence that this case is well-suited for representative proof. *See* Plaintiffs' Deposition Summary Charts in Support of Plaintiffs' Opposition to Defendants' Decertification Motion, attached as Exhibit A to the Valli Declaration, which summarizes the relevant SM deposition testimony and demonstrates that regardless of geographic location, or any individual attribute, SMs are similarly situated.

The collective action procedure was created by Congress for exactly the circumstances here—to efficiently adjudicate similar claims and avoid multiple lawsuits where several employees have been similarly harmed by FLSA violations of the same employer. *See, e.g. Lynch v. United Servs. Auto. Assoc.*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007); *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011). Plaintiffs sufficiently evidence their similarities below, and therefore class certification is the proper vehicle to attain judicial efficiency and ensure that all of the Plaintiffs have a fair opportunity to seek redress for their claims.[2]

## II.
## BACKGROUND

On October 30, 2008, Plaintiffs filed a complaint against Defendants alleging violations of the FLSA and New York Labor Law ("NYLL"). On July 24, 2009, Plaintiffs filed a motion for conditional certification under the FLSA. On March 31, 2010 (and subsequently on June 15, 2010 in a Memorandum Opinion), Judge Gardephe granted Plaintiffs' motion. *See* Ex. B, Gardephe Certification Order (Doc. No. 67). Judge Gardephe granted conditional certification and held that "Rite Aid's store managers are similarly situated." *Id.*, 22-23 (noting that this holding was "consistent with the decisions of other courts addressing similar allegations by Rite Aid store managers and assistant managers.") (citing *Craig v. Rite Aid Corp.*, No. 08-cv-2317,

---

[2] All exhibits (including past Orders, and relevant excerpts from store manager, district manager and 30(b)(6) deposition testimony, as well as Rite Aid corporate documents are attached to the Declaration of Robert J. Valli, Jr. ("Valli Decl."). All SM depositions are cited by the opt-in's last name and the state in which they worked for Rite Aid (*e.g.* SM Yatram Indergit is cited as "Indergit (NY)"). District Managers are cited as "DM," followed by the District Manger's last name (e.g. District Manager John Perkins is citied as "DM Perkins"), and Rite Aid 30(b)(6) Corporate witnesses are cited by their last name (*e.g.* Kristin Crandall, Vice President of Field Human Resources is cited as "Crandall 30(b)(6)"). Exhibit A to Valli Decl. is Plaintiffs' Deposition Summary Charts in Support of Plaintiffs' Opposition to Defendants' Decertification Motion. The chart summarizes the relevant SM deposition testimony and demonstrates that regardless of geographic location, or any individual attribute, SMs *are* similarly situated.

2009 U.S. Dist. LEXIS114785, at *13 (M.D. Pa. Dec. 9, 2009) and *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794, at *13-19 (N.D. Cal. Aug. 31, 2006)).

The parties subsequently engaged in extensive discovery[3]—including more than 70 depositions of witnesses (approximately 50 SMs, 20 District Managers ("DMs"), and Rite Aid corporate representatives) across 26 states.[4]  Consistent with Judge Gardephe's initial conclusions, the post-discovery record confirms that the SMs are similarly situated. *See* Exhibit A. All the SMs hold the same job title, work under the same job descriptions and supervisory hierarchy, and are bound by the same policies and procedures.[5]

Blithely ignored by Rite Aid in its Motion is the fact that until 2009, Rite Aid itself treated all SMs as one homogenous group, misclassifying all of the SMs as exempt from the FLSA. *See* Crandall 30(b)(6), 90:5-10.  In 2009, when Rite Aid reclassified some SMs as nonexempt after the filing of this complaint,[6] Rite Aid did *not* conduct an individual analysis to determine those new classifications; instead, Rite Aid treated the SMs as a similarly situated

---

[3] Defendants sought to depose every opt-in, and Plaintiffs objected, arguing that depositions of a representative sample of the opt-in SMs was sufficient.  In his March 25, 2011 Order, Judge Pitman agreed with Plaintiffs. *See* Ex. C, Order, March 25, 2011 (Doc. No 132 ).  In allowing representative discovery, Judge Pitman held that "it is not necessary to conduct discovery of each and every opt-in in order to determine whether opt-ins are similarly situated . . . Whether there is substantial homogeneity among the duties performed by store managers can be determined with substantially less than 1540 depositions." *Id.* at 5. As such, the depositions of opt-in store managers were limited to 50 out of approximately 1540 Plaintiffs. *See id.*

[4] These states include: New York, Alabama, Washington D.C., Maryland, New Jersey, Connecticut, Delaware, Pennsylvania, Massachusetts, Colorado, Georgia, South Carolina, Ohio, Mississippi, Tennessee, Maine, Louisiana, Washington, Michigan, North Carolina, Arizona, California, Oregon, and Kentucky.

[5] *See* Ex. D-F, Job Descriptions; Ex. G Store Mgmt. Guide; Ex. H, Atlas; Ex. I, Store Manager Office Standards and Set-Up; Ex. J, "POMP" Manual; Ex. K, Counseling/Development Form; Ex. L, Workweek Standards; Ex. M, Weekly Front End Directives; Ex. N, SYSMs; Ex. O, Mgmt. Development Program; Indergit (NY), 65:5-8 ("Well, all stores have the same duty.").

[6] Regardless of the 2009 reclassification of some SMs from exempt to non-exempt, all SMs duties remained the same and SMs are sufficiently "similarly situated" to proceed collectively. The reclassification only had an effect on damages – an issue which can be resolved at a later stage. However, if the Court believes that decertification should be granted due to the reclassification of some SMs, Plaintiff proposes the alternative of creating a subclass consisting of non-exempt SMs.

group of individuals, distinguished only by store volume.[7] RA created a Front End Leadership Structure Chart which, as demonstrated below, laid out ranges for store volume and designated the managerial composition of the store – including which SM positions would be exempt versus non-exempt:

## Front End Store Leadership Structure
### FY2010



**GENERAL NOTES:**

➢ Volumes indicated are annual FE sales, based on the following calculation: Average store weekly volume in non-peak weeks multiplied by 52.
➢ 24 Hour Stores: FE Store Structure on Charts 4-7 under consideration. Do not change current FE Structures.
➢ Document not to be used in California or SEIU 1199 stores.

**CHART 1 – FE Volume: < $750k**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |

**CHART 2 – FE Volume: $750k – $1.0m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Part time |

**CHART 3 – FE Volume: $1.0m – $1.25m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Part time |

**CHART 4 – FE Volume: $1.25m – $1.5m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Exempt | - |
| Assistant Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Part time |

**CHART 5 – FE Volume: $1.5m – $2.5m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Exempt | - |
| Assistant Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |

**CHART 6 – FE Volume: $2.5m – $4.0m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Exempt | - |
| Assistant Manager | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |

**CHART 7 – FE Volume: > $4.0m**

| Title | FLSA status | FT/PT status |
|---|---|---|
| Store Manager | Exempt | - |
| Assistant Manager | Exempt | - |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |
| Shift Supervisor | Non-exempt | Full time |

INDEROIT-RA 288556
CONFIDENTIAL

1/1

*Attorney Work-Product / Attorney Client Privilege     – Do not distribute –*                1/7/2009

Ex. P, Front-End Structure Chart.[8]

Rite Aid had an opportunity to conduct fact-specific individual inquiries to determine the exemption status of each SM. However, as the chart demonstrates, store location, SM

---

[7] *See* Crandall 30(b)(6), 74:21-75:5. *See* Crandall 30(b)(6), 74:21-75:5; DM Barrett (CT), 142:3-4 ("It was based strictly on the store's volume."); DM Carpenter (NY), 35:24-36:4; DM Augustine (NY), 110-12. Even after the restructuring, all SMs' job duties remained the same, regardless of exemption status. DM Perkins (LA), 121:23-122:5.

