**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>　　　　　　　Defendants. | **08 Civ. 9361 (JPO) (HBP)**<br>**ECF Case** |

<u>**DEFENDANTS' REPLY IN SUPPORT OF ITS**</u>
<u>**MOTION FOR DECERTIFICATION**</u>

Daniel E. Turner
Tracey T. Barbaree
Beth A. Moeller
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Ninety One Peachtree Tower
191 Peachtree Street, N.E.
Suite 4800
Atlanta, Georgia  30303
Telephone:  (404) 881-1300
daniel.turner@ogletreedeakins.com
tracey.barbaree@ogletreedeakins.com
beth.moeller@ogletreedeakins.com

Patrick G. Brady
Suzanne K. Brown
**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, NY 10177-1211
Telephone:  (212) 351-4500
Facsimile:  (212) 878-8600
One Gateway Center
Newark, New Jersey 07102-5311
Telephone:  (973) 642-1900
Facsimile:  (973) 639-8556
pbrady@ebglaw.com
skbrown@ebglaw.com

*Counsel for Defendants Rite Aid Corporation*
*and Rite Aid of New York, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................1

II.   ARGUMENT .....................................................................................................................2

    A.    Plaintiff Has Not Met His Burden of Proof.................................................................2

    B.    Evidence Relevant to the Exemptions at Issue Could Not Be More Varied,
        Confirming Collective Treatment Is Not Possible. ......................................................5

        1.    The alleged "common" exemption and job description do not eliminate
             individual inquiries...........................................................................................5

        2.    Plaintiff's reliance on corporate policies does not eliminate individualized
             inquiries. ...........................................................................................................7

        3.    Plaintiff's "Exhibit A" is unreliable, and the "facts" Plaintiff cites are
             irrelevant to the exemption inquiry. ..................................................................8

        4.    Representative proof for purposes of the exemption factors and primary duty
             analysis is not possible on this factual record. ...............................................12

    C.    Individualized Defenses, Fairness, and Procedural Considerations Require
        Decertification...........................................................................................................14

III.  CONCLUSION ................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*Aquilino v. Home Depot, U.S.A., Inc.*,
  2011 WL 564039 (D.N.J. Feb. 15, 2011) .................................................................. 3, 14, 15

*Ayers v. SGS Control Servs.*,
  No. 03CIV.9078, 2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 26, 2007) ........................... 7

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ................................................................................ 14

*Casida v. Sears Holdings Corp.*,
  No. 1:11-cv-01052, 2012 U.S. Dist. LEXIS 111599 (E.D. Cal. Aug. 8, 2012) ................. 4, 10

*Cruz v. Dollar Tree Stores,Inc.*
  No. 07-2050, 2011 WL 2682967 (N.D. Cal. Jul. 8, 2011) ................................................ 3, 13

*Damassia v. Duane Reade, Inc.*,
  No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006) ....................... 2, 12

*Gales v. Winco Foods*,
  No. 09-5813, 2011 WL 3794887 (N.D. Cal. Aug. 26, 2011) ................................................. 3

*Gardner v. Western Beef Props.*,
  No. 07-2345, 2011 WL 6140518 (E.D.N.Y. Sep. 26, 2011) ................................................... 3

*Green v. Harbor Freight Tools USA, Inc.*,
  No. 09-CV-2380, 2012 WL 3563977 (D. Kan. Aug. 17, 2012) ..................................... passim

*Han v. Sterling Nat'l Mort. Co.*,
  No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. Sep. 14, 2011) ......................... 11

*Hernandez v. United Auto Credit Corp.*,
  No. C-08-03404RMW, 2010 WL 1337702 (N.D. Cal. Apr. 2, 2010) ..................................... 6

*In re Wells Fargo Home Mort. Overtime Pay Litig. (Wells Fargo II)*,
  268 F.R.D. 604 (N.D. Cal. 2010) ............................................................................. 14

*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................... 3, 15

*Knott v. Dollar Tree Stores*,
  7:06-CV-1553-LSC, 2012 WL 4341816 (N.D. Ala. Sept. 19, 2012) ............................. passim

*Marshall v. Amsted Rail Co.*,
  No. 10-cv-0011, 2012 WL 5499431 (S.D. Ill. Nov. 13, 2012) ................................................. 5

*Morano v. Intercontinental Capital Grp., Inc.,*
    No. 10CV02192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012) ........................................... 15

*Morgan v. Family Dollar Stores, Inc.,*
    551 F.3d 1233 (11th Cir. 2008) .................................................................................... 12

*Myers v. Hertz,*
    624 F.3d 537 (2d Cir. 2010) *cert. denied*, 132 S.Ct. 368 (U.S. 2011) ...................... 2, 3, 5, 14

*Pefanis v. Westway Diner, Inc.,*
    No. 08-cv-002 (DLC), 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010) ................ 2, 7

*Postiglione v. Crossmark, Inc.,*
    No. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012) ...................................................... 9

*Richter v. Dolgencorp, Inc.*
    7:06-cv-1537-LSC, 2012 WL 5289511 (N.D. Ala. Oct. 22, 2012) ............................. 4, 10, 13

*Tierno v. Rite Aid Corp.,*
    2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ...................................................... 4

*Winfield v. Citibank, N.A.,*
    843 F. Supp.2d 397 (S.D.N.Y. 2012) ..................................................................................... 7

*Zavala v. Wal Mart Stores,,*
    691 F. 3d 527, 537 (3d Cir. 2012) ......................................................................................... 2

*Zivali v. AT&T Mobility,*
    784 F. Supp.2d 456 (S.D.N.Y. 2011) ............................................................................. 4, 13

## OTHER AUTHORITIES

29 C.F.R. §541.105 ............................................................................................................... 11

29 C.F.R. § 541.106(a) ......................................................................................................... 10

29 C.F.R. §541.700(b) ............................................................................................................. 9

