UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>                      Plaintiff,<br>vs.<br><br>RITE AID CORPORATION, [1] RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>                      Defendants. | 08 Civ. 9361 (JPO) (HBP)<br>ECF Case |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to Local Rule 6.3, Defendants file this motion for reconsideration of the Court's September 26, 2013 Opinion and Order ("Order") granting Plaintiff's motion for Rule 23 class certification of his NYLL claims "as to liability" and denying Defendants' motion for decertification of Plaintiff's FLSA claim. (Dkt. No. 239, Order at 1.) Defendants respectfully request reconsideration of the following limited issues: 1) whether decertification of the damages portion of Plaintiff's FLSA claim should be granted to prevent manifest injustice; 2) whether there is clear error in the Order's identification of and reliance on "outliers, predictable variation"[2] and/or "generally consistent" testimony in the Court's factual and legal findings in the absence of a statistically sound sample; and 3) whether intervening authority and the Court's factual findings in the Order support holding this motion in abeyance pending a ruling on dispositive motions Defendants seek permission to file.

---

[1] Rite Aid Corporation was not, and never has been during the relevant time frame, Plaintiff's employer. Plaintiff's employer at all relevant times was Rite Aid of New York, Inc. Rite Aid Corporation appears specially and without waiver of any jurisdictional defenses.

[2] (Order at 19, 14.)

I.   **ARGUMENT AND CITATION OF AUTHORITIES**

   A.   **Applicable Standard**

   As this Court recently explained:

   A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. The standard for granting a motion for reconsideration is accordingly high, and such motions are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice. Importantly, in reviewing motions for reconsideration courts will not tolerate efforts to obtain a second bite at the apple.

*Jacob v. Duane Reade, Inc.,* No. 11 Civ. 160(JPO), 2013 WL 4028147, at *2 (S.D.N.Y. Aug. 8, 2013) (quotations and citation omitted)(granting reconsideration in part and decertifying damages portion of NYLL misclassification claims); *see also Guzman v. United States,* No. 11 Civ. 5834 (JPO), 2013 WL 5018553, at *5 (S.D.N.Y. Sept. 13, 2013) (granting partial motion for reconsideration where "it was error to maintain the *Monell* claim in light of the Complaint's boilerplate allegations and this particular claim's lack of factual support"). Because reconsideration is an extraordinary remedy, Defendants' motion is narrowly tailored to raise only issues impacted by the first and third factors.

   B.   **In Light of the Order's Refusal to Certify the Rule 23 NYLL Claims for Purposes of Damages, the Damages Portion of Plaintiff's FLSA Claims Should Be Decertified.**

   During the pendency of Defendant's motion for decertification of Plaintiff's FLSA claims and Plaintiff's motion for class certification of NYLL claims, the Supreme Court decided *Comcast v. Behrend,* 133 S.Ct. 1426 (2013)*,* and the parties submitted additional letter briefing and oral argument on the issue of whether the damages portion of Plaintiff's NYLL and FLSA claims could be certified. (*See* Dkt. 234.) The Court found that although Plaintiff met his burden of proof as to liability, "there has been no showing as to damages," and held the NYLL

2

"class is certified as to liability, but not as to damages." (Order at 50.) The Court did not specifically address the issue of whether it should likewise decertify the damages portion of Plaintiff's FLSA claims. On this record, however, Plaintiff is equally incapable of proving his FLSA damages on a collective basis for the same reasons the Court relied upon in the Rule 23 context: "Here, there is no showing from Plaintiff[] that the relevant records for SMs even exist, let alone a sufficient explanation of an approach for calculating damages."[3] (*Id.* at 49.)

      Defendants therefore respectfully request that the Court reconsider its decision and decertify, at minimum, the damages portion of Plaintiff's FLSA claim. *See Espenscheid v. DirectSat USA,* 705 F.3d 770, 772, 774 (7th Cir. 2013) ("despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action …;" rejecting plaintiffs' attempt to rely on a "formulaic" approach to damages for purposes of FLSA and state law claims, affirming denial of certification and decertification where damages would require individual evidentiary hearings, explaining "to extrapolate from the experience of the 42 to that of the 2,341 would require that all 2,341 have done roughly the same amount of work, including the same amount of overtime work.")(internal cit. omitted); *Jacob,* 2013 WL 4028147, at *18 (defendant "is correct that *Comcast* brings damages to the forefront of the class certification inquiry – a holding that, when combined with *Dukes'* discussion of trial by formula, suggest that where individualized damages questions so predominate over damages questions capable of classwide proof, certification is inappropriate and raises due process concerns…..").

