

**Littler Mendelson, PC**
3344 Peachtree Road N.E.
Suite 1500
Atlanta, GA  30326.4803

September 11, 2015

Daniel E. Turner
404.443.3525 direct
404.233.0330 main
404.420.2480 fax
dturner@littler.com

**VIA ECF**

The Honorable Henry B. Pitman
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Yatram Indergit v. Rite Aid Corporation, Rite Aid of New York, Inc.*;
      Case No. 08 Civ. 9361 (JPO)(HBP).

Dear Judge Pitman:

This letter is submitted on behalf of Defendants Rite Aid Corporation[1] and Rite Aid of New York, Inc. ("Defendants" or "Rite Aid") (collectively the "parties") regarding the merits phase of discovery in this matter.

As set forth in the parties' July 2, 2015 submission to Judge Oetken, *see* Dkt. No. 281, the parties have conferred regarding the next phase of discovery in this matter, and have reached agreement on numerous issues.  However, the parties have been unable to reach agreement on several remaining issues and respectfully seek the Court's guidance as to the following issues:

1.  Damages discovery relating to the deponent opt-ins as well as general merits discovery pertaining to damages.
2.  Reopening of nine (9) of the original 50 opt-in Plaintiffs depositions.
3.  Discovery to be permitted as to both parties relating to previously deposed opt-ins and to additional opt-ins and possible New York class member deponents.
4.  Selection of absent NY Class members versus NY Opt-In Plaintiffs in the selection process of additional NY Class deponents.
5.  Limitations on Plaintiffs' non-Rule 30(b)(6) and District Manager corporate depositions.

Defendants' position as to each issue is set forth below.

---

[1] Defendants maintain that Rite Aid Corporation was not, and never has been during the relevant time frame, Plaintiff's employer.  Plaintiff's employer at all relevant times was Rite Aid of New York, Inc.  Rite Aid Corporation appears specially and without waiver of any jurisdictional defenses.

The Honorable Henry B. Pitman
September 11, 2015
Page 2

I.   **Relevant Background**

On or about October 31, 2008, Plaintiff Yatram Indergit ("Plaintiff" or "Indergit") filed this lawsuit alleging, among other things, that Rite Aid misclassified him as an exempt Store Manager in violation of the FLSA and New York Labor Law ("NYLL"). (*See* Amended Compl., Dkt. No. 17, ¶ 1). Plaintiff Indergit sought to represent an FLSA collective action comprised of all current and former Store Managers at all Rite Aid stores nationwide and a Rule 23 class of Store Managers in the State of New York. *See id*. ¶ 9. The crux of Plaintiffs' claims is that Rite Aid requires Store Managers to "perform the non-exempt duties of hourly employees without proper compensation of overtime required by the FLSA." *Id*. at ¶ 11.

On March 31, 2010, the Court granted Plaintiff's Motion for Conditional Certification of the FLSA claims based on a lenient standard and ordered that notice of this matter be sent to current and former Store Managers.[2] (*See* Order, Dkt. No. 93). Approximately 1,500 current and former Store Managers (collectively "the opt-ins") filed consent to join forms to participate in this matter.

After the conditional certification of this matter, the parties submitted competing discovery plans to Your Honor regarding the scope of pre-certification discovery in this matter.[3] Plaintiffs argued vociferously in favor of the use of "representative discovery", despite failing to present a plan that could possibly produce "representative" evidence capable of adjudicating this matter as a collective action. Defendants, in contrast, argued – and will continue to argue – that the plan proposed by Plaintiff fails in all possible respects to create testimony that can possibly be deemed representative and that this case is not suitable for adjudication based on proof from a limited number of hand-selected FLSA opt-ins. Over Defendants' objection, Your Honor ultimately adopted Plaintiffs' proposal, and held that discovery at the initial stage of discovery would be "limited to the depositions of fifty managers, 25 of whom shall be selected by plaintiffs and 25 of whom shall be selected by defendants." Order, Dkt. No. 132 at 7.[4] Based upon this ruling, and over Defendants' objection, the parties subsequently agreed that Plaintiffs would be entitled to take a 30(b)(6) deposition, and the depositions of 20 District Manager witnesses.

---

[2] On the same day, the Court denied Defendants' Motion for Summary Judgment as to the individual claims of Plaintiff Indergit, stating, "Determining whether an employee is exempt from the overtime requirements is a highly fact-intensive inquiry that is 'to be made on a case-by-case basis in light of the totality of the circumstances.'" (SJ Order, Dkt. No. 92 at 10).

