# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YATRAM INDERGIT, on behalf of himself and others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>RITE AID CORPORATION, and RITE AID OF NEW YORK, INC.,<br><br>　　　　　　Defendants. | 08 Civ. 9361 (JPO) (HBP)<br>**ECF Case** |

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement ("Agreement") is made by and between Plaintiff Yatram Indergit (the "Settlement Class Representative"), on behalf of himself, his agents, representatives, assigns, heirs, executors, beneficiaries, trustees and the "Settlement Classes" as defined below; and Rite Aid Corporation and Rite Aid of New York, Inc., on behalf of themselves, their parent(s), divisions, affiliates, subsidiaries, predecessors and successors, including, but not limited to, any and all Rite Aid related entities operating Rite Aid brand retail stores and/or pharmacies and all entities named as Defendants in this lawsuit and their directors, partners, principals, officers, members, fiduciaries, trustees, insurers, employees, attorneys and agents ("Rite Aid" or the "Company"), Rite Aid or the Company and the Settlement Class Representative are referred to herein as the "Parties."

WHEREAS, in this Action, the Settlement Class Representative asserted wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and New York Labor Law, NY Lab L § 190, *et. seq.* ("NYLL"), pertaining to the classification of Store Managers as exempt from overtime requirements, hours of work, payment of wages, and overtime compensation; and

WHEREAS, the Settlement Class Representative brought claims on behalf of himself and others, who are purportedly similarly situated current and former Rite Aid employees who are or were employed within the applicable statute of limitations period(s) as salaried Store Managers (defined below), as purported collective actions pursuant to 29 U.S.C. § 216(b) and a purported class action pursuant to Fed. R. Civ. P. 23, or analogous state rules or both; and

WHEREAS, on September 26, 2013, the Court denied Defendants' motion to decertify under FLSA 216(b) and granted Plaintiffs' motion to certify a class under FRCP 23(b)(3) and appointed Valli Kane & Vagnini LLP and DiNovo Price & Ellwanger as class counsel.

WHEREAS, Rite Aid denies that it has committed any wrongdoing or violated any state or federal laws pertaining to payment of wages or hours worked, has vigorously disputed the claims asserted in this Action, and asserts that it has strong and meritorious defenses to the claims in this Action; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA, the NYLL, as well as any state or local law (both statutory and common law) related or pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in this Action based upon the allegations asserted, regarding events that occurred or are alleged to have occurred, by salaried Store Managers who worked for Rite Aid within the applicable statute of limitations period(s) ("Claims" (defined further below)); and

WHEREAS, the Parties, through their counsel, represent that they have conducted a thorough investigation into the facts of this Action and, having diligently investigated the claims asserted in this Action, are of the opinion and belief that the settlement between the Parties is fair,

reasonable, adequate and in the best interests of all in light of all known facts and circumstances, including the considerable expense of discovery and litigation, claims made by the Settlement Class Representative, defenses asserted by Rite Aid, uncertainty of the result through continued litigation and appeal, and the risks of delay and an adverse judgment; and

WHEREAS, the Parties have engaged in arms-length comprehensive negotiations, including a full day mediation with Hunter Hughes, a nationally known employment class action mediator, on January 12, 2017, which led to the Parties' agreement on the terms contained herein; and

WHEREAS, the Parties desire to resolve on the terms set forth herein any and all Claims that were asserted or could have been asserted on behalf of Plaintiff, Opt-in Plaintiffs, the Settlement Class Representative and the Settlement Classes (pertaining to wage claims as set forth herein and (defined more fully below); and

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

1.   **Definitions.**  As used in this Agreement, the following terms have the following meanings unless a section or subsection of this Agreement otherwise specifically provides:

(a)   "Action" means this Action, the class and collective action filed by Plaintiff Yatram Indergit in the U.S. District Court for the Southern District of New York, styled *Yatram Indergit v. Rite Aid Corporation and Rite Aid of New York, Inc.*, Case Action No. 08 Civ. 9361 (JPO) (HBP), as currently pending and as may be amended pursuant to this Agreement.

(b)   "Administration Costs" means any and all fees and costs of the Claims Administrator paid or incurred for, inter alia, creating and mailing notice packets,

processing Claim Forms, addressing or responding to Settlement Class Member non-legal inquiries, advising Settlement Class Members of deficiencies in their Claim Forms, preparing affidavits to be filed with the Court and reports to counsel for the Parties, calculating Distribution Amounts, preparing and mailing of distributions of/from settlement funds, obtaining current addresses, preparing tax returns and paying any taxes owed on payments to Participating Settlement Class Members, Settlement Class Representative, Class Counsel and/or any interest earned by the Qualified Settlement Fund (as defined herein), and any and all other fees, costs and/or expenses determined to be an expense reasonably necessary for the administration of the settlement.

(c)     "Agreement" shall refer to the instant Settlement Agreement and Release.

(d)     "Amended Complaint" means the Amended Complaint filed in this Action on March 9, 2009, Dkt. No. 17.

(e)     "Applicable Class Period" means the class period(s) described in Section 4 below which apply to the Settlement Class Members.

(f)     "Attorneys' Fees" means all attorneys' fees incurred in this case by Class Counsel (defined below).  Attorneys' Fees shall not exceed one third (1/3) of five million and five hundred thousand dollars, subject to Court approval, which Rite Aid will not oppose.

(g)     "Calculated Settlement Amount" means all Court approved Attorneys' Fees and Lawsuit Costs, Incentive Awards, Administration Costs, Employer Taxes for the wage portion of any Settlement Class Members' Distribution Amount, and the gross calculated Distribution Amounts to Participating Settlement Class Members

who submit Valid Claim Forms pursuant to the terms and conditions set forth in Section 10 of this Agreement.  The Calculated Settlement Amount shall not under any circumstance exceed the Gross Settlement Amount (defined below) of five million and five hundred thousand dollars and no cents ($5,500,000.00).

(h)    "Claim Period" means the period for filing claims, which shall be the time period commencing on the date of the first mailing of the Notice to Settlement Class Members and ending sixty (60) days later.

(i)    "Claims" means without limitation (1) any and all claims asserted in the Action; (2) any and all claims for unpaid wages, minimum wages, liquidated damages, attorneys' fees, costs and expenses, pre- and post-judgment interest, overtime, or non-payment of wages, or any other wage-related or recordkeeping-related claims, damages or relief of any kind, including but not limited to any and all claims arising under the FLSA, 29 U.S.C. § 201, *et seq*.; (3) any and all claims arising under the wage and hour laws and regulations of the state of New York, including but not limited to the New York Labor Law § 215 *et seq.*; (4) any state common law wage claims, including, but not limited to claims of unjust enrichment and any and all claims for wages, bonuses, commissions, overtime, vacation pay, severance pay, penalties, or other damages, or any other form of compensation of any kind, (5) any and all claims under state and/or federal law for breach of express contract or labor agreement (for earned wages, overtime, and/or and missed or interrupted meal breaks), implied contract, money had and received in assumpit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records (for earned

wages, overtime, and/or and missed or interrupted meal breaks); (6) any and all claims pursuant to or derived from ERISA, 29 U.S.C. § 1001, *et seq.,* based on any alleged failure to pay wages, including but not limited to minimum wages or overtime wages; (7) any and all claims for attorneys' fees, costs and expenses pertaining to this Action; and (8) any and all federal, local or state wage-and-hour laws and/or regulations.

(j)     "Claims Administrator" means Kurtzman Carson Consultants ("KCC"), a neutral third-party administrator, or such other neutral administrator as chosen by the Parties and approved by the Court (see Sections 8 and 10).

(k)     "Class Counsel" means all counsel of record for the Plaintiff in this case, including but not limited to the law firms Valli Kane & Vagnini LLP and DiNovo Price & Ellwanger LLP.[1]

(l)     "Complaint" means the Complaint filed in this Action on October 30, 2008, Dkt. No. 1, setting forth the claims to be encompassed and dismissed by the Settlement. The term Complaint shall also encompass the Amended Complaint in this action.

(m)    "Court" means the United States District Court for the Southern District of New York.

(n)     "Distribution Amount" means the amount distributed to an individual Participating Settlement Class Member who submits a Valid Claim Form in accordance with the terms of this Agreement.

---

[1] DiNovo Price & Ellwanger LLP was previously known as DiNovo Price Ellwanger & Hardy LLP and was appointed class counsel under the prior name.

