**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
YATRAM INDERGIT, on behalf of himself
 and all others similarly situated,

                Plaintiffs,

                                         08 CV 9361 (JPO-HBP)
v.

RITE AID CORPORATION, RITE AID OF
NEW YORK, INC.


                Defendants.
-------------------------------------------------------------X

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**<u>CLASS AND COLLECTIVE ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………… i

Table of Authorities…………………………………………………………….. ii

Introduction  …………………………………………………………………… 1

I        Procedural History………..…………………………………………...  3

II.      Summary of the Terms of the Settlement, the Settlement Notice and
         The Reaction of Members of the Settlement Classes………………………  6

III.     Legal Argument ………………………………………………………  9
                    A. Legal Standards for Final Approval of Class Action Settlements………10
                    B. Approval …………………………………………………… 11
                    C. The Settlement is Non-Collusive, Fair, Adequate and Reasonable……. 12
                              1. Procedural Fairness ……………………………………………12
                              2. Substantive Fairness…………………………………………… 14
                                        a. Litigation through Trial Would Be Complex,
                                            Costly and Long…………………………………………14
                                        b. Class Reaction Has Been Very Positive ……..………… 15
                                        c. The Stage of the Proceedings and the Amount of Discovery
                                            Completed Support Final Approval ………………………16
                                        d. Plaintiffs Would Face Risks With Respect to
                                            Individualized Inquiries, Representative Proof
                                            and Summary Judgment if the Lawsuit Was to Proceed....18
                                        e. Maintaining Class and Collective Certification
                                            Through Trial May Be Difficult …………………………20
                                        f.  The Settlement Amount is Reasonable, Even in
                                            Light of the Best Possible Recovery, Given the
                                            Risks of Litigation………………………………..………20
                    D.  Approval of the FLSA Settlement………..…………………………..23

IV.     Requests for an Award of Attorneys' Fees, Costs and Expenses; Service
        Awards; and Administrative Fees Should be Approved……………………………24
                    A.  The Time and Labor Expended by Counsel……………………………27
                    B.  The Magnitude and Complexities of the Litigation ……………..………29
                    C.  The Risk of the Litigation ………………………………………..…...30
                    D.  The Quality of Representation …………………………………..………30
                    E.  The Requested Fee in Relation to the Settlement…………………………31
                    F.  Counsel is entitled to the Recovery of Costs and Expenses……………..32
                    G.  Public Policy Considerations……………………………………………32
                    H.  Cross-Check…………………………………………………..………33
                    I.   Administration Fees……………………………………………………35
                    J.   Service Awards to the Settlement Class Representative
                         Should be Approved………………………………………..…………35

V.      Conclusion…………………………………………………………………36

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A.H. Phillips v. Walling*,
    324 U.S. 490 (1945) ................................................................................................ 33

*Acevedo v Workfit Med. LLC*,
    187 F.Supp.3d 370 (W.D.N.Y. 2016) ...................................................................... 16

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y.2001) ................................................................................ 11

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
    522 F. 3d 182 (2nd Cir. 2008) .................................................................................. 31

*Barrentine v. Arkansas-Best Freight Systems, Inc.*,
    450 U.S. 728 (1981) ................................................................................................. 29

*Beckman v KeyBank, N.A.*,
    293 FRD 467 (S.D.N.Y. 2013) ......................................................................... 11, 12

*Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa.) (Apr. 21, 2013) .............................. 19

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................................................. 26

*Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128,
    1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) ........................................ 23

*Boeing Co. v. Van Gemert*,
    444 U.S. 472, (1980) ............................................................................................... 26

*Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024,
    1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) .......................................... 23

*Calle v. Elite Specialty Coatings Plus, Inc.*,
    No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081(E.D.N.Y. Nov. 21, 2014) .................... 27

*Castagna v. Madison Square Garden, L.P.*,
    NO. 09 Civ. 10211(LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ....................... 11

*Charron v Pinnacle Group N.Y. LLC*,
    874 F Supp 2d 179 [S.D.N.Y. 2012] .............................................................. 18, 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..................................................................................... 14

*Clem v. Keybank, N.A.*,
    No. 13 CIV. 789 JCF, 2014 WL 2895918 (S.D.N.Y. June 20, 2014) ....................... 18, 27

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ................................................................................. 34

*Craig v. Rite Aid Corp.*,
    No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ............................. 3, 19

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................. 24

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir.  2001) ..................................................................................... 12

*Denney v. Jenkens & Gilchrist,*
 230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................... 36
*Diaz v. E. Locating Serv. Inc.,*
 No. 10 Civ. 2082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ........................... 11, 12
*Febus v. Guardian First Funding Group, LLC,*
 870 F. Supp. 2d 337 (S.D.N.Y. 2012)...................................................................... 27
*Frank v. Eastman Kodak Co.,*
 228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................ 10
*Garcia v. Atlantico Bakery Corp.,*
 No. 13 CIV. 1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016)............................... 27
*Gilliam v. Addicts Rehab. Ctr. Fund,*
 05-civ-3452 (RLE), 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)............... 10, 22
*Goldberger v. Integrated Resources, Inc.,*
 209 F.3d 43 (2d Cir. 2000)............................................................................ 14, 27
*Guippone v. BH S&B Holdings, LLC,*
 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ................................ 36
*Henry v. Quicken Loans, Inc.,*
 Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) .................................... 19
*Hernandez v. Merrill Lynch & Co., Inc.,*
 No. 11 Civ. 8472 (KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................... 11
*Hernandez v. The Fresh Diet,*
 12-cv-4339 (ALC)(JLC), 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014).......... 20
*Hicks v. Morgan Stanley & Co.*
 2005 U.S. Dist. LEXIS 24890, at *27....................................................................... 34
*Hyun v Ippudo USA Holdings,*
 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ........................................................ 22
*In re Austrian and German Bank Holocaust Litig.,*
 80 F.Supp.2d 164 (S.D.N.Y.2000) .................................................................. 10, 11
*In re Boesky,*
 888 F. Supp. 551 (S.D.N.Y. 1995) ...................................................................... 34
*In re Cendant Corp.,*
 232 F. Supp. 2d 327 (D.N.J. 2002) ...................................................................... 34
*In re Elec. Books Antitrust Litig.,*
 639 F. App'x 724 (2d Cir. 2016).......................................................................... 15
*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
 No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................. 12, 13
*In re Global Crossing Sec. & ERISA Litig.,*
 225 F.R.D. 436, 467 (S.D.N.Y. 2004). ................................................................ 30
*In re Indep. Energy Holdings PLC Sec. Litig.,*
 302 F. Supp. 2d 180 (S.D.N.Y.  2003)................................................................... 32
*In re Ira Haupt & Co.,*
 304 F.Supp. 917 (S.D.N.Y. 1969) ...................................................................... 18
*In re Prudential Ins. Co. America Sales Litigation,*
 148 F.3d 283, 318 (3d Cir. 1998)...................................................................... 9, 15
*In re Relafen Antitrust Litig.,*
 231 F.R.D. ............................................................................................... 15, 34

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
  268 F. Supp. 2d 907 (N.D. Ohio 2003) .............................................................. 34
*In re Top Tankers, Inc. Sec. Litig.*,
  No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .......................... 13
*In re Tyco International MDL Litigation*,
  535 F.Supp.2d 249, 265 (D.N.H. 2007) ........................................................ 25, 34
*In re Volkswagen*,
  784 F. Supp. 2d (D.Mass 2011) .................................................................. 26, 34
*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................. 20
*Lizondro-Garcia v. Kefi LLC*
  300 F.R.D. 169, 180 (S.D.N.Y. 2014). .......................................................... 21, 24
*Maley v. Dale Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 31
*Manley v. Midan Rest. Inc.*,
  No. 14 CIV. 1693 (HBP), 2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) .................. 22
*Massiah v. MetroP/us Health Plan, Inc.*,
  No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................ 36
*McCoy v. Health Net, Inc.*,
  569 F.Supp.2d 448, 462 (D.N.J. 2008) .......................................................... 19, 23
*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ............................................................................ 25
*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ................... 13, 25, 33
*Meza v. 317 Amsterdam Corp.*,
  No. 14-CV-9007 (VSB), 2015 WL 9161791 (S.D.N.Y. Dec 14, 2015) ..................... 27
*Mills v. Capital One, N.A.*,
  No. 14 CIV. 1937 HBP, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ................... 17
*New England Carpenters Health Benefits Fund et al. v. First Databank, Inc.*
  2009 U.S. Dist. LEXIS 68419 ......................................................................... 34
*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ............................................................................ 21
*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
  688 F.2d 615, 628 (9th Cir. 1982) ................................................................... 21
*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
  No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .............. 35
*Perkins v. Southern New England Telephone Co Inc.*
  No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) ................................... 19
*Prasker v. Asia Five Eight LLC*,
  No. 08 Civ. 5811(MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ...................... 17
*Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ...................................................................................... 11
*In re Prudential Ins. Co. America Sales Litigation*,
  148 F.3d 283, 318 (3d Cir. 1998) ................................................................... 9, 15
*Rangel v. 639 Grand St. Meat & Produce Corp.*,
  No. 13-CV-3234 (LB), 2013 WL 5308277 (E.D.N.Y. Sept. 19, 2013) ..................... 27