[8] Due to this volume based reclassification, 1,847 out of 4,791 SMs were reclassified as non-exempt SMs, leaving 2,944 classified as exempt. Ex. Q, Sept 14, 2012 Joint Stipulation. As of September 2012, the number of exempt SMs has dwindled down to 1,660 while the number of non-exempt SMs has increased to 2,253. Ex. P, Front-End Structure Charts.

experience, working relationships with the DMs, and store-specific attributes played no role in Rite Aid's decision as to which SMs would be reclassified to non-exempt positions. *See* Ex P; Crandall 30(b)(6), 90:5-10. Rite Aid chose to treat all SMs as a uniform group when it suited them. Now, Rite Aid flip-flops and seeks to distance itself from that position and demand that this Court view SMs not as a uniform group, but instead as individuals.

As set forth below, however, the evidence of record confirms that (1) the Plaintiffs have similar factual and employment settings; (2) the potential defenses available to Defendants still allow for collective treatment; and (3) the fairness and procedural considerations relevant to this matter favor class treatment. Thus, Plaintiffs' FLSA claims should proceed to trial as a collective action and Defendants' Motion should be denied.

## III.
## LEGAL STANDARD

Courts follow a two-step process when determining whether a matter should proceed as a collective action. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). First, a court determines whether class members are "similarly situated" based on pleadings and affidavits; if the plaintiff meets the minimal burden of showing that the "similarly situated" requirement is satisfied, a court certifies the class as a collective action. *Id.* Second, and after discovery as a class has taken place, the court examines the record and makes a factual finding regarding the "similarly situated" requirement. *Id.* at 197. At this second stage, the question is whether, based on a more developed factual record, the plaintiffs are still "similarly situated" within the meaning of FLSA §216(b) such that the original plaintiffs may continue to represent the opt-in plaintiffs through trial. *See Pefanis v. Westway Diner, Inc.*, No. 08-cv-002 (DLC), 2010 U.S. Dist. LEXIS 93180, at *10 (S.D.N.Y. Sept. 7, 2010).

6

To determine whether class members are "similarly situated" under 216(b), courts typically look at (1) the factual and employment settings of the individual plaintiffs; (2) potential defenses available to defendants; and (3) fairness and procedural considerations counseling for or against collective-action treatment. *See Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008). "[P]laintiffs need show only that their positions are similar, *not identical*, to the positions held by the putative class members." *Grayson v. Kmart Corp.*, 79 F.3d 1096, at *21 (11th Cir. 1996)) (*emphasis added*); *see also Nerland v. Caribou Coffee*, 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007). If the record shows all putative class members are "similarly situated," the "conditional" aspect is removed, the collective action is finally certified, and the matter proceeds to trial. *See Canales v. 115 Broadway Corp.*, No. 09-cv-4674 (RJS), 2009 U.S. Dist. LEXIS 86745, at *3-4 (S.D.N.Y. Sept. 22, 2009).

Although the "similarly situated" requirement is elevated at the second stage, it remains less stringent than that of FED. R. CIV. P. 23 requiring that common questions predominate. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. Ohio, 2009) (citing *Grayson, 79 F.3d at 1095-96*). In fact, the decision to certify an FLSA class action is considered by the Second Circuit to be more of a "case management tool." *Espinoza v. 953 Assoc LLC*, 280 F.R.D. 113, 123 (S.D.N.Y. 2011).

The "ultimate determination of certification" is within the sound discretion of the court. *Myers v. Hertz Corp.*, 624 F.3d 537, 547, (2d Cir. 2010) *cert. denied,* 132 S. Ct. 368, 181 L. Ed. 2d 234 (U.S. 2011). Accordingly, a court's determination is reviewed only for an abuse of discretion. *Id.* Thus, this Court has wide latitude in ultimately determining whether or not to certify a collective action.

## IV.
## RELEVANT FACTS FROM RECORD

In support of Plaintiffs' argument that they are similarly situated and should proceed to trial as a class action, Plaintiffs respectfully direct the Court to the evidence from the record identified below.

### A.     Defendants' Corporate Policies Support Collective Treatment of SMs.

Rite Aid concluded that all SMs—regardless of their store location, size, type; or their experience, or relationship with their DM—were so identical in nature that Rite Aid assigned all SMs identical duties to be performed in an identical fashion. *See* Indergit (NY), 67:7-11 & 67:20-21. These corporate policies, which dictate all aspects of store management, are contained in the following documents:

**Rite Aid Store Manager Job Descriptions** (Ex. D, Ex. E & Ex. F). Prior to this litigation, Rite Aid created and relied on a single job description for all SMs nationwide. As part of Rite Aid's 2009 restructuring, Rite Aid created two new SM job descriptions: one for exempt SMs and one for newly non-exempt SMs. Despite the reclassification, the job descriptions are *virtually identical. See id.*; *See also* Crandall 30(b)(6) 53:23-25 (admitting that "the job descriptions themselves are very similar other than, again, just a couple of wording things. And then, of course, the designation of salary versus hourly in the description at the top of it.").

In addition to Rite Aid's tacit admission of similarity amongst the SMs, Judge Gardephe addressed the significance of the Rite Aid job descriptions in his ruling to conditionally certify the class:

> The job description indicates that all store managers- across the country- have the same duties. This document also indicates that the decision to classify Rite Aid store managers as exempt was made at the national level; the job description lists the "FLSA status" as "exempt." Therefore, it is reasonable to infer that the policy

8

of classifying store managers across all Rite Aid regions as exempt from the FLSA's overtime requirements reflects a company-wide policy.

Ex. B, Order, p. 11-12 (citing *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *9 (S.D.N.Y. Oct. 4, 2006)).

**Store Management Guide** (Ex. G). Rite Aid's guide to all SMs detailed virtually every aspect of a Rite Aid store's daily functions. The same Store Management Guide was used by all Rite Aid stores nationwide.

**Store Atlas** (Ex. H). Rite Aid's Store Atlas handbook outlines corporate-established protocols which every associate is expected to follow. If these mandated protocols are not followed, it can "result in corrective action, up to and including discharge." Ex. H, at bates stamp 4055.

**Store Manager Office Standards and Set Up** (Ex. I). This Rite Aid policy document sets out detailed guidelines regarding exactly how each of the SMs' offices are expected to look, regardless of store type and location. The office standards are disseminated to all managers nationwide and are expected to be followed. Indeed, these "… are standards that *must* be in place in order to ensure our stores operate as efficiently as possible." Ex. I, at bates stamp 151057-59.