## I.   <u>INTRODUCTION</u>

As detailed in Defendants' motion for decertification, Plaintiff cannot satisfy his stringent burden of proof in light of the extensive discovery record, the multiplicity of exemption elements that must be considered to determine whether each of the Store Managers ("SMs") who joined this action[1] was properly classified, and the Court's own confirmation – when it denied Defendants' motion for summary judgment on Plaintiff Indergit's individual claims – that collective treatment of the claims at issue is simply not possible.  In response, Plaintiff's Opposition makes the same arguments relied upon in his 2009 motion for conditional certification (which was considered under an extremely lenient standard) and contends that "[c]onsistent with Judge Gardephe's initial conclusions," *any* showing of "similarity" is sufficient to maintain "this lawsuit as a collective action," "attain judicial efficiency," and "ensure that all of the Plaintiffs have a fair opportunity to seek redress."  (Pl. Opp. at 4, 2, 3.)   In other words, after more than two years of discovery, Plaintiff still expects that allegations that Store Managers have "largely similar"[2] duties (and blatant misrepresentations of the record evidence) will suffice for continued collective treatment.

Plaintiff's continued cursory approach fails.  Instead, as the Court's conditional certification opinion made clear, Plaintiff is now subject to "a more stringent standard – whether the additional plaintiffs are in fact similarly situated," and the record – detailed in Defendants' original brief in support at 15-25, in the attached Exhibits 1-9, and in Defendants' opposition to class certification (and its Exhibits 1-7) – confirms they are not.[3]  (Dkt. 103, Order at 10.)  Whether a SM was properly classified requires evaluation of each plaintiff's actual day-to-day duties and discretion in

---

[1] Less than 22% of the SMs who received notice are opt-in Plaintiffs.

[2] (Pl. Opp. at 20.)

[3] All charts, deposition transcript citations, affidavits and other documentary references are attached to the Declaration of Daniel E. Turner, Esq. ("Turner Decl."), filed concurrently.  Exhibits 1-7 to the Declaration of Daniel E. Turner, Esq. in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification are referred to as "Class Cert. Opp. Exhibit" herein.

light of the executive, administrative and combination exemption factors and primary duty analyses. Plaintiff can no longer avoid the deposition record confirming the practical, logistical, and manageability hurdles that make it impossible for a factfinder in this case to reach merits decisions without conducting more than 1,500 mini-trials.

## II.   ARGUMENT

### A.   Plaintiff Has Not Met His Burden of Proof.

The Court made clear that it must determine on a "full record … whether the additional plaintiffs are similarly situated to the original" Plaintiff at this second stage "under a more stringent standard – whether the additional plaintiffs are in fact similarly situated."[4]  Plaintiff, however, suggests the applicable standard is simply whether he and the opt-ins are "still 'similarly situated'"[5] and repeatedly cites to conditional certification decisions in his brief.[6]  The Second and Third Circuits soundly reject Plaintiff's suggested "still similarly situated" standard.[7]

Moreover, although the Court declined to consider Rite Aid's "arguments about the underlying merits of [Plaintiff's] FLSA claim" at the first stage, it held "[t]hese issues will be resolved upon a full record at the 'decertification' stage …." (Dkt. #103 at 15.)  Plaintiff concedes

---

[4] (Dkt. #103, June 16, 2010 Order at 8-10 (quoting *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *11 (S.D.N.Y. Oct. 4, 2006)).)
[5] (Pl. Opp. at 6 *citing Pefanis v. Westway Diner, Inc.,* No. 08-cv-002 (DLC), 2010 U.S. Dist. LEXIS 93180 at *10 (S.D.N.Y. Sept. 7, 2010)(denying decertification of FLSA overtime claims of *one* plaintiff and *one* opt-in where restaurant employer failed to maintain any time records for nonexempt employees until two years after lawsuit filed).)  The issues here are vastly different.
[6] More than one-third of the cases cited in Plaintiff's Opposition are conditional certification decisions.  For example, Plaintiff states "[i]ndividualized differences do not support decertification" and cites *Damassia* and *Ravenell* to support that proposition – both were decisions to conditionally certify under the lenient substantial allegations standard.  (Pl. Opp. at 15 n.9.)
[7] *Myers v. Hertz,* 624 F.3d 537, 555 (2d Cir. 2010) *cert. denied*, 132 S.Ct. 368 (U.S. 2011) ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."); *Zavala v. Wal Mart Stores, Inc.,* 691 F.3d 527, 537 (3d Cir. 2012) (affirming decertification of FLSA claims, holding at this stage "plaintiffs must demonstrate by a preponderance of the evidence that members of a proposed collective action are similarly situated in order to obtain final certification").

"the fact-specific nature of the exemption inquiry and the prospect of individual defenses," but strangely argues "as long as a plaintiff can demonstrate that the duties of the SMs were largely similar, the requirement related to the exemption defense is satisfied."  (Pl. Opp. at 17, 20.) Plaintiff's argument entirely ignores the Second Circuit's finding in *Myers* that manager misclassification claims could not be certified because the "exemption question … is a mixed question of law and fact … involving a number of subsidiary questions, …. [T]hese questions should be resolved by examining the employees' actual job characteristics and duties," and the ultimate question of whether the managers "were *legally entitled* to the overtime" was subject to individualized proof.[8]

Plaintiff's Opposition further fails to address *any* of the recent decisions cited in Defendants' initial brief in which courts decertified (or refused to certify) retail manager claims under the more stringent standard.[9]  After Defendants served their motion, two more store managers' FLSA

---

[8] *Myers*, 624 F.3d at 548, 550-51; *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008) (decertifying store managers' FLSA misclassification claims, holding "an analysis of the exemption/misclassification issue is highly fact-intensive, given the multiplicity of factors that the Department of Labor regulations require a court to consider in determining whether an employee is properly classified in light of his or her actual job duties.").