---

[3] In fact, the Court's own review of the unrepresentative deposition testimony reflected wide variation in SMs' individual estimates of time worked each week, including differences for a single SM over time and depending upon seasonal variations. (*Id.* at 13-14.)

### C. The Record Afforded an Insufficient Sample for Purposes of Factual and Legal Conclusions as to "Outliers," "Predictable Variation," or "Generally Consistent" Testimony.

In connection with its assessment of the executive exemption, the Court's Order found:

- "But here, the differences highlighted by defendants seem to reflect outliers, predictable variation …." (Order at 19.)

- Based on "a survey of [the deposition testimony of] some thirty SMs," that "[t]he time these SMs claim they spent on non-managerial, non-exempt tasks is also generally consistent and includes a similar mix of running the register, stocking shelves, unloading trucks, engaging in plan-o-grams, and general maintenance. … Again, these percentages are consistent across-the-board."[4] (*Id.* at 13-14, 16 ("it appears that the vast majority of surveyed opt-ins"); and

- "[T]he differences among SMs are marginal and expected, rather than … unpredictable," (*id.* at 17.)

Defendants respectfully request that the Court's factual findings and legal conclusions based on its "survey" be set aside, as there was no representative sample for purposes of the certification record from which statistically significant findings could be made.

First, to the extent the Court relied on any "survey," it was limited to the Court's own survey of the deposition testimony presented, as Plaintiffs never attempted to design or obtain actual survey evidence[5] and never identified any expert of any kind. More importantly, as

---

[4] Defendants specifically challenge any factual finding that the percentage of time spent on non-managerial or non-exempt tasks is "generally consistent," as even the limited record testimony cited by the Court in support of this statement shows incredible variation. (*Id.* at 14.) Other deposition testimony cited by Defendants reflected SMs spending, "I will say, roughly, about, you know, 80, 80 percent, 75 or 80" on managerial tasks. (Wilkinson dep. at 147:24-148:19; Nelson dep. at 178:4-178:25(estimating his three different SMs while he was an assistant store manager spent 50, 60, and 75% of their time in the office).) In any event, the Court correctly found that "the time spent performing a given task does not necessarily render that work an employee's primary duty as defined by the applicable FLSA exemptions," and "those same opt-ins generally feel that they are consistently in a supervisory role and multi-tasking while performing those tasks." (*Id.* at 14, 31.)

[5] *See, e.g., Scott v. City of New York,* 591 F. Supp.2d 554, 560-61 (S.D.N.Y. 2008) (denying plaintiffs' motion to exclude evidence from survey jointly developed by the parties, explaining generally that the "Manual for Complex Litigation lays out basic parameters for reliable surveys,

4

Defendant has consistently asserted throughout this action, the discovery permitted for class certification purposes did not provide a representative sample sufficient for any statistically significant analysis.[6] The 50 depositions permitted by Magistrate Judge Pitman[7] were 3.3 % of the 1,540 opt-ins in the FLSA collective action, and less than .5% of the New York SMs who would be encompassed in the NYLL class. The deponents were not selected on any even arguably representative basis, as the Court ordered that the parties were simply to each hand select 25 SMs for deposition. (Dkt. 131, 132, 135.) As a result, there is no basis for contending that the deposition testimony is representative of, for example, the geographic regions in which Defendants operate stores, different types of stores, or any reasoned sampling variable. Under these circumstances, it is impossible to draw any statistically significant conclusions from the limited testimony in the record for certification purposes.[8]

As the Seventh Circuit recently held in *Espenscheid,* 705 F.3d at 774, the lower court properly decertified the FLSA and state law wage claims of a group of 2,341 technicians where "[t]he plaintiffs proposed to get around the problem of variance by presenting testimony at trial

---

including both conformance with recognized statistical standards and survey construction likely to elicit impartial answers.").