[3] Discovery in this case has been bifurcated. At the initial stage, discovery was limited to and focused on whether this case is appropriate to proceed collectively. *See* Order, Dkt. No. 132. Merits-based discovery was not to proceed until after a ruling on Defendants' motion for decertification and Plaintiffs' motion for class certification of the Rule 23 New York claim.

[4] Defendants' Objections to this Order was never ruled upon by the District Court, forcing Defendants to commence the ordered discovery and proceed with a discovery plan that failed to provide anything remotely close to "representative" evidence.

The Honorable Henry B. Pitman
September 11, 2015
Page 3

The parties completed pre-certification discovery, and Plaintiffs moved for class certification under Rule 23. Defendants opposed class certification and moved for decertification of the conditionally-certified FLSA action.

On September 26, 2013, the Court granted Plaintiffs' motion to certify a Rule 23 class of approximately 1,755 current and former New York Store Managers as to liability only.[5] *See* Dkt. No. 239. The Court declined to certify the Rule 23 New York class for damages purposes, however, explaining, "[h]ere, there is no showing from Plaintiffs that the relevant records for SMs even exist, let alone a sufficient explanation of an approach for calculating damages." *Id*. at 49-50. In the same Order, the District Court denied Rite Aid's motion to decertify the FLSA collective action, finding "it appears from the record that the variations in the opt-ins' testimony do not require decertification on the ground that their disparate factual and employment settings render FLSA-class treatment untenable." *Id*. at 12-32.

Thereafter, the parties engaged in conferrals as to the merits phase of discovery. On December 3, 2014, Defendants submitted a letter brief detailing the requirement that any purportedly "representative" evidence be developed on a statistically valid basis and proposed a highly-detailed discovery plan developed by a well-respected labor economist. *See* Dkt. No. 264. Defendants' proposed plan set forth a statistically valid initial approach to merits discovery in this case. Defendants' proposal suggested the use of random sampling of the New York class and FLSA opt-ins within acceptable margins of error using stratification by store volume and a pilot study to determine the required sample size. *See id*. Defendants' proposal would also ascertain if there are individuals in the collective and class action who have not suffered any damages. At the December 10th conference with Judge Oetken, the court rejected Defendants' proposed plan and directed the parties to confer regarding what "additional store manager type discovery like depositions is needed before a summary judgment motion can be filed, if that's what defendants intend to do." (*See* Dkt. No. 268, Transcript of December 10, 2014 conference at p. 45). The Court specifically recognized the need for a "valid methodology for obtaining a representative sample." (*See id*. at p. 30). Despite the fact that Plaintiffs offered no proposed plan for a "valid methodology for obtaining a representative sample," the Court rejected Defendants' proposed plan and recommended the parties confer regarding the "random" selection of additional deponents (not to exceed 25 collective and class members) with Defendants' standing objection that the record (including the limited additional depositions), does not contain proof that can possibly deemed representative for purposes of a determination on the merits. The Court suggested that the parties could possibly base the

---

[5] The current record includes the depositions of only six New York SMs (0.34% of the class) taken by Rite Aid, all of whom had opted in to the collective action, and thus, already asserted claims against Rite Aid. The limitations on the New York class discovery also occurred over Defendants' objections.

The Honorable Henry B. Pitman
September 11, 2015
Page 4

selections on the five (5) store volumes identified by Defendants in their proposed plan as Defendants identified multiple categories that were underrepresented.[6] *Id*. at 37.

Based on the Court's directive, Defendants asked Plaintiffs to propose a plan for merits discovery which Plaintiffs would agree is "representative" for a merits determination and not later claim otherwise. Defendants expressly stated that they would not agree that the sampling using the existing and minimal additional Store Manager depositions permitted by the Court is representative or capable of being used to determine the merits of the case as to the class as a whole. With Defendants' reservation of objections,[7] and relying on Plaintiffs to propose a plan, the parties conferred and reached tacit agreement on a proposed framework for the selection of additional Store Manager opt-ins and class members for deposition for development of a record to which Plaintiffs will agree is "representative" for purposes of a determination on the merits by summary judgment motion. The parties submitted this proposed plan to Judge Oekten and outlined remaining areas of disagreement requiring court guidance. *See* Dkt. No. 281.