(o)     "Effective Date" means the date on which the Final Approval Order becomes final.

(p)     "Employer Payroll Taxes" means FICA, FUTA and SUTA payment obligations as a result of payments made to members of the Settlement Classes under the terms of Agreement, which will be paid by the Claims Administrator from the QSF before Distribution Amounts are disbursed to Participating Settlement Class Members (as defined below).

(q)     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:

    (1)     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or

    (2)     if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for *certiorari* or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in final judicial approval of this Agreement.

(r)     "Final Approval Order" means an order that finally and unconditionally grants final approval of the Settlement, grants final certification of the Settlement Classes for settlement purposes only, authorizes payments to the Settlement Class Members, the Claims Administrator, and Class Counsel as provided in this Agreement, and fully and finally extinguishes the Claims of the Settlement Classes as set forth herein, and dismisses the Action with prejudice, which the Parties shall submit in a mutually agreed upon form.

(s)     "Gross Settlement Amount" means the maximum settlement sum, paid by Rite Aid, which total amount shall not under any circumstance exceed five million and five hundred thousand dollars and no cents ($5,500,000.00).

(t)     "Incentive Award(s)" means incentive payments to the Settlement Class Representative, as set forth in Section 7 below.

(u)     "Lawsuit Costs" means all litigation expenses and costs incurred in this case by Class Counsel (defined below).  Class Counsel represents that such Lawsuit Costs are estimated to be no more than $275,000.00 for this Action.

(v)     "Lead Counsel" means Robert J. Valli, Jr., Sara Wyn Kane and James A. Vagnini of the Valli Kane & Vagnini LLP and Jay D. Ellwanger of DiNovo Price Ellwanger & Hardy LLP.

(w)     "Net Settlement Amount" means the Gross Settlement Amount, plus any applicable interest, less:

    (1)     Attorneys' Fees and Lawsuit Costs awarded to Class Counsel pursuant to Section 6 of this Agreement; and

    (2)     Incentive Awards to the Settlement Class Representative pursuant to Section 7 of this Agreement.

(x)     "Notice" means the notice describing the Parties' proposed Settlement to Settlement Class Members, as approved by the Court in the Preliminary Approval Order, in a form attached as Exhibit A.

(y)     "Participating Settlement Class Member" means a Settlement Class Member who submits a Valid Claim Form within the Claim Period, in the manner described by and in compliance with the terms of this Agreement.

(z)    "Parties" means Rite Aid or the Company and the Settlement Class Representative.

(aa)   "Party" means Rite Aid or the Settlement Class Representative.

(bb)   "Preliminary Approval Date" means the date the Preliminary Approval Order is entered by the Court.

(cc)   "Preliminary Approval Order" means the Preliminary Approval Order entered by the District Court that preliminarily approves the terms and conditions of this Agreement, including the manner and content of providing notice to the Settlement Classes in a form attached as Exhibit B or something similar as approved by the Court.

(dd)   "QSF" means the Qualified Settlement Fund established under Section 468B of the Internal Revenue Code, and more fully discussed herein, established and administered by the Claims Administrator.

(ee)   "Released Parties" means Defendants Rite Aid Corporation and Rite Aid of New York, Inc. and all of their past, present and future parent(s), divisions, subsidiaries, affiliates, related companies, partnerships, joint ventures, predecessors and successors, and all of its and their directors, principals, officers, stockholders, owners, members, fiduciaries, trustees, insurers, employees, attorneys, representatives, assigns, and agents (each in their individual and corporate capacities) collectively.

(ff)   "Rite Aid's Counsel" means Littler Mendelson, P.C., Moeller Barbaree LLP, and Epstein Becker & Green in this case.

(gg)   "Settlement" means the terms of the settlement agreed to by the Parties and their counsel, as set forth in this Agreement.

9

(hh)    "Settlement Class Representative" means Plaintiff Yatram Indergit.

(ii)    "Settlement Classes" means the FLSA Settlement Class and the New York State Settlement Classes, as described in Section 4 below.

(jj)    "Settlement Class Members" means the individuals in the Settlement Classes.

(kk)    "Store Manager(s)" means any person who was or is employed by Rite Aid as a salaried Store Manager at a Rite Aid brand store, including, but not limited to, any entity acquired by Rite Aid, *e.g.*, Eckerd Corporation, during the applicable statute of limitations period(s) set forth in Section 4, below.

(ll)    "*Tierno* Class Member" means any person who received and cashed a check as part of the settlement of the *Prag Tierno v. Rite Aid Corporation* class action, Case No. C-05-02520-THE (N.D. Cal.) ("*Tierno*"), releasing his or her claims as a Store Manager that may have existed as of the date of the Final Approval of the settlement of the *Tierno* case on November 9, 2009.

(mm)    "Valid Claim Form" means a completed and signed Claim Form that satisfies the requirements set forth in Section 10 below, and that is timely submitted within the Claim Period in a form attached as Exhibit C.

2.    **No Admission of Liability and No Concession as to the Merits.**  Rite Aid denies that it violated the law in any manner and specifically denies that it violated any statutory or common law alleged in this case, and asserts that it has strong defenses to the allegations made in the Complaint.  Settlement Class Representative makes no concessions as to the merits of his claims against Rite Aid.  The Parties have entered into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation.  Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an

10

admission of liability, culpability, negligence, or wrongdoing on the part of Rite Aid, or concession thereof on the part of the Settlement Class Representative.

3.  **Process for Approval of Settlement.**

    (a)   No later than three (3) days after full execution of this Agreement and agreement of the Parties as to the content of the following documents, Class Counsel shall submit to the Court an Unopposed Motion for Preliminary Approval, along with this Agreement and the following:

        (1)   Proposed Preliminary Approval Order;

        (2)   Notice; and

        (3)   Claim Form, which includes the Claim Form, Consent to Join Form and Release.

    (b)   In conjunction with the filing of the Unopposed Motion for Preliminary Approval, counsel for the Parties will communicate with the Clerk of the Court as needed and make any further filings necessary to secure the approval of the Motion for Preliminary Approval.  For purposes of this Agreement, "Preliminary Approval" shall occur upon the issuance of a Court order granting the Preliminary Approval of the Agreement; asserting jurisdiction over the Claims alleged, the Parties in the Action, and the implementation and administration of this Agreement; adjudging the terms of the Agreement to be fair, reasonable and adequate, and in the best interests of the Settlement Class Representative and members of the Settlement Classes, and directing consummation of its terms and provisions; approving the form and content of the Notice and Claim Form; advising the Settlement Classes of the material

terms of this Settlement, the procedure for approval thereof, and their rights with respect thereto; confirming Class Counsel as counsel to the Settlement Classes; and appointing a Claims Administrator.

(c)     The Motion for Preliminary Approval will also include a request that the Court, consistent with its authority pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoin all Settlement Class Members from initiating lawsuits asserting Claims against Rite Aid on behalf of any class or collective of Store Managers until such time as Final Approval.  The Motion will request that the Court issue an injunction as broad and comprehensive as permitted and be included in the Preliminary Approval Order.   In connection with seeking Preliminary Approval, the Parties will ask the Court to schedule and conduct a Final Approval hearing regarding final approval of the Settlement (the "Final Approval Hearing"), and to grant final approval of the Settlement ("Final Approval") no earlier than the time period required by 28 U.S.C. §1715, and as soon thereafter as practicable, after the Preliminary Approval Date.  The Parties will file an agreed Motion for Final Approval of the Settlement, and shall present a proposed Final Approval Order in connection therewith.

(d)     If the Court enters the Final Approval Order, the Effective Date shall occur on the later of: (A) three (3) days after the expiration of the time for filing of an appeal from the Court's approval of the Agreement without the filing of a Notice of Appeal, or (B) if an appeal is filed, three (3) days after the expiration of the final resolution of all appeals (including requests for rehearing or petitions for certiorari) resulting in final judicial approval of this Agreement.

(e)     The Parties agree to cooperate and take all steps necessary and appropriate to obtain Preliminary and Final Approval of the Settlement Agreement, to effectuate all aspects of this Agreement, and to dismiss this case with prejudice after the Effective Date.