*Reyes v. Altamarea Grp., LLC.*,
    2011 WL 4599822 (S.D.N.Y. 2011) .......................................................... 29, 31, 32
 *Riedel v. Acqua Ancien Bath New York LLC*,
    2016 WL 3144375 (S.D.N.Y) ........................................................ 11, 12, 14, 24
*Sand v. Greenberg*,
    No. 08  Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ................................ 33
*Savoie* v. *Merchants Bank*,
    166 F.3d 456, 460 (2d Cir. 1999) ................................................................ 34
*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................ 28, 34
*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
    2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002) ........................................ 36
*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238DLC, 2005 WL 1330937 ........................................................ 12
*Stevens v. HMS Host Corp.*,
    10CV3571 (ILG)(VVP), 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) .......... 20
*Stillman v. Staples, Inc.*,
    No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ............................ 19
*Sylvester v. CIGNA Corp.*,
    369 F.Supp.2d 34 (D.Me.2005) .................................................................. 16
*Taft v. Ackermans*,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .......................................... 30
*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
    No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ........................ 22
*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .................................... 13
*Tracy v. NVR, Inc.*,
    293 F.R.D. 395 (W.D.N.Y. 2013) ................................................................ 20
*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307* v.
    *G&M Roofing & Sheet Metal Co., Inc.*,
    732 F.2d 495 (6th Cir. 1984) .................................................................. 33
*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................... 18
*Velez v. Novartis Pharms. Corp.*,
    2010 WL 4877852, (S.D.N.Y. Nov. 30, 2010) .................................................... 16
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................... 12, 25, 26
*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir.1982) .................................................................... 21
*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) .......................................................................... 10
*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998(S.D.N.Y. October 2, 2013) .......................................... 25, 32, 36

**Statutes**

29 U.S.C. § 216(b) ................................................................................................ 10, 11, 23

New York Labor Law, §§ 650, *et seq.* ........................................................................... 1, 4

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 23(d) ..................................................................................................... 12

FED. R. CIV. P. 23(h) ...................................................................................................... 24

Federal Rule of Civil Procedure 23 ................................................................................ 1

Federal Rule of Civil Procedure 23(g) .......................................................................... 24

Federal Rule of Civil Procedure 23(e) ..................................................................... 12, 24

**Other Authorities**

*Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*,
  29 Berkeley J. Emp. & Lab. L. 269 (2008) ............................................................. 16

*Principles of the Law of Aggregate Litigation* § 3.13(b), (c) (2010) ........................... 26

**Introduction**

Plaintiff Yatram Indergit as well as the opt-in plaintiffs, members of the New York class, and all members of the proposed settlement classes/collectives (together "Plaintiffs"), by and through their counsel, hereby move the Court for final approval of the proposed class and collective action settlement ("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement") earlier submitted to the Court in connection with Plaintiffs' motion for preliminary approval of the same proposed Settlement. Plaintiffs thus submit this memorandum in support of their Unopposed Motion for Final Approval of Class and Collective Action Settlement and respectfully request that the Court fully and finally approve the terms of the Settlement Agreement between the Plaintiffs and Defendants Rite Aid Corporation *et al.* ("Defendants").

The preliminarily-approved Settlement was reached after years of litigation involving thousands of documents, over 50 Store Manager depositions, 20 District Manager depositions, numerous depositions pursuant to Fed. R. Civ. P. 30(b)(6), extensive motion practice regarding certification, and many months of arms-length and good faith negotiations between counsel on both sides with the assistance of Hunter Hughes, an experienced, well-regarded mediator (who, like Class and Defense Counsel, are extremely experienced in class and collective litigation and the settlement of FLSA/state law misclassification claims). The Plaintiffs and Class Counsel believe that the Settlement provides a fair, reasonable and adequate recovery to those who were employed as exempt Store Managers for Defendants and who timely submitted a Claim Form to obtain a settlement payment, and who have potential disputed claims challenging Defendants' decision to classify Store Managers as exempt employees with respect to the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), or New York

Labor Law, §§ 650, *et seq.* ("NYLL") (the "Claims").  Indeed, Class Counsel submit that the Settlement satisfies the fair, reasonable and adequate recovery standard.

The reaction of members of the Settlement Classes[1] further speaks to its fairness, reasonableness and adequacy.  No one objected to any part of the Settlement and no one elected to opt out or exclude themselves from the settlement.  *See* Declaration of Bernella Osterlund from KCC Class Action Services, LLC ("KCC Decl."), attached as Exhibit 2 to the Declaration of Robert J Valli, Jr. ("Valli Final Approval Decl."), at ¶ 11.  The Claim Form informed each member of the Settlement Classes of the formula by which each person's potential individualized amount that he or she was eligible to receive should the Court finally approve the Settlement, as well as the amount of fees, costs and expenses sought by Class Counsel, and the amount of Service Payments sought by Class Counsel on behalf of the individual Plaintiff.  *See* Exhibit A to KCC Decl. (Claim Form template sent to members of the Settlement Classes).

The Plaintiffs and Class Counsel believe that the Maximum Gross Settlement Amount of $5,500,000.00 (Five million five hundred thousand dollars and zero cents) will provide a fair and reasonable recovery to certain persons currently and formerly employed as exempt Store Managers by Defendants, during the periods of time applicable to the Settlement, who alleged claims challenging Defendants' decision to classify them as exempt regarding overtime compensation under the FLSA or  NYLL for certain periods of time that they were employed by Defendants, and who timely submitted a Claim Form to obtain a settlement payment and became "Authorized Claimants" warranting approval of the entirety of the Settlement and all relief requested herein.[2]

---

[1] Each of the aforementioned settlement classes are collectively referred to herein as the "Settlement Classes."

[2] As noted in Plaintiffs' Preliminary Approval Motion, although Defendants did and would continue to vigorously oppose the merits of the claims, likely move for Summary Judgment and re-oppose the certification of any collective under Section 216(b) of the FLSA or the certification of any class under Federal Rule of Civil Procedure 23, they do not oppose the instant motion for final approval of the Settlement or the certification of the Settlement Classes for settlement purposes only.  To the extent that the Court does not grant final approval of the Settlement, Defendants reserve the right to raise any argument with respect to the merits of the Plaintiffs' claims or the appropriateness of the

Plaintiffs thus respectfully request that the Court enter an order: (i) granting Final Judgment on the Released Claims; (ii) giving final approval to the Settlement Agreement because it falls within the range of reasonableness, and is in the best interests of the Class, those individuals who filed a consent to opt-in to this action prior to the entry of a Preliminary Approval Order, and members of the Settlement Classes, and directing consummation of its terms and provisions; (iii) approving Class Counsel's application for an award of Class Counsel's fees, costs, and expenses; (iv) approving the request for a Service Payment; (v) certifying the Settlement Classes for purposes of settlement only; (vi) dismissing the Released Claims from the Litigation on the merits and with prejudice and permanently enjoining all members of the Final Settlement Classes from prosecuting against Defendants and the Released Persons any Released Claims; and (vii) asserting and retaining jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of this Settlement Agreement.