**Principles of Merchandise Presentation ("POMP")** (Ex. J). The Rite Aid POMP manual dictates the layout of the stores and merchandise presentation including appearance and set up of rest rooms, break rooms, managers offices, back rooms, product placement and display, store layout, plan-o-gram specifics, designated location and display periods, seasonal product layouts, and signage standards. For example, "[a] planogram diagrams and *dictates* the placement of product" and the purpose of a planogram includes "[t]o achieve *consistent* product presentation." Ex. J, at 151129.

**Counseling/Development Form** (Ex. K).   Rite Aid disseminated this form to all managers detailing the step-by-step instructions to be taken by SMs when disciplining associates. For example, "ALL Final Warnings and Terminations must have the prior approval of an Associate Relations Manager, Sr. HRM, HR Director or HR Vice-President."

**Rite Aid Workweek Standards** (Ex. L).  Rite Aid's Workweek Standards policy applies to store management requiring specific schedules and noting that managers may have to work additional hours.  If associates fail to adhere to the police, they "are subject to disciplinary action, up to and including termination." Ex. L, at 2963

**Management Development Program (MDP)** (Ex O).   The MDP manual relates to a uniform training program for all Rite Aid managers.  Regardless of geographic location, or even store volume, all SMs are trained to perform the same duties in the same fashion.

Because every aspect of the SMs' everyday duties is governed by these detailed corporate policies, SMs had no discretion to run their stores.

**B.    Plaintiffs' Testimony Supports Collective Treatment of SMs.**

Since the parties have had the opportunity to conduct discovery, the factual record is replete with common issues of fact concerning Plaintiffs' primary duties.  Due to the voluminous nature of the deposition testimony, the common evidence is summarized in Exhibit A.

First, SMs worked in excess of 40 hours per work week, regardless of location or any other store-specific attribute. *See e.g.*, Spencer (NY), 8:22-25 (never worked less than 50 hours per work week); *see also* Ex. A. Summary Chart (pp. 2-4) & Supporting Testimony (pp. 17-22).

Second, the SMs testified that, despite their original classification, or 2009 re-classification, they spent the majority of their time performing non-managerial duties. *See e.g.,* Lembezeder (AZ, CA), 290:23-291:6 ("weekly, non-managerial tasks provided 90 percent of my

10

duties"); Perez (CT), 212: 23-25 ("pretty much all day"); Palumbo (PA, DE), 304:17-21 (80% of his time was spent doing non-managerial tasks); Lenart (MA), 347:3-19 (60 to 70%); Whindom (WA), 219:23-220:2 (65 to 70%); Wilson (WA), 279:16-20 ("more than half"); McCarthy (OR), 126:17-20 (70%); Tremblay (MA), 175:21-176:9 (out of a ten hours day, eight hours spent doing non-managerial tasks); Tardo (LA), 270:13-2 (75%); Kitchen (OH), 347:18-21 (80% to 85%); Echeverria (CA), 300:21-301:2 (80%); Dayton (CA), 351:17-18 (80% to 85%); Hulsey (AL), 256:18-21 (spent more time doing non-managerial duties than managerial duties). *See also* **Ex. A, Summary Chart (pp. 4-5) & Supporting Testimony (pp. 23-28).**

Third, even DMs have witnessed SMs perform non-managerial tasks. *See., e.g.*, DM Barrett (CT), 183:6-10, 185:14-19 & 186:2-5; DM Bradford (CA), 186:15-22, 187:2-7, 187:18-20, 189:17-20, 190:21-191:5 & 192:7-193:9.

The SMs further testified and provided examples of such non-managerial tasks to include:

- **Stocking merchandise on store shelves.** *See e.g.*, Bourgeois (LA, Miss), 388:8 ("had to stock shelves . . . all the time"); Simons (NY), 190:21-14 (SM was required to stock shelves); Spencer (NY), 110:16-19; Ruzat (DE, PA), 287:1-3; Tremblay (MA), 23:11-18 ("we were all stock people); Duran (CO, GA), 371:14-16; Hulsey (AL), 260:22-24; Gerber (NY, NC), 314:20-21 ("I had to stock shelves"); Lemmings (TN), 226:8-11; Santos (NY), 244:17-18; Brown (VA), 267:20-21; Tardo (LA), 238:8-10; Malone (MI), 243:23-25; Dayton (CA), 107:15-21; Gauger (CA), 347:8-9; Goodloe (NC), 150:2-10; 152:11-24; Martin (Mich.), 70:19-23. *See also* **Ex. A. Summary Chart (pp. 4-5) & Supporting Testimony (pp. 23-28).**

- **Loading and unloading delivery trucks.** *See e.g.*, Handshoe (KY), 257:4-6 ("I've unloaded I would say 98% percent of the trucks over my past-over my entire career with Rite Aid"); Gerber (NY, NC), 229:16-19; Hulsey (AL), 102:4-8 ("The truck driver . . . would holler for me to come help him push that pallet into the store), 101:20 (unloaded the truck by herself); O'Brien (OH, Miss), 275:17-25 (DM told him he was required to work truck day); Saab (NY), 216:6-10; Simons (NY), 190:15-16 (SM was required to unload trucks); Ruzat (DE, PA), 286:16-24 ("Store duties are putting away the truck"); Duran (CO, GA), 372:3-5; Bourgeois (LA, Miss), 275:23-24; Lenart (MA), 320:10:17 (unloaded the truck without having a loading deck or a conveyer belt); Lemmings (TN), 232:8-9 (SM required to unload the truck); Orlando (NJ), 118:7-11, 115:6-8; Whindom

11

(WA), 23:2-5; Dayton (CA), 107:15-21; Dixon (CA), 342:9-25; Goodloe (NC), 112:23-113:8; 115:3-7; Martin (Mich.), 70:19-23. *See also* Ex. A. **Summary Chart (pp. 4-5) & Supporting Testimony (pp. 23-28).**

- **Operating the cash register.** *See e.g.*, Hulsey (AL), 214:11-13 ("most of the time I would run the register from opening at 8 o'clock until, most of the time 12"); Solis (NJ), 216:10-22 ("We were told we have to have one register that was just for us"); (Spencer (NY), 195:24-25; Tremblay (MA), 39:5-18; O'Brien (OH, Miss), 331:4-6 (Rite Aid had a policy that if there were more than two customers in line, the person at the cash register had to call [a manager] for help); Bourgeois (LA, Miss), 281:3-7; Gerber (NY, NC), 267:16-19 ("On many occasion I was the cashier that went up there to take care of the customer"); Orlando (NJ), 271:15-19; Bogash (MD), 266:22 (spent 15-20 hours a week at register); Dayton (CA), 107:15-21; Goodloe (NC), 150:2-10. *See also* **Ex. A. Summary Chart (pp. 4-5) & Supporting Testimony (pp. 23-28).**