[9] *Green v. Harbor Freight Tools USA, Inc.*, No. 09-CV-2380, 2012 WL 3563977, at *8 (D. Kan. Aug. 17, 2012) (decertifying misclassification claims of store managers where the factors for both the executive or administrative exemptions had to be considered, and the "evidence varies as to the nature and variety of decisions made by Plaintiffs, how they ran their respective stores, their authority to make independent choices, and the degree to which their recommendations were considered or reviewed at a higher level, weighing against proceeding collectively"); *Aquilino v. Home Depot, U.S.A., Inc.*, 2011 WL 564039, at *2 (D.N.J. Feb. 15, 2011) (decertifying assistant manager misclassification claims, finding "it is necessary to review the responsibilities and duties of a [manager] that would be considered when deciding whether a position would qualify as exempt. Looking to the deposition testimony of the Opt-Ins it is apparent that [managers'] testimony about job responsibilities and duties varies from [manager] to [manager]."); *see also Cruz v. Dollar Tree Stores,* No. 07-2050, 2011 WL 2682967, at *8 (N.D. Cal. Jul. 8, 2011) (rejecting plaintiffs' reliance on planners and common policies and decertifying store managers' state law misclassification claims); *Gardner v. Western Beef Props.*, No. 07-2345, 2011 WL 6140518, at *5 (E.D.N.Y. Sep. 26, 2011) (refusing to certify grocery managers' misclassification claims, specifically rejecting the plaintiffs' reliance on uniform classification and explaining the "plaintiffs in [*Myers*] made the same argument," and the Second Circuit rejected it because "the real question is 'answered by examining the employee's actual duties.'" (quoting *Myers,* 624 F.3d at 549-50)); *Gales v. Winco* Foods, No. 09-5813, 2011 WL 3794887, at *11 (N.D. Cal. Aug. 26, 2011) ("trying the case as a class would involve many individualized inquiries about what [managers] actually do or did in the performance of their

misclassification collective action cases were decertified.  In *Knott v. Dollar Tree Stores,* the court

rejected the plaintiffs' reliance on uniform classification of store managers as exempt and assertions

that there was "scant evidence" that their duties "varied significantly":

> While the executive-exemption defense is common among all Plaintiffs, there is an abundance of evidence concerning their differences.  Because it is an extensively fact-based inquiry, these differences directly affect an assessment of the executive-exemption for each individual Plaintiff.  It would be fundamentally unfair to Dollar Tree if the class were to remain certified.  The efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of Dollar Tree's due process rights.[10]

In *Richter v. Dolgencorp, Inc.,* the court decertified misclassification claims of Dollar General Store

Managers, explaining "[b]ecause of the differing amounts and wide variety of exempt work

performed, if each Plaintiffs' claims were tried separately, the primary duty of some would no doubt

be found to be management, while the primary duty of others would not."[11]  In short, the

overwhelming weight of authority and the factual record[12] confirm that these FLSA claims cannot

proceed on a collective basis.

---

jobs – the Court finds that a class action would be impractical and unmanageable"); *Zivali v. AT&T Mobility,* 784 F. Supp.2d 456, 468-69 (S.D.N.Y. 2011) (decertifying retail assistant manager and sales consultant FLSA claims where defenses would be "highly fact specific," and "[r]esolution of the many-fact-specific issues in this case would essentially require 4,100 mini-trials in which each individual plaintiff could present evidence").  Instead of addressing these cases, Plaintiff continues to rely on *Tierno v. Rite Aid Corp.,* 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006). *Tierno* involved Rule 23 certification of California wage claims brought by Store Managers and, as detailed in Defendants' Opposition to Plaintiff's Motion for Class Certification at 8-9, relied on logic and precedent since expressly rejected by the Ninth and other Circuits.  In *Casida v. Sears Holdings Corp.,* No. 1:11-cv-01052, 2012 U.S. Dist. LEXIS 111599, at *50-65 (E.D. Cal. Aug. 8, 2012), a court was recently again "not persuaded" by *Tierno,* and refused to certify the state law misclassification claims of retail assistant managers.  The *Casida* court explained:  "Of key concern here is whether, despite the corporate standardization and the uniformity of tasks to be performed by the [assistant managers], evidence would be needed to prove misclassification of the class as to each prospective class member. The Court finds that it would." *Id.* at *51.
[10] No. 7:06-CV-1553-LSC, 2012 WL 4341816, at *6-8 (N.D. Ala. Sept. 19, 2012).
[11] No. 7:06-cv-1537-LSC, 2012 WL 5289511, at *6 (N.D. Ala. Oct. 22, 2012).
[12] Defendants specifically rely on Exhibits 1-9, as well as the record evidence in Class Cert. Opp. Exhibits 1-7.  To the extent Plaintiff accurately cites any different testimony in his "Exhibit A," that testimony further confirms the SMs are not similarly situated.

**B.**   **Evidence Relevant to the Exemptions at Issue Could Not Be More Varied,
Confirming Collective Treatment Is Not Possible.**

As the Second Circuit made clear in *Myers,* because misclassification claims require

"examination of the 'dut[ies] that the employee' actually 'performs,'" Plaintiff must show that the

"jobs were *similar in ways material to the establishment of the exemption criteria*."  624 F.3d at 549

(emphasis added).  Plaintiff fails to make this showing.

**1.**   **The alleged "common" exemption and job description do not eliminate
individual inquiries.**

As detailed in Defendants' Opposition to Class Certification at 32-33, the Second Circuit

specifically rejects Plaintiff's continued reliance on Rite Aid's pre-2009 classification of all SMs as

a basis for certification.  *Myers,* 624 F.2d at 549-50.  Plaintiff likewise ignores the corporate

deposition testimony confirming that in addition to the 2009 structure changes that resulted in some

stores having exempt SMs and others having non-exempt SMs,[13] the type of management in each

store is "part of the discussion as we reconfigure, open or move a store," and sometimes exempt

status is determined by "go[ing] in and tak[ing] a look at the store's situation, the store manager, and

mak[ing] our decision from there."  (Crandall 30(b)(6) dep. 74:18-76:15.)  In short, on this record,

Rite Aid's exemption decisions do not to eliminate the required examination of each SM's actual

duties to determine liability.  *Knott,* 2012 WL 4341816, at *7-8 (rejecting plaintiffs' reliance on