[6] (*See, e.g.,* Defendants' October 22, 2010, November 22, 2010, December 6, 2010, July 28, 2011, November 14, 2011, August 12, 2012 letters to Magistrate Judge Pitman; Dkt. Nos. 135, 234, 209, 218, 219, and 228.)

[7] Pursuant to Federal Rule of Civil Procedure 72(b), Defendant filed objections to Magistrate Judge Pitman's decision regarding the discovery plan on April 5, 2011. (Dkt. 135.) Plaintiff never responded, nor did the Court rule on the objections.

[8] *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2554-55 (2011)(finding even if plaintiffs' stereotyping expert's testimony were considered, it "does nothing to advance" plaintiffs' case where he had no answer to whether "0.5% or 95% of the employment decisions at Wal-Mart might be determined by stereotyped thinking" which "is the essential question on which respondents' theory of commonality depends;" holding "we can safely disregard what he has to say. It is worlds away from 'significant proof' ….;" and further holding "it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction. Respondents attempt to make that showing by means of statistical and anecdotal evidence, but their evidence falls well short.").

from 42 "representative" members of the class," but plaintiffs were unable to explain how the representatives had been chosen.  In particular, the court relied on the fact that "[t]here is no suggestion that sampling methods used in statistical analysis were employed to create a random sample of class members to be the witnesses, or more precisely random samples, each one composed of victims of a particular type of alleged violation."  For the same reasons, "what can't support an inference about" the percentages of time spent by SMs and whether actual duties performed by SMs were marginal "is evidence of the experience of a small, unrepresentative sample of them."  *Id.* at 775; *see also Farmer v. DirectSat USA, LLC,* No. 08CV3962, 2013 WL 2457956, at*6 (N.D. Ill. June 6, 2013) (relying on *Espenscheid* to find trial plan of 16 witnesses "who comprise roughly 3% of the 512-member class" failed to offer representative proof for purposes of FLSA claims); *In re Taco Bell Wage & Hour Actions,* No. 1:07-cv-01314, 2011 WL 4479730, at **10-11 (E.D. Cal. Sept. 26, 2011) (rejecting plaintiffs' attempt at reliance on expert's testimony as to "how representative evidence might be used" for purposes of class wage claims, such as "the type of survey that would be used … how the sample would be selected … whether a random or stratified sample would be used … what an appropriate sample size would be … [and] what an appropriate margin of error would be" where survey expert offered only "a general description of how surveys work without any application to the facts of this case"); *York v. Starbucks Corp.,* No. CV08-07919, 2011 WL 8199987, at *25 (C.D. Cal. Nov. 23, 2011) ("the Court has granted motions to strike the survey evidence and the statistician's opinions because of significant flaws in methodology.  Without that evidence, the court is left with anecdotal evidence, which may not be at all representative of the whole …."); *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733,  2008 WL 2714079, at *22 (S.D. Tex. July 9, 2008) ( "the use of representative testimony is justified only where it is reasonable to believe that the testifying

witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs."); *King v. CVS/Caremark Corp.*, No. 07-21824, 2008 WL 5973490, at *6 (S.D. Fla. Sept. 11, 2008) (finding purported representative testimony inappropriate where there are "variation in stores, management practices and factual disparities as to each Plaintiff"); *Chavez v. IBP, Inc.*, No. 01-5093, 2004 WL 5520002, at *10-11 (E.D. Wash. Dec. 8, 2004) (rejecting, in FLSA and state law overtime case, expert sampling method that did not result in representative sample of employees, where expert did not use a stratified random sample, did not calculate a confidence interval, and did not determine nonresponse bias).

    **D.**    **The Factual Findings in the Order and Recent Precedent Warrant Holding This Motion and Further Proceedings in Abeyance Pending a Liability Determination.**

The Court's Order found, "the Court is persuaded that if one SM is properly classified as exempt, whether under the executive, administrative, or combination exemptions, so too must be all SMs." (Order at 30.) As part of its rigorous analysis of the class certification and decertification motions, the Court "resolve[d] the material disputes" [9] in the conflicting evidence and made multiple factual findings regarding Defendants' affirmative exemption defenses, including:

- "the vast majority of SMs nonetheless agree that their role is to be 'in charge' of their store, even when the demands of the store requires multitasking, while concurrently performing nonexempt duties." (*Id.* at 15.)