## II.  Issues Requiring Court Guidance

### 1.  Damages discovery relating to the deponent opt-ins as well as general merits discovery pertaining to damages.

Plaintiffs seek unspecified "damages" discovery relating to the 50 previously-deposed FLSA opt-ins, as well as "general merits discovery pertaining to damages." Defendants opposed unspecified classwide discovery from the New York class of over 1,700 current and former Store

---

[6] It is Defendants' position that all categories are underrepresented and the sample as a whole is grossly insufficient to be deemed representative for any merits determination in this matter.

[7] Defendants maintain and do not waive their objection to any reliance on the depositions taken to date (and the limited additional deposition allowed) as representative for class certification, class adjudication, or any other purpose and do not waive their arguments that any further discovery must be done on a statistically valid basis, such as that set forth in Dr. Janet Thornton's December 3, 2014 Report, before any of the testimony can be considered representative for due process purposes. The Court's statements at the December 10, 2014 conference that it would not permit even an additional 25 depositions at this merits discovery stage foreclose the possibility of doing discovery on a statistically valid basis or allow for statistically reliable representative proof. As set forth in Defendants' December 3, 2014 letter brief, along with the Report of Dr. Janet Thornton, Dkt. No. 264, Defendants maintain that the current discovery record is insufficient for any merits determinations and that a statistically valid approach to merits discovery is essential. Any sampling to develop "representative" evidence for liability purposes must protect the parties' (and absent class members') due process rights and be based on sound statistical sampling methodologies. *See e.g. Duran v. U.S. Bank, N.A.*, No. 5200923, 2014 WL 2219042 (Cal. May 29, 2014); *Espenscheid v. DirectSat USA*, 705 F.3d 770, 775-76 (7th Cir. 2013); *Thompson v. Bruister & Assocs., Inc.*, 2013 U.S. Dist. LEXIS 139374 (M.D. Tenn. Sept. 27, 2013).

The Honorable Henry B. Pitman
September 11, 2015
Page 5

Managers because (1) the New York class was not certified as to damages, and (2) to allow Plaintiffs to conduct classwide discovery runs contrary to Plaintiffs' claim that this case may be tried on a "representative" basis.

With respect to the Rule 23 New York Class, in its September 26, 2013 Order, the Court stated that the Rule 23 New York "class is certified as to liability, but not as to damages. Plaintiffs can, of course, move to certify their class as to damages later in the litigation, if they prove successful on the merits." (Dkt. No. 239, at 50.) Plaintiffs contend that they are entitled to discovery pertaining to each deponent Plaintiff's individual damages as well as classwide issues relating to damages such as rates of pay, overtime policies, scheduling of hours, etc. Defendants contend that discovery at this stage should focus on merits issues only and that damages discovery should occur only after a determination as to liability. Defendants are opposing the production on the ground that the NYLL liability class is not certified for damages purposes. (Dkt. No. 246 at 2-3.) To the extent any damages information is required to be produced, it should only be required after a determination as to liability as set forth in the Court's September 26, 2013 Order. (Dkt. No. 246 at 50.).

With respect to the FLSA collective action, producing payroll data for each opt-in is wholly inconsistent with Plaintiffs' claim that this matter can be fairly adjudicated using representative proof. The Court's March 25, 2011 Order, Dkt. No. 132, limited discovery to the 50 opt-in deponents and states "it is not necessary to conduct discovery of each and every opt-in in order to determine whether the opt-ins are similarly situated." The Court further ruled that "discovery with respect to the contemplated motion for decertification of the collective claim shall be limited to the deposition of fifty managers…." *Id*. at 7. Although Rite Aid objects to this ruling, it must apply with equal force to Plaintiffs and their damages discovery must be limited to the sample of deponents permitted by the Court. Rite Aid has previously provided all pay records for the 50 previously deposed FLSA opt-ins.[8] Plaintiffs sought limits on discovery to be conducted and cannot now be heard to complain about the discovery limits imposed by the Court. To the extent the Court determines that damages discovery is warranted, Defendants submit such should be limited to the 50 previously-deposed FLSA opt-ins, and the 14 additional Store Managers Defendants will depose pursuant to Plaintiffs' proposed discovery plan.

### 2.     Reopening of nine (9) of the original 50 opt-in depositions.

Discovery in this case has been bifurcated. As addressed previously, pursuant to the Court's Order, the first phase of discovery was focused on whether this case is appropriate to proceed collectively. *See* Order, Dkt. No. 132. The upcoming phase of discovery relates to the merits of Plaintiffs' claims. *See id.*

---

[8] For any of the 50 deposed opt-ins who continued to be employed by Rite Aid, Defendants will produce any updated pay records in supplementation of its discovery obligations under Rule 26(e)(1).