(f)     In the event that (a) the Court does not preliminarily approve the Settlement as provided herein; (b) the Court does not finally approve the Settlement as provided herein; (c) the Court alters any material term of the Agreement, including but not limited to increasing the amounts required to be paid by Rite Aid or failing to approve the claims-made structure of the Settlement; or (d) the Settlement does not become Final for any other reason, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded initial or final approval, and if feasible, to resubmit the Settlement for approval within thirty (30) days.  If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, either Party may void this Agreement within fourteen (14) days of notice of either event.  The Parties further agree that Rite Aid being required to pay any amount greater than the Gross Settlement Amount would constitute a material change in this Agreement.  The Parties further agree that any ruling that the Court may make regarding Class Counsel's motion or petition for an award of Attorney's Fees and Litigation Costs shall not constitute a material change in this Agreement, unless the Court's award regarding any fees or costs would have the effect of requiring Rite Aid to pay any amount greater than the Gross Settlement Amount.

(g)     If the Court does not grant Preliminary and Final Approval of the Settlement or if the Effective Date does not occur for any reason, then the Summary of Certain Terms of Proposed Settlement dated January 12, 2017 ("Term Sheet") and the Settlement Agreement, shall be null and void and of no further use or effect, and the parties will be returned to their respective positions in this case *nunc pro tunc* as of the date of the Term Sheet, including the posture of the cases vis-à-vis certification under 29 U.S.C. § 216(b) and Rule 23, without prejudice to Rite Aid's ability to seek decertification under 29 U.S.C. § 216(b) and/or decertification of the class under Rule 23.

(h)     If at any time after the Notice has been sent out, the Court declines to grant Final Approval or the Effective Date does not occur, and the parties are thereafter unable to renegotiate a settlement that is granted Final Approval and the Effective Date occurs, the Claims Administrator, upon the request of the Parties, or as ordered by the Court, will provide an additional notice to the Participating Settlement Class Members, in a form jointly agreed upon by the Parties (or as ordered by the Court), advising that the Settlement did not receive Final Approval and that, as a result, no payments will be made to Participating Settlement Class Members and the Settlement is void and that their Claim Forms are null and void.  A separate notice, in a form to be jointly agreed upon by the Parties (or as ordered by the Court) shall be sent only to Participating Settlement Class Members who filed a Claim Form but who had not previously been sent notice of the opportunity to opt in to the Action,  that advises that the Settlement did not receive Final Approval and that, as a result, no payments

will be made to Participating Settlement Class Members and the Settlement is void and that their Claim Forms are null and void and that in order to participate in the case as an opt-in, they must submit a complete and valid consent to join form pursuant to the instructions which will be set forth in the notice within forty-five (45) days after the mailing of such notice.

(i)  Neither this Agreement nor the Term Sheet shall be deemed or construed to be an admission or evidence of any violation of any statute or law, common law principle, administrative code, rule or regulation, of any liability or wrongdoing by Rite Aid or of the truth (or by the Settlement Class Representative of the infirmity) of any of the claims or allegations contained in this case and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in this case or in any other action or proceeding. Rite Aid does not waive, and instead expressly reserves, its right to challenge the propriety of collective treatment and/or class certification in this case or otherwise for any purpose as if this Agreement had not been entered into by the Parties, in the event that the Court does not certify the Settlement Classes for settlement purposes only or in the event that the Court does not grant Preliminary or Final Approval or if the Effective Date otherwise does not occur. The Parties expressly reserve all of their rights and defenses if the Effective Date does not occur. In such event, the provisions of this Agreement may be used by the Parties to enforce the terms of this Agreement.  Neither this Agreement nor any term contained herein shall be used as evidence in any other legal proceeding or for any other purpose whatsoever.

15

(j)     All terms and conditions of this Agreement, including without limitation, certification by the Court of the Settlement Classes, are contingent upon the occurrence of the Effective Date.

4.     **Settlement Classes.**

(a)     The New York State Settlement Class includes the Settlement Class Representative and all exempt Store Managers employed by Rite Aid in the state of New York at any time from October 30, 2002 through Final Approval.

(b)     The FLSA Settlement Class includes the Settlement Class Representative and all individuals who as of the date of this Agreement have filed consents to join this Action who worked at Rite Aid as Store Managers during the three-year period prior to the filing of their consent forms and who have not been previously dismissed from the Action.

5.     **Settlement Funding and Payments.**

(a)     Rite Aid agrees to pay up to a maximum of five million and five-hundred thousand dollars and no cents ($5,500,000.00), in order to fully and finally resolve this Action in its entirety, inclusive of all Attorneys' Fees and Lawsuit Costs; interest; Administration Costs; Distribution Amounts, liquidated, punitive and multiplier of damages; taxes; employee payroll taxes, Employer Payroll Taxes, and Incentive Awards, if any.  Rite Aid shall not be responsible for any taxes imposed by law on the Settlement Class Members as a result of payments made to the Participating Settlement Class Member, or any other sums in excess of the Gross Settlement Amount.  The amounts necessary to pay the Administration Costs and Employer Payroll Taxes shall be paid by Rite Aid into the Calculated Settlement Fund from

any unclaimed amounts from the Net Settlement Amount as set forth in Section 5(j).  However, in the event that the Calculated Settlement Amount exceeds the Gross Settlement Amount of $5,500,000.00, any amount in excess of the Gross Settlement Amount necessary to pay Administration Costs and Employer Payroll Taxes shall be deducted from the Distribution Amounts paid to each Participating Settlement Class Members on a pro rata basis.

(b)     Rite Aid shall deposit the Calculated Settlement Amount into the QSF as follows: Within fourteen (14) days after the Effective Date, Rite Aid shall deposit the Calculated Settlement Amount into an interest-bearing account mutually agreed upon by Class Counsel and Rite Aid's Counsel and to be under the control of the claims administrator and designated as a QSF for distribution in accordance with the terms of the Agreement.

(c)     Rite Aid's payments into the QSF shall be treated as a payment of a Qualified or Designated Settlement Fund under I.R.C. §468B and the regulations or proposed regulations promulgated hereunder (including without limitation Treasury Reg. §1.468B-1-5 or any successor regulation).

(d)     The QSF will be established by the Claims Administrator pursuant to the Internal Revenue Code and insured and guaranteed to the full extent permissible under 12 CFR § 370.4.  Any funds on deposit in the QSF shall be deemed and considered to be in *custodia legis* of the Court.  The QSF will be created as an interest bearing account and the Claims Administrator will prepare any tax returns on any interest earned by the QSF and pay such taxes from the QSF.

(e)   Within seven (7) days of the issuance of the Final Approval Order and the Court's ruling on the amounts to be awarded for (a) Attorneys' Fees and Lawsuit Costs and (b) Incentive Awards, the Calculated Settlement Amount shall be determined by the Claims Administrator and provided to Rite Aid Counsel and Class Counsel.

(f)   The Parties acknowledge and agree that no portion or part of the Gross Settlement Amount or any payment hereunder is being made as a fine or penalty to a governmental agency.

(g)   Calculation of Distribution Amounts.

(1)   Calculation of Individual Awards.  Each Settlement Class Member who submits a timely and valid Claim Form ("Participating Settlement Class Member") will receive an amount calculated pursuant to the formula below (his or her "Distribution Amount"):

1.   Distribution Amounts to Participating Settlement Class Members shall be awarded from the Net Settlement Amount based on the number of exempt workweeks reported according to Rite Aid's records for each Participating Settlement Class Member relative to the total number of exempt workweeks worked by Settlement Class Members during the applicable periods set forth in Section 5 as follows:  a per workweek rate of pay will be determined by dividing an amount equal to the Net Settlement Amount by the total number of exempt workweeks worked during the applicable periods set forth in Section 4 by all Settlement Class Members ("Workweek Rate").  Each Participating Settlement Class Member's payment shall equal

the Workweek Rate multiplied by the number of exempt workweeks reported for that Participating Settlement Class Member during the Applicable Class Period set forth in Section 4, whichever is longer.

2.  The number of completed exempt workweeks for each Participating Settlement Class Member shall include the maximum total number of exempt workweeks in any of the Settlement Classes for which they are eligible, whichever is greater, with no double-counting of weeks if the Participating Settlement Class Member is a member of both the FLSA and New York State Settlement Classes, based upon Rite Aid's records.  If any Participating Settlement Class Member was a *Tierno* Class Member, any exempt workweeks the Participating Settlement Class Member worked as a Store Manager prior to the final approval of the settlement in *Tierno* on November 9, 2009, will be deducted from the number of exempt workweeks for that Participating Settlement Class Member as calculated in Section 5(g)(i)(1), above.