## I.    __Procedural History__[3]

On July 24, 2009, Plaintiffs filed a motion for conditional certification under the FLSA. On March 31, 2010 (and subsequently on June 15, 2010 in a Memorandum Opinion), Judge Paul G. Gardephe granted Plaintiffs' motion.  *See* Dkt. No. 93. Judge Gardephe granted conditional certification and held that "Rite Aid's store managers are similarly situated" (noting that this holding was "consistent with the decisions of other courts addressing similar allegations by Rite Aid store managers and assistant managers.") (citing *Craig v. Rite Aid Corp.,* No. 08-cv-2317,

---

certification of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the Plaintiffs in this memorandum.
[3] Plaintiffs previously set forth the procedural history of this case at pages 4 to 6 of their Preliminary Approval Motion (Dkt. No. 328).  Relevant portions of that discussion are repeated here.

2009 U.S. Dist. LEXIS 114785, at *13 (M.D. Pa. Dec. 9, 2009) and *Tierno v. Rite Aid Corp.,* 2006

U.S. Dist. LEXIS 71794, at *13-19 (N.D. Cal. Aug. 31, 2006)).

Approximately 1,533 current and former exempt Store Managers of Defendants opted into

the national FLSA collective action.[4]  There are approximately 1,755 current and former exempt

Rite Aid Store Managers in the FRCP 23 certified class action under the NYLL. (collectively

referred to herein as the "Plaintiffs" or "Store Managers").

Following preliminary certification, the parties engaged in extensive discovery—including

more than 70 depositions of witnesses (approximately 50 Store Managers, 20 District Managers,

and multiple 30(b)(6) depositions of Rite Aid corporate representatives) across approximately 26

states.[5]

On January 23, 2013, Rite Aid filed its motion to decertify the FLSA class.  Plaintiffs filed

their motion to certify the NYLL Rule 23 class on the same day.  The Court held oral argument on

July 9, 2013.  On September 26, 2013, Judge J. Paul Oetken denied Defendants' Motion to

Decertify the FLSA class and granted Plaintiffs' Motion to Certify the NYLL Class under Rule

23.  *See* No. 239.   Rite Aid filed a Motion for Reconsideration, which was denied on June 17,

2014.  Rite Aid then filed a Petition under Rule 23(f) for leave to appeal the district court's order

certifying the class actions.  The U.S. Court of Appeals for the Second Circuit denied the petition

on September 4, 2014.

---

[4] The total number of FLSA class members may be reduced by agreement of the parties in connection with a handful of class members who may be bound by an earlier settlement, declared bankruptcy, or have failed to comply with discovery obligations.  The Class is defined as all current and former store managers who have worked for Defendants as salaried Store Managers any time between October 30, 2002 to the final disposition of this case, and who have not been paid all wages owed to them, including overtime premiums, in violation of the New York Labor Law, while under the FLSA, the class is defined as all current and former store managers who have worked for Defendants as salaried Store Managers any time between March 1, 2007 to the final disposition of this case, and who have not been paid all wages owed to them, including overtime premiums, in violation of the FLSA.
[5] These states include: New York, Alabama, Washington D.C., Maryland, New Jersey, Connecticut, Delaware, Pennsylvania, Massachusetts, Colorado, Georgia, South Carolina, Ohio, Mississippi, Tennessee, Maine, Louisiana, Washington, Michigan, North Carolina, Arizona, California, Oregon, and Kentucky.

After the appeal of the order denying decertification was denied, the parties worked with each other and the Court to determine the proper scope and timing of discovery regarding the representative proof required for trial.[6]  A scheduling order was entered that allowed for additional depositions of the class, corporate representatives and 30(b)(6) witnesses, as well as expert disclosures and discovery.  Thereafter, the parties completed additional Store Manager depositions and at the time the settlement was reached, there were ongoing discovery disputes and several discovery-related issues pending before the Court.

On or about December 16, 2016, the parties agreed to mediate and eventually selected Hunter Hughes as the mediator.  Prior to the mediation, the Parties reviewed detailed information and numerous documents and conducted detailed legal and factual analyses of Plaintiffs' Claims and Defendants' defenses to those claims.  Both sides conducted their own analysis regarding the: (1) potential liability if the Claims were to proceed; (2) relative strengths and weaknesses of the legal merits of their respective positions; and (3) risks associated with each side's respective positions.  In preparation for mediation, and in the course of this litigation, Class Counsel conducted a significant factual investigation into the Claims.

On January 12, 2017, the Parties engaged in an all-day mediation session under the direction of Hunter Hughes.  Hughes is an experienced class and collective action mediator who has mediated numerous similar complex wage and hour cases with hybrid allegations pursuant to both state and federal law.  In preparation for the mediation, and during the mediation, the Parties presented detailed analyses of the Claims, the likelihood of their success, and Defendants' defenses to those claims.  Matters addressed at mediation included the size and scope of the Claims, the likelihood of success on the merits on those claims, the manner in which potential damages

---

[6] Defendants objected to the efficacy of representative proof but agreed to proceed as long as their objection was preserved.

associated with those claims could be calculated and obtained, the potential for motions for Summary Judgment, renewed motions for De-Certification, this Court's prior decisions/holdings, the likelihood of trial on a class basis and what would occur at trial on those claims.  The Parties were able to settle the monetary portions of the Claims at this mediation.  Between January and May 2017, the Parties exchanged numerous proposals and drafts of language addressing various aspects of the settlement documentation including a summary of certain terms of the Settlement. The Parties also held numerous telephone conferences with each other in a continuous effort to reach resolution.  The Settlement Agreement was fully executed via counterparts in late June 2017 and submitted to the Court on June 30, 2017, in connection with Plaintiffs' Preliminary Approval Motion.  Dkt. No. 328.  On August 3, 2017, the Court granted preliminary approval of the Settlement and set a Final Approval Hearing for January 11, 2018 at 10:15 a.m.  Dkt. No. 329 and miscellaneous ECF entry on August 3, 2017.

## II.    Summary of the Terms of the Settlement, the Settlement Notice, and the Reaction of Members of the Settlement Classes

As set forth in the Preliminary Approval Order (Dkt. No. 329), the Settlement Agreement provides that, if approved, Defendants will pay $5,500,000.00 into a qualified settlement fund ("QSF") to resolve the Claims in their entirety as detailed in the Settlement Agreement and as set forth in the Amended Complaint.  *See* Settlement Agreement at ¶¶ 1(dd), 5(a), 5 (Dkt. No. 328, and Exhibit 1 to Valli Declaration).  The QSF is being administered by Kurtzman, Carson Consultants, LLC ("KCC") an independent and experienced third-party settlement administrator. The Maximum Gross Settlement Amount (hereinafter referred to as "Settlement Amount") represents the maximum amount that Defendants would pay pursuant to the Settlement Agreement if every member of the Settlement Classes had participated in the Settlement, inclusive of the settlement payments, Class Counsel's requested attorneys' fees, expenses and costs, requested

service payments to the named Plaintiff, the costs of notice and claims administration, and Authorized Claimants' IRS Form W-2 taxes and withholdings. (Employer FICA).  *Id.* at ¶ 1(p). However, the third party administrator's fees and costs, as well as the applicable employer-side payroll taxes, shall be paid by Defendants out of any unclaimed monies from the Net Settlement Amount, but under no circumstance will Defendants pay more than $5,500,000.00. (SA ¶¶ 5(g) – 5(j)).