- **Cleaning the store and bathroom.** *See e.g.*, Lenart (MA), 326:9-10 (SM spent from six to eight hours cleaning); Bourgeois (LA, Miss), 214:4-8 ("cleaning bathroom to sweeping floors to even waxing floors"); Gerber (NY, NC), 314:20-21 ("I had to perform maintenance inside and outside the building"); Simons (NY) 190:6-11 (SM required to clean, sweep, mop); Ruzat (DE, PA), 287:7-16; Duran (CO, GA), 370:10-15; King (SC), 186:23-25 & 196:10-12; Hulsey (AL), 189:22-190:2; Brown (VA), 81:21-23, 239:16-18; Malone (MI), 244:1-2; Bogash (MD), 275:15-276:15; Dayton (CA), 349:3-22; Dixon (CA), 274:3-9, 341:13-21; Ensor (MD), 262:25-263:2 (10% to 15% of her day would be spent cleaning); Gauger (CA), 347:8-22; Goodloe (NC), 151:22-152:10. *See also* **Ex. A. Summary Chart (pp. 4-5) & Supporting Testimony (pp. 23-28).**

The SMs also testified that they did *not* have authority to perform managerial functions because the DMs and Rite Aid Corporate dictated all aspects of the SM job position. Specifically, the SMs testified that they:

- **Did not have the ability to control employee scheduling.** *See e.g.*, O'Brien, (OH, Miss.), 173:11-18 ("I'm going to use the word idiot proof again only because it's a computer program to aid you in it I guess and you would pretty much start the program, hit enter so it would calculate a schedule, calculate hours . . . and automatically schedule everybody); Solis (NJ), 54:20-25 ("a schedule that they wanted would come out through the computer on its own"); Spencer (NY), 96:18-22 (the computer generated the schedule); Bourgeois (Miss., LA), 342:2-3 & 59:7-9 ("We never had control over the schedule). *See also* **Ex. A. Summary Chart (p. 12) & Supporting Testimony (pp. 47-48).**

- **Did not have the ability to set or control the store's labor budgets.** *See e.g.*, Astelford (PA), 228:6-8 ("Q. Did you have any authority to change the labor budget for the store? A. No."); Brown (VA), 349:3-15 ("Q. Were you able to change the budget? A. If you

wanted to get in trouble. You couldn't change it"); McGillivray, (CA), 320:14-19 ("Q. And who set the store budget for Rite Aid? A. Corporate. Q. Were you able to change that budget at all if you thought, as a store manager, the budget needed to be changed? A. No"). *See also* **Ex. A. Summary Chart (pp. 10-11) & Supporting Testimony (pp. 45-46).**

- **Did not have the ability to adequately hire or promote employees.** *See e.g.*, Goodloe (NC), 174:24-175:8 ("I was not responsible for hiring people…That was my DM's decision"); Santos (NY), 134:1-25 ("the [hiring] decision was all my district manager"); Saab (NY)79:9-21 (DM had to hire); Lenart (MA) ("I was not able to promote a supervisor in the Rite Aid environment without the okay on the promotion from HR and my DM"). *See also* **Ex. A. Summary Chart (pp. 13-14) & Supporting Testimony (pp. 49-54).**

- **Did not have ability to adequately terminate employees.** *See e.g.*, Spencer (NY), 46:25-47:6 ("[DM] explain[ed] to me that [SMs] had no authority to terminate employees); Bourgeois (Miss., LA) 119:6-8 ("There was no way you could fire someone on your own"); Brown (VA) 159:16-18 ("It was up to him [DM] to determine if the person should be fired or not."); Dixon (CA) 263:16-17 ("You couldn't fire anyone anyway because you had to go through HR and the DM"). *See also* **Ex. A. Summary Chart (pp. 14-16) & Supporting Testimony (pp. 54-57).**

- **Did not make any decisions regarding the types of products or services offered at the stores or how to place such products.** *See e.g.*, Santos (NY), 213:6-8 ("I do not have control over merchandising, programming. I don't choose what goes on the shelf. [Corporate] chose for me"); Smith (ME), 80:10-20 ("the system automatically orders itself"); Gerber (NY, NC), 312:18-19 ("I didn't have independent judgment over the placement of merchandise"); (Tardo ( LA), 230: 9-16 ("You've got to put what Corporate tells you to put"); Lenart (MA), 64:7-8 ("As far as merchandising, there was a guide on how end caps and seasons would be set"). *See also* **Ex. A. Summary Chart (pp. 9-10) & Supporting Testimony (pp. 42-45).**

Furthermore, Rite Aid prevented SMs from issuing overtime to hourly employees. *See* Ex. N3, Emails/SYSMs; *see also* Indergit (NY), 149:6-8; Lemmings (TN), 73:8-14 (could not use overtime even if she was under budget). Rite Aid required SMs to follow carefully designed plans for product placement and display, called "plan-o-grams." *See* Ex. J, POMP Manual; Spencer (NY), 77:17-20 ("[The product] is not in the profit planner. It's not in the planogram. So you cannot sell it"). Additionally, Rite Aid required SMs to keep their offices in a particular manner. *See* Ex. I, Store Manager Office Standards and Set-Up).

13

Finally, SMs were subjected to constant emails and "SYSMs" (Rite Aid internal emails) from Corporate and DMs, including checklists and reminders of corporate expectations, reemphasizing the requirement that SMs stay within the allotted budget, and chastising SMs from using overtime hours. *See* Indergit (NY), 67:7-11, 67:20-21; Gerber (NY), 247:20-23; Spencer (NY), 71:18-72:16; DM Spink (NY), p. 153:6-11; Ex. M, Weekly Front-End Directives; Ex. N1-5, Emails and SYSMs.

## V.
## LEGAL ARGUMENT

### A. The Court Should Deny Rite Aid's Motion for Decertification because Plaintiffs Are Similarly Situated under the FLSA.

At the outset, it is important to note that wage claims, "are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'–despite difference in hours worked, wages paid and wages due." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011). *See Gayle v. Harry's Nurses Registry, Inc.,* No. 07-cv-4672, 2012 U.S. Dist. LEXIS 28157 (E.D.N.Y Mar. 1, 2012) (J. Garaufis) (granting Plaintiff's motion for second stage certification as plaintiffs were able to establish that they were all impacted by a single policy of denying overtime to field nurses); *see also Shabazz v. Morgan Funding Corp.,* 269 F.R.D. 245 (S.D.N.Y June 9, 2010) (J. Marrerro) (holding that plaintiffs were similarly situated employees subjected to defendants' unlawful compensation policy and performed largely the same tasks). Further, the overwhelming evidence here weighs in favor of collective treatment based on each of the three factors set forth in *Laroque*, as discussed below.

#### 1. Plaintiffs Work In Similar Factual and Employment Settings

To determine if class members are "similarly situated" under the FLSA, courts typically look first at "disparate factual and employment settings of the individual plaintiffs." *Laroque*,

557 F. Supp. 2d at 352.  Under this factor, Plaintiffs must first show that their factual and employment settings are alike, but "need show only that their positions are similar, *not identical*, to the positions held by the putative class members." *Grayson v. Kmart Corp.*, 79 F.3d at 1096 (emphasis added); *see also, Nerland*, 564 F. Supp. 2d at 1018.  That is, FLSA collective actions are "*not* restricted to employees who are clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." [9]  *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *21 (S.D.N.Y. Oct. 4, 2006) (emphasis added, internal quotations omitted).  Thus, so long as Plaintiffs present evidence that an FLSA violation may have occurred under a policy pertaining to all Plaintiffs, the fact that the Plaintiffs may have worked at different stores under the supervision of different individuals is *not* a sufficient reason to deny class treatment. *See Plewinski v. Luby's, Inc.*, No. H-07-3529, 2010 U.S. Dist. LEXIS 39179, at *11-14 (S.D. Tex. Apr. 21, 2010).