Dollar Tree's decision to classify all of its store managers as exempt, explaining "[w]hile Dollar

Tree applied its executive exemption across-the-board, the defense is individuated in this case as

---

[13] Plaintiff claims that "reclassification only had an effect on damages," but then suggests that "if the
Court believes that decertification should be granted due to the reclassification of some SMs, Plaintiff
proposes the alternative of creating a subclass consisting of non-exempt SMs" without further
discussion.  (Pl. Opp. at 4 n.6.)  Creation of subclasses in this context, however, does not eliminate the
need for individualized inquiries or reduce fairness and manageability concerns.  *Marshall v. Amsted
Rail Co.*, No. 10-cv-0011, 2012 WL 5499431, at *11 (S.D. Ill. Nov. 13, 2012) (granting
decertification, explaining even with subclasses "[w]e are still faced with the highly individualized
fact-specific inquiries as to nearly every Plaintiff" and individualized defenses).

5

Plaintiffs' job duties and employment experiences vary dramatically"); *Harbor Freight*, 2012 WL 3563977, at *6 ("merely classifying a group of employees as exempt does not automatically qualify them as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties").

Plaintiff likewise continues to rely on the SM job description, despite the deposition testimony confirming that whether the job description is accurate and complete in its statement of the job duties, as Plaintiff Indergit admitted, depends upon which SM you ask.  (Indergit dep. 147:21-148:16 (description is accurate and complete, and he performed all of the duties identified); Malone 284:7-285:21 ("Q. So do you feel that that's a fair representation of what you actually did as a store manager?  A. No."); Pletka dep. 314:21-315:2 ("The only way for us to know if each individual store manager performed each task listed in this job description would be to ask each individual store manager, right? A. I would have to say yes.").[14]  But Plaintiff does not contend (nor could he) that the job descriptions at issue facially violate the FLSA; rather, they confirm the exempt nature of the position.  As such, "by maintaining that it is their day-to-day responsibilities that render them misclassified, Plaintiffs effectively disavow the job description … Thus, Plaintiffs may not rely on the job description itself as generalized evidence of the scope and similarity of their daily activities.  Instead, the Court must conduct a fact-intensive inquiry into the daily activities of each individual plaintiff …."[15]

---

[14] *See also* (K. Wilson dep. 267:25-268:1 (referring to the job description, "it leaves out a lot of the actual tasks that we do, but it's generally an acceptable description"); Hulsey dep. 234:24-235:5 (description accurately reflects her duties, and she does not know of anything she would need to add to make it complete); Bogash dep. 267:15-21 (completed tasks he believed were non-managerial that were not part of the job description); Malone dep. 255:2-4 (referring to the job description,  "Q. Fourth sentence.  'Frequent independent judgments are essential.'  Do you agree with that? A. Not at all."); Crandall 30(b)(6) dep. 55:11-56:16 ("There's no way that we could capture every responsibility [in the job description].  Or depending, again, like we said, on the person's experience or background that their experiences are going to be different.").)

[15] *Harbor Freight,* 2012 WL 3563977, at *5; s*ee also Hernandez v. United Auto Credit Corp.,* No. C-08-03404RMW,  2010 WL 1337702, at *4-5 (N.D. Cal. Apr. 2, 2010)(decertifying collective action

     **2.**     **Plaintiff's reliance on corporate policies does not eliminate individualized inquiries.**

Just as Plaintiff argued in his initial motion for conditional certification, he cites to Rite Aid policies and documents and claims they "support collective treatment," but fails to cite any testimony about those policies, much less testimony to suggest that the documents eliminate the need for individualized inquiries about the exemption factors.  (Pl. Opp. at 8-10.)  Plaintiff further ignores the corporate testimony included at pages 26-27 of Defendants' original brief explaining that Rite Aid "provide[s] best practices to our stores on different activities.  But we don't dictate how they do any particular activity" and that materials like merchandising standards are a "guideline" and "designed" to maximize store sales, as well as Plaintiff's own testimony that the impact of policies and procedures (if any) swings from one extreme to the other.  *See* Ex. 3; Class Cert. Opp. Ex. 1, 3.  Plaintiff also makes no attempt to distinguish the caselaw cited in Defendants' original brief at 28, finding evidence of an employer's policies and/or oversight is not evidence of managers' actual duties and does not eliminate the individualized nature of the exemption inquiry.[16] Finally, as detailed in  Exhibit 3, Defendants' opposition to class certification at 25-28, and the corporate and District Managers' testimony reflected in Class Cert. Opp. Exhibits 1, 3, and 6, the record testimony completely undercuts Plaintiff's "corporate control" theory, reflects that analysis

_____

where plaintiffs relied on facts that employer uniformly treated all supervisors as exempt and had a single job description, because court still had to consider actual duties and "actual work performed … varies significantly").

[16] Instead, Plaintiff cites inapposite caselaw. (Pl. Opp. at 16, citing *Winfield v. Citibank, N.A.,* 843 F. Supp.2d 397, 400, 404 (S.D.N.Y. 2012) (finding evidence of "'dual-edged' policy of strictly limiting the amount of overtime that [non-exempt employees] could accrue while imposing rigorous sales quotas that could not feasibly be met in a forty-hour work week" sufficient "common allegation" for conditional certification of non-exempt employees' overtime claims); *Pefanis,* 2010 U.S. Dist. LEXIS 93180, at *12 (plaintiff and one opt-in were similarly situated where they worked overtime at defendant's restaurant, were not paid for it, and no records of work time were kept); and *Ayers v. SGS Control Servs.,* No. 03CIV.9078, 2007 U.S. Dist. LEXIS 19634, at *7, 20 (S.D.N.Y. Feb. 26, 2007) (policies challenged included late payment of overtime, method of calculating impact of bonus on wages, and use of the fluctuating workweek calculation).)

of exercise of discretion must be evaluated SM-by-SM, and confirms the misclassification claims

must be decertified.