- "Moreover, the fundamental role of being responsible for the day-to-day operations of the store does not appear to have been diminished by the functional necessity of non-managerial duties." (*Id.* at 16.)

- "As for the supervision requirement, the record reflects the fact that all SMs regularly supervise the hourly employees in their stores. … this supervisory element is clearly ever-present." (*Id.* at 21.) "Additionally, the NY SMs consistently testified to the supervisory aspects of their roles." (*Id.* at 37.)

---

[9] (*Id.* at 36.)

- "Next, with respect to hiring and firing, … the testimony is remarkably consistent insofar as it relates to the basic responsibilities of the SMs in this area. In general, it seems that all SMs had the authority to hire hourly associates …." (*Id.* at 21-22.)

- "It appears that, as a general rule, the SMs need DM approval before terminating an employee but, at the same time, DMs tend to listen to most of the SMs' recommendations with regard to termination." (*Id.* at 24.)

- "[M]ost SMs did feel responsible for their respective stores and seek to contribute to their profitability." (*Id.* at 26-27.)

- "[O]pt-ins generally feel that they are consistently in a supervisory role and multi-tasking while performing those [non-exempt] tasks. Accordingly, RA can clearly put forth a robust counter-narrative, with generalized proof, that suggests that all SMs' primary duty was supervision, or some other exempt responsibility, even when cashiering or stocking." (*Id.* at 31.)

- "After careful examination of the record…the Court determines that (1) Plaintiff's portrayal of SMs as automatons, who perform rote tasks as explicitly directed by RA is inaccurate…" (*Id.* at 36.)

- "[T]he NY SMs testified to concurrently performing managerial and non-managerial duties at the same time." (*Id.* at 37.)

- "[T]he NY SMs largely exercise discretion in some way while developing the schedule for their respective stores…." (*Id.*)

- "It appears from the record that SMs have meaningful discretion in hiring, firing, disciplining, allocation of labor budgets, scheduling, and merchandise ordering – some of the main duties listed on their job description. (*Id.* at 36-37.)

Finally, the Court noted that with respect to "the argument that SMs are properly exempt," after reviewing the record "it appears that RA may well have the better of this argument, and invites RA to address it again in a later motion for summary judgment." (*Id.* at 36, n. 17.)

Defendants much earlier (in August 2009) sought summary judgment on the claims of named Plaintiff Indergit and relied on Judge Gardephe's findings in their decertification briefing, but the Court's earlier summary judgment conclusions were not addressed in the Order. (Dkt.

8

239.) Defendants now find themselves, after more than five years of litigation, still defending an FLSA collective action and a state-wide class action in which even the Court agrees Defendants "may well have the better" arguments on the exemption defenses – yet Plaintiff is attempting to start a course of post-certification "merits" discovery.[10] (Dkt. 241.) Having been through years of discovery and certification-related briefing, in the interest of judicial economy and to avoid manifest injustice, the next step in this action should be to hold both of the above grounds for reconsideration in abeyance[11] and permit Defendants to renew their motion for summary judgment on Plaintiff Indergit's claims, as well as file several other motions for summary judgment.

Under different circumstances, the Second Circuit very recently relied on similar reasoning to hold class certification in abeyance in *The Author's Guild, Inc. v. Google, Inc.,* 721 F.3d 132 (2d Cir. 2013). The plaintiffs in *Author's Guild* brought suit in 2005 alleging Google committed copyright infringement. After years of discovery, the plaintiffs moved to certify a class, and the district court granted the motion. *Id.* at 134. Google filed a Rule 23(f) appeal,

---

[10] To put it another way, there can be no class or collective action if Plaintiffs have suffered no injury. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d. Cir. 2010) (noting that under the FLSA, court may send notice after finding that plaintiffs and potential opt-ins "together were victims of a common policy or plan that violated the law.") (citing *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.); *Pefanis v. Westway Diner, Inc.*, 08 Civ 2 (DLC), 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010) ("All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation.").