During the initial, certification phase of discovery, Defendants deposed 50 opt-in Store Managers. These depositions were focused in scope on issues related to certification, as opposed to merits.[9] Because of this, Defendants previously requested that Your Honor permit them the opportunity to reopen the previous 50 depositions taken during the bifurcated certification stage of discovery. Your Honor deferred ruling on this issue until such time as the parties had more direction on other discovery necessary during the merits stage of discovery. Thereafter, the parties conferred and Defendants reviewed the depositions and identified only nine (9) depositions that Defendants contend should be reopened to address specific merits related issues. Despite Defendants' efforts to reduce the total number of depositions that should be reopened, Plaintiffs disagree that there is any basis for even these nine continued depositions.[10]

In an effort to compromise on this issue, Defendants seeks to the opportunity to reopen the depositions of only nine (9) of the 50 Store Manager depositions. Defendants do not intend to re-ask questions that were previously asked of these individuals. Additionally, Defendants will agree to limit the length of these depositions to three (3) hours each. Given the length of this case and Defendants' affirmative defenses as to the merits, Defendants believe this request to be reasonable and appropriate.

> 3. **Discovery to be permitted as to both parties relating to previously deposed opt-ins and to additional opt-ins and possible New York class member deponents.**

For the upcoming 14 additional Store Manager depositions, Plaintiffs propose that Defendants produce any records they "may" use during their examination of any deponent that were not previously produced in discovery. Defendants do not agree that they are required to produce any records they "may" use during an examination of any deponent.

Defendants maintain that producing documents that they "may" use in a deposition is (1) not required under Fed. R. 26(a)(1)(A)(ii), and (2) seeks to invade the mental impressions of counsel as to what documents counsel may intend to use as a deposition exhibit.

Rule 26(a)(1)(A)(ii) provides that the disclosing party must provide, "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to

---

[9] Defendants admit that inevitably there was some overlap in the questioning regarding certification and merits.

[10] Defendants further note that approximately 12 of the 50 Store Managers deposed in the initial sample permitted by the Court continued to work as Store Managers after their deposition. Defendants reserve the right to depose these individuals prior to trial to address their continued service as Store Managers after their prior depositions if the case is not resolved at the summary judgment stage or decertified prior to trial.

The Honorable Henry B. Pitman
September 11, 2015
Page 7

support its claims or defenses, *unless the use would be solely for impeachment*." Defendants believe that Plaintiffs' request seeks production of documents specifically carved out of the production requirement of Rule 26.

Further, and more problematically, Plaintiffs' request seeks to invade the mental impressions of counsel. In *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), the Supreme Court recognized the work product privilege, which protects from discovery materials obtained and prepared in anticipation of litigation as well as an attorney's intangible thought processes. *See id*. Accordingly, the intangible "mental impressions, conclusions, opinions, or legal theories of an attorney" are never subject to disclosure. Fed. R. Civ. P. 26(b)(3). Requiring Defendants to produce documents that counsel may or may not use in a deposition gives Plaintiffs significant insight into the preparing attorney's thought processes and mental impressions regarding the case. Accordingly, it is well-settled that such compilation constitutes attorney work product. *See Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985)("Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions…identification of the documents as a group must be prevented to protect defense counsel's work product."), *cert. denied*, 474 U.S. 903 (1985); s*ee also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986)(stating that the selection and compilation of documents by counsel constitutes opinion work product).

For these reasons, Defendants respectfully request that Plaintiffs' request be denied.

> 4. **Selection of Absent NY Class members versus NY Opt-In Plaintiffs in the Selection Process of additional NY Class Deponents**.

As set forth in the parties' July 2, 2015 joint submission regarding a proposed discovery plan, subject to Judge Oetken's stated limitations on discovery, Plaintiffs proposed and the parties agreed, with the express understanding that Defendants maintain their ongoing objections as to the limitations on discovery,[11] that Defendants will be allowed to depose eight (8) additional New York class members during the merits phase of discovery in this matter. *See* Dkt. No. 281. The outstanding issue is whether these depositions will be limited to individuals who opted into the collective action and also worked in New York (which includes 204 individuals) or will include some individuals who worked for Rite Aid in New York and affirmatively declined to opt into the collective action (which includes more than 1,400 individuals nationwide) but who are

---

[11] Defendants maintain all objections as to any limitation on discovery from the opt-ins or class members, are entitled to nothing less than a plan for discovery that provides a statistically valid methodology for developing a "representative" sample, or, if such is not possible, complete discovery as to each NYLL class member. The discovery permitted for class certification/decertification purposes, as well as this limited additional sample proposed herein, does not provide, nor is it capable of providing, a representative sample remotely capable of adjudicating the merits of the claims on a collective and class basis.