3.  If the Court awards amounts less than as identified in Sections 6 (Attorneys' Fees and Lawsuit Costs) and 7 (Incentive Award), the amounts not awarded will become part of the Net Settlement Amount to be distributed to Participating Settlement Class Member based on the number of workweeks reported for each Participating Settlement Class Member relative to the total number of exempt

workweeks worked by Settlement Class Members during the Class

Period(s), as described above.

4.      In the event that the QSF yields interest, the interest earned shall

revert to Rite Aid.

(h)    <u>Payments to Participating Settlement Class Members</u>.

(1)      Within twenty (20) days after the Effective Date, the Claims Administrator

shall disburse the Distribution Amounts to the Participating Settlement

Class Members, less applicable taxes and withholdings, by mailing checks

by U.S. Mail.  Checks issued pursuant to this Section shall expire one

hundred twenty (120) days after they are mailed, but a failure by any

Participating Settlement Class Member to deposit or cash a check within the

time period allotted shall have no effect on that individual's consent to join

this Action, not having opted out of the New York State Settlement Class,

or Release pursuant to Section 10.  At the close of the 120-day period, the

Claims Administrator will issue a stop-payment order on all

uncashed/undeposited or returned checks.  If a check is returned as

undeliverable, the Claims Administrator shall follow the procedures set

forth in Section 10(h) regarding returned notice packets.  After following

the foregoing procedures, the Claims Administrator shall issue a stop-

payment order on all remaining uncashed/undeposited or returned checks.

(2)      Within fourteen (14) days from the date on which the last of all uncashed

checks are deemed void and a stop-payment order is issued, the Claims

Administrator shall return to Rite Aid such funds in an amount equal to the

sum of all uncashed Distribution Amount checks. Rite Aid's counsel will provide instructions for delivery of the funds. The Claims Administrator shall make a full accounting to Rite Aid of Administration Costs, if any, within ten (10) days of return of the funds.

(3)     In the event of a Participating Settlement Class Member's report of a lost or destroyed check within the applicable check-depositing/cashing period, the Claims Administrator shall issue a stop payment order on the original check and issue a new check to such Participating Settlement Class Member.

(4)     The Parties agree that fifty percent (50%) of all Distribution Amounts will be considered taxable wages, and will be reported as such to each Participating Settlement Class Member on a W-2 Form. The Parties agree that fifty percent (50%) of the amount distributed to each Participating Settlement Class Member will be considered non-wage damages, and will be reported as such to each Participating Settlement Class Member on an IRS Form 1099.

(5)     The payment of Distribution Amounts to Participating Settlement Class Members shall have no impact on their entitlement to or receipt of any benefits under any Rite Aid policy, practice, or welfare or benefit plan, except for compensation paid in connection with this Settlement, as to which no benefits will be paid; or, as allowable by law, to their entitlement or receipt of workers compensation benefits or unemployment compensation.

(i)     <u>Claims-Made Nature Of The Settlement</u>. The Settlement will be on a claims-made

basis, meaning that the Parties agree, covenant, and represent that the Settlement Payments to be distributed pursuant to Section 5 of this Agreement shall be distributed only to Participating Settlement Class Members.  Therefore, individual Settlement Class Members, whether or not they are a FLSA Settlement Class Member, will become Participating Settlement Class Members entitled to a Distribution Amount only if the Settlement Class Member does all of the following: (i) completes the Claim Form in its entirety; (ii) signs the Claim Form certifying that its contents are true and correct; and (iii) returns the Claim Form that is postmarked on or before the expiration of the Claim Submission Period subject to the limitation set forth in Section 10(i).  Settlement Class Members who do not properly or timely submit a Claim Form will not be entitled to any portion of the Net Settlement Amount.  Participating Settlement Class Members are only entitled to his or her pro rata share of the Net Settlement Amount based on his or her total exempt workweeks worked in comparison to the total number of exempt workweeks worked by all Settlement Class Members, regardless of how many Settlement Class Members make claims or become Participating Settlement Class Members.

(j)     Unclaimed Portions of Net Settlement Fund Amount.  To the extent any portion of the Net Settlement Amount is not claimed by a Settlement Class Member by submitting a Valid Claim Form, such unclaimed portion of the Net Settlement Amount shall be paid by Rite Aid into the Calculated Settlement Fund  up to, but not in excess of the amounts necessary to account for the Employer's Payroll Taxes and Administration Costs, subject to the limitation in Section 5(a) that under no

circumstance shall Rite Aid be required to pay more than the Gross Settlement Amount of $5,500,000.00.   Any unclaimed portion of the Net Settlement Amount is intended to include any and all amounts of the Net Settlement Fund allocated to Settlement Class Members who do not file a Valid Claim Form and, thus, did not become a Participating Settlement Class Member.   Other than necessary amounts to pay for Employer Payroll Taxes and Administration Costs, Rite Aid shall not be required to pay into the Calculated Settlement Fund any unclaimed portion of the Net Settlement Amount as part of this Settlement.

6.      **Attorneys' Fees and Lawsuit Costs.**

(a)      Within thirty (30) days preceding the date of the Final Approval Hearing or the date set by the Court, Class Counsel shall make, and Rite Aid agrees not to oppose, an application for Attorneys' Fees that does not exceed one-third (1/3) of the Gross Settlement Amount of five million and five hundred thousand dollars and no cents ($5,500,000.00), plus Lawsuit Costs.   The Attorneys' Fees and Lawsuit Costs awarded by the Court shall be the sole aggregate compensation for all Class Counsel and retained and other associated counsel in this Action.   However, should the Court decline to award the full amount of attorneys' fees requested, any differential shall become part of the Net Settlement Amount to be distributed to Participating Settlement Class Members based on the number of workweeks reported for each Participating Settlement Class Member relative to the total number of exempt workweeks worked by Settlement Class Members during the Class Period(s), as described in Section 5(g) above.

(b)     Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall include and constitute satisfaction of the entire amount of Class Counsel's Attorneys' Fees and Lawsuit Costs.

(c)     Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall be retained by the Claims Administrator in the QSF until twenty (20) days after the Effective Date.  If the Final Judgment is reversed or modified on appeal, or if the Effective Date does not occur, or if the Settlement Agreement is otherwise terminated pursuant to the provisions of this Settlement Agreement, then any Attorneys' Fees and Lawsuit Costs are no longer payable. Upon such payment, Rite Aid, the Released Parties, Rite Aid's Counsel, and the Claims Administrator shall have no further liability or responsibility to Class Counsel or to any vendors or third parties employed by Settlement Class Representative, any Settlement Class Member or Class Counsel.

(d)     Lead Counsel shall allocate the Attorneys' Fees and Lawsuit Costs payable to Class Counsel in a manner that, in Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Claims and thereafter shall be distributed as directed by Lead Counsel or by order of the Court.  By executing this Agreement, all Class Counsel specifically agree to this process and waive any right to seek any additional Attorneys' Fees and Lawsuit Costs from Rite Aid.  Payments made pursuant to this Section shall be reported to state and federal taxing authorities by the Claims Administrator as non-wage income on IRS form 1099.  Class Counsel agree that any allocation of fees among Class Counsel shall be the sole responsibility of Class Counsel and Class Counsel

24

agrees to indemnify and hold harmless the Released Parties from any claims or liability by Class Counsel relating to attorneys' fees other than as set forth herein. The Parties further agree that it is the intent of this Agreement that any Settlement Class Member who retains an attorney in this Action other than Class Counsel, does so at his/her own expense and that that Rite Aid shall not be liable to any other Party claiming or seeking to claim attorneys' fees or costs other than Class Counsel, and that any such claim for attorneys' fees or costs would be subject to Paragraph 3(f) of this Agreement.

7.   **Settlement Class Representative Incentive Awards.**

(a)   Lead Counsel and Class Counsel may petition for Incentive Awards for the Settlement Class Representative. Any such petition shall be filed no less than thirty (30) days prior to the Final Approval Hearing or the date set by the Court.

(b)   Any Incentive Awards approved by the Court in conjunction with the Settlement shall be paid from the QSF and shall reduce only the amount of the Gross Settlement Amount payable to the Settlement Class Members, not the Net Settlement Amount. Incentive Awards to the Settlement Class Representative shall be in addition to his payments that the Settlement Class Representative shall receive as a member of the Settlement Class. Any Incentive Award shall be distributed by the Claims Administrator in separate checks mailed within twenty (20) days after the Effective Date and shall be reported by the Claims Administrator to state and federal taxing authorities as non-wage income on IRS Form 1099.