Finally, any portion of the Settlement Amount that is not distributed to the Authorized Claimants as settlement payments or pursuant to Class Counsel's fees, costs and expenses, service payment, and settlement expenses (costs of notice and claims administration) shall be remitted to Defendants, as will any interest accrued on the Settlement Amount while in the qualified settlement fund, under the terms of the Settlement Agreement.  *Id.*  As set forth in Plaintiffs' Preliminary Approval Motion, and as preliminarily approved by the Court, the Settlement is a hybrid FLSA collective action and Rule 23 state law class action settlement, which encompasses differing statutes of limitations based upon various laws.[7]

Pursuant to this Court's Preliminary Approval Order, each member of the Settlement Classes was sent, by first-class U.S. mail, a Settlement Notice in the form approved by the Court, along with a Claim Form (also in the form approved by the Court), that set forth the material settlement terms; instructions on how members of the Settlement Class may participate in the Settlement; instructions on how members of the New York State Law Class may exclude themselves from, or submit objections to, the Settlement; and, when and where to appear at the final approval hearing, among other important information, including the formula by which to

---

[7] In its Preliminary Approval Order, the Court preliminarily approved the settlement.  In accordance with the Settlement Agreement, the Revised Gross Settlement Amount shall be allocated among members of the Settlement Class who become Authorized Claimants as set forth in ¶¶5(g) and (h) of the Settlement Agreement and as described at pages 12-13 of the Preliminary Approval Motion.

determine the estimated amount of the potential settlement payment he or she would receive if he or she became an Authorized Claimant (assuming final approval). *See* KCC Decl. at 4. Prior to sending the Settlement Notices and Claim Forms, KCC reviewed the list of members of the Settlement Class provided by Defendants pursuant to the Settlement Agreement and updated mailing addresses using National Change of Address (NCOA) database and credit reporting ("skip-trace") databases. KCC Decl. at ¶ 2. After KCC performed those address updates, each of the 3,310 members of the Settlement Classes had a complete mailing address. *Id.*

On September 7, 2017, Settlement Notices were sent by KCC to each of the 3310 members of the Settlement Classes. KCC Decl. at ¶ 2. On October 18, 2017, KCC sent a reminder postcard (in the form preliminarily approved by the Court) to the 2,224 members of the Settlement Classes who had neither timely filed a fully completed Claim Form nor opted-out of the Settlement. *Id.* at ¶ 6. In addition, KCC established and maintained a Settlement-specific website (which has had 11,573 page views between) to allow members of the Settlement Classes to learn information about the proposed Settlement, and a Settlement-specific toll-free telephone number for members of the Settlement Classes to call to learn information about the proposed Settlement from live KCC associates. The toll-free number received 652 calls. *Id.* at ¶ 8.

As of November 7, 2017, the date by which all fully completed Claim Forms were required to have been received by KCC in order for a member of the Settlement Classes to become an Authorized Claimant, 2,075 Claim Forms had been fully and timely received by KCC.[8] KCC Decl. at ¶ 9. During the period for members of the Settlement Classes to respond to the Settlement Notice, 504 mailed Settlement Notices were returned to KCC as undeliverable. *Id.* at ¶ 5. KCC

---

[8] Six (6) Claim Forms were fully completed but were received after the deadline. Of the 2,075 class members who filed, 1,981 of these are eligible to receive a settlement payment. Additionally, 249 self-identifiers have submitted claims. These self-identifiers and late claims are currently under review. After receiving input from Counsel for the Defendants and Counsel for the Plaintiffs, KCC approved these claims. KCC Decl. at ¶ 9.

re-mailed 378 such Settlement Notices to forwarding addresses after running searches through credit bureau and/or other public source databases. Therefore, as of December 11, 2017, a total of only 126 members of the Settlement Classes had all mailed Settlement Notice attempts returned as undeliverable. *Id.*

In addition, as of December 11, 2017, KCC did not receive any objections to the Settlement is not aware of any such objections having been filed with the Court. *Id.* at ¶ 11. Similarly, Class Counsel is not aware of any objections to the Settlement filed or made by members of Settlement Class. Valli Final Approval Decl. at ¶30. Class Counsel submits that there is no doubt that the Settlement Notice program set forth in the Settlement Agreement, ordered in the Court's Preliminary Approval Order, and carried out by KCC, complied with Fed. R. Civ. P. 23 and due process.[9]

## III.  **Legal Argument**

Class Counsel represent that the Settlement is fair, reasonable, and adequate.  Valli Final Approval Decl. at ¶¶ 21 and 26.  In fact, Class Counsel believe that the Settlement is an extremely good result given all considerations. *Id.* at ¶ 26; *see Grinnell* factors below.  At a minimum, Class Counsel and the Plaintiffs submit that the proposed Settlement is in the best interests of the members of the Settlement Classes in light of all known facts and circumstances, including the risks and delays of litigation that are presented by the defenses to the Store Manager Claims and potential pre-trial and appellate issues Defendants may assert. *Id.* at ¶ 26.  The resolution of the Claims, when considered against another year or more of discovery, discovery of absent class

---

[9] *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 167–69 (2d Cir.1987) (approving letter notice to reasonably identifiable class members, supplemented by "various forms of substitute notice," including publication in various media); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.1996) (approving individual notice to class members "whose address could reasonably be located" and summary notice published twice in national editions of the Wall Street Journal, New York Times, and U.S.A. Today), *aff'd mem.*, MDL No. 1005, 107 F.3d 3, 1996 WL 739258 (2d Cir. Dec. 27, 1996)

members, the uncertainty of the outcomes of the anticipated motions for Summary Judgment, De-Certification of Rule 23 class on the New York State Claims, including possible motions for decertification of the conditionally certified FLSA collective, pretrial proceedings and a potential trial, and the costs attendant upon such activities – most certainly makes Class Counsel believe that the Settlement inures to the benefit of members of the Settlement Classes.  *Id.*[10]

A.     **Legal Standards for Final Approval of Class Action Settlements**[11]

By this Motion, the Plaintiffs seek Final approval of the Settlement.  Class Counsel represents that the Settlement is fair, reasonable, and adequate.  Valli Final Approval Decl. ¶ 26. In fact, Class Counsel believe that the Settlement is an extremely good result given all considerations.  *Id*.  At a minimum, Class Counsel and the Plaintiffs submit that the proposed Settlement is in the best interests of the Members of the Settlement Class in light of all known facts and circumstances, including the risks and delays of litigation that are presented by Defendants' defenses to the claims and potential pre-trial and appellate issues Defendants may assert.  *Id.*

It is well-established that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000), *aff'd*,

---

[10]   In addition, the Settlement is supported by the named Plaintiff.  *Id.*

[11] The Settlement settles all wage and hour claims brought by the Plaintiffs, both under NYLL and the FLSA.  The Claims asserted under the FLSA are brought as a putative "collective action," in which putative FLSA collective members must affirmatively "opt-in" to the litigation.  29 U.S.C. § 216(b).  The Claims asserted under the NYLL, on the other hand, are brought as a putative "opt-out" class action under the general class action provisions of Rule 23. When considering final approval of "hybrid" collective actions of state wage and hour class claims under state law and federal FLSA collective action claims, courts have looked at the fairness, adequacy, and reasonableness of the settlement for both statutory frameworks by examining the *Grinnell* factors.  *See, e.g., Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005)*; Gilliam v. Addicts Rehab. Ctr. Fund,* 05-civ-3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at \*8 (S.D.N.Y. Mar. 24, 2008).

236 F.3d 78 (2d Cir. 2001). Settlement also spares the litigants the uncertainty, delay and expense of trial while simultaneously reducing the burden on judicial resources. *See Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case).

**B.     Approval**

Even though complex, "where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA -opt in' collective action pursuant to 29 U.S.C. § 216(b)," (*e.g.*: a Hybrid Action), Federal Courts routinely certify such hybrid FLSA/Rule 23 cases for settlement. "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (certifying a federal collective under the FLSA and state law settlement Class under Rule 23 at preliminary and final approval stages) citing *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001); *Riedel v. Acqua Ancien Bath New York LLC*, 2016 WL 3144375, at *8 (S.D.N.Y. May 19, 2016) (certifying a federal collective under the FLSA and state law settlement class under Rule 23, and granting preliminary approval of the settlement agreement).

The ultimate determination of whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

As discussed more fully below, there is clear evidence that the Settlement is fair, adequate and reasonable and well within the range of possible outcomes and thus Final Approval should be approved.

### C.    The Settlement is Non-collusive, Fair, Adequate and Reasonable

Rule 23(e) requires court approval of a settlement of a class action to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc.,* 396 F.3d at 116-117; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

As delineated above, under Rule 23, before granting final approval of a proposed class action settlement, the Court will be asked to find that the settlement is fair, reasonable and adequate. *See, e.g.*, FED. R. CIV. P. 23(d); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010). Courts examine procedural and substantive fairness considering the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.,* 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

#### 1.   Procedural Fairness

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotations and citations omitted); *Riedel*, 2016 WL 3144375, at *7. *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* 2007 WL 2230177, at *4

(S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.,* 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

This Settlement was reached as a result of good faith dealings without collusion. The Parties are represented by highly experienced and competent counsel. Among Class Counsel are well-respected members of the plaintiffs' bar, with extensive experience in employment law class litigation, specifically wage and hour claims. *See* Valli Decl. ¶ 27. Class Counsel have decades of experience in the field of employment discrimination and wage and hour litigation and have prosecuted a substantial number of employment discrimination and wage and hour cases to successful conclusion. In turn, the lawyers representing Defendants in the case, Littler Mendelson ("LM") and Epstein Becker & Green, are nationally known for their labor and employment practice, including the defense of putative class and collective wage and hour claims.