Here, the evidence establishes that the SMs were subjected to blanket classifications as a result of Rite Aid's own policy and practices.  Judge Gardephe, granting conditional certification in this case, found Rite Aid's internal corporate documents compelling:

> Internal Rite Aid documents indicate that store managers are officially assigned a similar set of duties by Rite Aid's corporate headquarters. Most telling is Rite Aid's 'Store Management Guide' . . . which delineates in great detail how store managers should complete a variety of weekly tasks and includes corporate 'planograms' that dictate how certain sale items must be displayed in the store. For example, the Store Management Guide provides store managers with step-by-step instructions on how to perform common tasks, such as 'sales floor inspection' and 'one-hour photo maintenance.'

Ex. B, Cert. Order, p. 11.  The evidence in the record, therefore, unequivocally demonstrates that Plaintiffs were affected by "a single decision, policy, or plan" that Plaintiffs allege violates the

---

[9] Individualized differences do not support decertification where the defendant has previously submitted affidavits attesting to common issues among plaintiffs. *Damassia*, 250 F.R.D. at 158 *accord Ravenell v. Avis Budget Car Rental, LLC.*, No. 08-CV-2113, 2010 U.S. Dist. LEXIS 72563, at *20 (E.D.N.Y. July 19, 2010).

FLSA. *See Wilks v. Pep Boys*, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, at *12 (M.D. Tenn. Sept. 26, 2006).

It is well established in this Circuit: "courts have found plaintiffs to be similarly situated when they made common allegations that dual-edged policies [such as those alleged here] . . . effectively required them to work uncompensated overtime." *Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397, 404 (S.D.N.Y. 2012) (citing *Levy v. Verizon Info. Servs., Inc.*, CV 1583, 2007 WL 1747104 (E.D.N.Y. June 11, 2007) (E.D.N.Y. June 11, 2007) (finding employees to be similarly situated as a result of defendant's overtime policies); *Pefanis*, 2010 U.S. Dist. LEXIS 93180, at *12 (quoting *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *20) (holding that the plaintiffs' minimum wage and overtime claims were based on the defendant's "company-wide policies," which plaintiffs alleged were "a common practice or scheme that violated the law"). Rite Aid's corporate policies alone reflect its goals and intentions of standardizing the tasks SMs perform regardless of store or SM-specific attributes.

In addition to Rite Aid's corporate policies Plaintiffs previously cited, in Section IV, *supra*, summarized and explained above and in Exhibit A, overwhelmingly support certification. Specifically, that testimony reflects that the SMs in this proceeding are similarly situated based on their *actual job duties:* the SMs work long laborious weeks, in certain instances perform up to 90% of their time on non-managerial duties, and have little or no discretion or independence to actually "manage." Those commonalities are not addressed by Defendants even though— according to authority cited by Defendants—the "question of entitlement to overtime pay is answered by examining the employee's *actual duties.*" Def. Mot., p. 26 n.26. (Defendants' emphasis) (citing *Myers v. Hertz Corp.*, 624 F.3d at 549). Rather, the evidence establishes that the actual job duties of SMs are—at the very least—"quite similar[,]" and that Plaintiffs' claims

16

may be supported by generalized proof. *See Ayers v. SGS Control Serv., Inc.*, No. 03-cv-9078 (RMB), 2007 U.S. Dist. LEXIS 19634, at *5 (S.D.N.Y. Feb. 26, 2007).

Despite this overwhelming evidence, Defendants recharacterize the deposition testimony and argue that a "relatively small" amount of discovery only "confirm[s] that Store Managers' duties and responsibilities differ [as evidenced by] a virtually endless variety of highly individualized factors." Def. Mot., p. 13. According to Defendants, these factors include a) "the number of store employees, their experience, and turnover," b) the SM's "own experience, style, strengths, and weaknesses" and, c) "a store's location, size, hours, departments, clientele, customer traffic, patterns, union status, and sales volume." *Id.* at pp. 13-15. However, none of these factors are determinative of class certification.

Thus, despite the fact-specific nature of the exemption inquiry and the prospect of individual defenses, permitting the SMs to bring their FLSA claims as a class is appropriate in this case. *Id.* (explaining that "[s]everal courts have held that it is appropriate to bring an FLSA exemption claim as a class action with regard to employees who perform similar, but not identical, duties, notwithstanding the highly fact-specific nature of the exemption inquiry").[10]

The fact that the SMs worked in different geographic locations or under different supervision, does not change the significance and commonalities of their actual job duties. But Defendants' argument is significant in what it fails to address – that the SMs had substantially the same job duties and responsibilities irrespective of geographic location or supervisor.

---

[10]*Kelly v. SBC, Inc.*, No. 97-cv-2729 (CW), 1998 U.S. Dist. LEXIS 18643, at *41-42 (N.D. Cal. Nov. 13 1998) (finding sufficient commonality among employees with different job functions to support class certification); *Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000) (holding that differences among class members' job duties, geographic assignments, and hourly billing rates did not warrant de-certification); *Gregory v. Home Depot U.S.A., Inc.*, No. 3:01-cv-00372 slip op. (AWT), 2001 U.S. Dist LEXIS 25922 at *4 (D. Conn. July 3, 2001)(holding that "although there are differences among the situations of the members of the proposed class," the defendant's failure to pay overtime "is common to all of the members of the proposed class and dominates each of their claims.")

## 2. The Potential for Individualized Defenses Does *Not* Prevent Collective Treatment

The second factor in determining whether Plaintiffs are similarly situated considers the applicability or weight of individual defenses. *Laroque*, 557 F. Supp. 2d at 352. In this Circuit, it is well-settled that the existence or prospect of individual defenses does not prevent certification of a collective action. *See Ravenell v. Avis Budget Car Rental, LLC*, No. 08-cv-2113, 2010 U.S. Dist. LEXIS 72563, at *11-16 (E.D.N.Y. July 19, 2010); *Brown v. Kelly*, 609 F.3d 467, 485 (2d Cir. 2010) (holding that "[a]lthough 'a defense may arise and may affect different class members differently[, this] does not compel a finding that individual issues predominate over common ones"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) (quoting Spatt, J., "The existence of separate defenses does not necessarily mean that the plaintiffs are not similarly situated . . . **[T]he prospect of individual defenses should not defeat authorization of a collective action in this case**"). (emphasis added).

Collective treatment is not necessarily improper just because there is a possibility of individualized evidentiary inquiries. *See O'Brien*, 575 F.3d at 584-85; *Monroe v. FTS USA, LLC*, 763 F. Supp.2d 979, 995 (W.D. Tenn. 2011) (explaining that "many of the purported defenses . . . [were] clearly amenable to classwide determination"). So long as plaintiffs' claims are "unified by common theories of . . . statutory violation," the plaintiffs are similarly situated, "even if the proofs of these theories are inevitably individualized and distinct." *See O'Brien*, 575 F.3d at 585.