### 3.   Plaintiff's "Exhibit A" is unreliable, and the "facts" Plaintiff cites are irrelevant to the exemption inquiry.

Plaintiff entirely ignores the testimony summarized in Defendants' original brief in support

at 13-25, which demonstrates the differences in SMs' actual duties and responsibilities depending

on a wide variety of factors based on the small number of depositions allowed to date.  Plaintiff also

would have the Court disregard (as Plaintiff did) Defendants' demonstration of the record reflecting

critical differences in work related to both the relevant exemption factors and required primary duty

analysis for each SM (outlined in Defendants' original brief in support at 15-25).

Plaintiff instead asserts that "the evidence establishes that the actual job duties of SMs are –

at the very least – 'quite similar' and that SMs' claims may be supported by generalized proof,"[17]

apparently in the form of Plaintiff's summary "Exhibit A."  However, Plaintiff's blanket "YES" and

"NO" assertions in "Exhibit A" are not supported by the discovery record.  Instead, as detailed in

the charts in Exhibits 1-7, Plaintiff's summary is rife with inaccuracies and a complete

mischaracterization of the record.  First, in order to create columns of consistent "YES" or "NO"

responses in "Exhibit A," Plaintiff chose not to include SMs whose testimony differed.[18]  More

importantly, even the testimony Plaintiff cites is largely inaccurate and/or selectively disregards

each SM's other testimony to the contrary.  For example, Plaintiff's "Exhibit A" states "NO" as to

whether SM Pletka hired or promoted, yet he testified he hired a "hundred" at one store and the

majority of his promotion recommendations were accepted.  (Pletka dep. 87:14-88:12, 125:15-22).

_____

[17] (Pl. Opp. at 16.)
[18] As demonstrated by the chart attached as Exhibit 8, Plaintiff could not identify a single opt-in who testified consistent with each of his assertions of fact.  Indeed, the vast majority of the SMs could only provide testimony (which is often out of context or misstated) that fits within Plaintiff's categories based on unique anecdotal experiences.  (*See, e.g.* Bourgeois dep. 26:25-27:12 (describing "corporate" doing his store's ordering – but only in the wake of Hurricane Katrina).

Defendants' Exhibits 1-7 outline the complete unreliability of Plaintiff's "Exhibit A." [19]
Defendants' Exhibits 1-7 also provide repeated examples of variations in testimony about factors relevant to the exemption inquiries and confirm that even when a "NO" in Plaintiff's "Exhibit A" is accurate, that testimony is diametrically opposed to the testimony of other SMs.

Aside from "Exhibit A," Plaintiff's Opposition at 10-14 lists categories of testimony which are not determinative for purposes of the exemption inquiries, such as assertions that SMs worked more than 40 hours per week, "spent the majority of their time performing non-managerial duties," [20] "provided examples of such non-managerial tasks," and "DMs have witnessed SMs perform non-managerial tasks." An SM's performance of non-managerial work, even if for a significant percentage of her total work time, does not eliminate the need to consider her actual duties to determine whether the exemptions at issue apply. [21] Moreover, even where an SM testified she performed "non-managerial work," a factfinder must still assess whether she did so for a managerial reason, and/or exercised her discretion to perform that task and assign the managerial task to another

---

[19] *Postiglione v. Crossmark, Inc.,* No. 11-960, 2012 WL 5829793, at *5-6 (E.D. Pa. Nov. 15, 2012) (denying conditional certification, explaining "[t]he charts … prepared by Plaintiffs' counsel are similarly unreliable" where the factual allegations in them were directly contradicted by the plaintiff's own testimony).

[20] The opt-ins' own testimony confirms their estimates as to the percentage of time allegedly spent on "non-managerial" duties range from 40% to 95% -- a wide variance. (R. Brown dep. 215:25-216:10(40%).) Similarly, opt-in McGillivray testified that his estimate of "non-managerial" time varied from 50% to 55% in another year to the "60-plus range" in two other years. (McGillivray dep. 314:1-315:14). Moreover, the Court already found that Plaintiff Indergit's 90% estimate would be subject to Defendants' "credibility" attack and requires "testimony from Plaintiff's co-workers and supervisor." (SJ Order at 15-16.)

[21] *Harbor Freight,* 2012 WL 3563977, at *6 (decertifying store manager misclassification claims although "every Plaintiff reported that they regularly worked more than fifty hours per week," and Plaintiffs argued they "presented class-wide evidence that Store managers spent between 80 to 90 percent of their time doing manual labor;" holding "[w]hile time spent on non-managerial duties is a relevant factor in exemption analysis, Plaintiffs' case for certification cannot rest solely on this similarity, as it is not a dispositive showing."); *Knott,* 2012 WL 4341816, at *4 (noting that a majority of the store manager opt-ins claimed they spent more than fifty percent of their time performing manual labor, but "[i]f that were all that need be considered, this Court's opinion addressing the motion to decertify the existing class would be much more concise. Regrettably, it is not. 'Employees who do not spend more than [fifty[ percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.'" (quoting 29 C.F.R. §541.700(b).)

employee, or was concurrently performing managerial duties, such as monitoring and/or supervising

other employees. [22]  (Paul dep. 73:22-74:9 (worked alongside store employees "in part for training"

and was "in charge" while working with them), *id*. at 74:17-25(important to be good at multitasking

"[b]ecause at all points in the day you have three to four things going on.  You have to be able to

handle it all"); (Ensor dep. 90:10-15(could be stocking a shelf "to get close proximity to a

shoplifter" or "train somebody the correct way to do it"); *Casida*, 2012 U.S. Dist. LEXIS 111599, at

\*69 ("the evidence shows that whether a task is exempt may depend on many factors such as …

whether the [manager] performed the task along with hourly associates for training purposes").

Plaintiff's false allegations of "largely similar" duties also ignore the required primary duty

analysis, which the Court already confirmed "<u>must be based on all the facts</u>," and those facts vary.

(SJ Order at 9[23] (emph. in orig.)); (Indergit dep. 333:24-334:4 ("Q. And the managerial duties that

you performed as a store manager were critical to the operation of the store too? A. Yes."); V.