[11] Defendants' Rule 23(f) deadline for filing a petition for interlocutory appeal of the Court's decision granting class certification of the NYLL claims is tolled only during the pendency of this motion for reconsideration. *See e.g., Fleishman v. Albany Med. Ctr.*, 639 F.3d 28, n. 6 (2d Cir. 2011) (citing *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 192 (3d. Cir. 2008) and *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005)).

9

arguing "it intends to assert a 'fair use' defense, which might moot the litigation." *Id.* The Second Circuit held, "we believe that the resolution of Google's fair use defense in the first instance will necessarily inform and perhaps moot our analysis of many class certification issues, including those regarding the commonality of plaintiff's injuries, the typicality of their claims, and the predominance of common questions of law or fact." *Id.* The Court therefore remanded the case to the district court for consideration of the fair use defense, concluding "we are persuaded that holding the issue of class certification in abeyance until Google's fair use defense has been resolved will not prejudice the interests of either party during the projected proceedings before the District Court following remand." *Id.* at 135.

In short, the record before the Court and judicial economy warrant a determination on Defendants' affirmative defenses to Plaintiff's claims before further proceedings in this action. Accordingly, Defendants respectfully request that the Court hold this motion in abeyance and permit the immediate filing of summary judgment motions. (Dkt. 240.)

## II.     CONCLUSION

For the reasons set forth above, Defendants respectfully request that this motion be held in abeyance pending the Court's determination on Defendants' summary judgment motions. In the alternative, Defendants respectfully request that their motion for reconsideration on the first and second grounds set forth above be granted.

Respectfully submitted, this 10th day of October, 2013.

                         *s/ Daniel E. Turner*
                         Daniel E. Turner
                         (admitted *Pro Hac Vice*)
                         Tracey T. Barbaree
                         (admitted *Pro Hac Vice*)
                         Beth A. Moeller
                         (admitted *Pro Hac Vice*)
                         **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

One Ninety One Peachtree Tower
191 Peachtree Street, N.E. ,Suite 4800
Atlanta, Georgia  30303
Telephone: (404) 881-1300
daniel.turner@ogletreedeakins.com
tracey.barbaree@ogletreedeakins.com
beth.moeller@ogletreedeakins.com


Patrick G. Brady
Suzanne K. Brown
**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, NY 10177-1211
Telephone: (212) 351-4500
Facsimile: (212) 878-8600
One Gateway Center
Newark, New Jersey 07102-5311
Telephone:  (973) 642-1900
Facsimile: (973) 639-8556
pbrady@ebglaw.com
skbrown@ebglaw.com

*Attorneys for Defendants Rite Aid Corporation and Rite Aid of New York, Inc.*

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>                  Plaintiff,<br><br>                  vs.<br><br>RITE AID CORPORATION, RITE AID OF NEW YORK, INC. and FRANK OFFOR as Aider & Abettor,<br><br>                  Defendants. | 08 Civ. 9361 (JPO) (HBP)<br>ECF Case<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

       I hereby certify that on October 10, 2013, the foregoing document was filed via the Court's CM/ECF system, and was automatically served via electronic mail on all counsel of record:

| | |
|---|---|
| Robert John Valli, Jr.<br>Sara Wyn Kane<br>James Vagnini<br>Aneeba Rehman<br>Valli Kane & Vagnini, LLP<br>600 Old Country Road, Suite 519<br>Garden City, NY  11530<br><br>Keith A. Raven<br>Raven & Kolbe, LLP<br>126 East 56th Street, Suite 202<br>New York, NY  10022 | Jay D. Ellwanger<br>Deven Hahn<br>DiNovo Price Ellwanger & Hardy LLP<br>7000 North MoPac Expressway<br>Suite 350<br>Austin, TX  78731 |

Dated: October 10, 2013
Atlanta, Georgia

                                                          *s/ Daniel E. Turner*
                                                          Attorney for Defendants Rite Aid of
                                                           New York, Inc. and Rite Aid
                                                           Corporation