The Honorable Henry B. Pitman
September 11, 2015
Page 8

members of the NY Class (which includes more than 1,700 individuals).[12] Defendants contend that any sample that is limited only to opt-ins who worked in New York will create even more selection bias because the sample will include only individuals who have already asserted claims against Defendants and, thus, are a self-selected group.

At present, due to prior limitations on discovery, *see* Order, Dkt. No. 131, the current discovery record for purposes of adjudicating Plaintiffs' NYLL claims and Defendants' affirmative defenses to those claims is limited to depositions of six (6) New York SMs, all of whom are opt-ins and affirmatively assert claims against Defendants, from a class of over 1,700 New York Store Managers.[13] At this phase – given that it is the merits phase of discovery and in light of Defendants' affirmative defenses – it is critical that Defendants be afforded discovery from absent class members, as the New York liability class now includes Store Managers who affirmatively chose *not* to join the FLSA collective action upon receipt of notice of the claims and SMs who worked for Defendants after certification of the collective action and may well have had very different work experiences and job duties.

Plaintiffs oppose Defendants' request to obtain discovery from absent New York class members, seeking instead to force Defendants to obtain discovery from the group of New York class members who have previously filed consents to join, or "opted in" to, the FLSA action. *See* Dkt. No. 268 (12/10/14 Transcript at pp. 21, 46). Plaintiffs claim that because the matter has been certified pursuant to Rule 23, Defendants are not entitled to obtain discovery from absent class members. However, consistent with other courts that have considered this issue, this Court has recognized that discovery from absent class members is "neither prohibited nor sanctioned explicitly" by the Federal Rules. *Krueger v. New York Telephone Co.,* 163 F.R.D. 446, 450 (S.D.N.Y. 1995); *In re National Western Life Insurance Deferred Annuities Litigation*, 2010 WL 4809330, *3 (S.D. Cal. Nov. 19. 2010) (finding that, "the information Defendants [sought] may bear on the claims and defenses in this case.") *sustained in relevant part*, 2011 WL 3438186

---

[12] More than 1,040 New York class members received notice of the conditional certification of the FLSA claims in this lawsuit. Of those receiving notice, only 204 opted in. In excess of 80% of the absent class members elected *not* to participate – presumably because they believe they were properly classified. The sum of depositions Defendants have been permitted to date relating the New York class claims has been limited to the less than 20% of New York Store Managers participating in this case. The 80% who previously chose not to participate are now class members and their testimony is critical to the defense of this case. Defendants further maintain their objection to any reliance on the depositions taken to date as representative for class certification, class adjudication, or any other purpose, as the deponent witnesses were hand-selected by the parties pursuant to the Court's adoption of Plaintiffs' proposed discovery plan resulting in discovery being permitted from only 0.3% of the more than 1,700 members of the NYLL liability class (and which also includes individuals employed by Defendants after the notice was sent).

[13] Defendants noticed the depositions of five (5) additional New York Store Manager opt-ins who failed to appear for their depositions.

The Honorable Henry B. Pitman
September 11, 2015
Page 9

(S.D. Cal. Jan 19, 2011). That this case has been certified under Rule 23, and the FLSA, does not alter Defendant's right to take discovery from class members as courts routinely allow discovery on unnamed class members after the class has been certified and the court has determined that commonality exists between the named plaintiff and the unnamed class members.[14] *See* Wright and Miller, 8A FEDERAL PRACTICE AND PROCEDURE § 2171 (2nd Ed. 1994) (noting that most courts have concluded the appropriate course of action is to limit discovery against unnamed class members, but not to forbid it all together); *In re Warner Chilcott Limited Securities Litigation*, Case No. 06-11515, 2008 U.S. Dist. LEXIS 7613 (S.D.N.Y. Feb. 4, 2008); *Redmond v. Moody's Investor Serv.*, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995); *Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621-22 (S.D.Tex. 1991). Similarly, other courts have allowed class member depositions so as not to deprive defendants the right to establish their defenses in preparation for trial. *See, e.g., Bruhl v. PriceWaterhouseCoopers Int'l*, 2010 WL 5090207, at *2 (S.D. Fla. Dec. 8, 2010) (finding that "[t]he fact that this case has been certified for class treatment should not function to deprive the [ ] Defendants of their right to prove their defenses"); *In re Nassau Cnty. Strip Search Cases*, 2009 WL 1456011, at *2 (E.D.N.Y. May 20, 2009) (holding that "Defendants are free to notice depositions of class members in order to identify those class members they wish to call at trial. In view of the circumstances, including the number of potential class members, defendants may take up to twenty-five (25) such depositions, without prejudice to an application to increase said number"). As explained in the Manual for Complex Litigation, "[i]n setting appropriate limits [on discovery against unnamed class members], a judge should inquire whether the information sought is available from other sources and whether the proposed discovery will require class members to obtain personal legal counsel or technical advice from an expert." Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, § 21.41(4th ed. 2007).