(c)   Subject to Court approval, Class Counsel may seek, and Rite Aid will not oppose, an Incentive Award of up to seven thousand five hundred dollars and no cents

25

($7,500.00) to Settlement Class Representative Yatram Indergit. Settlement Class Representative shall also receive a separate award for a release of all of his individual claims, including but not limited to, the claims asserted in the Action asserted in the Amended Complaint, for which he will execute a separate general release of claims at least twenty (21) day prior to the Final Approval Hearing that is not subject to Court approval.  In the event that the Final Judgment is reversed or modified on appeal, or if the Effective Date does not occur, or if the Settlement Agreement is otherwise terminated pursuant to the provisions of this Settlement Agreement, or denied Preliminary or Final Approval by the Court, then Settlement Class Representative's separate release of his individual claims and Rite Aid's obligation to make the payment will not be binding upon the parties and will be null and void.

8. **Claims Administrator.**

(a)     The Parties shall jointly retain KCC, as Claims Administrator prior to filing the Unopposed Motion for Preliminary Approval. The Claims Administrator shall serve as the administrator of the Settlement and perform the services described in this Agreement, including, without limitation:

     (1)     Establish and maintain a QSF;

     (2)     Receive from Rite Aid and update and maintain as necessary a mailing list, mail the Notices and Claims Forms, along with the follow-up methods of contacts set forth herein to effectuate notice;

     (3)     Receive Valid Claim Forms and opt-out forms;

(4)      Calculate the Potential Distribution Amounts for Settlement Class Members;

(5)      Calculate the Distribution Amounts for Participating Settlement Class Members, including calculating applicable employee payroll taxes and withholdings, Employer Payroll Taxes, and depositing taxes and withholdings with appropriate taxing authorities;

(6)      Pay from the QSF, the Attorneys' Fees and Lawsuit Costs, the Incentive Award and any other awards approved by the Court;

(7)      Pay, from the QSF, the Distribution Amounts from the Net Distribution Amount to Participating Settlement Class Members who submit Valid Claim Forms during the Claim Period, and any Employer Payroll Taxes;

(8)      Prepare tax returns and tax reporting of payments;

(9)      Make determinations concerning disputes submitted by Settlement Class Members concerning their workweeks, in accordance with Section 10(i); and,

(10)     Prepare and submit to the Parties an accounting of the portion of the Calculated Settlement Amount that is comprised of the Distribution Amounts to be paid to Participating Settlement Class Members, in accordance with Paragraph 8(d) of this Agreement;

(11)     Prepare and submit to the Court an accounting of the Settlement, along with the declaration to be submitted by the Claims Administrator with the Motion for Final Approval; and

(12)     Prepare and submit to the Parties a final accounting of the QSF, including all amounts paid therefrom, and confirming its completion of the administration of the Agreement, not later than thirty (30) days of the date on which uncashed checks are deemed void pursuant to Paragraph 5(h)(1).

(13)     Any other obligations established in this Agreement or subsequently agreed to by the Parties.

(b)     All disputes relating to the Claims Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

(c)     All Court-approved Administration Costs, in an amount to be sought for approval from the Court at the time of the Final Approval Hearing (but which are currently estimated to be $60,000.00) shall be paid from the QSF.  The necessary amounts to pay Administration Costs shall be paid by Rite Aid into the Calculated Settlement Fund from any unclaimed portions of the Net Settlement Amount (as set forth in Section 5(j)).  In the event that the Calculated Settlement Amount exceeds the Gross Settlement Amount of $5,500,000.00, any sums over the Gross Settlement Amount shall be deducted from the Distribution Amounts paid to each Participating Settlement Class Members on a pro rata basis as set forth in Section 5(a).

(d)     Within twenty-two (22) days after the close of the Claim Period, the Claims Administrator will provide Class Counsel and Rite Aid Counsel with a report of the Participating Settlement Class Members, opt out notices and objections and the

total number of Participating Settlement Class Members and the Distribution Amounts to be made to each Participating Settlement Class Members. After receiving the Claims Administrator's report, Class Counsel and Rite Aid Counsel shall jointly review the same to determine if the calculation of payments to Participating Settlement Class Members is consistent with this Agreement.

(e)     The Calculated Settlement Amount, which under no circumstances shall exceed $5,500,000.00, shall be distributed by the Claims Administrator as follows:

    (1)     First, all Court-approved Attorneys' Fees

    (2)     Second, all Court-approved Lawsuit Costs

    (3)     Third, any Court-approved Incentive Awards;

    (4)     Fourth, all Court-approved Administration Costs, including but not limited to the payment of any taxes (including any estimated taxes, interest, or penalties) due as a result of interest income, if any, earned by the QSF;

    (5)     Fifth, all Employer Payroll Taxes and federal, state and local income, employment or other taxes required to be withheld under the law from the wage portion of any Distribution Amount;

    (6)     Sixth, Distribution Amounts to Participating Settlement Class Members.

(f)     The Claims Administrator shall withhold from the Distribution Amount payable to each Participating Settlement Class Member his or her share of all federal, state and local income and employment taxes required to be withheld under the law, prepare and deliver the necessary tax documentation for signatures by all necessary parties,

29

and cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.

(g)    The Claims Administrator, in cooperation with Rite Aid, shall calculate the Employer Payroll Taxes, prepare and deliver the necessary tax documentation for signatures by all necessary parties, and cause the appropriate deposits of Employer Payroll Taxes and informational and other tax return filing to occur.

(h)    The Claims Administrator will provide copies of all cancelled settlement checks, including payments of Distribution Amounts, Incentive Awards and Attorneys' Fees and Lawsuit Costs, to Rite Aid's Counsel and Class Counsel.

(i)    The Claims Administrator shall provide proof of bonding and insurance coverage sufficient to secure the Gross Settlement Amount.

(j)    The Claims Administrator shall execute a non-disclosure agreement consistent with the provisions in Section 15.

9.    **Notices Mandated by Statute.**

Rite Aid shall prepare and mail notices of the Settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715, no later than ten (10) days after Motion for Preliminary Approval is filed.

10.    **Notice of Settlement and Distribution of Settlement.**

(a)    Mailing Notice to Class Members.  Within twenty-one (21) days following the Preliminary Approval Order, Rite Aid shall provide to the Claims Administrator: (i) a confidential list of names, current or last known addresses, social security numbers, and Rite Aid store numbers (and a list of store locations by number) at

which each person worked, for all Settlement Class members; and (ii) the beginning and end dates, excluding leaves of absence, worked by each Settlement Class Member as an exempt Store Manager during the Applicable Class Period. This information will not be provided to Class Counsel until after Final Approval. Within fourteen (14) days after Rite Aid provides the list in this Section to the Claims Administrator, the Claims Administrator will mail to Settlement Class Members packets containing a Notice and Claim Form.  The Claims Administrator shall run a United States Post Office National Change of Address (NCOA) database update on the names/addresses contained within the Class List in a commercially reasonable time prior to issuing the Notice.  The Claims Administrator shall send such packets by first-class U.S. Mail to each Settlement Class Member at such individual's last known address as provided on the list provided by Rite Aid or the updated address based upon the NCOA database search. A pre-addressed return envelope will be included with the first-class mailing.

(b)     Notice.  The Notice informing Settlement Class Members of the Settlement will include the date of the Final Approval Hearing and will explain the method of calculating the Distribution Amount for each Participating Settlement Class Member based on the number of completed workweeks, excluding leaves of absence or other such limitations as set forth in Section 5(g)(2), during the Applicable Class Period(s).  As to individuals who previously filed a consent to join in this Action, the determination of the completed workweeks shall take into account the date of the individuals' filing of their consent to join and include applicable workweeks for the three-year period prior to the filing of their consent

to join in this Action wherein they were employed as a Store Manager.  The Notice shall also contain the Release language as set forth herein. During the period beginning on the date the Notice and Claim Form are mailed to Settlement Class Members and continuing through twenty (20) days after the Effective Date, the Claims Administrator will maintain a static (non-interactive) website at www.sm2008settlement.com, through which the Notice and Claim Form can be downloaded in PDF form.  The static website will also contain a copy of this Agreement, the Motion for Preliminary Approval and the Preliminary Approval Order, as well as notification regarding upcoming deadlines and the status of the approval process.