Further, the mediation between the parties was conducted before Hunter Hughes, who is well-versed in the nuances of wage and hour class and collective actions including with hybrid allegations pursuant to both state and federal law. The Settlement was therefore not the product of collusive dealings but, rather, was informed by the experience of qualified counsel with the guidance of an experienced mediator. The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel spent many years evaluating the merits of Plaintiffs' claims and Defendants' defenses. *See Toure v. Amerigroup Corp.,* 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation ... [and] enlisted the services of an experienced employment [law] mediator"); *Diaz,* 2010 WL 5507912, at *4. *See also McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 WL 2399328, at *4 (S.D.N.Y.

Mar. 3, 2010).   The Settlement meets the *Grinnell* factor of being the product of arms-length negotiations (discussed further below).   Thus, this factor strongly supports approval of the Settlement.

### 2.  Substantive Fairness

Courts in the Second Circuit "determine whether the settlement's terms are fair, adequate and reasonable per the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Diaz*, 2010 WL 5507912, at *3; *see also Riedel*, 2016 WL 3144375, at *7.  The "*Grinnell* factors" include, among others: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, all the *Grinnell* factors demonstrate that the proposed Settlement is fair, adequate and reasonable, and should thus be approved.

### a.  Litigation through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1)

If approved, this Settlement will dispose of all the Claims asserted in the Complaint.  In the absence of Settlement approval, the Parties would face the time and expense of additional discovery, including numerous depositions of parties, absent class members and third parties, extended and costly battles with respect to the litigation of the claims, including potential motions

for the decertification and motions for summary judgment on the claims.  If summary judgment motions seeking the dismissal of the claims were denied, the Parties would have to conduct additional further discovery and prepare for a trial, which would undoubtedly be lengthy and costly.  While Class Counsel and the Plaintiffs believe in the merits of the claims, and would be willing to fight for them, in the absence of the Settlement it would likely have taken additional years and hundreds of thousands of dollars in additional legal fees, and consumed scarce judicial resources, before reaching final resolution of the Claims, including exhaustion of all appeals.  *In re Prudential Ins. Co. America Sales Litigation*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").  The first *Grinnell* factor weighs in favor of final judicial approval of the Settlement.

### b.      Class Reaction Has Been Very Positive (*Grinnell* Factor 2).

The response to the Settlement by members of the Settlement Class is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement.  *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D.Mass. 2005) (class's reaction supported approval where the "overall reaction to the settlement has been positive" and the objections asserted by class members did not focus upon the total settlement consideration).  Similarly, the lack of exclusions/objections implicitly provides this Court with further evidence of positive Class reaction.  "As to factor two, [the Court] concluded that the class implicitly approved the settlement, observing that "[t]here have been under the circumstances few exclusions and few objections."  *In re Elec. Books Antitrust Litig.,* 639 F.Appx. 724, 727 (2d Cir. 2016)

Consideration of the reaction of members of the Settlement Class weighs strongly in favor of approval where, as here, there have been no objections received from Members of the Settlement Class in response to the Notice that was mailed (and in some instances re-mailed).  In addition, the

Notice advised Members of the Settlement Class of their right to exclude themselves from the Settlement, and no requests for exclusion were received by KCC from Members of the Settlement Class.  KCC decl. at ¶ 10.

Moreover, the percentage of Class Members who elected to participate in the Settlement – approximately 60% – is well above the rate approved in other cases and the typical rate in FLSA cases.  *See, e.g., Acevedo v. Workfit Med. LLC,* 187 F.Supp.3d 370, 380 (W.D.N.Y. 2016) (approving settlement with 21% claim rate); *citing to Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 52 (D.Me. 2005); *See also Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *6 (S.D.N.Y. Nov. 30, 2010) (approving 7% rate).  In Charlotte S. Alexander's law review article ("Alexander Study"), data was gathered on the opt-in rates in 38 FLSA collective actions.  Plaintiff opt-in rates were at a median of 15%, with 30 of the 38 cases having opt-in rates below 20%. *Would an Opt In Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act* 80:2 MISS.L.J. 443, at 489-91 (Winter 2010);   *see also* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding average participation rate to be 15.71%).  In comparison, here, over 60% of the Settlement Class submitted claim forms.

This response demonstrates that the Members of the Settlement Class approve the terms of the Settlement, including the results achieved on their behalf, and support final judicial approval.

### c.    The Stage of the Proceedings and the Amount of Discovery Completed Support Final Approval (*Grinnell* Factor 3).

The purpose of considering the stage of the proceedings when evaluating a settlement for final approval is to ensure that the factual record is sufficient to support an informed judgment as

to the adequacy of the settlement proposal.  When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Prasker v. Asia Five Eight LLC,* 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010); *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015).

Here, there can be no question that the Plaintiffs and Class Counsel had sufficient information to make an informed decision regarding the adequacy of the Settlement.  This case has been litigated for almost nine years, extensive written discovery was exchanged, over fifty (50) opt-ins were deposed, twenty (20) District Managers were deposed, 30(b)(6) depositions were taken and there was significant motion practice.  In addition, given respective counsels' experience, the Parties knew what legal concerns existed for both sides, which allowed both sides to fully evaluate and value the claims, and therefore have full, fair and frank settlement conversations.  Valli Final Approval Decl. ¶¶ 13-20.

Moreover, in preparation for mediation, both parties reviewed this Court's prior decisions with respect to certification.  These orders informed the parties of the strengths and weaknesses in their respective decisions.  Valli Final Approval Decl. ¶¶ 9-11.  As a result of all of the above, Class Counsel have a thorough understanding of Plaintiffs' claims.

Both sides conducted their own analysis regarding the (1) potential liability if the claims were to proceed; (2) relative strengths and weaknesses of the claims and defenses; and (3) risks associated with each side's respective positions.  Valli Final Approval Decl. ¶ 17.  The mediation involved an exchange of comprehensive position statements, a day of in-person discussion and negotiation, and numerous post-conference discussions.  Matters addressed at the mediation included the size and scope of the claims, the likelihood of success on the merits, the manner in which alleged damages associated with those claims could be calculated and obtained, the

likelihood of Summary Judgment and/or De-Certification, individual versus class considerations, representative proof and the likelihood of trial and what would occur at trial. Valli Final Approval Decl. ¶ 21.

In short, the combination of extensive discovery and the close working knowledge of each side's legal arguments, permitted the mediator to get to the heart of the issues in the case in an effective and efficient manner. *See, e.g., Clark v. Ecolab Inc.*, No. 04CIV.4488PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (court found settlement fair following 6 years of litigation involving numerous depositions amount voluminous amounts of discovery); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) (court found settlement fair following 4 years of litigation involving pretrial negotiations, motion practice, and certification discovery).

### d. Plaintiffs Would Face Risks With Respect to Individualized Inquiries, Representative Proof and Summary Judgment if the Lawsuit Was to Proceed (*Grinnell* Factors 4 and 5).

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *6 (S.D.N.Y. June 20, 2014). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F.Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Although the Plaintiffs believe they have strong claims, they are subject to tangible risks as to liability and damages.

First, a trial on the merits would involve risk to the Plaintiffs because of the fact-intensive nature of proving liability and damages on their claims under the FLSA and NYLL. Some of the disputed issues are: (1) were Store Managers properly classified as exempt, such that there was no liability under the FLSA and NYLL, (2) could a grant of Summary Judgment bind the Class, (3)

because the pay practices were vetted at various stages and the classifications of some Store Managers changed during the litigation was there any willfulness to violate the law, and, finally (4) can Plaintiffs establish that overtime hours calculated were actually worked.  These are fact intensive questions that also depend on the achievement of favorable legal determinations.  When misclassification cases like this one reach juries, the results can be unpredictable, as is demonstrated by the four last such collective action trials of which Class Counsel are aware, three of which resulted in employer verdicts.  *Compare, e.g., Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) (same); *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa.) (Apr. 21, 2013) (same).