More specifically, the following individualized defenses have been found *in*sufficient to warrant decertification as a matter of law:

18

- variation "in plaintiffs' abilities and competence, and in the length of time they worked at [defendant's] stores," *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *20;

- variation in the exercise of managerial primary duties and who "performed their jobs very differently than those who presented declarations to the Court" on behalf of plaintiffs, *id.* at *23-24;

- variation "among the stores at which plaintiffs worked with respect to the stores' location, their layout, their hours of operation, the amount of customer traffic," *id.* at *20;

- variation in the opt-in class which included former as well as present managers, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 264 (S.D.N.Y. 1997);[11]

- variation in the class which included co-managers as well as general managers, *see id.*;

- variation in the class which included managers who never suffered actual losses in pay due to misclassification, as well as those who did, *id.*;

- variation in store managers' duties, *Morgan v. Family Dollar*, 551 F.3d 1233, 1263, n.44 (11th Cir. Ala. 2008) ("store managers' deposition testimony... [that] illustrate[d] that store managers' duties differed substantially");

- variation in "the duties of store managers … depending on the store's size, sales volume, region, and district," *id.*, n.42;

- variation in the geographic location of the opt-in plaintiffs, *see id.*, n.43 (citing *Grayson*, 79 F.3d at 1091) (citation omitted);

- variation in the opt-in class of managers, which included "managerial employees, district managers or above," and not simply one class of managers, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1215.

Notably, most if not all, of the evidence that Defendants attempt to argue in support of their decertification falls squarely within the above categories. Def. Mot., pp. 13-15 (arguing that any commonalities to certification are defeated a) "the number of store employees, their

---

[11]*See also Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294, 323-26 (S.D.N.Y. 2011) (certifying collective action of "current and/or former" Loan Consultants, and holding that: "The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but 'rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'") (citation omitted); *Searson v. Concord Mortg. Corp.*, No. cv-07–3909, 2009 U.S. Dist. LEXIS 88926, at *17–22 (E.D.N.Y.2009) (certifying collective action of "part-time and full-time mortgage consultants" because of "plaintiffs' affidavits . . . [with] allegations of a company-wide policy of denying overtime ... are sufficient to support a finding" that plaintiffs were "similarly situated").

experience, and turnover," b) the SM's "own experience, style, strengths, and weaknesses" and, c) "a store's location, size, hours, departments, clientele, customer traffic, patterns, union status, and sales volume"). Thus, this factor warrants certification.

### a. Defendants' Exemption Defenses Are Not Applicable

Defendants argue that their exemption defenses preclude class certification. *See* Def. Mot., 9-13. This argument falsely assumes that because Plaintiffs claim misclassification, there can be no class. Defendants' argument is unpersuasive and contrary to Second Circuit case law. In *Han v. Sterling Nat'l. Mortg. Grp.*, the court explained that the applicability of an exemption is not "an *inherently* individualized inquiry, such that class treatment will never be appropriate in exemption cases," noting that "district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees." No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453, at *28 (E.D.N.Y. 2011) (granting class certification) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original). The "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria . . . will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class." *Han*, 2011 U.S. Dist. LEXIS 103453, at *28 (citing *Damassia*, 250 F.R.D. at 156-61). Therefore, as long as a plaintiff can demonstrate that the duties of the SMs were largely similar, the requirement related to the exemption defense is satisfied. Plaintiffs have established *supra* that the duties amongst the SMs were largely similar. *See* Ex. A; *see also* Section IV(B), *supra*.

In *Nerland*, the court held that the defenses which relate to the issues of damages "do not preclude the collective adjudication of the exemption issue." *Nerland v. Caribou Coffee*, 564 F. Supp. 2d 1010, 1025 (D. Minn. 2007). The court pointed out that because the facts presented

sufficient representative evidence concerning the plaintiffs, a jury would be able to decide the fundamental issues of the case. "[Defendant] will have an opportunity to adequately present its evidence challenging the credibility of the evidence plaintiffs present to the jury in a collective adjudication setting." *Id.*

Because the evidence here constitutes sufficient representative evidence about the facts for all SMs, Plaintiff have met their burden of proof with respect to the exemption requirement.

### b.  *Defendants' Bankruptcy and Credibility Defenses Are Not Applicable*

Further, Defendants' bankruptcy and credibility defenses do not preclude collective treatment. *See Crawford v. Lexington-Fayette Urban Cnty. Gov't.*, No. 06-cv-299 2008 U.S. Dist. LEXIS 56089, at \*38-40 (E.D. KY. July 22, 2008) (finding that "contradictions in testimony among the plaintiffs are matters of credibility for the factfinder, not individualized defenses" and that the "lack of standing due to bankruptcy filings would not require individualized proof at trial") (citations omitted); *cf. Monroe*, 763 F. Supp.2d 979 at 995-96 (finding that credibility was an issue for the finder of fact that could be raised against opt-in plaintiffs testifying in a representative capacity at trial).

Defendants argue that other individualized defenses preclude certification "including the 96 Plaintiffs' [*sic*] whose claims are barred by their failure to disclose the claim in bankruptcy proceedings." Def. Mot, p. 32. Here, the Defendants are attempting to argue that the affirmative defense of judicial estoppel supports class decertification.[12] However, this affirmative defense (similar to the affirmative defense of limitations) does not affect the issue of whether the Plaintiffs are similarly situated with regard to the allegations against Rite Aid. All the Plaintiffs

---

[12] Failure to disclose the nature of a contingent asset to a bankruptcy court is an affirmative defense under the doctrine of judicial estoppel. *See Khadera*, No. C08–0417, LEXIS 22327, at \*2-3.  Because it is an affirmative defense it must be specifically plead.  Defendants have failed to specifically raise judicial estoppel in their pleadings and thus, their arguments should fail for this reason alone.

are underpaid SMs – regardless of whether or not some of them subsequently failed to disclose their claims to the bankruptcy court. "[T]he Court's task at the [certification] stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are provable in common.'" *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) (original emphasis) (finding class certification under Rule 23's higher standard).

At trial "defendant will be free to present evidence of its lawful employment policies and practices, to cross-examine individual representative plaintiffs, and to call to the stand others with material testimony that helps the defendant's case." *Wilks*, 2006 U.S. Dist. LEXIS 69537, at \*24. This includes deposition testimony that Defendants' claim contains variations that support their defenses. As such, it is clear that the defenses can be adequately raised at a trial involving representative proof. *See Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540-541 (S.D.Tex. 2008) (certifying plaintiffs FLSA class action and expressly rejecting defendants' arguments that "individual 'mini-trials' will be needed to determine" each and every one of the defendants' claimed individual and fact-intensive defenses).