_____

[22] The record is replete with evidence of SMs' concurrent duties, further confirming that reliance on
any percentage estimates as "representative" is impossible.  *See* (Indergit dep. 217:24-218:4 ("Q.
Regardless of what you were doing, you were continuously monitoring your employees when you
were in the store, true?  A. Yes."); Dayton dep. 126:24-127:25 (when helping a customer he was
providing an example for hourly employees to model his behavior, when unloading a truck he was
coaching the employee helping him; coached employees 10% of each day); Dixon dep. 276:17-19 ("I
could be at the register and I could have a screen pulled up, and I could be doing invoices."); O'Brien
dep. 285:9-13 ("Q. So you were planning other work while you were working on planograms or
whatever it might be?  A. Yes.");  Exhibits 4, 5; 29 C.F.R. § 541.106(a) ("Whether an employee meets
the [exemption] when the employee performs concurrent duties is determined on a case-by-case
basis."); s*ee also Richter,* 2012 WL 5289511, at \*5 (decertifying where "Plaintiffs also differ in the
amount of time concurrently performing  exempt and nonexempt work," and "[i]n addition to the
varying amounts of time Plaintiffs spent performing exempt work, the type of exempt work performed
also differed among Plaintiffs"); *Knott,* 2012 WL 4341816, at \*4 ("In this case, many [store managers]
have admitted to simultaneously performing exempt and nonexempt work. … Therefore, it would be
impossible to determine whether Plaintiffs are 'similarly situated' based solely on the fact that most, if
not all of them, spent over fifty hours per week on nonexempt work.").
[23] Plaintiff attempts to distinguish the Court's Order confirming his highly individualized claims with
assertions that "representative proof depositions had yet to be taken."  (Pl. Opp. at 22.)  But Plaintiff
fails to cite to a single deposition in the record that would somehow be "representative" for purposes
of the questions of fact the Court determined exist for Indergit's claims, nor could they.  As illustrated
in Defendants' exhibits, however, there are multiple depositions in the record that are far from
"representative" of Plaintiff Indergit's claims, and it is noteworthy that Plaintiff fails to cite to his own
deposition in his "Exhibit A."  In any event, testimony of Indergit's co-workers and supervisors is
required – confirming inevitable mini-trials.  (SJ Order at 16.)

Brown dep. 350:21-351:9("not much" authority to run his own store; "[w]e were robots").[24]

Similarly, Plaintiff contends some SMs were unable to "adequately" hire and/or terminate

employees – yet "adequately" is not referenced in the statute, regulations, or any of the caselaw, and

the deposed SMs' testimony about their involvement in hiring, firing, and other changes in status

varies from no involvement to hiring "hundreds," and everything in between.[25]  *See* Exhibits 1, 2, 4;

Class Cert. Opp. Exhibits 5-7.  Testimony is incredibly varied no matter which "management" duty

outlined in the regulations a factfinder considers, including, for example, appraising performance.

(Hulsey dep. 47:23-48:24, 121:17-122:24 (prepared and administered her assistant managers', shift

supervisors', and employees' performance appraisals without supervision); V. Brown dep. 180:8-18

("DM did all the salary managers' evaluations, I didn't have to do anybody's"); Indergit dep. 322:3-

18 (did not prepare performance evaluations because his store was unionized, and employee raises

were based on "something else"); Lembezeder dep. 124:22-125:5, 145:21-25 (initially testified he

---

[24] *Harbor Freight,* 2012 WL 3563977, at *8 (wide variations in the "weight" given to a manager's recommendations weigh against collective treatment, and even with respect to whether store managers met the administrative exemption, "the salient factors for the exemption focus on whether the employee's primary duty involves non-manual work directly related to management and the exercise of discretion and independent judgment.  The evidence varies as to the nature and variety of decisions made by Plaintiffs, how they ran their respective stores, their authority to make independent choices, and the degree to which their recommendations were considered or reviewed at a higher level, weighing against proceeding collectively."); *Knott,* 2012 WL 4341816, at *6 ("While the differences in the amount of time spent on any individual act of 'management,' such as training associates, might not seem material, these differences as a whole could ultimately lead to differing conclusions as to each employee's 'primary duty.'  Furthermore, even if every Plaintiff spent a similar amount of time performing 'management duties' as a whole, the relative importance of the different types of exempt work performed may also lead to differing 'primary duty' determinations.  If each Plaintiffs' claims were tried separately, the primary duty of some would no doubt be found to be management, while the primary duty of others would not.").  Rather than distinguishing the Court's Order and applicable caselaw, Plaintiff repeatedly cites *Han v. Sterling Nat'l Mort. Co.,* No. 09-cv-5589, 2011 U.S. Dist. LEXIS 103453, at *32 (E.D.N.Y. Sep. 14, 2011), in which a district court certified a Rule 23 class for purposes of loan officers' NYLL claims.  In contrast to this record, *Han* relied on evidence from the defendant's affidavits "confirm[ing] that the primary duties of inside loan officers *were the same and largely mirror[ed] the descriptions* provided by the" plaintiffs  *Id.* (emph. added).
[25] *See* 29 C.F.R. §541.105 ("[A]n employee's suggestions and recommendations" as to hiring and firing may still be deemed to have "'particular weight' even if a higher level manager's recommendations has more importance and even if the employee does not have authority to make the ultimate decision"); *Knott,* 2012 WL 4341816, at *7 ("These differences in the frequency with which recommendations were made and accepted could ultimately lead to differing conclusions as to … 'particular weight.'").

did not prepare written performance appraisals, then later conceded he "probably did"); Martin dep.

99:7-100:4 (had to submit draft appraisals to her DM, and he made substantive changes and then

gave her the "final okay").