In a seminal case addressing this issue, the Seventh Circuit reasoned that, while class members should not be required to submit to discovery "as a matter of course," requiring them to respond to discovery in some cases is warranted. *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1004 (7th Cir. 1971) *cert. denied* 405 U.S. 921 (1972) (affirming the dismissal of unnamed class members who failed to respond to discovery where the discovery was directed at "obtaining information related to certain defenses" and there was "nothing in the record to suggest that the discovery procedures were used as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants."). As the Seventh Circuit explained in *Brennan*:

---

[14] If Plaintiffs intend to call any New York class members to testify at trial, to the extent they have not been deposed, Defendant may also depose those class members. *See Tierno v. Rite Aid Corp.,* 2008 WL 2705089, at *6-7 (N.D.Cal. July 8, 2008); *Bogosian v. Gulf Oil Corp.,* 71–1137, 1983 WL 1938, at *1 (E.D. Pa. Dec.16, 1983) (allowing depositions of "unnamed plaintiff-class members who are properly and in good faith identified as trial witnesses"); *see also* A. Conte and H. Newberg, *Newberg on Class Actions* § 16:3 (4th ed. 2014).

The Honorable Henry B. Pitman
September 11, 2015
Page 10

> If discovery from the unnamed class members is necessary or helpful to the proper presentation or correct adjudication of the principal suit, [there is] no reason why it should not be allowed, so long as adequate precautionary measures are taken to insure that the unnamed class members are not misled or confused.

*Id*. at 1004-05. *See also McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) (citing *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-42 & n.24 (7th Cir. 1974)). *See also* 7AA Charles Alan Wright et al., *Federal Practice & Procedure* §1796.1, at 56-59 (3d ed. 2005); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 1533221, *6 (N.D. Ill. 2012) ("However, herein, the Court is assured that the requested information is actually needed in preparation for trial, and that the discovery devices are not used to take unfair advantage of Mayo as an absent class members or as a stratagem to reduce the number of claimants."); *Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 843956, at *7 (N.D. Cal. Mar. 8, 2011) (rejecting plaintiffs' argument that mandatory discovery creates an opt-in scheme).

Indeed, this Court – like the majority of courts addressing this issue – has recognized that courts should continue to assess if discovery is warranted by analyzing whether the requested discovery is appropriate in that particular litigation, the defendant's need for the information, and the potential burden on the absent members. *See Redmond*, 1995 WL 276150, at *1 (citing *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); *Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975) ("Discovery [from absent class members] is appropriate, however, where the party requesting discovery makes a 'strong showing.' ")); *Town of New Castle v. Yonkers Contracting Company, Inc.,* Case No. 88-2952, 1991 U.S. Dist. LEXIS 11232 (S.D.N.Y. Aug. 13, 1991) (denying plaintiff's motion to quash depositions of unnamed class members where the class was finite, defendant needed to be able to conduct the discovery to disprove plaintiff's claim, and the class representative did not have the information sought by defendant); *see also In re Warner Chilcott Limited*, 2008 U.S. Dist. LEXIS 7613 (permitting defendant to take short depositions and serve narrow discovery requests on some unnamed class members to establish a defense that certain class members had knowledge of facts that plaintiffs alleged were not disclosed); *see also Arrendondo v. Delano Farms Co.,* No. 1:09–CV–01247 MJS, 2014 WL 5106401, at *5 (E.D.Cal. Oct. 10, 2014) (courts always have leeway to permit discovery from absent class members "when reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues."); *Tierno,* 2008 WL 2705089, at *6 ("The law on discovery directed to absent class members is flexible. Discovery from absent class members is 'neither prohibited nor sanctioned explicitly' by the Federal Rules."); *Velasco v. Sogro, Inc.,* No., 08–C–0244, 2014 WL 3737971, at *5 (E.D.Wis. July 30, 2014) ("That the Court has certified a class does not preclude presentation of evidence about absent class members."); *McPhail,* 251 F.R.D. at 517 (Discovery should be permitted only when "(1) the discovery is not designed to take advantage of class members or reduce the size of the class, (2) the discovery is necessary, (3) responding to discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent."); *and McCarthy v. Paine Webber*