(c)     Claim Form.  The Claim Form shall denote that the individual returning the form consents to join as a party plaintiff to the FLSA claims asserted in the Amended Complaint, if the recipient has not already previously filed such consent in this Action, and the Participating Settlement Class Member shall be deemed to have filed his/or consent to join with the Court as of the date his/her Valid Claim Form is received by the Claims Administrator.  The Parties will request in the Motion for Preliminary Approval that the Court deem that the consent to join forms are filed as of the date a Valid Claim form is received by the Claims Administrator.  The Claim Form will also reference the release language that is set forth in the Notice which will be consistent with the Release contained in Section 11 of this Agreement.

(d)     Validity of Claim Form.  In order to be a Valid Claim Form, the Claim Form must be completed as instructed on the Claim Form with no other material alterations

(excepting disputes pursuant to Section 10(i)), signed, dated, and postmarked or otherwise returned to the Claims Administrator within the Claim Period.  Claim Forms may be provided to the Claims Administrator only via mail, facsimile, or email (if allowed by Claims Administrator).  There will be no web-based or online manner of submission of a Claim Form.

1.      Within fifteen (15) days of receipt of an unsigned, incomplete, deficient or altered claim form, the Claims Administrator shall notify the Settlement Class Member who returned the form of its deficiency and provide such individual with a substitute form that the individual may use to cure the deficiency within the later of the Claim Period or fifteen (15) days after being notified of the deficiency by the Claims Administrator (but in no event later than fifteen (15) days after the end of the Claim Period).  The notice of deficiency and substitute form required hereunder shall be provided to the individual via U.S. mail.  The substitute Claim Form must be returned and be a Valid Claim Form in the time provided in this subsection.  The Parties agree to allow the Claims Administrator to resolve any challenges regarding the validity of any Claim Form made pursuant to this subsection, consistent with the terms of this Agreement, and to make a final and binding determination on all issues presented by any such challenges.

2.      Any Settlement Class Member who fails to submit a timely, complete, and valid Claim Form shall be barred from receiving any Distribution Amount pursuant to this Agreement.  The Claims Administrator shall not review or

consider any Claim Form postmarked after the end of the Claim Period, nor shall the Claims Administrator make any distribution whatsoever with respect to any Claim Form received after the end of the Claim Period (except as specifically set forth in Section 10(d)(1) and this Section). Except for persons provided a notice of deficiency under Section 10(d)(1) and as specifically set forth in Section 10(d)(1) and this Section, it shall be conclusively presumed that, if a Claim Form is not postmarked on or before the end of the Claim Period the Settlement Class Member did not return the Claim Form in a timely manner.  Under no circumstances shall the Claims Administrator have the authority to extend the deadline for Settlement Class Members to file a Claim Form.  However, the Claims Administrator will inform Counsel for the Parties of any Claim Forms received within ten (10) days of the end of the Claim Period and the reason provided for submitting an untimely Valid Claim Form.  The Parties will discuss whether or not to include that individual in the Participating Settlement Class. The parties agree not to unreasonably deny a late filer's inclusion in the Participating Settlement Class.

3.      Settlement Class Members who do not return a Valid Claim Form to the Claims Administrator in compliance with the preceding paragraphs within the Claim Period, and do not timely opt-out no later than the end of the Claim Period, shall be deemed to release all claims against Rite Aid as described in Section 11 and shall be deemed to have waived any right to receive a payment in conjunction with the Settlement.

4.    Class Counsel shall not be barred by this Agreement from communicating with Settlement Class Members by responding to inquiries they receive from Settlement Class Members, although during the Claim Period they shall not initiate any contact with Settlement Class Members, including, but, not limited to, communications designed to result in pumping, or otherwise encouraging any Settlement Class Member's participation in the Settlement through the end of the Claim Period, including, but, not limited to, direct electronic communications via email, any social media outlet or network, or similar electronic communication media, placing robocalls to Settlement Class Members, etc.  Class Counsel may obtain only needed contact or personnel information for any Settlement Class Member from the Claims Administrator in order to respond to a Settlement Class Member's inquiry to Class Counsel.  Nothing herein shall interfere with Class Counsel's ability to practice law.

(e)    <u>Filing of Consents to Join with Court</u>.  Within twenty-two (22) days of the expiration of the Claim Period, the Claims Administrator shall make a copy, and transmit all originals of the Claim Forms submitted by Participating Settlement Class Members to Rite Aid's Counsel, a copy of which shall be provided to Class Counsel.  The consent to join portions of the Valid Claims Forms received by the Claims Administrator shall be deemed filed with the Court on the date each was received by the Claims Administrator.  In addition, at the time the Motion for Final Approval is filed, the Claims Administrator shall submit to the Court a declaration verifying full compliance with the Preliminary Approval Order and this Agreement.

Should the Agreement not receive Final Approval, the consent to join forms and releases are null and void and shall not be filed with the Court at any time for any purpose whatsoever.

(f)     Timeliness of Submissions.

(1)     A required mailing sent by a Settlement Class Member shall be considered timely pursuant to this Agreement if the mailing is sent by U.S. Mail and postmarked before the applicable deadline or emailed/faxed and received by the applicable deadline. Notwithstanding this requirement, if a Settlement Class Member fails to send a required form by U.S. Mail, email or facsimile, then the form will not be considered valid unless actually received by the Claims Administrator before the applicable deadline.

(2)     If the prescribed time period in which to complete any required or permitted task, deadline, notices or mailings in accordance with this Agreement expires on a Saturday, Sunday or legal holiday (as defined by Fed. R. Civ. P 6(a), such time period shall be continued to the next following business day.

(g)     Reminder and Subsequent Mailings.

(1)     Twenty (20) days before the end of the Claim Period, the Claims Administrator will mail, by first class U.S. mail, a second mailing in the form of a postcard, in the form attached as Exhibit D, to Settlement Class Members who have not returned a Valid Claim Form or submitted a timely request to opt-out of the New York State Settlement Class.  The Parties will confer with the Claims Administrator concerning this second

36

mailing to ensure that the process is as efficient as possible and without confusion.

(2)   Counsel for the Parties agree to discuss the validity of untimely claims on a case-by-case basis. Any discussions pursuant to this Section shall be conducted between counsel identified in Section 22, or their designees.

(h)   <u>Locating Settlement Class Members and Returned Notices</u>.  If a Settlement Class Member's Notice packet is returned with a forwarding address, the Notice shall be re-mailed by the Claims Administrator to that address within three (3) days following the receipt by the Claims Administrator of the returned mail.   If a Settlement Class Member's Notice packet is returned without a forwarding address, the Claims Administrator shall perform  a standard Level 2 skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within three (3) days of receiving or obtaining such information.

(i)   <u>Disputes</u>.

(1)   If a Settlement Class Member disputes the number of weeks worked as a Store Manager listed for him/her in the Claim Form, he or she must present pay stubs evidencing the number of completed weeks worked as a Store Manager, excluding leaves of absence.   Counsel for the Parties shall promptly be notified by the Claims Administrator of any such dispute.   The information as to the number of completed exempt weeks worked as pre-printed on the Claim Form shall be determinative of any disputed

37

Distribution Amount, except that a Settlement Class Member may present to the Claims Administrator one or more Rite Aid paycheck stub(s) or other supporting documentation demonstrating employment as a Store Manager supporting a greater number of completed exempt weeks worked.  In this event, the number of completed weeks worked as a Store Manager as reflected on the Rite Aid paycheck stub(s) will be determinative unless the Claims Administrator concludes that the Rite Aid paycheck stub(s) is not authentic, is inaccurate, incomplete and/or was altered. The Parties agree that the Claims Administrator's decision on completed exempt work weeks will be final and binding.  Settlement Class Members will be advised in the Notice that, to participate in the Settlement, they must agree to this dispute provision as well.