Second, there is a particular issue as to damages for Class Counsel and the Plaintiffs to consider because, even if liability could be established, the Parties dispute the proper method for calculating potential damages in an action like this one.  *See McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448, 462 (D.N.J. 2008) (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement).  Here, Defendants asserted that the damage analysis to be applied was the half-rate method (at most) and not time and one-half as alleged by Plaintiffs.  Defendants also alleged that any calculation should be based on a work week of greater than 40 hours in a week (*e.g.*: fifty (50) hours).  *See Craig v. Rite Aid Corp.,* No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658 at *38-39 (M.D. Pa. Jan. 7, 2013) (the disputed method of damage calculations was a crucial unresolved issue that weighed in favor of settlement approval of FLSA retail manager misclassification case). Although the Plaintiffs believe that the Claims

are meritorious, Class Counsel are experienced and realistic, and understand that the resolution of liability and damages issues, the outcome of a potential trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.   The Settlement alleviates this uncertainty.

> ### e.      Maintaining Class and Collective Certification Through Trial May Be Difficult (*Grinnell* Factor 6).

The risks to the Plaintiffs of maintaining, either conditional certification of an FLSA collective or the certification of a Rule 23 state law class through trial are also present.   Case authority demonstrates the substantial difficulty and litigation risks associated with achieving and/or maintaining collective or class certification.   *See, e.g., Stevens v. HMS Host Corp.,* 10CV3571 (ILG)(VVP), 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying retail sale FLSA collective action); *Hernandez v. The Fresh Diet,* 12-cv-4339 (ALC)(JLC), 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014) (decertifying misclassification collective action); *Tracy v. NVR, Inc.,* 293 F.R.D. 395 (W.D.N.Y. 2013) (decertifying outside contractor collective action); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying retail store manager collective action).

Risk, expense, and delay permeate continued litigation.   Settlement eliminates this risk, expense, and delay.   This factor favors granting final approval.

> ### f.      The Settlement Amount Is Reasonable, Even in Light of the Best Possible Recovery, Given the Risks of Litigation (*Grinnell* Factors 7, 8 and 9).

In the light of Class Counsel's assessment of the best possible recovery, given the attendant risks, the Settlement is fair, reasonable and adequate.   A reasonable settlement is not determined by a hard and fast mathematical equation yielding a particularized sum.   *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178).   "Instead, there is a range of reasonableness with

respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' *Id.* (quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972)). *See also Diaz*, 2010 WL 5507912, at *5 (finding that settlement was within range of reasonableness given various challenges, risks and costs continued litigation would entail); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (explaining that "the [settlement] award compensates plaintiffs almost immediately and removes the uncertainty that litigation necessarily entails"). Thus, this factor weighs in favor of approving the Settlement.

Courts routinely approve settlements even though the benefits amount to less than the recovery sought (or else there would have been no reason to settle). Moreover, when a settlement assures immediate payment of substantial amounts to Class Members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road[,]" settlement is reasonable under this factor. *Charron v. Pinnacle Group N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012), *affd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

As the seminal *Grinnell* decision itself recognized, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *accord*, *e.g.,. Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (upholding settlement which amounted to "only a negligible percentage of the losses suffered by the class"). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). When settlement assures immediate

payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (*quoting Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)). Even if a defendant could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186.

Here, Class Counsel and the Plaintiffs believe that the Gross Settlement Amount is reasonable given the attendant risks of litigating the claims, even though recovery could possibly be greater if the Plaintiffs were to fully succeed on their claims at trial and survive an appeal. Class Counsel believes that the fairness and reasonableness of the Settlement can be best understood, however, by considering that the Maximum Gross Settlement Amount ($5,500,000) achieves payment to the Participating Claimants of 31% of their unpaid wages. This settlement falls in line in comparison to other FLSA/NYLL settlements. *See Hyun v. Ippudo USA Holdings,* 2016 WL 1222347 at *2 (S.D.N.Y. Mar. 24, 2016) (Court approves Class members receiving approximately 51% of their back wages as fair and reasonable, "based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial"); *Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016) (holding that, "after deducting the service award, fees for the settlement claims administrator and attorneys' fees and costs, the class members will receive approximately $577,833.33, which is more than 85% of their back wages. This substantial recovery weighs in favor of approving the settlement."). Also, the claims made process allows for the Unclaimed Funds to remain with Defendants.[12]

---

[12] The claims-made, reversionary structure of this proposed Settlement is particularly proper (if not uniquely so) for the settlement of FLSA claims given that, in a putative FLSA collective action, a putative FLSA collective action

In concluding that the Settlement is fair, reasonable and adequate, Class Counsel also weighed the benefits against the risk involved in litigation.  *Cf. Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery). [13] Accordingly, Plaintiffs submit that the Settlement is fair, reasonable and adequate, particularly in light of the risks and challenges attendant to proceeding with the litigation.

The *Grinnell* factors, as well as the additional factors, all weigh in favor of granting final approval of the Settlement.  Thus, the Settlement is fair, reasonable, and adequate, and the Court should grant final approval.

### D.   APPROVAL OF THE FLSA SETTLEMENT

Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same due process concerns as the

---

member must affirmatively "opt-in" to the FLSA action in order to participate in the litigation.  As a result, in a FLSA settlement, a member of a FLSA settlement collective (or "settlement class" as the term has been used in the instant action) who does not affirmatively consent to join the case and to participate in the settlement will retain FLSA claims against the Defendants, including the right to file a separate lawsuit against Defendants, even after the resolution of the case on a classwide basis.  *See* 29 U.S.C. § 216(b).  In the proposed Settlement, anyone who has not submitted a Claim Form and therefore does not become a Participating Claimant will not be eligible to participate in the settlement and will retain the right to sue Defendants for alleged FLSA violations.  The settlement structure proposed here achieves a balance between providing fair settlement compensation to participating class members, while protecting Defendants in the event it needs to defend unreleased FLSA claims from members of the Settlement Class who did not become Participating Claimants.  Where, as here, provisions for funding the claims of the participating members of the Settlement Class are negotiated at arms-length, they "[do] not undermine the fairness, reasonableness, or adequacy of the Settlement." *McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448, 474 (D.N.J. 2008).

[13] Plaintiffs also recognize the substantial hurdles they face to recover these sums in the absence of a settlement.  Defendants argue that their pay practices complied with applicable law.  Thus, Defendants sharply contest each of Plaintiffs' claims including their claims for overtime.  Defendants' further dispute allegations that Defendants willfully violated applicable law.  It is also Defendants' position that individualized issues of class or collective certification of the Class will result in decertification.

settlement of a class action," and therefore is subject to less searching scrutiny.  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).   In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA.  *Id*.  The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve, as here, a hybrid class and collective settlement agreement.  *Riedel,* 2016 WL 3144375, at *6.

As this Settlement meets the requirements of Rule 23(e) as well as the *Grinnell* Factors, it should also be approved as to the FLSA collective.

## IV.    REQUESTS FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES; SERVICE AWARDS; AND ADMINISTRATION FEES SHOULD BE APPROVED

In assessing a request for attorneys' fees, Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,  . . . counsel's knowledge of the applicable law, and ... the resources counsel will commit to representing the class.").  *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

Class Counsel posit that they are entitled to reasonable attorneys' fees, costs and expenses to compensate them for their work in recovering alleged unpaid wages on behalf of the Members of the Settlement Class.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Class Counsel seek an award of attorneys' fees, in the amount of $1,833,333.33, or one-third (1/3) of the Gross Settlement Amount.  Valli Final Approval Decl. ¶¶ 37, 41.  Further, Class Counsel seek reimbursement for the costs and expenses each firm advanced in the prosecution of this

action.   For the purposes of this Motion only, Defendants do not oppose Class Counsel's application for attorneys' fees, costs and expenses.[14]

The Notice advising members of the Settlement Class of the Settlement, which was approved by the Court, provided that "Class Counsel will apply for fees in an amount not to exceed 1/3 of the Gross Settlement Amount."  *See* KCC Decl. Exhibit B (Notice) annexed to Valli Decl.  Not a single objection was received to Class Counsel's request for attorneys' fees.  Class Counsel contends that this request for one-third (1/3) of the Gross Settlement Amount for attorneys' fees is reasonable and is within the accepted range typically awarded in contingency fee common fund and FLSA cases (*see* below).