### c. Defendants' Misapplication of the Court's Summary Judgment Order

Defendants also argue that the Court's previous Summary Judgment Order, issued on March 31, 2010, 08 Civ. 9361 (PGG) (Doc. No 92) (denying *Defendants'* motion for summary judgment on plaintiffs claims) precludes class certification. *See* Def. Mot., p. 6. Defendants present a circular argument that there can now be no class certification because the Court previously found there was a factual dispute over whether Indergit's "'primary duty' was 'management of the enterprise.'" Def. Mot., p. 9. The Court's reasoning was based on "the incomplete nature of the record," as the representative proof depositions had yet to be taken. *See*

SJ Order (Doc. No. 92) at p. 14. However, the Court's stance on whether this early summary judgment ruling negatively impacted the Court's ability to certify the class is better evidenced by the Court's conditional certification of the class three months later. *See* Gardephe Certification Order, June 16, 2010 (Doc. No. 67). "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan v. Family Dollar Stores Inc.*, 551 F.3d at 1263. Defendants' argument that Plaintiffs are precluded from class certification based on the Court's Summary Judgment Order is improper).

### 3. Fairness and Procedural Considerations Favor Collective Treatment

The third factor is fairness and procedural considerations counseling for or against collective actions treatment. *Laroque*, 557 F. Supp. 2d at 352. This factor favors collective treatment.

The collective action procedure was designed to promote the "efficient adjudication of similar claims" so that "similarly situated" employees may pool resources to prosecute their claims. *Lynch v. United Servs. Auto. Assoc.*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)). Indeed, the FLSA's purpose is to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 200 (3d Cir. 2011) (citing *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11 Cir. 2003)). The very purpose of the allowance of collective action is for the benefits of economies of time, effort, and expense.

Rule 23 class certifications are viewed favorably by this Circuit. Indeed, the "Second Circuit's general preference is for granting rather than denying class certification." *Flores*, 284 F.R.D. 112 (S.D.N.Y. 2012). There is no reason to "encumber the judicial process with 25

23

lawsuits, if one will do." *Gortat v. Capala Bros. Inc.,* No. 07-cv-3629 (ILG), 2012 U.S. Dist. LEXIS 47066, at \*14-15 (E.D.N.Y. Apr. 3, 2012)(quoting *Phil. Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968)).   There is similarly no need to encumber the judicial process with over 1,500 lawsuits where one collective case is sufficient.

Defendants argue that collective adjudication of these claims might impinge on their due process rights, but the court "must balance those rights with the due process owed to Plaintiffs." *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 541 (S.D.Tex. 2008) (citation omitted) (denying motion for decertification due to existence of defendant's policy of denying overtime for "job duties that could not easily be completed within 40 hours").   Indeed, FLSA collective actions provide employees with "the advantage of lower individual costs to vindicate rights by pooling of resources" and facilitate "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche Inc.*, 493 U.S. at 170.   Here, many of the 1545 opt-in plaintiffs (and those who would be potential class members under a potential Rule 23 New York class) would be unable to bear the costs to re-file and adjudicate their claims, and would be "less able to bear cost of separate trials" than Rite Aid.   *See Nerland*, 564 F. Supp. 2d at 1026 (holding "a collective action will give plaintiffs a fair and full opportunity to adjudicate their claims.").

In short, fairness considerations as well as judicial economy compel the denial of Defendants' Motion for Decertification.

**B.      Courts Have Certified State Law Misclassification Claims Under Stricter Rule 23 Standards.**

Similar claims as the ones before this Court have merited certification under the higher predominance requirement pursuant to Rule 23, and so they certainly meet the lower "similarly situated" standard for a collective action under 29 U.S.C. §216(b) of the FLSA.[13]

Under Rule 23(a), plaintiffs must meet the following requirements:

(1)      the class is so numerous that joinder is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Under 23(b), plaintiff must also show that there are common questions of law or fact that predominate over any individual questions and that class action is a superior method for efficient adjudication. FED. R. CIV. P. 23; *see Damassia*, 250 F.R.D. at 156; *Cuevas*, 283 F.R.D. at 97-98.

*First*, the class is so numerous that joinder is impracticable.   There are 1545 opt-in plaintiffs.  Joinder is simply not feasible.

---

[13] "[T]he 'similarly situated' requirement of 29 U.S.C. §216(b) is considerably less stringent than the requirement of FED. R. CIV. P. 23(b)(3) that common questions 'predominate.'"  *Ayers*, 2007 U.S. Dist. LEXIS 19634 at *16 (citing *Rodolico*, 199 F.R.D. at 481. Courts have refused to apply the more stringent Rule 23 requirements to FLSA collective actions. *See generally Goldman v. RadioShack Corp.*, No. 03-0032, 2006 U.S. Dist. LEXIS 2433 (E.D. Pa. Jan 23, 2006). However, courts have certified similar cases as this one before the court under the more stringent Rule 23 standards, rejecting similar arguments put forth by Defendants here. *Cuevas v. Citizens Fin. Grp.*, 283 F.R.D. 95, 100 (E.D.N.Y. 2012) (ruling in favor of class certification under FED. R. CIV P. 23(a) and (b)(3) holding that "a class action is the superior method of resolving the putative class members' claims"); *Youngblood v. Family Dollar Stores, Inc.*, No. 9-civ-3176 (RMB), 10-civ-7580 (RMB), 2011 U.S. Dist. LEXIS 115389, at *20 (S.D.N.Y. Oct. 4, 2011) (J. Berman) (granting Rule 23 class certification for SMs alleging misclassification claims and holding that there was "nothing unfair about litigating a single corporate decision in a single collective action, especially where there is robust evidence that the store managers perform uniform, cookie-cutter tasks mandated by a one-size fits-all corporate manual"); *Damassia*, 250 F.R.D. at 158 (J. Lynch) (granting class certification and holding that because all class members' claims were based on the same course of events and legal theory, class certification was appropriate.)

*Second*, common questions of law and fact common to the class exist. Plaintiffs brought claims against Defendants for their unlawful practice of uniformly classifying SMs as exempt from overtime compensation. The common questions of law and fact include: (1) whether plaintiffs were denied overtime; (2) whether Rite Aid's blanket classification of SMs as exempt violates their statutory rights such that they are entitled to overtime; (3) whether all SMs were required to perform similar duties in a similar way; and (4) whether such classification was done knowingly. Because Rite Aid maintained consistent, uniform policies with respect to the job duties and classification of SMs as a whole, there are common questions which should be adjudicated collectively. *See Damassia*, 250 F.R.D. at 152, 156-67; *Ross v. RBS Citizens*, No. 09-cv-5695, 2010 U.S. Dist. LEXIS 107779, at *19, 26-27 (N.D. Ill. Oct. 8, 2010).[14] These questions are subject to generalized proof of policies and practices that applied to all class members, and as such they predominate over individual issues. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372-73 (S.D.N.Y 2007) (noting that when assessing the predominate issue "courts focus on the liability....and if the liability issue is common to the class, common questions predominate over individual ones.").

*Third*, common issues predominate over any individual issues. While this is the main inquiry in Rule 23(b) certification decisions, "[t]he predominance requirement calls only for predominance, not exclusivity, of common questions." *Pefanis*, 2010 U.S. Dist. Lexis 93180. In *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794, at *13-19 (N.D. Cal. Aug. 31, 2006), the District Court for the Northern District of California certified a Rule 23 class action brought on

---

[14] While SMs' experiences are not identical, even with some variations among the daily duties of class members, "class certification is appropriate where 'the crux of [the] case is whether...company-wide policies, as implemented, violated Plaintiffs' statutory rights....'" *Cuevas*, 283 F.R.D. at 98 (citing *Youngblood*, 2011 U.S. Dist. LEXIS 115389, at *13).

behalf of Rite Aid Store Managers against Rite Aid for similar assertions as with this case. In *Tierno*, the Court held:

> "Rite Aid treats its Store Managers as one homogenous group and that while some variations exist, the Store Manager position at Rite Aid is, in fact, sufficiently similar from store to store in all important respects such that class treatment is appropriate in this case...The Court concludes that these and other common issues will "predominate" over any individual issues that may arise in this case."