      Finally, at pages 18-19 of Plaintiff's Opposition, Plaintiff claims that "most if not all of the

evidence that Defendants attempt to argue" and "variations" relied upon by Defendant "have been

found *in*sufficient to warrant decertification as a matter of law."  This assertion is legally inaccurate,

no cases cited by Plaintiff made any such "as a matter of law" findings, and the assertion completely

disregards the Court's finding that "the highly fact-intensive inquiry" is "far more complicated, and

requires weighing a variety of factors and a 'totality of the circumstances' approach."[26]

         **4.**     **Representative proof for purposes of the exemption factors and primary duty analysis is not possible on this factual record.**

---

[26] (SJ Order at 10, 12.)  Plaintiff's contention that such variations material to determining the exemption defenses "have been found *in*sufficient to warrant decertification as a matter of law" is not supported by any of the cases Plaintiff cites.  (Pl. Opp. at 13-14.)  *Damassia, Hoffman, Hipp* (an ADEA case), *Rainiere,* and *Searson* all applied a "lenient" standard at the conditional certification stage (and considered different factual records). *Id.  Morgan v. Family Dollar Stores, Inc.* involved the Eleventh Circuit's application of the abuse of discretion standard to the district court's decision to try the manager misclassification claims on a class and collective basis and on a distinctly different fact record. 551 F.3d 1233, 1263, 1270, 1272 (11th Cir. 2008) (noting "[w]e recognize Family Dollar's assertion that the duties of store managers varied significantly depending on the store's size, sales volume, region, and district.  *But there was scant evidence to support this argument*[,]" "Family Dollar's charts do not include all of the factors … that courts examine when making an executive exemption inquiry.  … the district court was free to assess the quality of the charts ….," "rather than treat these manual tasks as an incidental part of a managerial job, Family Dollar describes them as essential [in the job description]," and "the evidence, in the light most favorable to the Plaintiffs here, did not show they performed managerial and non-managerial tasks concurrently") (emphasis added). The *Morgan* opinion explains, however, that "as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated."  *Id.* at 1261.  In any event, even courts in the Eleventh Circuit have not been constrained by *Morgan's* fact-specific conclusions.  *Knott,* 2012 WL 4341816, at * 8 (decertifying store managers' FLSA claims, explaining "the Eleventh Circuit in *Morgan* was simply deciding that the district court had not abused its discretion by finding the multiple plaintiffs similarly situated.  It does not necessarily follow that a contrary ruling would have been an abuse of the district court's discretion.  This argument is exceedingly persuasive in the case at hand given the abundance of evidence showing that Plaintiffs are not similarly situated.  While Dollar Tree applied its executive exemption across-the-board, the defense is individuated in this case as Plaintiffs' job duties and employment experiences vary dramatically.")

Not surprisingly, Plaintiff takes a similarly superficial approach to the inherent problems with representative proof given this record and argues that representative testimony has been allowed in unpaid wage cases.  (Pl. Opp. at 28.)  Similarly, Plaintiff's proposed "trial plan" is nothing more than to have "deposed witnesses (or a percentage thereof)" provide "representative testimony" for 1,545 SMs, and then a "damages phase."[27]  (*Id.* at n.15.)  Given the record of differences relevant to the exemption factors and primary duty analysis, Plaintiff's "plan" fails to make even a minimal showing of attempted due process – for Plaintiff and the opt-ins or Defendants.  Instead, this Court and others have rejected reliance on "representative testimony" for any purpose under similar circumstances.  *Zivali v. AT & T Mobility, LLC,* 784 F. Supp. 2d 456, 459 (S.D.N.Y. 2011) (decertifying assistant managers' FLSA claims where "considerations of procedure and fairness weigh heavily in favor of granting decertification, as the Court harbors considerable doubt that any fair determination could be achieved on the basis of representative evidence"); *Richter,* 2012 WL 5289511, at *8 (decertifying where "[u]nlike the employees in *Morgan,* some Plaintiffs in this case were given significant authority and autonomy to run their stores, while others could essentially be described as shelf-stockers.  To make a ruling based on the representative testimony of some Plaintiffs – specifically those with less authority and autonomy to run their store – would be unfair to Dollar General.").[28]

---

[27] Again, Plaintiff simply disregards the Court's determination that testimony from co-workers and supervisors of *each* SM would be necessary.  (SJ Order at 16.)

[28] *See also Harbor Freight,* 2012 WL 3563977, at *9-10 (granting decertification and explaining "deposition testimony shows that it is not possible to develop common testimony from the Store Managers regarding their daily responsibilities and duties," and agreeing with defendant that hundreds of witnesses would be required and will "devolve into numerous mini-trials"); *Knott,* 2012 WL 4341816, at *8 ("[Defendant] may be able to apply the exemption to different Plaintiffs based on different circumstances.  Even if every Plaintiff spent similar amounts of time performing exempt job duties as a whole, because they performed a wide array of different exempt job duties with varying degrees of importance, one group of them cannot reasonably be said to be representative of them all.  Thus, a onesize-fits-all determination is impossible."); *Cruz v. Dollar Tree Stores, Inc.,* 2011 WL 2682967, at *4-5 (N.D. Cal. Jul. 8, 2011) (decertifying store managers' misclassification claims, holding "[i]t has become clear to the Court that 'the crux' of Plaintiffs' proof at trial will be

**C.**   **Individualized Defenses, Fairness, and Procedural Considerations Require Decertification.**

As outlined above, in Defendants' original brief, and in opposition to Plaintiff's motion for class certification,[29] the differences in Plaintiff's and the opt-in's own testimony about their actual duties and responsibilities relevant to the exemption factors, individual defenses in addition to the exemption affirmative defenses, and due process concerns prevent continued collective treatment. With respect to individualized defenses, Plaintiff again cites conditional certification decisions[30] where the "prospect" of such defenses did not preclude notice.  (Pl. Opp. at 18.)  Although Plaintiff also argues that "credibility defenses" based on "contradictions in testimony *among* the plaintiffs"[31] are not individualized, Defendants are entitled to cross-examine every SM and test the individual credibility of each with impeachment evidence in the form of documents s/he prepared such as termination paperwork and post-Rite Aid resumes, and with the testimony of others who worked with the SM. (SJ Order at 16); *Aquilino,* 2011 WL 564039, at *10.  In short, the existence of the exemption and other individualized defenses[32] confirm continued collective treatment will require

---

representative testimony from a handful of class members. … The appropriateness of such a trial plan was a questionable proposition under this circuit's case law at the time of the Court's Partial Decertification Order.  It is now untenable in light of the Ninth Circuit's decision in *Marlo II* and the Supreme Court's decision in *Dukes*."); *In re Wells Fargo Home Mort. Overtime Pay Litig. (Wells Fargo II)*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) ("[T]he court has been unable to locate any case in which a court permitted a plaintiff to establish the non-exempt status of class members … through statistical evidence or representative testimony.").