The Honorable Henry B. Pitman
September 11, 2015
Page 11

*Group, Inc.,* 164 F.R.D. 309, 313 (D.Conn. 1995) ("Discovery [of absent class members] is only permitted where a strong showing is made that the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to common questions and unavailable from the representative parties; and (3) is necessary at trial of issues common to the class"). These standards usually require a showing of good faith motive on the part of the defendant seeking discovery. *Sibley v. Sprint Nextel Corporation,* No. 08–2063–KHV, 2009 WL 3244696, at *2 (D.Kan. Oct. 6, 2009).

In the present case, given Defendants' right to establish their affirmative defenses, additional discovery beyond the six (6) current New York deponents is necessary in order to allow Defendants to obtain information necessary to prove its defenses on the NYLL class claim. *See Krueger*, 163 F.R.D. at 451-52 (denying plaintiffs' motion for protective order regarding depositions of class members, finding discovery on individual damages "entirely appropriate," and noting that "the defendants should not be required to forego their own discovery as to the extent of their potential liability."); *Redmond*, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995) (holding that after class was certified, defendant was entitled to conduct discovery to "determine whether the experience of the nonrepresentative class members will confirm or rebut the claims of classwide discrimination") (citing *Robertson*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975)); *see also Brennan*, 450 F.2d at 1005 (seeking discovery to prove a lack of liability); *Barham v. Ramsey*, 246 F.R.D. 60, 63 (D.D.C. 2007) (seeking evidence that would tend to disprove a constitutional violation by police during a mass arrest). The discovery Defendants seek is not available from any other source, as Store Managers are the highest-ranking managers in the store on a daily basis.

More importantly, the information Defendants seek is not available from the sole class representative in this case, Plaintiff Yatram Indergit. Mr. Indergit worked in only one Rite Aid brand store during the relevant time period and has not worked for Rite Aid since 2007. The six New York class members Defendants were allowed to depose were deposed in 2011. As this case has already continued for four additional years, Defendants require additional information as to Plaintiffs' claims and Defendants' defenses since 2011. Further, Defendants do not seek to mislead or confuse class members by subjecting them to discovery.[15] As such, the relevant

---

[15] Indeed, numerous courts have recognized that depositions of class members are the least intrusive and most appropriate discovery vehicle in these circumstances. *See City of Farmington Hills Employee Retirement Sys. v. Wells Fargo Bank, N.A.*, 2012 WL 4357433 (D. Minn. Sept. 24, 2012) ("the Court considers the depositions to be less intrusive than the extraordinarily broad interrogatories and document request"); *E.E.O.C. v. Dawes Cnty. Neb.*, No. 8:07CV376, 2008 WL 2513755, at *2–3 (D. Neb. June 19, 2008) (allowing depositions "in lieu of excessive interrogatories") (citation omitted); *Rotoworks Int'l Ltd. v. Grassworks USA, LLC,* No. 07–5009, 2007 WL 2680556, at *3 (W.D. Ark. Sept.7, 2007) ("Finally, Interrogatory No. 2 seeks discoverable information, but asks for it in such sweeping terms that production may be burdensome and deposition appears a more appropriate discovery vehicle.").

The Honorable Henry B. Pitman
September 11, 2015
Page 12

factors weigh heavily in favor of allowing Defendants to depose absent, non-opt-in New York class members.

Additionally, to limit discovery to the depositions of class members who affirmatively opted in to the FLSA action continues to wreak havoc on Defendants' due process rights.  *See e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612-13 (N.D. Cal. Jan. 13, 2010) (the use of representative proof will not assist the Court in separating any potentially misclassified Store Managers, from those who are properly classified and noting "simply because the plaintiff may be able to establish the prima facie case using some form of common proof does not mean that defendant is limited to common proof when asserting relevant defenses."); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008) ("efficiency gains" cannot come at the expense of a defendant's ability to defend itself "without raising serious concerns about due process.").  Defendants have a constitutionally-protected due process right to depose class members in advance of a class action trial.  In *Duran v. U.S. Bank National Association*, 59 Cal.4th 1 (2014), the California Supreme Court reiterated that trial courts cannot "abridge [the defendant]'s presentation of a [ ] defense simply because that defense was cumbersome to litigate in a class action.  Under Code of Civil Procedure section 382, **just as the federal rules**, 'a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims.'"  *Id.* at 35 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011)) (emphasis added). "These principles derive from both class action rules and principles and principles of due process."  *Id.*; *see also Lindey v. Normet*, 405 U.S. 56, 66 (1972); *Philip Morris, USA v. Williams*, 549 U.S. 346, 353 (2007).  Rite Aid is entitled to develop evidence related to the myriad reasons why Plaintiffs' overtime claim is not appropriate for continued class treatment, or, alternatively, develop and present defenses at trial related to the merits of the claim.