(2)      If any person contacts any of the Parties or the Claims Administrator during the Claim Period, asserting that he or she should have been sent a Notice and should be entitled to participate in the Settlement but that person is not included in the list sent by Rite Aid to the Claims Administrator as described in Section 10(a), that person shall be instructed by the Party or Claims Administrator to submit the dispute in writing to the Claims Administrator together with any documents or other evidence in support of his or her position.  Counsel for the Parties shall be promptly notified of any dispute. The Claims Administrator shall resolve the dispute by making a binding determination as to the issues presented by the claim, after consultation with the Parties' Counsel and review of any relevant documents.  The Claims

Administrator shall inform the potential member of the Settlement Classes of the outcome of the dispute.  However, in making such a determination, the presumption will be that the records kept by Rite Aid are accurate. Nothing in this Section will preclude any person from submitting an objection to the Court.

(3)     If any Settlement Class Member contacts Rite Aid or Rite Aid's Counsel about the Settlement, he or she will be instructed to contact the Claims Administrator. It is the intent of the Parties that the Claims Administrator be the initial interface with Settlement Class Members about this Settlement and administration of the Settlement. However, should the Settlement Class Member's inquiry be legal in nature, the Claims Administrator shall immediately refer the Settlement Class Member to Class Counsel.  The Parties will provide to the Claims Administrator agreed upon language to be included in answers to "frequently asked questions" likely to be asked by Settlement Class Members receiving notice of the Settlement.

(j)     Non-interference With Claims Procedure.  The Parties and their counsel agree that they shall not seek to solicit or otherwise encourage Settlement Class Members to submit requests for exclusion or objections to the Settlement or to appeal from the Final Order and Final Judgment.

(k)     Procedures for Objecting to the Settlement.

(1)     Settlement Class Members seeking to object to the Settlement must timely file and serve such objection no later than thirty (30) days after the initial Notice is mailed to the Settlement Class Member.  The Notices mailed to

39

Settlement Class Members shall contain the requirements and information set forth in this subsection.

(2)     To object, Settlement Class Members must file with the Claims Administrator written statement describing their reasons for objecting to the Settlement.  The Claims Administrator shall provide Class Counsel and Rite Aid's Counsel with any objections received and file such objections with the Court.  No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed as set forth herein, unless otherwise ordered by the Court.

(3)     Persons who fail to file timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  Persons who are not Settlement Class Members or who submit a timely request to opt out of the Settlement (if a member of the New York State Settlement Class), may not object to the Settlement, and any objections filed by such persons will be null and void.

(l)     <u>Procedure for Opting Out of the Settlement</u>.  Settlement Class Members who wish to opt out of the Settlement must submit to the Claims Administrator a request to opt out that includes their name and the Rite Aid store(s) in which they worked, postmarked no later than the end of the Claim Period.  A Settlement Class Member

40

will not be entitled to opt out of the Settlement established by this Agreement unless he or she does all of the following:  (i) makes a proper written request to opt out of the Settlement; (ii) signs the opt-out request, and (iii) returns the opt-out request so that it is postmarked on or before the expiration of the Claim Period.  It shall be conclusively presumed that, if an opt-out request is not postmarked on or before the end of the Claim Period, the Settlement Class Member did not make the request in a timely manner.  If, however, the Settlement Class Member submits a timely Valid Claim Form, his or her opt out request will be void. The Notices mailed by the Claims Administrator shall contain the requirements and information set forth in this subsection.

11.    **General Wage and Hour Release and Covenant Not to Sue.**

(a)    Upon the Effective Date, all members of the New York State Settlement Class who have not opted out, including their heirs, assigns and estates, shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties in the position of Store Manager, including without limitation all state and local wage claims that were asserted or could have been asserted in this Action, based on the allegations

in them, regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

(b)      Upon the Effective Date, all individuals who join this Action as members of the FLSA Settlement Class (including, without limitation, all individuals who have filed opt-in forms in this Action as well as those who timely return a Claim Form containing a consent to join the Action pursuant to 29 U.S.C. 216(b)) shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages while employed by the Released Parties, in the position of Store Manager, specifically without limitation all claims that were asserted or could have been asserted in this Action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

(c)      Upon the Effective Date, the Settlement Class Representative, including his heirs, assigns and estates, fully, forever, irrevocably and unconditionally releases, remises, and discharges the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties, including without limitation all state and local claims that were asserted or could have been asserted in this Action, based on the allegations in them, regarding

events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

(d)    Upon the Effective Date, the Settlement Class Representative, including his heirs, assigns and estates, fully, forever, irrevocably and unconditionally releases, remises, and discharges the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages while employed by the Released Parties, including without limitation all claims that were asserted or could have been asserted in this Action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., regarding events that occurred or are alleged to have occurred from the beginning of time until the date of the Final Approval Order.

12.    **Covenant Not to Sue.**  Settlement Class Representative, New York State Settlement Class Members and FLSA Settlement Class Members promise not to file a lawsuit in any court alleging Claims, or participate as a party, including but not limited to, as a class or collective action member in any administrative or other legal proceedings, in any forum, against the Released Parties, for any claim included in the General Wage and Hour Release(s) in subsections 11(a)-(d) above.  In consideration of the promises made by Rite Aid in this Agreement, each Settlement Class Representative, New York State Settlement Class Member and FLSA Settlement Class Member agrees never to institute any suit, complaint, proceeding, grievance or action of any kind at law, in equity, or otherwise in any court of the United States, state or municipality, and administrative agency, or any arbitration or other legal forum, against Rite Aid for any claim included in the General

43

Wage and Hour Release(s) in subsections 11(a)-(d) above. Settlement Class Representative and each New York State Settlement Class Member and FLSA Settlement Class Member also agrees that he/she will not join, participate in, or consent to opt in to any actions alleging that he/she is similarly situated to any other employee with respect to any such released claims, and that each will elect to opt out of any such actions against Rite Aid of which he or she is involuntarily made a member or participant (except that the term participant does not apply to or include serving as a witness in another proceeding). If Settlement Class Representative, or any New York State Settlement Class Member or FLSA Settlement Class Member is joined in any class or collective lawsuits for any released claims, he/she will receive no further compensation of any kind for such released claim. Settlement Class Representative, New York State Settlement Class Members and Participating Settlement Class Members further acknowledge and agree that the covenant not to sue is an essential and material term of this Agreement and that no settlement could have been reached by the Parties without this term. Settlement Class Representative, New York State Settlement Class Members and FLSA Settlement Class Members affirm that they understand and acknowledge the significance and consequence of this specific term of the Agreement.

13. **Dismissal of Lawsuit.** The Court's Final Approval Order shall Order that the Action is dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). In addition, following payment of the Distribution Amounts, the Claims Administrator shall provide a written certification of such payments to Counsel for the Parties. If the Effective Date does not occur for any reason, then the dismissal of the Action shall be null and void and of no

further effect, and the parties will be returned to their respective positions in this case *nunc pro tunc* as of the date of the Term Sheet.

14. **Voiding the Settlement Agreement.**

(a)    This Agreement is contingent upon the Court's approval of the Settlement.  If the Court refuses to grant Preliminary or Final Approval or the Effective Date does not occur, this Agreement may be voided at either party's option, in which case this Agreement, the Term Sheet, and any exhibits, will not be admissible as evidence or otherwise and may not be used for any purpose in connection with any further litigation in this Action or any other lawsuit, administrative or other legal proceeding, claim, investigation or complaint, except that the non-disclosure obligations in Section 15 below will remain in force with full effect.

(b)    Rite Aid, at its sole discretion, may withdraw from and void this Agreement by providing notice to Class Counsel and to the Court within ten (10) days after the Claims Administrator provides the Parties with a list of all New York State Settlement Class Members who have opted out of this Action, but only if ten percent (10%) or more of the members of the New York State Settlement Class exercise their rights to opt-out and be excluded from the New York State Settlement Class and this Agreement, Rite Aid shall have the right, notwithstanding any other provisions of this Agreement, to withdraw from this Agreement, whereupon the Agreement will be null and void for all purposes and may not be used or introduced in further litigation or any other proceeding of any kind.

(c)    All and any additional lawsuits filed by Settlement Class Members until the date of Preliminary Approval asserting Claims (as defined in Section 1(i))  by Store

Managers not specifically listed in this Agreement and filed in federal court prior to Final Approval, if feasible, shall be added to this Settlement under the terms of this Agreement and dismissed following Final Approval, unless such Settlement Class Member opts out of the Settlement.  Rite Aid's Counsel agrees to timely identify such pending lawsuits.