The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one.  *Wal-Mart Stores,* 396 F.3d at 121; *Yuzary,* 2013 WL 5492998, at *9; *Diaz,* 2010 WL 5507912, at *7.  Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Beckman,* 293 F.R.D. 477; *McMahon,* 2010 WL 2399328, at *7.  See also *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).  "The lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours and compels district courts to engage in a gimlet-eyed review of line-item fee audits."  *Wal-Mart Stores,* 396 F.3d at 121.

"'An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'"  *In re Tyco International MDL Litigation*,

---

[14] Defendants do not oppose Class Counsel's instant request for attorneys' fees, costs and expenses for settlement purposes only.  However, to the extent that the Court does not grant final approval of the Settlement, Defendants reserve their rights to raise any argument with respect to any subsequent requests by Class Counsel for attorneys' fees, costs and expenses in association with any claims asserted by any Plaintiffs in this action.

535 F.Supp.2d 249, 265 (D.N.H. 2007) (*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478,

(1980)); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund

cases "a reasonable fee is based on a percentage of the fund bestowed on the class").  And a lack

of full participation should not have a negative impact on the Attorney Fee application.  *See Grinell*

Factor 2 above.[15]

Yet another advantage of the percentage method is that it "directly aligns the interests of

the class and its counsel" because it incentivizes attorneys to create the largest common fund out

of which payments to the class can be made.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

96, 122 (2d Cir. 2005) (internal citations omitted).[16]

There is no hard and fast rule mandating a certain percentage of a common fund that may

reasonably be awarded as a fee.  The amount of any fee must be determined on the facts of each

case.  "It is not the obligation of this court to set the fee at the lowest amount possible but rather

to determine whether the fees sought are 'reasonable.'"  *In re Volkswagen*, 784 F.Supp.2d 35, 47

(D.Mass. 2011).

---

[15] As the Supreme Court has recognized, it is appropriate that attorneys' fees, costs and expenses be awarded on the entire settlement even though amounts to be paid to settlement class members who do not file claims will revert to Defendants.  *See Boeing Co.*, 444 U.S. at 480-81.  This is particularly true as a portion of the Unclaimed Funds is also to be provided to the Participating Claimants.

[16] Indeed, in perhaps the most recent serious consideration of current fee jurisprudence, found in the American Law Institute's recently adopted Principles of Aggregate Litigation, the percentage-of-the fund was recognized as the proper principle:

(b) Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.  The court can consider using the "lodestar" approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.

(c) Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:

(1) situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or

(2) cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).

26

Class Counsel's request for one-third (1/3) of the Gross Settlement Amount for Class Counsel's attorneys' fees falls within the acceptable range for common fund cases in this Circuit, both within the wage and hour context as well as otherwise.  Indeed, an attorneys' fee award of one-third of the fund "is the customary percentage in FLSA cases." *Garcia v. Atlantico Bakery Corp.*, 2016 WL 3636659 (S.D.N.Y. June 29, 2016) (collecting cases); *see also Clem v. Keybank, N.A.*, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted).[17]  Here, Class Counsel believes that all considerations support the requested amount for attorneys' fees.

Though *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), did not involve an FLSA claim, the Second Circuit set forth the following six factors to determine the reasonableness of a fee application in that securities class action: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Should the Court consider these factors, all support the award requested herein.

## A.      The Time and Labor Expended by Counsel

Class Counsel has expended significant resources litigating the Action.  Counsel spent

---

[17] *See also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F.Supp.2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("a fee that is one-third of the fund is typical" in FLSA cases); *accord Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3(E.D.N.Y. Nov. 21, 2014); *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (Collecting cases).

significant time on discovery, discovery disputes, depositions, and motion practice, negotiating a settlement, attending a mediation and resolving disputes pertaining to the specifics included in the Settlement Agreement, and assisting with the administration of the class before, during and after the notice period by fielding inquiries of opt-ins and potential participants in the settlement process.[18]  Valli Decl. ¶ 10.

From 2008 to date, Class Counsel has collectively spent approximately the following attorney, paralegal and support staff hours investigating and prosecuting this case (VKV has spent 2,755.09 hours, with an aggregate loadstar of $ 923,841.50. DiNovo Price and Ellwanger has spent 2,144.75 hours, with an aggregate loadstar of $827,343.75.)   These hours have an aggregate lodestar of approximately 1,751,185.25.[19] Such hours are reasonable in the instant case, particularly given the size of the Class, Class Counsel's contact with the Class, the magnitude of and management of the discovery necessary to establish Plaintiffs' claims, the years of discovery, and the extensive motion practice.   All hours are based on contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Class Counsel's efforts have been without compensation to date and entitlement to payment was contingent upon achieving a successful result.

Further, after Class Counsel spends additional time on this litigation in connection with implementing and monitoring the settlement, their lodestar will only increase. *Sewell,* 2012 WL 1320124, at *13; *Beckman*, 293 F.R.D. at 482.  Among other things, and particularly because of the numerous early opt-ins in this case, Class Counsel

---

[19] To assist the Court with a lodestar cross-check summaries of respective Class Counsels' time and hourly rates, Firm Resumes and redacted time records are submitted as Exhibits respectively to the Valli and Ellwanger declarations.  The detailed unredacted time records will be submitted to the Court *in camera*.

will answer class member questions, respond to inquiries from the claims administrator, and negotiate and possibly litigate disagreements with Defendants about the administration of the settlement and distribution of the fund.  This additional work makes Class Counsel's request "even more reasonable than it appears at first glance."  *Beckman*, 293 F.R.D. at 482.  *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, *8 (S.D.N.Y. Aug. 16, 2011) (In approving 33% attorney fee award in FLSA case, Court noted that "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.")

### B.    The magnitude and complexities of the litigation

The United States Supreme Court has long recognized that "FLSA claims typically involve complex mixed questions of fact and law[.]  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 743 (1981).

The claims herein have all the hallmarks of complex and extended FLSA and state law litigation.  The risks of proceeding with this case have been set out above, but for emphasis include Plaintiffs having to establish that: Defendants jointly or otherwise employed Plaintiffs within the meaning of the FLSA and NYLL; Plaintiffs were not properly compensated for all hours worked; Plaintiffs were misclassified as exempt, Store Managers worked in excess of forty (40) hours in a week and continued class and collective action treatment of Plaintiffs' claims is appropriate.  Valli Final Approval Decl. ¶¶ 17, 21.

This Settlement involved 3310 Class Members, and as such case and client management was a complex and time consuming endeavor. These factors all weigh in favor of reasonableness of the requested fee.

### C.     The risk of the litigation

Class Counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis. Class Counsel was required to make a significant investment of time and resources without a guarantee of any kind. The facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. If the case went to trial, Plaintiffs would also have to prove that Defendants misclassified the highest ranking employee in each of their stores and that these pay practices violated the FLSA and NYLL rules regarding the payment of overtime. Accordingly, the risk of litigation and collection weigh heavily in favor of Class Counsel's request for attorneys' fees.

### D.     The quality of representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)). This case was staffed by lawyers with decades of experience in employment law and litigation. Indeed, Class Counsel respectively submit that the $5,500,000 Gross Settlement Amount was achieved, in part, because of the level of experience and reputation of counsel. *See, e.g.*, *Kudo v. Panda Express*, 7:09-cv-00712, Dkt. 308 at 5-6 (S.D.N.Y. June 26, 2015) (appointing Valli Kane & Vagnini, among others, as class counsel for settlement class recognizing how they "have succeeded in negotiating an award that has real value for the class members"); *Brown et. al v. Medicis,* 13-cv-01345, Dkt. 52 at 4 (DOC, July 11, 2016) (granting final approval of $7,150,000 settlement in gender discrimination and

hostile work environment case, stating that Class Representatives have "hired counsel experienced in litigating employment discrimination class actions" in referring to Valli Kane & Vagnini and their co-counsel when approving 35% plus reimbursement of all reasonable costs, plus expenses and an additional $150,000 payment for fees for work associated with implementing the Settlement Agreement); *Roberts et. al. v. TJX,* 13-cv-13142, Dkt. No. 172 at 6 (D. Mass. 9/30/16) (Judge Burroughs in approving wage and hour settlement for a portion of the complaint, in referring to Valli Kane & Vagnini and co-counsel stated, "the Court is satisfied that the terms and conditions set forth in the Settlement Agreement are the result of good faith, arms' length settlement negotiations between competent and experienced counsel…").