*Tierno*, 2006 U.S. Dist. LEXIS 71794, at *31. Thus, since class certification was proper under Rule 23 in *Tierno* – a former matter against the same Defendant by the same class involving near identical circumstances – it is also proper in this matter under the FLSA, which carries a lesser burden.

In another matter, *Pefanis*, this Court denied a motion to decertify the conditional class under the FLSA and Rule 23. 2010 U.S. Dist. Lexis 93180, at * 21. This Court found that overtime claims were "subject to generalized proof on a class-wide basis and predominate over any individual issues that may be encountered." *Id.* at *16. Significantly, the Court noted that while "the number of hours each class member worked may [have] var[ied], the systems and practices that affected [the plaintiffs'] rates of pay appl[ied] to all class members," and thus certification was proper under both Rule 23 and the FLSA. *Id.* Here, Defendants make the same arguments as those that were rejected by this Court in *Pefanis*.

**Fourth**, the representative parties will fairly and adequately protect the interests of the class. The threshold question is whether resolution of Plaintiffs' claims will require a plaintiff-by-plaintiff analysis, or whether the claims may be resolved with common evidence. As demonstrated in detail herein, an FLSA collective trial will not be massive or chaotic involving

over a thousand witnesses.[15]  "Courts have allowed representative testimony in cases involving allegations of unpaid wages" throughout the country. *Falcon*, 580 F.Supp.2d at 540 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Schultz v. Capital Int'l. Sec. Inc.*, 466 F.3d 298, 310 (4th Cir. 2006); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003) (noting that "not all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press*, 13 F.3d 685, 701-02 (3d Cir.1994) (stating that "[c]ourts commonly allow representative employees to prove violations with respect to all employees."); *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973) (allowing representative testimony in a case involving unpaid overtime); *Donovan v. Burger King Corp.*, 672 F.2d 221, 225 (1st Cir. 1982) (where 6 of 246 witnesses testified regarding the job duties of assistant managers).[16]

This action is similar to *Morgan v. Family Dollar* in which the Eleventh Circuit affirmed class certification.  In *Morgan*, 1,424 Family Dollar store managers participated in a FLSA collective action challenging Family Dollar's classification of store managers as exempt from the FLSA, with only 39 testifying at trial. 551 F.3d at 1245.  The Eleventh Circuit held that the evidence presented "established that Family Dollar uniformly exempted all store managers from overtime pay requirements, and its exemption decision did not turn on any individual factors. Not one." *Id.* at 1264.  The court found that Family Dollar managers "were similarly situated and even Family Dollar perceived no such distinction." *Id.* at 1258-65 (emphasis added).

---

[15] This case can be bifurcated into liability and damages.  Plaintiffs propose the following trial plan: (a) previously-deposed witnesses (or a percentage thereof) would provide "representative testimony" for the 1,545 opt-in plaintiffs' FLSA claims; and (b) the court can then consider the impact of the misclassification (if found) in a damages phase.
[16]*See also, National Electro-Coatings, Inc. v. Brock*, No. c86-2188, 1988 U.S. Dist LEXIS 16937, at *22-23 (N.D.Ohio July 13, 1988) (reasoning that, "courts have consistently allowed, or even required, a small number of employees to testify to establish a pattern of violations for a larger number of workers."); THE FAIR LABOR STANDARDS ACT 1333 (Ellen C. Kearns et al., eds.1999) (noting that it is "well settled" that "not all affected employees must testify in order to prove violations or to recoup back wages. Rather, in most cases, employees and the Secretary may rely on representative testimony").

Like *Morgan*, Defendants classify Plaintiffs as "Store Managers," prescribe their job duties, and treat all SMs as a similarly situated class. Defendants cannot now be heard to perceive anything to the contrary. *Supra* Sec. IV. Moreover, corporate witnesses conceded that they purposefully did not base SMs classification status on any individual factors and did not conduct individual analysis. *See* Crandall 30(b)(6), 90:11-91:4; *see also* DM Barrett (CT), 142:3-4; DM Carpenter (NY), 35:24-36:4; DM Augustine (NY), 112:4-18. Because Plaintiffs have demonstrated that they are substantially similar and there are common question of law and fact, Plaintiffs are entitled to adjudicate collectively their claims through representative testimony.

## C.    Practical Ramifications of Decertification

If this case is decertified, the individual opt-in plaintiffs will be dismissed without prejudice. Even if a percentage of the current conditional class re-files, courts across the nation will be flooded with identical claims and will waste resources re-litigating the common issues of fact and law present here. Rite Aid will be left to defend potentially 1,545 individual misclassification claims based on the same, single policy of denying exempt SMs overtime, using the affirmative defense of exemption from the FLSA, resulting in a complete waste of resources which contravenes the purpose of the FLSA. Finally, while theoretically these individuals can re-file, many will not have the financial resources to do so, and their FLSA claims for unpaid wages will not be adjudicated. The Second Circuit has expressed concern "about the possible prejudice to members of a class who failed or were unable to take independent steps to protect their rights" individually. *Woe by Woe v. Cuomo*, 729 F.2d 96, 107 (2nd Cir. 1984). Decertification is often denied because its effects may be to throw each opt-in Plaintiff "back at square one without the benefit of pooled resources to resolve the common

question of whether [defendants] had a policy to deny overtime and minimum wage compensation." *Plewinski*, 2010 WL 1610121, at *6. Thus, the negative ramifications of decertification warrant a denial of decertification here.

## CONCLUSION

Rite Aid re-classified the exempt status of its Store Managers in 2009 without regard for their individuality, but now flip-flops in its Motion and asks this Court to ignore what it did and order Plaintiffs to prove individually what Rite Aid did collectively. Rite Aid's Motion demands this Court gloss over the practical implications of 1,545 trials proceeding in different courts on the same claims, utilizing the same discovery, and against the same defendant. Rite Aid's Motion requires that this Court heighten the burden of claim similarity required under the FLSA to levels not called for by this District or this Circuit. These arguments cannot carry the day.

For these reasons and all of the reasons set forth above, Plaintiffs respectfully request that Defendants' Motion to Decertify Plaintiffs' Conditionally Certified FLSA Collective Action be denied in its entirety and Plaintiffs be allowed to proceed as a collective action pursuant to Section 216(b) of the FLSA.

Dated:     Garden City, New York
          November 30, 2012

Respectfully submitted,

Robert J. Valli, Jr. (RV-9995)
James Vagnini (JV-2163)
Aneeba Rehman (AR-6404)
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, NY 11530
*Attorneys for Plaintiffs*

30

Jay D. Ellwanger
**DiNovo Price Ellwanger& Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
*Attorneys for Plaintiff*