[29] Plaintiff devotes multiple pages of his Opposition to re-argument of Rule 23 certification.  Due to space limitations, Defendants refer the Court to their separate opposition to class certification.

[30] Plaintiff also cites *Brown v. Kelly*, 609 F.3d 467, 473 (2d Cir. 2010), where the Second Circuit affirmed Rule 23 certification of a city-wide plaintiff class of persons "who have been or will be arrested, summonsed, or prosecuted under" a New York statute declared unconstitutional but reversed certification of other classes.  The Second Circuit's more recent decision affirming the district court's denial of Rule 23 certification of manager misclassification claims in *Myers,* however, distinguished *Brown's* generic holding:  "Moreover, while it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification, *see, e.g., Brown* … it is equally well established that courts must consider potential defenses in assessing the predominance requirement."  624 F.3d at 551 (emph. in orig.).

[31] (Pl. Opp. at 30 (emph. added.))

[32] With respect to the individualized defenses raised by some opt-ins' bankruptcy filings, Plaintiff again misrepresents that "Defendants have failed to specifically raise judicial estoppel in their

14

more than 1,500 mini-trials.  *Morano v. Intercontinental Capital Grp., Inc.,* No. 10CV02192, 2012 WL 2952893, at *7 (S.D.N.Y. July 17, 2012) (decertifying claims given individual defenses applicable to only subsets of the collective).

Finally, continued collective treatment creates the real possibility of injustice to all parties and would be entirely unmanageable.  Any attempt to follow Plaintiff's "trial plan" would violate the due process rights of Plaintiff, the opt-ins, and Defendants – because "the more dissimilar plaintiffs are and the more individuated [defendant's] defenses are, the greater doubts there are about the fairness of a ruling on the merits – for either side – that is reached on the basis of purportedly representative evidence."  *Johnson,* 561 F. Supp.2d at 574.[33]

## III.   **CONCLUSION**

This case presents a record of conflicting evidence showing wide variation in the actual work that SMs do.  Any attempt to continue collective treatment would quickly devolve into unmanageable mini-trials for each SM with multiple witnesses (as the Court already acknowledged in its denial of summary judgment), many of whom are far from this Court.  Yet these inevitable mini-trials would be the only way to ensure on these facts that Defendants *and* Plaintiff Indergit *and* the opt-ins receive a fair trial.  Therefore, Rite Aid respectfully asks the Court to decertify the collective action and dismiss the opt-ins' claims without prejudice.

Respectfully submitted, this the 22nd day of January, 2013.

---

pleadings …."  (Pl. Opp. at 21 & n. 12.)  Defendants' Fifth Defense confirms otherwise.  (Dkt. # 8.)
[33] *Aquilino,* 2011 WL 564039, at *10 (decertifying where continued collective treatment would "infringe upon Defendant's due process rights because it would be unfair and unmanageable to require [it] to litigate the claims of 1500 Opt-Ins"); *Knott,* 2012 WL 4341816, at *8 ("A collective action in this case would certainly reduce the burden on Plaintiffs, as they would not be forced to adjudicate their respective claims in multiple different courts. … [W]hile the executive exemption defense is common among all Plaintiffs, there is an abundance of evidence concerning their differences. Because it is an extensively fact-based inquiry, these differences directly affect an assessment of the executive-exemption for each individual Plaintiff.  It would be fundamentally unfair to [Defendant] if the case were to remain certified.  The efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of [Defendant's] due process rights.").

_s/ Daniel E. Turner_
Daniel E. Turner
(admitted _Pro Hac Vice_)
daniel.turner@ogletreedeakins.com
Tracey T. Barbaree
(admitted _Pro Hac Vice_)
tracey.barbaree@ogletreedeakins.com
Beth A. Moeller
(admitted _Pro Hac Vice_)
beth.moeller@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
One Ninety One Peachtree Tower
191 Peachtree Street, NE, Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

Patrick G. Brady, Esq.
Bar No. PB1114
PBrady@ebglaw.com
**EPSTEIN, BECKER & GREEN P.C.**
One Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 642-1900
Facsimile: (973) 639-8556

_Attorneys for Defendants Rite Aid Corporation
and Rite Aid of New York, Inc._

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated, | |
| Plaintiff, | **08 Civ. 9361 (JPO) (HBP)**<br>**ECF Case** |
| vs. | |
| RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor, | **CERTIFICATE OF SERVICE** |
| Defendants. | |

**CERTIFICATE OF SERVICE**

   I hereby certify that on January 22, 2013, I delivered a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR DECERTIFICATION** by First-class and electronic mail to all parties of record as follows:

     Robert John Valli, Jr.     Jay D. Ellwanger
     Sara Wyn Kane       Deven Hahn
     James Vagnini       DiNovo Price Ellwanger & Hardy LLP
     Aneeba Rehman      7000 North MoPac Expressway
     Valli Kane & Vagnini, LLP   Suite 350
     600 Old Country Road, Suite 519 Austin, TX  78731
     Garden City, NY  11530

     Keith A. Raven
     Raven & Kolbe, LLP
     126 East 56th Street, Suite 202
     New York, NY  10022

Dated: January 22, 2013
Atlanta, Georgia

                 _s/ Daniel E. Turner_
                 Attorney for Defendants Rite Aid of New York, Inc. and Rite Aid Corporation