Here, due to the limitations set by the Court, over Defendants' objections, and without waiver of Defendants' continued objections, Defendants may only depose eight (8) additional class members, out of the over 1,700 absent New York class members.  The NYLL class contains more than 1,700 members, which is more than the 1,540 collective action opt-ins for which the Court permitted 50 Store Managers to be deposed.  Defendants submit that allowing the depositions of 8 randomly-selected absent New York class members who did not previously opt-in to the FLSA action against Defendants, is warranted given the circumstances present here.  *See Johnson v. Ford Motor Co.*, 2015 WL 3540802 (June 4, 2015 S.D. W. Va.) (allowing discovery from absent class members where defendant limited number of depositions it sought (4) and explained that the information sought is relevant to common issues and cannot be obtained from other class representatives).

Here, all relevant factors, as well as due process considerations, weigh heavily in favor of allowing Defendants to take the depositions of absent New York class members.  Defendants' ability to defend themselves cannot be constricted to a group of opt-ins who have already asserted claims against Defendants.

The Honorable Henry B. Pitman
September 11, 2015
Page 13

### 5. Limitations on Plaintiffs' non-Rule 30(b)(6)[16] and District Manager corporate depositions.

Despite Plaintiffs' continued arguments and efforts to limit the discovery Defendants may obtain from opt-ins and class members, over Defendants' objections which they maintain, Plaintiffs refuse to agree to any similar limitation as to the "corporate level" discovery from Defendants. Plaintiffs contend that they have no way to measure the number of corporate level depositions remaining until further discovery commences. Plaintiffs further contend they should not at this time be limited in the number of corporate depositions or positions, such as RVPs. Stated another way, Plaintiffs seek unlimited discovery as to corporate level employees. Such efforts to seek broad discovery cut squarely against any proposition that the purported "representative" proof demanded by Plaintiffs and ultimately adopted by this Court is capable of being anything more than ad hoc and unique individual accounts of the job duties actually performed by Store Managers. The Court should not permit Plaintiffs to have it both ways by seeking to limit Defendants' discovery to a purportedly "representative" group, but at the same time demand unlimited discovery from Defendants because of "unique" issues at the Region and District levels.

Defendants contend that, given the Court's Orders limiting its discovery to hand-selected depositions of 3.3% of the FLSA Opt-ins and, to date only 0.34% of the New York Rule 23 Class members, all of whom are also opt-ins, Plaintiffs' discovery depositions should have at limits as to the number and positions of the potential corporate level deponents that are proportional to what they sought to limit Defendants and the Court ultimately ordered. Defendants request that Plaintiffs be limited to two (2) RVP depositions.[17] This number is proportional to the discovery limits to which the parties have agreed and that have been previously imposed by the Court. Upon information, there have been approximately 30 persons serving in the role of Regional Vice President for Rite Aid during the relevant time period(s). Defendants propose that Plaintiffs conduct two (2) RVP depositions, and the parties can thereafter confer about any purported need for additional RVP, or other corporate level, depositions. If the parties cannot agree, Plaintiffs may seek additional depositions from the Court.[18]

---

[16] As set forth in the July 2, 2015 correspondence to the Court, the parties have agreed that Plaintiffs shall be limited to those topics and questions which were not testified to in the prior depositions taken pursuant to Rule 30(b)(6). *See* Dkt. No. 283.

[17] This number is commensurate in ratio with the six (6) agreed upon depositions Plaintiffs are taking of District Managers. *See* Dkt. No. 283.

[18] Plaintiffs may select how they are chosen, but Defendants reserve the right to object to any selection process at a later time.

The Honorable Henry B. Pitman
September 11, 2015
Page 14

Defendants look forward to addressing these issues with Your Honor during the October 1, 2015 telephone conference.

Sincerely,

*s/ Daniel E. Turner*

Daniel E. Turner
Counsel for Defendants.


cc:     All counsel of record (via ECF)