15. **Non-Disclosure and Communications.**

(a)     The Parties and their respective counsel agree that they will keep all settlement negotiations and/or communications leading up to the execution of this Agreement and through the date of Preliminary Approval strictly confidential and will not publicize, discuss, disclose or in any way convey any such information in any manner, whether in writing, orally or electronically (including online, web or internet postings, pages and blogs) to anyone not a member of any Settlement Class, unless compelled by law.

(b)     Prior to Final Approval, the Parties and their counsel will not initiate nor respond to public relations or media inquiries about the Settlement. This includes the agreement that the Parties and their counsel will not announce the Settlement on any websites or any other social media networks.  Prior to Final Approval Class Counsel agrees not to issue a press release or otherwise notify the media about the terms of the Settlement or advertise or make any public statements regarding any of the terms of the Agreement through written, recorded or electronic communications. Prior to Final Approval Class Counsel may continue to state on their website that they are/were counsel of record in this matter, but may not provide any further information about this Agreement or the Settlement on their website.

46

Thereafter, any statements or disclosure will be in compliance with Federal Rule of Evidence 408.

(c)     Nothing in this Agreement shall prevent Rite Aid from filing any required regulatory disclosures regarding the Action or complying with its obligations as a public company.

(d)     Class Representative, Lead Class Counsel and Class Counsel will promptly notify Rite Aid's Counsel in advance of any demand or compulsion by law to disclose the negotiations leading to this Agreement, and will cooperate fully with Rite Aid if Rite Aid decides to challenge the demand or legal compulsion to disclose this information.

(e)     Nothing herein is intended to, nor shall it be construed to, violate any ethical obligations of, or interfere with the ability to practice law of, any counsel, including the ability of Class Counsel to provide advice to any current or future client. Additionally, nothing herein shall prevent Class Counsel from correcting any information in the public forum that is incorrect or inconsistent with the Settlement and/or disparaging to the Class Representative, Settlement Class Members and/or Class Counsel's firm by referencing anything in the public record.

16.     **Return of Documents.**  Any documents and information produced by Rite Aid as part of the Action from its inception until execution of this Agreement, including all copies, excerpts, and electronic versions thereof, shall be destroyed by Class Counsel or returned to Rite Aid's Counsel within ten (10) days after the end of the Check Cashing period. Within twenty (20) days after the end of the Check Cashing period, each Lead Class Counsel and Class Counsel shall notify Rite Aid's Counsel in writing that he or she has

destroyed or returned any and all such documents produced by Rite Aid and has not retained any copies thereof.

17. **No Retaliation.**

(a)     Consistent with its legal obligations, Rite Aid will not retaliate against any Settlement Class Member.  Neither Party will retaliate against any Settlement Class Member based on his/her decision to participate or not to participate in this Action and/or the Settlement.

(b)     Rite Aid will not discourage Settlement Class Members from submitting claims for Distribution Amounts.  Class Counsel will promptly notify Rite Aid's Counsel of any complaints by Settlement Class Members about any conduct by a Rite Aid employee at the Store Manager level or higher regarding this obligation.  Rite Aid agrees that the list of individuals who participate in the Settlement shall not be shared beyond its legal department except as necessary to effectuate the Settlement.

18. **Mutual Full Cooperation.**   The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents as may be necessary to implement the terms of this Agreement.  The Parties shall use their best efforts to effectuate this Agreement, including during any appeals.  As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of Rite Aid's Counsel, take all necessary steps to secure Preliminary and Final Approval.  Class Representative, Class Counsel and Rite Aid each agree to abide by the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend it from any legal challenge, whether by appeal or collateral attack.

19.     **Non-Waiver.**  No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right.  A waiver or consent given by a Party on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

20.     **Complete Agreement.**   Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith.  This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

21.     **Knowing and Voluntary Agreement.**  The Parties each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties further affirm that they have not been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that they in fact have consulted with an attorney before signing this Agreement.  Lead Class Counsel and Class Counsel represent that they have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the claims asserted on behalf of Settlement Class Members against Rite Aid.

22.   **Notifications and Communications.**   Any notifications and communications made

pursuant to, required by or otherwise in connection with the terms of this Agreement shall

be sent to the Parties at the addresses of their respective counsel as follows:

| | |
|---|---|
| *For Settlement Class Representative and Settlement Class Members to*: | *For Rite Aid to:* |
| | Daniel E. Turner, Esq. |
| | Littler Mendelson, PC |
| Robert J. Valli, Jr. Esq. | 3344 Peachtree Road NE, Suite 1500 |
| Valli Kane & Vagnini LLP | Atlanta, GA 30326 |
| 600 Old Country Road, Suite 519 | dturner@littler.com |
| Garden City, NY  11530 | |
| rvalli@vkvlawyers.com | |

23.   **Severability.**   If any part of this Agreement is found to be illegal, invalid, inoperative or

unenforceable in law or equity, such finding shall not affect the validity of any other

provisions of this Agreement, which shall be construed, reformed and enforced to affect

the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions

contained in the Agreement shall for any reason be held to be excessively broad in scope,

subject matter or otherwise, so as to be unenforceable, the Parties agree that such

provision(s) shall be construed to be limited or reduced so as to be enforceable to the

maximum extent under the applicable law, subject to the provisions of Section 3(g)

permitting any Party to void the Agreement in the event of a change to a material term.

24.   **Enforcement of Settlement Agreement and Governing Law.**   This Agreement shall be

governed by New York law, without regard to that state's choice of law provisions.  The

Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the

review, approval and enforcement of the terms of this Agreement.  The Parties agree that

the Court shall retain jurisdiction to enforce the terms of this Agreement unless specifically

set forth otherwise herein.

25.  **No Settlement Party Is the Drafter**.  No Party shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter hereof.  This Agreement was drafted with the input by all Parties upon consultation with their counsel, and no reliance was placed on any representations other than those contained herein.

26.  **Headings Not Controlling.** The headings in this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

27.  **Calculation of Time Periods.**  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a party in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the observance of New Year's, the birthday of Dr. Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal or a New York state holiday on which the Court is closed.

28.   **Agreement Form and Construction.**

    (a)    The Parties agree that the terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

    (b)    This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and, if material, approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

    (c)    To the extent necessary to effectuate the terms of this Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

    (d)    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

    (e)    The Notices will advise all Settlement Class Members of the binding nature of the Agreement.  Submission of a Valid Claim Form or cashing of the Distribution Amount check shall constitute acceptance of this Agreement and have the same force and effect as if each Participating Settlement Class Member signed this Agreement.

    (f)    This Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall

constitute one Agreement, which shall be binding upon the Effective Date as to all Parties subject to the terms and conditions provided herein.

(g)    This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the released claims.

(h)    In the event of an inconsistency between the (1) Notices and/or Claim Form; and (2) the Settlement Agreement, this Agreement shall govern.


*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**SETTLEMENT CLASS REPRESENTATIVE**

Yatram Indergit

Date

### CLASS COUNSEL

Robert John Valli, Jr.
Sara Wyn Kane
James A. Vagnini
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, NY 11530

Jay D. Ellwanger
DiNovo Price Ellwanger & Hardy LLP
7000 North MoPac Expressway
Suite 350
Austin, TX 78731

### RITE AID CORPORATION

Ron S. Chima
Rite Aid Corporation
VP, Litigation & Commercial Law

Date

### COUNSEL FOR RITE AID

Daniel E. Turner
Littler Mendelson, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326-4803

Patrick G. Brady
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211
One Gateway Center
Newark, New Jersey 07102-5311

Beth A. Moeller
Tracey T. Barbaree
Moeller Barbaree LLP
1100 Peachtree Street N.E. Suite 200
Atlanta, GA 30309

**CLASS COUNSEL**

Robert John Valli, Jr.
Sara Wyn Kane
James A. Vagnini
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, NY  11530

Jay D. Ellwanger
DiNovo Price Ellwanger & Hardy LLP
7000 North MoPac Expressway
Suite 350
Austin, TX  78731

**RITE AID CORPORATION**

Ron S. Chima
Rite Aid Corporation
VP, Litigation & Commercial Law

6/14/17
Date

**COUNSEL FOR RITE AID**

Daniel E. Turner
Littler Mendelson, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA  30326-4803

Patrick G. Brady
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211
One Gateway Center
Newark, New Jersey 07102-5311

Beth A. Moeller
Tracey T. Barbaree
Moeller Barbaree LLP
1100 Peachtree Street N.E. Suite 200
Atlanta, GA 30309