Defendants, in turn, were ably represented by prominent law firms and attorneys with specific experience and well-known expertise in this type of litigation. "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." *Maley v. Dale Global Techs. Corp.,* 186 F.Supp.2d 358, 373 (S.D.N.Y. 2002). Thus, this factor weighs in favor of granting the requested fee.

### E.   The requested fee in relation to the settlement

The request by Class Counsel for an award of one-third (1/3) of the Gross Settlement Amount for fees is fully supported by awards in class actions involving common funds, including, specifically, wage and hour class and collective action settlements.

Contingency fees of one third in FLSA cases are routinely approved in this Circuit. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182 (2nd Cir. 2008), does not address a common fund fee petition, it supports Class Counsel's request for one third of the fund because '"reasonable, paying client[s]' ... typically pay one-third of their recoveries under private retainer agreements." *See also* Reyes *v. Altamarea Grp., LLC,* 2011 WL 4599822, at *8 (S.D.N.Y., Aug. 16, 2011).

31

No Class Member objected to Class Counsel's request for one third of the Gross Settlement Amount, which also provides support for Class Counsel's fee request.

### F.    Counsel is entitled to the recovery of costs and expenses

Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, deposition transcript costs, transportation and lodging, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class and are incorporated into the fee requested. Moreover, as these expenses were incurred over the life of this litigation, some of them have gone unreimbursed for many years.

Thus, Class Counsel's request for one third of the Gross Settlement Amount and the payment of expenses is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary,* 2013 WL 5492998, at *10 (internal quotation marks and citation omitted). After fees are granted, the settlement remains "fair, adequate and reasonable." *See Grinnell.* Thus, this significant recovery for the Class justifies awarding Class Counsel the fees and costs/expenses reimbursement requested.

### G.    Public Policy Considerations

"[F]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez,* 2013 WL 1209563, at *8 (internal quotation marks and citation omitted). The FLSA and its state law analogs are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945)

(recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work", the purposes of which are served by adequately compensating attorneys who protect wage and hour rights); *McMahon,* 2010 WL 2399328, at *7; *Sand v. Greenberg,* 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).   Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes.   Such adequate compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard living" of workers through private lawsuits and "insur[ing] effective access to the judicial process" by removing the significant barrier of paying legal fees and costs out of pocket.   *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 501-02 (6th Cir. 1984) (internal quotations omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman,* 293 F.R.D. 477; *see also Hernandez,* 2013 WL 1209563, at *8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.; see Sand* 2010 WL 69359, at *3. ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Since each of the factors noted above supports the reasonableness of the fee request of Class Counsel it should be approved by the Court.

## H.    Cross-Check

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."

*Goldberger*, 209 F.3d at 50.[20]  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks v. Morgan Stanley & Co.,* 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 19, 2005).  Courts can then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.  *In re Boesky*, 888 F.Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

"Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.,* 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citations omitted).  Here, Class Counsel are seeking a lodestar multiplier of approximately 1.04.  This is well below the normal range of multipliers that have been granted by courts in this Circuit and elsewhere for settlements of this size.[21]

---

[20] "Should the Court utilize the lodestar method as a cross check, the Court "is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute findings." *In re Volkswagen*, 784 F.Supp.2d at 47 (citation omitted).  The lodestar is calculated by multiplying the number of hours incurred by the hourly rate for the services rendered.  *In re Tyco*, 535 F.Supp.2d at 265 n.12.

[21] Such a multiplier is decidedly well within the commonly accepted range.  *See generally In re Cendant Corp.,* 232 F.Supp.2d 327, 341-2 (D.N.J. 2002) ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 938 n.45 (N.D. Ohio 2003) (relying on an analysis of over 1,000 cases to conclude that "the courts' effective multipliers averaged: (a) 3.89 across all 1,120 cases, (b) 4.50 across the 64 cases where the recovery exceeded $100 million, and (c) 2.97 across the 10 mass tort cases."); *see also Davis v. JP Morgan Chase & Co*., No. 01-CV-6492L, slip op. 17 (S.D.N.Y. Oct. 11, 2011) (5.3 multiplier on one third fee of $42 million settlement; also citing other authorities).  And this multiplier is within or lower than many lodestar multipliers approved by other Courts in many others.  *See, e.g., Conley v. Sears, Roebuck & Co*., 222 B.R. 181, 187 (D. Mass. 1998) (approving lodestar multiplier of 8.9); *In re Tyco*, 535 F.Supp.2d at 271 (multiplier of 2.697); *In re Relafen*, 231 F.R.D. at 82 (multiplier of 2.02); *New England Carpenters Health Benefits Fund et. Al. v. First Databank, Inc.,* 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009) (multiplier of 8.3); *see also Caissie,* No. 08-30220-MAP (5x+ multiplier and 30% fee in a $9.15 million FLSA/state law wage and hour class and collective action settlement).  Thus, even were it to be considered, the lodestar cross check would support a finding that the requested amount of attorneys' fees, costs and expenses is reasonable.

The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC,* 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  As set forth above, Class Counsel is often called upon to perform work after final approval hearing, including, answering class member questions, answering questions from the claims administrator, and negotiating and working with Defendants' counsel on any issues that may arise in connection with administering the Settlement and distributing the QSF.  Particularly in this case, Class Counsel has and continues to field calls and questions from opt-ins.  *See* Valli Final Approval Decl. ¶ 45.  The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz,* 2010 WL 5507912, at *7.

I.      **Administration Fees**

The Court preliminarily appointed KCC as the Settlement Claims Administrator in this Action.  For the Court's information, KCC has indicated that their estimated total cost of administration is $97,586.00, which is in line with similar settlements in this District. *See Flores, et al. v. K.C. 53 LLC, et al.,* No. 12-cv-8095 (S.D.N.Y. Sept. 16, 2013).  KCC Decl. ¶ 13.

J.      **Service Awards to the Settlement Class Representative Should Be Approved.**

Service Payments for "class representatives" have "an important function in promoting class action settlements." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (*quoting Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002)).  "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary,* 2013 WL 5492998, at *12 (citing

*Massiah v. MetroPlus Health Plan, Inc.,* 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

Here, the Settlement Agreement provides for Class Counsel and the Plaintiffs to seek Service Payments for the named Plaintiff in an amount up to but not exceeding $7,500.00 for the Class Representative.  The amount of the requested Service Payments in this case is consistent with those that have been granted for class representatives who were willing to put their name forward to represent others similarly situated within this Circuit.[22]  The Class Representative provided support to this litigation by agreeing to step forward to serve as the representative for the Settlement Class, and fulfilled his commitments in that regard.  He assisted Class Counsel materially with the case.  Valli Final Approval Decl. ¶ 50.

Further, Class Counsel posits that the payment of this amount to the Class Representative is warranted because stepping forward to have one's name on a wage and hour complaint involves a certain degree of scrutiny.  Accordingly, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011).  Here, the Class Representative aided in the investigation, sat for a deposition, assisted Class Counsel in obtaining a comprehensive understanding as to the multitude of issues faced by Store Managers.  Accordingly, Class Counsel requests a service award of $7,500.00 for the Plaintiff.

## VI. Conclusion

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Unopposed Motion for Certification of the Settlement Class and Collective,

---

[22] The terms incentive and service awards or payments are used interchangeably by litigants and the courts.

Final Approval of Proposed Settlement, and Approval of Attorneys' Fees and Costs/Expenses,

Claims Administrator and Service Payments and enter the accompanying proposed Order on

Final Approval of Class and Collective Action Settlement and Judgment and the relief set forth

therein.

Dated: December 12, 2017
Garden City, New York.

/s/ *Robert J. Valli, Jr.*

**VALLI KANE & VAGNINI LLP**
Robert J. Valli, Jr.
Sara Wyn Valli
James A. Vagnini
600 Old Country Road, Suite 519
Garden City, NY 11530
Telephone: (516) 203-7180

Jay D. Ellwanger
Ellwanger Law LLLP
8310-1 N. Capital of Texas Hwy.
Ste. 190
Austin, Texas  78731
Telephone (737) 808-2262
jellwanger@equalrights.law

*Attorneys for Plaintiffs*